06 CV 3687 (DGT)(LB)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ERNEST JETER,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK, *et al.*,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, Room 2-170*
*New York, N.Y. 10007*

*Of Counsel:*
*Daniel Chiu*

*Tel: 212-788-1158*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................... i

PRELIMINARY STATEMENT ...............................................................1

STATEMENT OF FACTS .......................................................................3

ARGUMENT

POINT I

PLAINTIFF'S COMPLAINT IS BARRED BY THE
DOCTRINE OF RES JUDICATA ...............................................6

    A.   Plaintiff's Claims of False Disciplinary Charges
          could have been Asserted in *Jeter I* ....................................7

    B.   Plaintiff's Hostile-Environment Claim is
          barred by Res Judicata ........................................................12

    D.   Plaintiff's §§ 1981, 1983 Claims are barred by
          Res Judicata ........................................................................13

POINT II

THIS COURT LACKS SUBJECT MATTER
JURISDICTION OVER PLAINTIFF'S TITLE VII AND
NYSDHR CLAIMS .....................................................................14

    A.   Plaintiff's Title VII Claim is barred by Plaintiff's
          Failure to Timely File Suit...................................................14

    B.   Plaintiff's NYSDHR Claim is barred by the
          Election of Remedies Doctrine ...........................................16

POINT III

PLAINTIFF'S §§ 1981, 1983 CLAIMS ARE BARRED BY
PRIOR ADMINISTRATIVE HEARINGS ................................16

    A.   Plaintiff's NYSDHR Proceedings bar his
          §§ 1981 and 1983 Claim.....................................................16

B.   This Action Should be Stayed Due to the
Pending § 3020-a Proceeding ...........................................................18

POINT IV

PLAINTIFF'S §§ 1985, 1986 CLAIM IS BARRED BY
THE INTRA-CORPORATE IMMUNITY DOCTRINE ..........................19

POINT VI

PLAINTIFF'S REMAINING § 1983 CLAIMS SHOULD
BE DISMISSED ......................................................................................20

CONCLUSION   .................................................................................................21

UNITED STATES DISTRICT COURT
EASTERN DISTRICT NEW YORK
--------------------------------------------------------------------- x
ERNEST JETER,

                                       Plaintiff,

              -against-

NEW YORK CITY DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF INVESTIGATION OF THE CITY
OF NEW YORK, and THE OFFICE OF SPECIAL
COMMISSIONER OF INVESTIGATION FOR NEW
YORK CITY SCHOOL DISTRICT OF THE CITY OF
NEW YORK, *et al.*,

                                    Defendants.

--------------------------------------------------------------------- x

Docket No. 06 Civ. 3687
(DGT)(LB)

## **PRELIMINARY STATEMENT**

      Plaintiff Ernest Jeter ("Plaintiff" or "Jeter") is a tenured guidance counselor with the New York City Department of Education ("DOE"). This is Plaintiff's second suit against DOE. Plaintiff initially sued DOE in 1999 claiming he was subjected to discrimination and harassment because of his race and that he had been discriminated against because of a disability. ("*Jeter I*"). More specifically, Plaintiff alleged that he was discriminatorily transferred between various DOE schools and was harassed and discriminated against in a campaign to force him to either quit or have his employment terminated.

      On or about March 25, 2004, this Court granted DOE's motion for summary judgment and dismissed *Jeter I*. After *Jeter I* was dismissed, Plaintiff commenced another action in which he alleged that DOE, the New York City Department of Investigation ("DOI"), and the Special Commissioner of Investigation for the New York City School District ("SCI") (collectively, "Defendants") violated Title VII, the New York State Human Rights Law, 42 U.S.C. §§ 1981,

1

1983, 1985 and 1986. Specifically, plaintiff claims that he was the subject of on-going harassment and singled out for discipline for excessive absences, the falsification of documents and failure to provide mandated services to special education students ("*Jeter II*").

Defendants now move pursuant to Rule 12 of the Federal Rules of Civil Procedure to dismiss *Jeter II* on the grounds of: (i) res judicata; (ii) lack of subject matter jurisdiction; and (iii) the intra-corporate immunity doctrine. *Jeter II* should be dismissed on res judicata grounds because the core of Plaintiff's complaint is that DOE harassed, investigated, threatened Plaintiff with disciplinary charges and, ultimately, filed disciplinary charges in an effort to terminate his employment. This claim, and its supporting evidence could have been raised by Plaintiff in *Jeter I* and because he could have raised it, he is now precluded from asserting these claims in *Jeter II*.

Defendants also move to dismiss Plaintiff's Title VII and NYSHRL claims because he failed to file suit within 90 days of receiving his right-to-sue letter and the election of remedies doctrine, respectively. Plaintiff's 42 U.S.C. §§ 1981, 1983 claims should be dismissed because of prior state administrative proceedings, namely, the NYSDHR proceeding and the § 3020-a Education Law Proceeding. Finally, Plaintiff's 42 U.S.C. §§ 1985, 1986 claims are barred by the intra-corporate immunity doctrine.

In the alternative, Defendants seek a stay due to Plaintiff's pending § 3020-a Education Law Proceeding that may resolve the primary issue in this action; whether the disciplinary charges commenced against Plaintiff were proper or had a discriminatory motive.

2

## STATEMENT OF FACTS

Plaintiff is a tenured guidance counselor at DOE. (Declaration of Daniel Chiu, dated January 26, 2007 ("Chiu Dec."), Exhibit A, ¶ 4D).  Plaintiff has been employed by DOE since 1994. (Chiu Dec., Ex. A, ¶ 4D).  In an Amended Complaint, dated May 6, 1999, Plaintiff commenced suit against DOE pursuant to 42 U.S.C. §§ 2000e *et seq*. ("Title VII") and 42 U.S.C. §§ 12111 *et seq*. ("ADA").  (Chiu Dec., Ex. A).  Plaintiff alleged that he was subjected to harassment and discrimination because of his race and his purported disability and that he was denied a reasonable accommodation for an injury to his left leg.  *Jeter I* alleged discrimination and harassment by DOE's "medical bureau, and others who are empowered to grant line of duty injuries."  (Chiu Dec., Ex. A, ¶ 4A).  Plaintiff also alleged that the "whole campaign of discrimination and harassment was due to an attempt by the Board of Education representative to fire plaintiff or make plaintiff quit."  (Chiu Dec., Ex. A, ¶ 4O).  In a Memorandum and Order, dated March 25, 2004, *Jeter I* was dismissed in its entirety. (Chiu Dec., Ex. B).

Although Plaintiff alleged that he was subjected to discrimination and harassment by DOE in order to cause Plaintiff to terminate his employment, he offered no evidence to support the allegation and the decision in *Jeter I* did not discuss the allegation.  (Chiu Dec., Ex. B).[1] Instead, the decision in *Jeter I* held that Plaintiff's claims under Title VII and the ADA for events that occurred prior to April 26, 1997 were time barred and that Plaintiff's §§ 1981 or 1983 claim was barred for acts occurring prior to May 4, 1996.  ((Chiu Dec., Ex. B, p. 11).

---

[1] It is well-settled that "this Court may take judicial notice of the relevant pleadings, orders and judgments in the prior action without converting [the] motion to one for summary judgment" when reviewing a motion to dismiss under the doctrines of res judicata or collateral estoppel.  Marchon Eyewear, Inc. v. Tura LP, No. 98-CV-1932 (SJ), 1999 U.S. Dist. LEXIS 22993, 1999 WL 184107, at *2 (E.D.N.Y. March 28, 1999); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings."); Carmellino v. Dist. 20 of the N.Y. City Dep't of Educ., No. 03-CV-5942 (PKC), 2004 U.S. Dist. LEXIS 5754, at *5 (S.D.N.Y. April 5, 2004). Thus, in deciding this motion to dismiss, the Court takes judicial notice of the documents from prior actions. *See* Washington v. United States Tennis Ass'n, 290 F. Supp. 2d 323, 326 (E.D.N.Y. 2003) ("[The court] is permitted to take judicial notice of court documents from previous actions.").

With respect to the merits of Plaintiff's claims, the Court held that the "excessing" or transfer of Plaintiff between various schools was not an adverse employment action and the claim was therefore dismissed.  (Chiu Dec., Ex. B, p. 13-7).  Plaintiff's remaining claims that were considered by the Court: (i) the denial to extend his 1999 injury in the line of duty status; (ii) Plaintiff's ADA claim that he was unable to walk and climb stairs; (iii) violation of his civil rights pursuant to 42 U.S.C. §§ 1981, 1983; (iv) retaliation for filing a Notice of Claim; and (v) request for additional discovery, were all denied by the Court.  (Chiu Dec., Ex. B).

Shortly after *Jeter I* was dismissed on March 25, 2004, Plaintiff filed two discrimination complaints with the New York State Division of Human Rights ("NYSDHR"), sworn to July 6, 2004 and August 11, 2005.  (Chiu Dec., Exs. F and I, respectively).  Each discrimination complaint was dismissed by the NYSDHR with a "No Probable Cause" finding.  (Chiu Dec., Exs. G and J).  The U.S. Equal Employment Opportunity Commission ("EEOC") adopted the findings of the NYSDHR and issued two right-to-sue letters on January 11, 2006 and May 4, 2006.  (Chiu Dec., Exs. H and K, respectively).  On July 27, 2006, over 180 days after the first right-to-sue letter was issued, Plaintiff filed the instant suit with the *pro se* office.  (Chiu Dec., Ex. C).

Similar to *Jeter I*, Plaintiff alleges in *Jeter II* discrimination on the basis of race and retaliation.  (Chiu Dec., Ex. C).  Plaintiff also alleges, like *Jeter I*, that the campaign to discriminate and harass Plaintiff was done "with the sole intent to create charges with the intent to terminate plaintiff."  (Chiu Dec., Ex. C, sec. C, ¶ 6).  It is alleged by Plaintiff that the discrimination and harassment began "all while proceedings were continuing or almost immediately after a judgment was entered in this Court before or in March of 2004."  (Chiu Dec., Ex. C, sec. D, ¶ 50).  It is further alleged by Plaintiff that "Defendant's actions are continuing

violations and plaintiff is raising the continuing violation theory because defendant's actions against plaintiff have occurred over an extended period of time since plaintiff began working for the defendant." (Chiu Dec., Ex. C, sec. D, ¶ 3).

In *Jeter II*, Plaintiff bases his claim on five different theories.  In sum, Plaintiff claims in *Jeter II* that the investigations into Plaintiff, the threats to commence disciplinary charges and the ultimate filing of disciplinary charges, which were done in an attempt to terminate his employment, are violations of: (i) Title VII and the NYSHRL; (ii) retaliation pursuant to Title VII; (iii) a hostile work environment; (iv) violation of 42 U.S.C. §§ 1981, 1983; and (v) a violation of §§ 1985, 1986.  (Chiu Dec., Ex. C, secs. B, C, D, E, F, G, and H).

## ARGUMENT

### POINT I[2]

### PLAINTIFF'S COMPLAINT IS BARRED BY THE DOCTRINE OF RES JUDICATA.

The doctrine of res judicata applies to bar a second suit between the same parties or their privies based on the same cause of action or claims when a judgment is rendered on the merits. Bess v. Spitzer, 2006 U.S. Dist. Lexis 83966 *13-14 (E.D.N.Y. Nov. 18, 2006) (Spatt, J.). It also "prevents litigation of a matter that could have been raised and decided in a previous suit, whether or not it was raised." Id., 2006 U.S. Dist. Lexis 83966 at 14 *quoting* Murphy v. Gallacher, 761 F.2d 878, 879 (2nd Cir. 1985); *see also* Faconti v. Henderson, 2006 U.S. Dist. Lexis 61238 *13-4 (E.D.N.Y. Aug. 29, 2006) (Irizarry, J.) ("purpose of *res judicata* is to preserve the integrity of the judicial system by discouraging frivolous claims and preventing a party from taking factually inconsistent positions in subsequent litigation"); Ryan v. New York Telephone Company, 62 N.Y.2d 494, 500, 467 N.E.2d 487, 490, 478 N.Y.S.2d 823, 826 (1984) ("Justice requires that every cause be once fairly and impartially tried; but the public tranquility demands that having been once so tried, all litigation of that question, and between those parties, should be closed forever.").

The relevant factors in determining whether res judicata applies are whether "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the

---

[2] When a defendant makes "a motion to dismiss, a court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff." El-Bey v. State of New York, 2006 U.S. Dist. Lexis 89560 *5 (S.D.N.Y. Dec. 11, 2006) (Sprizzo, J.) *citing* Rombach v. Chang, 355 F.3d 164, 169 (2nd Cir. 2004). It is appropriate to dismiss the complaint "where it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." El-Bey, 2006 U.S. Dist. Lexis 89560 at 5-6. In deciding a Rule 12 motion, a court may consider, in addition to the factual allegations in the complaint, "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." Bell v. Hubbert, 2006 U.S. Dist. Lexis 94547 *2 (S.D.N.Y. Jan. 8, 2007) (Sweet, J.) *quoting* Brass v. American Film Technologies, 987 F.2d 142, 150 (2nd Cir. 1993).

[parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Bess*, 2006 U.S. Dist. Lexis 83966 at 15 *quoting* Pike v. Freeman, 266 F.3d 78, 91 (2nd Cir. 2001).

Accordingly, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." Pantoja v. Kiska Construction Corp., 2001 U.S. Dist. Lexis 17374 *13 (S.D.N.Y. Oct. 29, 2001) (Peck, M.J.) *quoting* Creed Taylor, Inc. v. CBS Inc., 718 F.Supp. 1171, 1175 (S.D.N.Y. 1989).   Res judicata also bars acts that occurred after the conclusion of the first action if the subsequent action raises matters that are "part of the same cause of action and arose from a single core of operative facts." Norman v. Niagara Mohawk Power Corporation, 873 F.2d 634, 638 (2nd Cir. 1989) *quoting* Car Carriers, Inc. v. Ford Motor Co., 789 F.2d 589, 596 (7th Cir. 1986) (*internal quotations omitted*).

A.     Plaintiff's Claims of False Disciplinary Charges Could have been Asserted in *Jeter I*

In determining whether a second suit is barred by this doctrine, the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive. Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997). "Rather, the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit." Id.  Therefore, as the Second Circuit noted, "the obvious starting point in a preclusion analysis is a determination of the issues that were litigated in the first action." Flaherty v. Lang, 199 F.3d 607, 613 (2d Cir. 1999).

In 1999, Plaintiff commenced suit against DOE alleging that he was "harassed and discriminated against by the defendant because of his race: African-American/black."  (Chiu

Dec., Ex. A, ¶ 4A).  Specifically, Plaintiff alleged that "at each school that plaintiff worked at some one would make a wrongful accusation.  Accusing plaintiff of any thing from wrongful insubordination to some form of abuse.  The whole campaign of discrimination and harassment was due to an attempt by the Board of Education representative to fire plaintiff or make plaintiff quit."  (Chiu Dec., Ex. A, ¶ 4O).  Plaintiff also alleged that DOE discriminated against him because of a disability and that he suffered retaliatory animus because he filed a Notice of Claim in 1995.  (Chiu Dec., Ex. A, ¶ 4R).  Although Plaintiff raised these allegations, he presented no evidence to substantiate his claims and this Court dismissed *Jeter I* in its entirety in a Memorandum and Order, dated March 25, 2004, following DOE's motion for summary judgment.  (Chiu Dec., Ex. B).

The instant action should also be dismissed because *Jeter II* is simply an attempt to re-litigate matters that could have been raised in *Jeter I*, but for unexplained reasons, were not pursued by Plaintiff.  The Complaint in *Jeter II* is replete with the same allegations found in *Jeter I*, that false disciplinary charges were levied against him and that he was the subject of harassment, discrimination, and retaliation due to DOE's "sole intent to create charges with the intent to terminate plaintiff."  (Chiu Dec., Ex. C, sec. B, ¶¶ 10 (7) and 16; sec. C, ¶¶ 6-7, 16-17, 18, 21, 22(c); sec. D, ¶¶ 48-50; sec. E, ¶¶ 3(a)(2), (4)-(6) and (7-10); sec. F, ¶¶ 2 and 4; sec. G, ¶¶ 1, 4-5, 8-9, 14(a), 15(b)).

In essence, the core of *Jeter II* can be described as the allegation that DOE is attempting to unlawfully terminate Plaintiff's employment by threatening him with and actually subjecting him to disciplinary charges.  Consequently, if Plaintiff could have raised in *Jeter I* the transaction or series of transactions that underlie the threat of and actual filing of disciplinary charges, *Jeter*

8

*II* will be barred on *res judicata* grounds.   <u>Monahan v. New York City Department of Corrections</u>, 214 F.3d 275, 289 (2nd Cir. 2000) (new incidents considered part of same transaction or series of transactions insufficient to bar application of res judicata).

In *Jeter II*, it is alleged by Plaintiff that "Defendant has deliberately by its concerted actions to cause plaintiff's work environment to be hostile and abusive by taking actions to ensure that plaintiff will be brought up on false disciplinary charges." (Chiu Dec., Ex. C, sec. D, ¶ 2).   Plaintiff then alleges in the next paragraph that "Defendant's actions are continuing violations and plaintiff is raising the continuing violation theory because defendant's actions against plaintiff have occurred over an extended period of time since plaintiff began working for the defendant." (Chiu Dec., Ex. C, sec. D, ¶ 3).   More specific allegations are that Plaintiff was subjected to an adverse employment action because of an "email dated April 1, 2003 that they wanted to bring plaintiff up on disciplinary charges." (Chiu Dec., Ex. C, sec. C, ¶ 22(c)).   It is also alleged that Plaintiff was subjected to a hostile environment because "Defendant threaten [sic] to bring plaintiff/complainant up on disciplinary charges on May 9, 2003" (Chiu Dec., Ex. C, sec. D, ¶ 15); and that "Defendant deliberately sent Francine Dreyfus, LIS, in October 2003 to begin to set up charges so that disciplinary action could be taken against plaintiff." (Chiu Dec., Ex. C, sec. D, ¶ 35(a)).

Each of the above alleged acts of discrimination occurred prior to or while *Jeter I* was pending.   The investigation into Plaintiff's absences, threatening to bring him up on disciplinary charges and the arrival of Francine Dreyfus "to begin to set up charges so that disciplinary action could be taken," all underlie the actual filing of the disciplinary charges in June 2005.   As such, they are all part of the same transaction alleged in *Jeter I* that "[t]he whole campaign of discrimination and harassment was due to an attempt by the Board of Education representative to

fire plaintiff or make plaintiff quit." (Chiu Dec., Ex. A, ¶ 4O). Because such evidence was available to Plaintiff during *Jeter I*, he was required to raise it. Johnson v. Ashcroft, 378 F.3d 164, 172, n. 10 (2nd Cir. 2004) (litigants in civil suits required to advance all available evidence and legal arguments relating to claim or controversy in context of single proceeding).

Plaintiff's ability to raise the matter in *Jeter I*, and his failure to do so, bars Plaintiff from raising the claim now. Pantoja 2001 U.S. Dist. Lexis 17374 at 14 (transactional approach to res judicata prevents parties to the prior action from raising in subsequent proceeding any claim they could have raised in prior one where all of the claims arise from the same underlying transaction) (*citations omitted*); *see also* Word v. Croce, 230 F.Supp. 504, 510 (S.D.N.Y. 2002) (action barred by res judicata when facts essential to second action were already present in first).

In addition, Plaintiff cannot dispute that he had knowledge of the possibility of "false disciplinary charges" and that he considered the threat of filing charges discriminatory. Plaintiff was aware, at the latest, of the possibility of charges in February 2003, over a year prior to the conclusion of *Jeter I*. (Chiu Dec., Ex. D, p. 1).[4] In Plaintiff's letter to Mayor Bloomberg, dated May 11, 2003, Plaintiff complained that he was being investigated for a pattern of excessive absences and may be subjected to disciplinary charges. (Chiu Dec., Ex. D, p. 6). Plaintiff stated that the investigations into his absences and failure to provide services to his students were "nothing but attempts to intentionally harass me and create unnecessary stress." (Chiu Dec., Ex. D, p. 6). Plaintiff further asserted that "this whole process looks more like the beginning of a conspiracy to accuse me of insubordination." (Chiu Dec., Ex. D, p. 2). Plaintiff therefore knew that DOE was investigating and preparing disciplinary charges against him and he could have raised the claims to substantiate his allegation in *Jeter I* that he was subjected to discrimination

---

[4] Plaintiff's letter to Mayor Bloomberg, dated May 11, 2003, was relied upon and referenced in the Complaint. (Chiu Dec., Ex. C, sec. C, ¶ 20(e) and sec. D, ¶ 51).

and harassment for the purpose of terminating his employment. Plaintiff, however, did not and is thus foreclosed from raising the claim now. Harborside Refrigerated Services, Inc. v. Vogel, 959 F.2d 368, 372 (2nd Cir. 1992) (res judicata bars litigation of matter that could have been raised and decided in previous suit whether or not it was raised).

Moreover, the issue of "possible disciplinary action against" Plaintiff due to his attendance record of working only three days per week was specifically raised and discussed in the Memorandum and Order in *Jeter I*. (Chiu Dec., Ex. B, p. 10). Plaintiff argued that DOE's failure to allow him to schedule his physical therapy on Tuesdays and Thursdays was a violation of the ADA. (Chiu Dec., Ex. B, p. 22). Plaintiff did not argue that DOE's threat of disciplinary charges for his excessive absences was based on racial discriminatory animus. Rather, he alleged that DOE discriminated against him because of an alleged disability. (Chiu Dec., Ex. B, p. 10 and 22). In essence, because this Court rejected plaintiff's claim of disability discrimination, Plaintiff is now trying to assert a new claim for race discrimination relying on the same facts alleged in *Jeter I*. As a matter of law, this claim should be dismissed.[5] El-Bey, 2006 U.S. Dist. Lexis 89560 at 12 (all claims arising out of same transaction or series of transactions are barred once claim is brought to final conclusion even if based upon other legal theories or seeking a different remedy).

---

[5] Plaintiff's allegations are also be barred by issue preclusion, otherwise known as collateral estoppel, which "'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in a future lawsuit.'" Schiro v. Farley, 510 U.S. 222, 232, 114 S. Ct. 783, 127 L. Ed. 2d 47 (1994) (*quoting* Ashe v. Swenson, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970)). Issue preclusion applies if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the first proceeding." Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 94 (2d Cir. 2005) (*internal quotation marks omitted*). Here, Jeter is raising the same issues with respect to alleged discrimination and retaliation from 2000 to 2004, which he had a full and fair opportunity to litigate on the merits before this Court, and lost. Thus, Jeter is collaterally estopped from raising here those same issues raised in *Jeter I*.

B.    Plaintiff's Hostile-Environment Claim is barred by Res Judicata

In *Jeter II*, Plaintiff alleges he was subjected to a hostile-work environment. This claim is also barred because the acts Plaintiff complains of were clearly present prior to and during *Jeter I*. Plaintiff, however, failed to allege a hostile-work environment in *Jeter I* and, consequently, cannot raise the claim in *Jeter II*. (Chiu Dec., Ex. B, p. 14).

Plaintiff alleges in *Jeter II* that he was subjected to a hostile work environment due to Defendants' investigation into Plaintiff, threats of disciplinary charges, as well as harassment by Susan Erber, Bonnie Brown, Francine Dreyfus, DOE's Medical Bureau, and other abuse by Steve Lent. (Chiu Dec., Ex. C, sec. C, ¶ 22(c); sec. D, ¶¶ 15, and 35(a)). Plaintiff alleges that "Defendant began creating an abusive and hostile work environment for plaintiff all while proceedings were continuing or almost immediately after a judgment was entered in this Court before or in March of 2004." (Chiu Dec., Ex. C, sec. D, ¶ 50). The discriminatory acts purportedly "occurred over an extended period of time since plaintiff began working for the defendant." (Chiu Dec., Ex. C, sec. D, ¶ 3). All of the above acts occurred prior to or during *Jeter I* and are therefore barred.

Other acts raised in *Jeter II* that could have been raised in *Jeter I* include the allegation that Steve Lent created a hostile-environment by purportedly making faces at Plaintiff. (Chiu Dec., Ex. C, sec. A, ¶ 4(f8)). Plaintiff claims that Steve Lent had harassed Plaintiff since 1999. Plaintiff admitted this fact in a discrimination complaint Plaintiff filed with DOE's Office of Equal Employment Opportunity against Steve Lent. (Chiu Dec., Exs. C, sec. A, ¶ 4(f8), sec. C, ¶ 2 and 15; and F). The complaint stated that Steve Lent had been harassing Plaintiff for the past five years in an attempt to get Plaintiff fired. (Chiu Dec., Ex. E).

As evident by the allegations in *Jeter II*, the claim that Plaintiff was subjected to a hostile work environment due to his race predated *Jeter I*. Allowing Plaintiff to proceed with this claim allows plaintiff to impermissibly split his claim. Plaintiff's claim that he was subjected to a hostile work environment should therefore be dismissed. Ambase Corporation v. City Investing Company Liquidating Trust, 326 F.3d 63, 73 (2nd Cir. 2003) (rule against claim splitting based on belief that it is fairer to require a plaintiff to present in one action all of his theories of recovery relating to a transaction, and all of the evidence relating to those theories, than to permit him to prosecute overlapping or repetitive actions in different courts or a different times).

In addition, a hostile work environment harassment claim, by its nature, is a pattern of ongoing conduct that is a single transaction. Because it is a single transaction that started "since plaintiff began working for defendant," it is barred by res judicata. Yaba v. Cadwalader, Wickersham & Taft, 961 F.Supp. 611, 622 (S.D.N.Y. 1997) ("allegation of hostile work environment harassment, by its nature, includes any claims of an ongoing pattern of conduct. Thus, regardless of the number of incidents alleged, or the pleading of the additional incidents in the second complaint, [plaintiff's] claims involve a single transaction.")

C.     Plaintiff's §§ 1981, 1983 Claims are Barred by Res Judicata

Plaintiff's §§ 1981 and 1983 claims are similarly based on the same set of facts used to support Plaintiff's other claims. Plaintiff alleges that the "defendant intentionally discriminated against plaintiff because of his race by conspiring to create disciplinary charges in order to harass and terminate plaintiff's employment rights." (Chiu Dec., Ex. C, sec. E, ¶¶ 2-3(a)(3)-(10), 4(a)-(g), 5(b), and 6(c)). Plaintiff's § 1983 claim asserts that "Defendant acted under the color of New York State Education Law section 3020(a) to bring false disciplinary charges against plaintiff for the sole purpose of terminating plaintiff from plaintiff's tenured rights to

employment."  (Chiu Dec., Ex. C, sec. F, ¶¶ 2, 7, 17-18, and 25).  Plaintiff then alleges that Defendant has violated § 1983 by maintaining seventeen different "official policy, custom and practice, etc.," ranging from "violating its own polices and regulations" to "deliberately violating the provisions of the guidance counselor's contract by assigning plaintiff duties in violation of plaintiff's guidance counselors' contract."  (Chiu Dec., Ex. C, sec. F, ¶¶ 2(b), 4-10, 12-15, and 22-24). [6]

Because the crux of Plaintiff's §§ 1981, 1983 claim, and every other claim in *Jeter II*, is the bringing of false disciplinary charges, Plaintiff's §§ 1981, 1983 claim should be dismissed since Plaintiff is merely changing the legal theory to recover on the same set of facts that could have been raised in *Jeter I*.

**POINT II**

**THIS COURT LACKS SUBJECT MATTER
JURISDICTION OVER PLAINTIFF'S TITLE
VII AND NYSDHR CLAIMS.**

A.    Plaintiff's Title VII Claim is Barred by Plaintiff's Failure to Timely File Suit

In a complaint, sworn to on July 6, 2004, Plaintiff alleges he was subject to unlawful discrimination based on his race, sex, and in retaliation for filing a previous discrimination complaint ("*NYSDHR I*").  (Chiu Dec., Ex. F).  In a Determination and Order After Investigation, *NYSDHR I* was dismissed with a  "No Probable Cause" finding.  (Chiu Dec., Ex. G).  The U.S.

---

[6] These purported Constitutional deprivations Plaintiff asserts as violations of 42 U.S.C. § 1983 will be discussed in Point V, *infra*.

Equal Employment Opportunity Commission ("EEOC") adopted the NYSDHR's findings and issued a right-to-sue letter on January 11, 2006.  (Chiu Dec., Ex. H).[7]

In a second complaint, sworn to on August 11, 2005, Plaintiff alleged retaliation for filing a previous discrimination complaint ("*NYSDHR II*").  (Chiu Dec., Ex. I).  *NYSDHR II* did not claim unlawful discrimination based on race or sex.  Not surprisingly, the NYSDHR dismissed *NYSDHR II* with a "No Probable Cause" finding.  (Chiu Dec., Ex. J).  The EEOC adopted the NYSDHR's findings and issued a right-to-sue letter on May 4, 2006.  (Chiu Dec., Ex. K).  *Jeter II* was filed with the *pro se* office on July 27, 2006.  (Chiu Dec., Ex. C).

It is fundamental that a Plaintiff must commence suit within 90 days of receiving the right-to-sue letter.  Espinosa v. Delgado Travel Agency, Inc., 2006 U.S. Dist. Lexis 71085 *7 (S.D.N.Y. Sept. 27, 2006) (Scheindlin, J.) (complaint dismissed for failure to file within 90 days of receipt of right-to-sue letter).  In instances where multiple right-to-sue letters are received, a plaintiff's time to file suit begins to run "from the receipt of the first right-to-sue letter, not the second." Spencer v. New York City Transit Authority, 1999 U.S. App. Lexis 29682 *5 (2nd Cir. Nov. 5, 1999).  The first right-to-sue letter must control, otherwise "the time limitations of 42 U.S.C. § 2000e-5(f)(1) would be meaningless, because potential Title VII plaintiffs could evade those requirements by simply seeking additional Notices of Right to Sue whenever they pleased." Lo v. Pan American, 787 F.2d 827, 828 (2nd Cir. 1986).

Here, the first right-to-sue letter was issued on January 11, 2006, over 180 days before Plaintiff filed suit on July 27, 2006.  Because Plaintiff failed to file within 90 days of the first right-to-sue letter, this Court does not have subject matter jurisdiction over his Title VII claims and they should be dismissed.

---

[7] When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12 (b)(1), the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions.  Narvaez v. United States of America, 2007 U.S. Dist. Lexis 4113 *7 (E.D.N.Y. Jan. 18, 2007) (Townes, J.).

B.     Plaintiff's NYSDHR Claim is Barred by the Election of Remedies Doctrine

It cannot be disputed that Plaintiff filed his discrimination complaint – twice – with the

NYSDHR on July 6, 2004 and August 11, 2005.  When a "party files a complaint with the

Division of Human Rights regarding alleged discrimination, that party is thereafter barred from

commencing an action in court regarding that discrimination . . . "  Miller v. NASD, 2006 U.S.

Dist. Lexis 67846 *9 (E.D.N.Y. Sept. 21, 2006) (Vialiano, J.) quoting Moodie v. Fed. Reserve

Bank, 58 F.3d 879, 882 (2nd Cir. 1995) (internal quotations omitted); see also Smith-Henze v.

Edwin Gould Services, 2006 U.S. Dist. Lexis 93076 *7 (S.D.N.Y. Dec. 21, 2006) (Sand, J.)

(person claiming to be aggrieved by unlawful discriminatory practice may seek relief either from

court of appropriate jurisdiction or from New York State Division of Human Rights but not

both).  Because Plaintiff filed his complaint with the NYSDHR and the NYSDHR adjudicated

his claim, he is barred from pursuing his State claim here and those claims should be dismissed.


**POINT III**

**PLAINTIFF'S §§ 1981, 1983 CLAIMS ARE BARRED BY PRIOR ADMINISTRATIVE HEARINGS**

A.     Plaintiff's NYSDHR Proceedings bar his §§ 1981 and 1983 Claim

Pursuant to New York law, "the quasi-judicial determinations of administrative agencies

will be awarded preclusive effect when rendered pursuant to the adjudicatory authority of an

agency to decide cases brought before its tribunals employing procedures substantially similar to

those used in a court of law."  Evans v. New York Botanical Garden, 2002 U.S. Dist. Lexis

16434 *14 (S.D.N.Y. Sept. 9, 2002) (Sweet, J.) quoting Ryan v. New York Tel. Co., 62 N.Y.2d

494, 499, 478 N.Y.S.2d 823, 825-26 (1984); see also DeCintio v. Westchester County Medical

Center, 821 F.2d 111, 117-18 (2nd Cir. 1987) (SDHR does not make probable cause

16

determination until complainant had full opportunity to present on record charges against employer and SDHR finding is entitled to preclusive effect in federal action based on 42 U.S.C. § 1983); Alvarado v. Manhattan Worker Career Center, 2002 U.S. Dist. Lexis 23677 *33 (S.D.N.Y. Dec. 10, 2002) (Motley, J.) (well-established that NYSDHR findings of "no probable cause" preclude subsequent claim pursuant to Section 1981 based on the same facts unless plaintiff can demonstrate did not receive full and fair opportunity to litigate before NYSDHR).

In *NYSDHR I*, Plaintiff alleged he was subjected to disparate treatment and disciplined due to his race, sex and in retaliation for filing previous discrimination complaints. *NYSDHR II* also alleged that he was being subjected to additional discipline because he filed a discrimination complaint in *NYSDHR I*. Plaintiff's NYSDHR complaints were the basis for his §§ 1981 and 1983 claims as both allege disparate treatment based on race and that Plaintiff was singled out for disciplinary charges with the intent to terminate his employment. Both discrimination complaints were dismissed by the NYSDHR with a "No Probable Cause" finding.

In both proceedings, Plaintiff had a full and fair opportunity to litigate. The NYSDHR conducted a full investigation and issued a Final Investigation Report and Basis of Determination prior to the issuance of the "No Probable Cause" findings. (Chiu Dec., Exs. L and M).[8] Moreover, Plaintiff was permitted to submit evidence in support of his contentions and, in-fact, submitted a 39 page narrative accompanied by an extensive exhibit list. (Chiu Dec., Ex. N). As a result, Plaintiff had a full and fair opportunity to litigate his claims before the NYSDHR and his §§ 1981 and 1983 claims should therefore be dismissed.

---

[8] A court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment. Evans, 2002 U.S. Dist. Lexis 16434 at 11-12.

B.      This Action Should be Stayed Due to the Pending § 3020-a Proceeding

        In the alternative, a § 3020-a Education Law Proceeding commenced against Plaintiff on

March 30, 2006.[9]   (Chiu Dec., Ex. C, sec. D, ¶ 49).   Because there is a pending § 3020-a

proceeding, a stay is appropriate.   A § 3020-a hearing has been held to be "a quasi-judicial

administrative action whose findings are entitled to preclusive effect."   Burkybile v. Bd. of Educ.

of the Hastings-on-Hudson, 411 F.3d 306, 308 (2nd Cir. 2005) (dismissal of 42 U.S.C. § 1983

claim on summary judgment motion affirmed because claim was precluded by earlier hearing

conducted pursuant to § 3020-a of the New York Education Law).

        In all likelihood, the § 3020-a proceeding will decide the core of the instant controversy;

the merits of Plaintiff's claim that DOE conspired to bring false disciplinary charges for the

purpose of terminating his employment.   As a consequence, Plaintiff's §§ 1981, 1983 claims

may be barred.   University of Tennessee v. Elliott, 478 U.S. 788, 106 S.Ct. 3220 (1986)

(doctrines of res judicata and collateral estoppel are applicable to findings made by state

administrative agencies); see also Harmon v. Matarazzo, 1997 U.S. Dist. Lexis 2401, *11

(S.D.N.Y. Feb. 27, 1997) (Block, J.) (administrative hearing before New York City Office of

Collective Bargaining barred plaintiff's 42 U.S.C. §§ 1981, 1983 suit alleging racial

discrimination).

---

[9] A § 3020-a Education Law Proceeding provides for disciplinary hearings for tenured public school teachers and are held pursuant to New York Education Law § 3020-a.

## POINT IV

## PLAINTIFF'S §§ 1985, 1986 CLAIM IS BARRED BY THE INTRA-CORPORATE IMMUNITY DOCTRINE

Plaintiff alleges that he was the victim of a conspiracy to "single plaintiff out for disciplinary action, to deny plaintiff of [sic] due process, to reassigned [sic] plaintiff, to demote and harass because of his race."[10] (Chiu Dec., Ex. C, sec. G, ¶ 1). To state a claim pursuant to 42 U.S.C. § 1985, "more than vague or conclusory allegations of conspiracy and invidious discrimination are necessary." Dangler v. New York City Off Track Betting Corporation, 1998 U.S. Dist. Lexis 14128 *17-18 (S.D.N.Y. Sept. 9, 1998) (Batts, J.). Moreover, liability is precluded against "managers of a corporation jointly pursuing its lawful business . . . when acts within the scope of their employment are said to be discriminatory or retaliatory." Fabbricante v. City of New York, 2002 U.S. Dist. Lexis 27815 *24 (E.D.N.Y. Nov. 18, 2002) (Sifton, J.) quoting Travis v. Gary Community Health Ctr., Inc., 921 F.2d 108, 110 (7th Cir. 1990).

Here, each entity that Plaintiff claims violated his civil rights are employed by or are a part of the City of New York. Consequently, Plaintiff's § 1985 claim should be dismissed. Fabbricante, 2002 U.S. Dist. Lexis 27815 at 26 (complaint dismissed because all defendants were employees of the City of New York and plaintiff unable to allege additional motivation unrelated to plaintiff's status as whistleblower).

Upon dismissal of a § 1985 claim, Plaintiff's § 1986 claim must also be dismissed. Linder v. City of New York, 263 F.Supp.2d 585, 591 (E.D.N.Y. 2003) (failure of § 1985 claim requires dismissal of § 1986 claim).

---

[10] Although Plaintiff uses "Defendant" in the singular, it is assumed Plaintiff is asserting his claim against all of the defendants.

## POINT V

## PLAINTIFF'S REMAINING § 1983 CLAIMS SHOULD BE DISMISSED

As set forth in Point I, sec. C, *supra.*, Plaintiff alleges Defendants violated 42 U.S.C. § 1983 by maintaining seventeen different policies, customs or practices. (Chiu Dec., Ex. C, sec. F, ¶¶ 2(b), 4-10, 12-15, and 22-24). Each allegation is stated in a conclusory fashion without any supporting facts or even a stated substantive constitutional violation. The only exception being Plaintiff's continued employment as a tenured guidance counselor at DOE, which Defendants concede is a protected property interest. Otherwise, Plaintiff fails to properly allege violations of 42 U.S.C. § 1983 and those claims should be dismissed. Ramos v. New York City Department of Correction, 2006 U.S. Dist. Lexis 23417 *26 (E.D.N.Y. Apr. 26, 2006) (Bianco, J.) (§ 1983 is not itself a source of substantive rights but merely provides method for vindicating federal rights elsewhere conferred and plaintiff's § 1983 claim dismissed as plaintiff does not allege any substantive constitutional violations).

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court issue an order granting defendants' motion to dismiss and dismissing the Complaint in its entirety, and granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
       January 26, 2007

                                    MICHAEL A. CARDOZO
                                    Corporation Counsel of the City of New York
                                    Attorney for Defendants
                                    100 Church Street, Room 2-170
                                    New York, New York 10007
                                    212-788-1158

By:_____
                                    Daniel Chiu (DC-3381)
                                    Assistant Corporation Counsel

Diana Goell Voigt
Daniel Chiu,
        Of Counsel

## CERTIFICATION OF SERVICE

I, Daniel Chiu, hereby certify that:

On January 26, 2007, I served the annexed Defendants' Memorandum of Law in Support of Motion to Dismiss by depositing a true and correct copy, into the custody of United States Postal Service, in an enclosed envelope with sufficient postage for first-class mail addressed to:

> Ernest Jeter, *pro se*
> 124-21 Flatlands Avenue, Apt. 1-J
> Brooklyn, New York 11208

I certify under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
      January 26, 2007

                              Daniel Chiu