# Exhibit C



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



Ernest Jeter,

                    Plaintiff,                                    Complaint

          -against-

New York City Department of Education
of the City of New York,  New York City
Department of Investigation of the City of
New York, and the Office of Special
Commissioner of Investigation for New York
City School District of the City of New York,
et al.,

                    Defendant(s)

_____

                              -A-

1) Plaintiff, Ernest Jeter, resides at 124-21 Flatlands Avenue, apartment 1-J, Brooklyn, New

York 11208.

2)  Defendant, New York City Department of Education of the City of New York, resides at 52

Chambers Street, New York, New York 10007.

2-a). Defendant, New York City Department of Investigation, resides at 80 Maiden  Lane, New

York, New York 10038.

2-b)  Defendant, Office of Special Commissioner of Investigation for New York City School

District, resides at 80 Maiden Lane, New York, New York 10038.

3)  Allegations of jurisdiction: This Court has Jurisdiction under federal questions and this action

arrises under:

          a-1) Fourteenth Amendment of the Constitution of the United States

          a-2) Title VII of the Civil Rights Act of 1964, as amended:

                    1. Disparate treatment

                                        1

2. Hostile work environment

3. Retaliation

4. Retaliatory hostile work environment

b) Title 42 U.S.C. section 1981 of the United States Codes

c) Title 42 U.S.C. section 1983 of the United States Codes

d) Title 42 U.S.C. section 1985 of the United States Codes

e) Title 42  U.S.C. section 1986 of the United States Codes

f)  New York State Division of Human Rights, New York State Executive Law
section 290 and 296, et seq.,

4)  This action is commenced because the defendant(s) has/have discriminated  against plaintiff

because of his race. Plaintiff is an African American and is a member of the protective class,

and the defendant has created an hostile work environment and a retaliatory hostile work

environment  for plaintiff, and the harassment and hostile work environment are continuing, and

plaintiff is raising the continuing violation theory because the  harassment/hostile work

environment has continued over an extended period of time including to the present:

a)  Plaintiff  has filed complaints with the with defendant's equal
opportunity office beginning in March of 2004 and with the last complaint filed
with defendant in January 2006 or later  concerning the race discrimination,
harassment and  retaliation by supervisors and other staff members, but the
defendant did  not reasonably investigate or address plaintiff's allegations.

b)  Plaintiff has filed complaint with New York State Human Division of Rights
in July of 2004 and August 2005.

c) Plaintiff has filed a dual complaint with the Equal  Employment  Opportunity

2

Commission when plaintiff filed a complaint with the New York State Division
of Human Rights in July 2004 and August 2005.

c) Plaintiff's complaint filed with New York State Division of Human Rights has
been reviewed by the Equal Employment Opportunity Commission (EEOC);

d) Plaintiff has previously filed a complaint with this Court against the defendant
in this Court in 1999 that ended in March 2004.

e) Plaintiff has received a "Notice of Right to Sue" from the EEOC. ( See attached
Notice of Right to Sue letter ( dated May 4, 2006) and envelope (dated: May 4,
2006).

f) The defendant began it's disparate treatment, retaliation and hostile work
environment against complainant beginning on April 1, 2003 or earlier when
Bonnie Brown, current Superintendent of District 75 of the New York City
Department of Education, wrote an email to Rachel Henderson, former principal
of 811K@286, requesting that Rachel Henderson make sure that the payroll
secretary of 811K@286k, Mary Flynn, was taken days out of plaintiff's sick
bank and deducting complainant's pay because they, i.e., the District, wanted to
charges complainant. Complainant at that particular time had thirty-seven (37)
days in complainant's sick bank and as a tenured guidance counselor,
complainant had the right to borrow an additional twenty (20) days if
complainant had used all the days in plaintiff's sick bank. Plaintiff discovered
the email from Bonnie Brown to Rachel Henderson in his personnel files on
July 19, 2005 when he copied documents from his personnel files.

f1) In addition, plaintiff discovered on July 19, 2005, when plaintiff copied

3

documents out of his personnel files, that Mary Flynn, 811K's payroll

secretary, received instructions from Susan Erber, former Superintendent of

District 75, to changed days in plaintiff's attendance history from pending line of

duty injury to unauthorized absence during the period of time from February

2003 to June 2003 with deduction of plaintiff's pay. The borrowed days which

would have covered the medical certified days was not attributed to plaintiff for

the period of February 2003 to June 2003 until after the disciplinary charges was

filed and disciplinary hearing was proceeding when plaintiff received his rating

sheet for 2005- 2006 school year which showed no negative days in plaintiff's

cumulative absence reserve, but the rating sheet did show the 20 days borrowed

days by plaintiff, and defendant brought plaintiff up on disciplinary charges for

for unauthorized absence.

f2)  In October 2003, plaintiff was transferred to 811K@286K by Francine

Dreyfus, Local Instructional Superintendent of District 75, (LIS). Francine

Dreyfus, LIS, claimed to transfer complainant because the other counselor,

Steve Lent, had more seniority than complainant. But, plaintiff learned during

the disciplinary hearing proceeding through the testimony of Bonnie Brown,

current Superintendent of District 75, that plaintiff was transferred because

they, i.e., the district administrators, could not keep up with plaintiff.

f3)The defendant began with the assignment at 811K@286K main site to assigned

plaintiff multiple duties outside of plaintiff's guidance counselor's contract and

in violation of the Jose P. stipulations. Duties such as, assignment to cafeteria,

4

assignment to busing, transitional coordinator and functional behavior assessment. The extra duties interfered with the performance of his duties in that plaintiff was not given adequate time to do the necessary paperwork and responding to the constant emergencies or crisis constantly interfered with the counseling sessions in that students who were in the middle of their counseling sessions had to be taken alone with plaintiff when plaintiff responded to emergency crises in the school. This subject was brought to the attention of Rachel Henderson, former Principal of 811K@286K, that the constant request for plaintiff to respond to emergencies in the school was interfering with plaintiff performance of his duties, Nevertheless, Rachel Henderson stated that complainant had to continued to respond to the emergencies crises in the school.

f4(a) Assigning plaintiff to the transitional coordinator's position is a duty that was assigned to plaintiff in violation of plaintiff's guidance counselor's contract which states that guidance counselors should not be assigned duties that are assigned to teachers. In addition, the contract specifically states that guidance counselors should not be assigned duties such as: cafeteria, busing, hall duties, etc.

f4(b) As for the functional behavior assessment, the defendant assigned plaintiff to this particular assignment when defendant should have known that this is a school wide responsibility. That is, the functional behavior assessment is supposed to be a team approach in which each person who comes into contact with a particular student is suppose to participate in developing a

5

behavioral management program for the student.

f5) It was clear to plaintiff as to what the defendant's intentions were when the defendant assigned plaintiff these extra duties in violation of plaintiff's contract and the Jose P. stipulations. That is, the defendant was planning on setting up plaintiff so that the defendant could bring plaintiff up on disciplinary charges. The defendant did bring plaintiff up on disciplinary charges for duties forbidden by plaintiff's contract and Jose P. stipulations.

f6) In February 2004, plaintiff was verbally abuse by Guidance Counselor Steve Lent who was upset because Rachel Henderson had assigned plaintiff the duties of transitional coordinator, duties that Steve Lent testified during plaintiff's disciplinary hearing that he has been performing for the past twenty (20) years in violation of the Jose P. stipulations and not providing mandated counseling while he was performing other duties such as attending Parent Teacher Association meetings. It is a know fact to the District 75 administrators knew that Steve lent was not performing his duties as related service provider for the last twenty, 20, years because it was the administrators who gave him the above duties according to his sworn testimony.

f7) During the time Steve Lent verbally abused plaintiff, he threaten plaintiff with the fact the he was going to see to it that plaintiff was removed from 811K@286K and that plaintiff was terminated from the New York City Department of Education.

6

f8) In March of 2004, Steve Lent filed a false police report against plaintiff
with the intent to have plaintiff arrested. When plaintiff became aware of
this false plot by Steve Lent, plaintiff filed a complaint against Steve Lent
with the Office of Equal Opportunity of the New York City Department
of Education for racial discrimination and harassment in March of 2004.
Steve Lent was removed from the 811K@286K main site for the rest of
school year 2003/2004. He returned to the main site of 811K@286K in the
fall of school year of 2004/5. He would walk down the halls of the school
and make faces at plaintiff and state that he was going to get plaintiff
fired and out of 811K..

f9) In May of 2004, plaintiff received a surprise visit from Margo Levy,
School Based Coordinator, and Roslyn Hoff, Supervisor of School
Psychologists. Neither Margo Levy nor Roslyn Hoff had the proper New
York City Department of Education license nor New York State
Department of Education certification in guidance or school counseling
to supervise plaintiff. Yet, they proceeded as if they were plaintiff's
supervisors by demanding plaintiff's paperwork, and finally writing a
negative evaluation report threatening plaintiff with disciplinary actions.
Plaintiff perceived the actions on the part of Margo Levy and Roslyn
Hoff as retaliation against plaintiff for filing a complaint against Steve
Lent.

f10) In addition, the defendant has used a letter written by Steve Lent
supposedly during spring 2004 against plaintiff in which plaintiff

7

did not received notice or due process until the disciplinary charges
were filed against plaintiff. The defendant has used other claims by
Steve Lent that plaintiff would not assist him with transitional
coordinator and PTA assignments, duties that violates the guidance
counselor's contract and Jose P. stipulations. In essence, the defendant
has by including the false allegations made by Steve Lent in order to
assist him and them with assigning plaintiff out of 811K@286K and
seeking to terminated plaintiff from the New York City Department of
Education. That is, defendant received notice that Steve Lent was
harassing plaintiff, yet the defendant is supporting the continuing
harassment of plaintiff by including the false statements and false
testimony against plaintiff by Steve Lent with the intent of getting his
assistance in terminating plaintiff.

5)   The defendant, DOE, has discriminated against complainant/plaintiff by retaliating against
plaintiff for filing complaints with defendant's internal Office of Equal Opportunity and for filing
complaints with the Equal Employment Opportunity Commission and the New York State
Human Rights Commission, and for filing a previous complaint with this Court. The defendant
has also retaliated against plaintiff for filling a complaint against supervisors for harassment with
the Office of Special Commissioner for Investigation for New York City School District.

6) The defendants, DOE, DOI and SCI, have a custom and policy of abusing their administrative
powers by selectively investigating employees of DOE who may have commit inappropriate acts
while not investigating others who may have committed similar acts.

7)   The defendant, DOE, has a custom and policy of violating New York State Education Law

8

section 2569(a) by allowing personnel to work in positions as educators without having the

proper qualifications/certifications to supervise plaintiff.

8)    The defendant, DOE, has a custom and policy of violating New York State Education Law

section 2573 by allowing unqualified individuals to supervise plaintiff/others with out having

proper NYS certifications.

9)    The defendant, DOE, has a custom and policy of allowing uncertified persons to write

negative evaluation report concerning plaintiff's job performance outside of their professional

boundaries, duties and responsibilities.

10)  The defendant, DOE, has a custom and policy of using uncertified persons to write negative

reports and use the negative report in a disciplinary hearing against plaintiff in violations of

New York State Education Laws sections 2569 and 2573.

11)  The defendant, DOE, has a custom and policy of allowing uncertified person person to

testify in an administrative hearing as plaintiff's supervisor with complete knowledge that such

person is uncertified.

12)   The defendant, DOE, has custom and policy of allowing uncertified individuals to

supervisor plaintiff, i.e., Margo Levy and Roslyn Hoff.

13.  The defendant, DOE, SCI, DOI, have a custom and policy of selectively choosing with

employee to investigate and not to investigate.

14.  The defendant, DOE, has a discriminatory custom and policy of checking for plaintiff's:

> a. signature on the sign-in/sign-out sheets in classroom,
> b. checking students attendance sheets and logs,
> c. while not checking similar situated related service providers
>    signatures on sign-in/sign-out, students attendance sheets and
>    related service logs;
> d. with the sole intent of pursuing disciplinary charges against

9

plaintiff.

15. The defendants, DOE and SCI have a custom and policy of filing charges or substantiating allegations based on incomplete investigations.

16. Plaintiff during his entire work history has received satisfactory rating for his job performance. When plaintiff was reassigned, he was supposed to receive rating of not applicable (N/A) until the charges were resolved. However, on July 19, 2005, Francine Dreyfus changed plaintiff's rating from not applicable, N/A, to an unsatisfactory rating in violation of plaintiff's guidance counselors' contract.

-B-

Title VII of the Civil Rights Acts of 1964 as amended, New York State

Division of Human rights Laws, and New York State Executive Law section 296-

1) The defendant, DOE, has disparately treated plaintiff different than similar situated related service employees by:

> a. utilizing uncertified , unlicensed and unqualified personnel and/or,
> b. incompetence individuals to supervise plaintiff,
> c. to only check plaintiff work with out cause;
> d. to write negative report.

2) The defendant, DOE, has singled out plaintiff for disciplinary actions when defendant knew that other related service providers were not performing theirs duties with the knowledge and instructions from the defendant.

3. The defendant knew that other related service providers, such as speech and counseling providers , were not performing their duties because defendant did not provide other related service providers with appropriate space for delivery of services.

10

3(a) Defendant's agent/supervisor, Francine Dreyfus, Local Instructional Superintendent (LIS), has lied under oath during plaintiff disciplinary hearing that she checked other related service providers paper work.

3(b) Defendant's agent/supervisor, Francine Dreyfus, LIS, has lied under oath that an assistant principal, Rosina DeMarco, checked other related service providers paper work.

3(c) Defendant's agent/supervisor, Rosina DeMarco, has testified under oath during plaintiff's disciplinary hearing that she did not check other related service providers' paper work, etc.

3(d) Defendant's agent/supervisor, Rosina DeMarco, has testified under oath during plaintiff's disciplinary hearing that she was only instructed by Francine Dreyfus, LIS, and the district to check complainant's paper work.

3(e) Defendant's agent/supervisor, Rosina DeMarco, has testified under oath that it was the district that told the administrative staff at 811K@286K to tell certain related service providers to go into the classrooms to provide related services in violation of federal laws, state laws and the Jose P. stipulations agreed to in this Court.

3(f) Defendant and defendant's agents/supervisors, Francine Dreyfus, LIS, and Rosina DeMarco, and legal department lied to New York State Division of Human Rights when in defendant's response to complainant's complaint to that state agency defendant stated that an assistant principal reviewed the other related service providers work periodically.

4. The defendant, DOE, has checked for plaintiff's signatures on sign-in/sign-out sheets in classrooms, but defendant did not check for signatures of other related service provider signatures in order to make sure other providers were in fact providing services according to students' Individual Education Plan (IEP) mandates. If defendant would have check classroom sign-in/sign-out sheets, defendants should have known that on approximately 120 times during

11

school year 2004-2005 students were not taken out of their classes for related services in violation of their IEPs'. In fact, defendant should have known that since there were approximately twelve (12) students in the classes in which these 120 violations occurred that there were approximately 1,400 times those students IEPs' were violated since some of the students were not mandated for services or their mandates were for groups of a specified size, such as groups in sizes of 3, 4, 5, 6, 7; 8 or for individual services. Plus some were mandated for services for more than one session per week when in fact either they did not receive services at all or not as mandated on their IEPS'.

4(a) Defendant's agent/supervisor, Rosina DeMarco, admitted under oath that she was only instructed to check for complainant signatures on the sign-in/sign-out sheets in classrooms, plaintiff's students' attendance sheets and plaintiff's counseling logs every Monday during school year 2004-2005 up until plaintiff was reassigned to the district office in April of 2005, and defendant did not check similar situated related service providers' sign-in/sign-out sheets, students' attendance sheets and logs every Monday during school year 2004-2005.

4(b) Defendant's agent/supervisor, Francine Dreyfus, LIS, during school year 2004/2005, assigned formal assistant principal of 811K, Rosina DeMarco, plaintiff's duties and responsibilities of constructing and planning his counseling schedules, of checking students' Individual Education Plans for correct biographical information and counseling mandates, etc.; submitting plaintiff's counseling schedules to the appropriate district personnel each month and denying plaintiff to independently make changes in his counseling schedules with out the express approval of the administration while allowing other related service providers to continue performing duties defendant had taken away from plaintiff.

4(c) Defendant's actions and practice of changing plaintiff work assignments and assigning the

majority of plaintiff's professional duties and responsibilities of a related service provider to an assistant principal amounted to a demotion; caused loss of professional prestige, caused professional humiliation, and caused the perception of plaintiff's peers, etc., that plaintiff was incompetent or unable to perform his duties, yet plaintiff had received satisfactory ratings for his job performance every school year prior to school year 2004/2005.  .

5.    The defendant, DOE, has checked for plaintiff's signatures on sign-in/sign-out sheets, plaintiff's students' attendance sheets, plaintiff's logs every Monday during school year 2004-2005, but defendant did not check similar situated related service providers sign-in/sign-out sheets, students' attendance sheets and logs every Monday during school year 2004-2005.

5(a) Defendant's agents/supervisors' abusive and hostile acts of abuse of power toward plaintiff by continously examining plaintiff's performance of his duties for the purpose of developing ficticious reasons to bring plaintiff up on disciplinary charges while knowing that the other related providers were not performing their duties caused plaintiff psychological and emotional trauma.

5(b) Defendant suspended plaintiff pursuant to false disciplinary charges.

6. Defendant transferred/re-assigned complainant to an assignment that caused complainant materially significant disadvantage.

7. Defendant transferred/assigned complainant to duties materially less prestigious and materially less suited to complainant's skills and expertise.

8. Defendant assigned complainant to duties such as shredding  papers, stamping mailing envelopes, taking garbages out; packaging envelopes, writing envelopes, stacking boxes, writing form letters. Duties that are typically assigned to clerical or mail room staff, and other types of meaningless assignments that significantly diminished plaintiff material responsibilities.

9. Defendant re-assigned complainant involuntarily and the transfer from 811K for an investigation or disciplinary actions constitutes a negative employment action tantamount to a demotion and punishment.

9(a) Defendant's stated reason for transferring plaintiff from 811K for an investigation was false.

10. Defendant's agents/supervisors have written plaintiff letters threatening plaintiff with unwarranted disciplinary actions:

> 1. Rachel Henderson wrote plaintiff a letter(s) threatening plaintiff with disciplinary action,
>
> 2. Doris CoPenny wrote plaintiff a letter threatening plaintiff with disciplinary action for informing administration that a staff member was falsifying documents,
>
> 3. Rosina DeMarco has written plaintiff a letter threatening plaintiff with disciplinary action,
>
> 4. Susan Erber, former Superintendent of District 75, has written plaintiff a letter threatening plaintiff with disciplinary action;
>
> 5. Bonnie Brown, current Superintendent of district 75, has written plaintiff letter(s) threatening plaintiff with disciplinary action;
>
> 5(a) Bonnie Brown wrote email to Rachel Henderson requesting that Rachel Henderson make sure that Mary Flynn, 811K's payroll secretary, deduct days from plaintiff's sick bank so that they could bring plaintiff up on disciplinary charges,
>
> 5(b) Defendant did not bring other similar situated employees up on disciplinary charges for non-performance of their duties.
>
> 6. Francine Dreyfus, LIS, has written plaintiff three or more letters threatening plaintiff with disciplinary action.
>
> 7. Defendant did take disciplinary actions against plaintiff by filing 3020a disciplinary charges with the ultimate aim of seeking to terminate plaintiff.

14

8. Alexis Tandit, former assistant principal of 811K@286K, lied under oath when she testified during plaintiff's hearing that there were no staff sign-in sheets at 811K@329K in which each staff members signed each morning when they arrived to work.

11. Defendant suspended plaintiff from his regularly assigned duties.

12. Defendant suspension of plaintiff denied plaintiff the opportunity of working percession assignments and getting paid for those assignments for school years 2004/5 and 2005/6.

13. Defendant suspension of plaintiff denied plaintiff the opportunity to work for the summer and to receive pay for summer assignments for 2004/5 and 2005/6.

14. Defendant allowed other similar situated employees to work percession during school year 2004/5 and 2005/6 even though defendant knew that similar situated employees were not performing their duties due to the instructions of the defendant.

15. Defendant allowed other similar situated employees to work for the summers of 2004/5 and 2005/6 when defendant knew that these employees were not performing their duties at the instructions of the defendant.

16. Defendant actions of bringing plaintiff up on false disciplinary charges, suspending plaintiff from his regular assignment, assigning plaintiff to material less significant duties, singling plaintiff out to deliberately bring plaintiff up on disciplinary charges and causing plaintiff to lose his rights to extra assignments amounts to an adverse employment actions.

17. All the allegations alleged in this complaint are included in this part of the plaintiff complaint.

-C-

Title VII of Civil Rights Act of !964 as amended: Retaliation

1.The defendant, DOE, has retaliated against plaintiff for filing complaints with defendant's

15

internal Office of Equal Opportunity for race discrimination, harassment, retaliation and
by the defendant creating a retaliatory hostile work environment.

2. The defendant, DOE, has retaliated against plaintiff for filing a complaint with defendant's
internal Office of Equal Opportunity for an employee harassing plaintiff by filing a false police
report against plaintiff and  by assigning plaintiff this employee's duties.

3. The defendant, DOE, has retaliated against plaintiff for filing a complaint with defendant's
internal Office of Equal Opportunity for an employee harassing plaintiff by including in
defendant's administrative charges against plaintiff libelous and slanderous  statements attributed
to this employee, Steve Lent, against plaintiff with out giving plaintiff due process or proper
notice of such complaint made by this particular DOE employee.
4.The defendant, DOE, has retaliated against plaintiff for filing a harassment complaint against
an employee, Steve Lent,  by allowing this employee to retaliate against plaintiff by testifying at
plaintiff administrative hearing.
5. The defendant, DOE, has retaliated against plaintiff for filing complaints with the New York
State Division of Human Rights in June 2004, and August 2005.
6. The defendant, DOE, has retaliated against plaintiff for filing complaint with the Equal
Employment Opportunity Commission  in June 2004 and August 2005 by conspiring  to harass
plaintiff, discriminating against plaintiff because of his race, creating a retaliatory hostile work
environment with the sole intent  to create charges with the intent to terminate plaintiff and to
deprive plaintiff of his property/tenured rights to employment.
7.The defendant has retaliated against plaintiff for previously filing a complaint with this
Federal District Court of the Eastern District of New York that ended in 2004 by conspiring to
harass plaintiff, discriminating against plaintiff because of his race, creating a hostile work

16

environment with the sole intent to create charges with the intent to terminate plaintiff and to deprive plaintiff of his employment rights at the DOE.

8. Plaintiff received a satisfactory rating for his job performance for school year 2003-4.

9. Since plaintiff was reassigned during early April of school year 2004-2005, plaintiff was suppose to receive "Not Applicable" for school year year 2004-2005. Plaintiff did receive a N rating at the end of school year 2004-2005, but the job performance rating was changed by Francine Dreyfus, Local Instructional Superintendent during July 2005 to a "U" rating in violation of the Guidance Counselors' contract.

10. Defendant has created a retaliatory hostile work environment by singling plaintiff out for disciplinary actions.

11. Defendant has created a retaliatory hostile work environment by threatening witnesses with disciplinary actions if they did not testify against plaintiff

12. Defendant has created a retaliatory hostile work environment by threatening a witness to to testify in a disciplinary proceeding against plaintiff when the witness did not want to testify.

13. Defendant has created a retaliatory hostile work environment by committing acts of perjury under oath during the disciplinary proceedings against plaintiff:

> a) Francine Dreyfus has committed deliberate acts of perjury during her
> testimony under oath,
>
> b) Margo Levy has committed deliberate acts of perjury during her
> testimony under oath,
>
> c) Neil Laskowitz has committed deliberate acts perjury during his
> testimony under oath;
>
> d) Michael Bisogna has committed acts of perjury during his  testimony

17

under oath,

e) Bonnie Brown has committed deliberate acts of perjury during her

testimony under oath,

f) Steve Lent has committed deliberate acts of perjury during his testimony;

g) Rosina DeMarco has committed deliberate acts perjury under oath;

h) Penny Lablang has committed deliberate acts of perjury under oath,

i) Yvonne Joseph has committed deliberate acts of perjury under oath,

j) Sylvia Serra has committed deliberate acts of perjury under oath,

k) Alexis Tandit has committed deliberate acts of perjury under oath.

14. Defendant has created a retaliatory hostile work environment by bringing false charges

against plaintiff with the sole intent and purpose to terminate plaintiff from the DOE.

15. Defendant has created a retaliatory hostile work environment against plaintiff for filing a

complaint with the DOE's internal civil rights office against Steve Lent for harassment for filing

a false police report against plaintiff, and racial discrimination.

16. Defendant has created a retaliatory hostile work environment by assigning plaintiff duties

outside of plaintiff's contract with the intent to filed charges against plaintiff for not performing.

these duties. Defendant did filed charges.

17. Defendant has created a retaliatory hostile work environment by bringing plaintiff up on

disciplinary charges for duties that are outside the boundaries of plaintiff's contract.

18. Defendant has created a retaliatory hostile work environment by writing evaluative reports

stating as a fact that plaintiff did not perform duties that are outside plaintiff's Guidance

Counselor's contract.

18. Defendant has created a retaliatory hostile work environment by bringing plaintiff up on

charges for not performing duties that violated the Jose P. stipulations agreed to in this Court.

That is, defendant is accusing plaintiff of not performing duties such as PTA responsibilities

when performing these duties would interfere with providing services to students as required by

Jose P.

19. Defendant has created a retaliatory hostile work environment.

20. Defendant knew that complainant had filed:

> a. complaint in the United States District Court of Eastern District
> in 1999,
>
> b. knew that the case in the District Court ended on March 27, 2004,
>
> c. knew that complainant had filed a complaint against Steve Lent,
> Guidance Counselor at 811K@286k 2525 Haring Street, Brooklyn, New
> York with the Office of Equal Opportunity of the New York City
> department of Education in March of 2004 for racial discrimination and
> harassment, etc.;
>
> d. Defendant knew that plaintiff that plaintiff filed complaints with the New
> York Division of Human Rights and the Equal Employment Opportunity
> Commission in July 2004 and August 2005,
>
> e. Defendant knew that plaintiff had filed a complaints for abuse of powers
> and harassment against Susan Erber and Bonnie Brown with the Mayor
> of the City of New York and the Office of the Special Commissioner for
> Investigation for New York City School District, and the defendant did not
> address or take any actions to resolve the complaint.

21. Defendant has committed several adverse employment employment actions against

complainant for participating in protected activities, and the adverse employment actions

the defendant has committed against complainant are:

> a. Disciplinary actions against complainant
>
> b. Suspending and reassigning plaintiff
>
> c. Retaliatory hostile and abusive work environment
>
> d. Punish plaintiff for filing complaint with agencies mentioned
> in this complaint.

19

e. Assigning plaintiff duties that were materially less significant,

f. Willfully and intentionally conspiring to terminate and to bring plaintiff up on disciplinary charges,

g. Filing false disciplinary charges against plaintiff;

h. Willfully and intentionally putting forth false witnesses to testify with false testimony with out seeking to exonerate plaintiff from the false disciplinary charges,

i. Threatening witnesses to testify against plaintiff.

22. Defendant's adverse employment actions are directly and indirectly connected with

complainant protected activities:

a. R. Henderson and M. Levy started writing letters to complainant threatening complainant with disciplinary action in spring of 2004.

b. Susan Erber and Bonnie Brown wrote a letter in spring 2003 threatening plaintiff with disciplinary action, and they did bring plaintiff up on disciplinary charges for the erroneous issues cited in the 2003 letter.

c. Bonnie Brown wrote email to Rachel Henderson stating in the email dated April 1, 2003 that they wanted to bring plaintiff up on disciplinary charges; they did bring plaintiff up on disciplinary charges in relation to the email in June 2005. The conspiracy to terminate and bring plaintiff up on disciplinary charges began right after plaintiff's Federal District Court case ended in March 2003 and during plaintiff's Federal District Court case.

d. (1) Plaintiff filed a complaint against Steve Lent for racial discrimination, harassment and filing a false police report against plaintiff with the Office of Equal Opportunity of the New York City Department of Education. Margo Levy wrote letter to plaintiff threatening plaintiff with disciplinary action in May 2004. In addition, defendant assigned plaintiff all of Steve Lent's duties and responsibilities once he was removed from the main site at 286K as a form of punishment for filing complaint against Steve Lent.

(2) Defendant used letter written by Steve Lent against plaintiff during disciplinary hearing with out giving plaintiff notice of such letter when when it was supposedly written by Steve Lent.

(3) Defendant brought disciplinary charges against plaintiff based on the false allegations of Steve Lent in retaliation for plaintiff filing

complaint against Steve Lent with the Office of Equal Opportunity of the New York City Department of Education.

(d-2) 1. Francine Dreyfus wrote three letter dated September 29, 2004, November 18, 2004, and May 19, 2005 threatening plaintiff with disciplinary action. Each letter is filled with false allegations. Francine Dreyfus actions started after plaintiff had filed complaints against Steve Lent with the office of Equal Opportunity of the New York City Department of Education and filed complaints against Margo Levy and Rachel with the New York State Division of Human Rights.

2. In addition, Francine Dreyfus held numerous meetings with plaintiff during school year 2004/2005 in an attempt to devise reasons to bring plaintiff up on disciplinary charges.

(e) Defendant filed disciplinary charges against plaintiff after plaintiff filed complaint with defendant's office of equal opportunity against Bonnie Brown and Francine Dreyfus for racial discrimination, harassment; retaliation and reassigning plaintiff in April 2005 to the district pursuant to an investigation, when in fact, there was no investigation.

23. All other allegations alleged in this entire complaint are included in this part of the

complaint.

-D-

Title VII of the Civil Rights Act of 1964 as amended:
"Hostile Work Environment"

1. Defendant, DOE, has created an hostile work environment that has caused plaintiff:
    a. mental anguish
    b. mental fatigue
    c. emotional pain
    d. emotional suffering
    e. professional humiliation
    f. loss of sleep
    g. constant worrying

2. Defendant has deliberately by its concerted actions to cause plaintiff's work environment to be

hostile and abusive by taking actions to ensure that plaintiff will be brought up on false

21

disciplinary chagres.

3. Defendant's actions are continuing violations and plaintiff is raising the continuing violation theory because defendant's actions against plaintiff have occurred over an extended period of time since plaintiff began working for the defendant.

4. Defendant has continuously violated plaintiff during school year 2004-2005 by creating an hostile work environment by deliberately singling plaintiff out with false allegations of plaintiff not performing his duties while defendant knew that other similar situated employees were not performing their duties.

4-a. Defendant has a continuing discriminatory policy of discriminating against plaintiff because of his race, of creating a hostile work environment and of creating a retaliatory hostile work environment.

5. Defendant has harass plaintiff for filing complaint complaint against defendant with outside agencies, Special Commissioner of Investigation for the New York City School District.

6. Defendants, DOE and SCI, have used its investigatory powers as a form of harassment against plaintiff.

7. Defendants, DOE and SCI, has used incomplete investigatory information as a form of harassment and to bring plaintiff up on disciplinary charges.

8. Defendant, DOE, has harassed plaintiff by reassigning plaintiff in April 2005 from 811K to 400 First Avenue, New York, New York because of an investigation when there was no investigation.

8a. Defendant lied to the New York State Division of Human Rights when defendant stated that plaintiff was reassigned because of the defendant's own Office of Special Investigation had investigated plaintiff in April 2005.

8b. Defendant lied when defendant stated in its response to New York State Division of Human

22

Rights when defendant stated that that an assistant principal had periodically reviewed the other related service providers work.

9. Defendant has reassigned plaintiff twice since plaintiff was reassigned to 400 First Avenue, New York, New York, i.e. to:
> a. Regional Operation Center in Flushing, NY
> b. 25 Chapel Street, Brooklyn, New York

10. Defendant's, DOE, representative deceived SC I's investigator into thinking that plaintiff had only twelve students on plaintiff counseling caseload during school year 2003-2004 thereby ensuring that SCI would substantiate its investigation against plaintiff.

11. Defendant, DOE, deliberately went back to a previous school year, 2003-2004 in which plaintiff received a satisfactory rating for his job performance to search plaintiff's records in order to find reasons to bring plaintiff up on disciplinary charges.

11(a) Defendant's agent/supervisor Francine Dreyfus lied when she stated that the mother of two students at 811K@286K made a complaint to her in September 2004 in reference to plaintiff not providing services to her children: That is, mother testified that she did not call Francine Dreyfus or in fact, she had never called Francine Dreyfus, and she did not know Francine Dreyfus.

11(b) Defendant SCI lied in it's letter to DOE's Chancellor when they wrote in the letter dated February 18, 2005 that: a) mother of two children told Francine Dreyfus that her two children were not being taken out of class for counseling, b) both teachers told investigators that plaintiff did not see these two students for counseling during school year 2003/2004; c) mother told the investigators when they went to interview the mother at her home that her two children told her that plaintiff did not take them out of class for counseling, and d) mother denied under oath that that she had every spoken to Francine Dreyfus, or, e) that she told the investigators that her two children told her that they were not taken out of class for counseling.

23

12. Defendant, DOE, deliberately encouraged a parent to lie that plaintiff did not served her children for counseling when no teacher or administration made a complaint about plaintiff not performing his duties during 2003-2004 school year.

12(a)  Defendant offered mother of two students renumeration/money to make false claim/complaint against plaintiff.

12(b)  The mother of the two students lied under oath when she testified at plaintiff's hearing that Rosina DeMarco did not call her on her cell phone during and after school year 2003/2004.

12(c)  Mother testified that she received numerous telephone calls from staff members from the District 75 main office in reference to her false complaint against plaintiff. Plaintiff is alleging that these telephone calls were for the sole purpose of encouraging this parent to file a false complaint against plaintiff at the beginning of school year 2004/2005.

13. Defendant deliberately portrayed plaintiff as a hostile black man in it's disciplinary charged against plaintiff, i.e., overtly and subtly.

14. Defendant deliberately portrayed  plaintiff as a black man with an attitude in it's disciplinary charges against plaintiff, i.e., overtly and subtly.

15. Defendant threaten to bring plaintiff/complainant up on disciplinary charges on May 9, 2003.

16. Defendant brought disciplinary charges against plaintiff/complainant on June 6, 2005 for the threat to bring plaintiff/complainant up on disciplinary charges on May 9, 2003.

17. Defendant threaten to bring plaintiff/complainant up on disciplinary charges in the June 7, 2004 letter by Margo Levy.

18. Defendant brought plaintiff/complainant up on disciplinary charges pursuant to the letter by Margo Levy threatening to bring plaintiff up on disciplinary charges.

19. Defendant threaten to bring plaintiff/complainant up on disciplinary charges on the letter written to plaintiff/complainant by Fran Dreyfus, Local Instructional Superintendent(LIS), dated

24

October 18, 2004.

20. Defendant brought plaintiff/complainant up on disciplinary charges pursuant to the letter written by Fran Dreyfus on October 18, 2004 threatening plaintiff/complainant with disciplinary charges.

21. Defendant threaten to bring plaintiff/complaint up on disciplinary charges in the letter written by Fran Dreyfus, LIS, on November 28, 2004.

22. Defendant brought plaintiff/complainant up on disciplinary charges pursuant to the letter written by Fran Dreyfus, LIS, on November 28, 2004.

23. Defendant threaten to bring plaintiff/complainant up on disciplinary charges in the letter written to plaintiff/complaint by Fran Dreyfus, LIS, on May 19, 2005.

24. Defendant brought plaintiff/complainant up on disciplinary charges pursuant to the letter written to plaintiff/complainant by Fran Dreyfus, LIS, on May 19, 2005.

25. Rachel Henderson, Principal of 811K@286K, wrote two letters threatening plaintiff/complainant charges.

26. Defendant brought plaintiff/complaint up on disciplinary charges pursuant to the letter written to plaintiff/complainant by Rachel Henderson.

27. Doris CoPenny, Assistant Principal wrote plaintiff/complaint one letter threatening plaintiff/complainant with disciplinary actions.

28. Defendant brought plaintiff/complainant up on disciplinary charges pursuant to the letter written by Doris CoPenny when the letter demonstrates that defendant has committed theft of service and medicaid fraud by allowing an educational paraprofessional mark attendance in other related service providers and support services attendance booklets .

28(a) The letters written by DOE agents/supervisors are all examples of the defendant

25

deliberately and intentionally creating a hostile work environment for plaintiff/complainant.

29. Defendant deliberately and intentionally assigned plaintiff/complainant cafeteria duties in violation of plaintiff/complainant's Guidance Counselor's contract.

30. Defendant deliberately and intentionally assigned plaintiff/complainant duties. i.e., Transitional Coordinator, that interfered with plaintiff/complaint performance of his duties as a related service provider.

31. Defendant assigned plaintiff/complainant duties of Transitional Coordinator that according to plaintiff/complaint's contract should have been assigned to a teacher for the purpose of bringing plaintiff up on disciplinary charges.

32. Defendant has brought plaintiff/complaint up on disciplinary charges for duties defendant should not have assigned to plaintiff/complainant, i.e., Transitional Coordinator, Functional Behavior Assessment and Parent Teachers Association (PTA).

33. Defendant has a discriminatory policy of checking plaintiff work but not the work of similar situated employees.

34. Plaintiff is alleging that defendant has a discriminatory policy and practices by continously checking plaintiff performance of his duties every week during school year 2004-2005 up until defendant transferred plaintiff while not checking the other related service providers performance of their duties.

35. Defendant suspended plaintiff for claims that plaintiff alleges that were deliberated created and devised to make plaintiff quit his employment at the New York City Department of Education.

35(a) Defendant deliberately sent Francine Dreyfus, LIS, in October 2003 to begin to set up charges so that disciplinary action could be taken against plaintiff.

35(b). Defendant's Local Instructional Superintendent, Francine Dreyfus, wrote three letters

26

saturated with deliberate misrepresentations threatening plaintiff with disciplinary actions.

35(c) Defendant's Local Instructional Superintendent, Francine Dreyfus, did bring charges against plaintiff with the ultimate goal of seeking plaintiff's termination.

35(d) Defendant's Local Instructional Superintendent, Francine Dreyfus, did give false testimony when she testified against plaintiff at plaintiff's disciplinary hearing.

36. Defendant denied plaintiff the opportunity to work percession.

37. Defendant denied plaintiff the opportunity to work in the summer of 2004/5 and 2005/6.

38. Defendant has threaten to bring plaintiff up on disciplinary charges.

39. Defendant brought plaintiff up on disciplinary charges.

40. Defendant has created a quid pro quo hostile work environment.

41. Defendant has created a work environment that is severe, pervasive and humiliating in defendant's attempt to develop false reasons to charge and terminate plaintiff.

42. Defendant has a discriminatory policy of singling plaintiff out for disciplinary actions.

43. Plaintiff is alleging that the frequency of the defendant checking plaintiff's students' attendance books, of checking plaintiff's counseling logs, and of checking to see if only plaintiff was signing the classrooms' sign-in/sign-out sheets during school year 2004/2005 created an hostile and abusive work environment and interfered with plaintiff performing his duties.

44. Plaintiff is also alleging that the frequency of defendant collecting plaintiff's students' attendance books and keeping the attendance books at times up to ten (10) days and accusing plaintiff of not keeping students' attendance for such periods of time in which defendant had possession of the attendance books interfered with plaintiff performing his duties.

45. Plaintiff is alleging that the frequency or number of meeting Francine Dreyfus, LIS, required plaintiff to attend to discussed plaintiff's students' attendance books, counseling logs and

27

plaintiff's signature classrooms sign-in/sign-out sheets/logs was abusive, hostile and professionally humiliating for the fact that Francine Dreyfus continously and wrongly accused plaintiff at these meeting of not performing his duties.

46. Plaintiff is alleging that the frequency or number of lies and deliberate misrepresentations included in the three letters written to plaintiff by Francine Dreyfus, LIS, on September 29, 2004, November 18, 2004 and May 19, 2005 was written to cause plaintiff to lose his job.

47. Defendant has allowed Francine Dreyfus, Local Instructional Superintendent, to personally supervise plaintiff in violation of the supervisory chain of command, have numerous meetings with plaintiff as the only relative service provider in attendance, write false accusations and misrepresentations, write negative evaluation reports without having supervising experience in supervising related service providers with the deliberate intent in which plaintiff believed was to cause plaintiff work environment to become pervasive, severe, abusive and hostile.

48. Defendant actions and practices of deliberately singling plaintiff out for disciplinary action with the ultimate goal of seeking to terminate plaintiff caused plaintiff to believe and perceive that defendant has/had deliberately caused plaintiff's work environment to become pervasive, severe, abusive and hostile.

49. Defendant has allowed and encouraged witnesses to lie and to testify falsely at plaintiff's 3020(a) disciplinary hearing that began on March 30, 2006 with the continously intent in plaintiff belief and perception to cause plaintiff's work environment to continue to be pervasive, severe, abusive and hostile by the fact that the defendant is/was seeking to terminate plaintiff on frivolous and false disciplinary charges.

50. Defendant began creating an abusive and hostile work environment for plaintiff all while proceedings were continuing or almost immediately after a judgment was entered in this Court

before or in March of 2004.

51. Plaintiff has filed complaints with the Mayor of the City of New York in May of 2003, with the Special Commissioner of Investigation for the New York City School District in June 2003, and other complaints for harassment, etc., against defendant's supervisors without defendant doing anything to stop the harassment.

52. Defendant has re-assigned plaintiff for approximately ten (10) times in plaintiff career with the defendant while some related service providers/counselors have spent their entire working career at one school. Plaintiff perceive and believe the numerous reassignments are/were a form of harassment, and, whereby, the defendant has intentionally created a continuing abusive and hostile work environment. As stated before, plaintiff is alleging the "Continuing Violation Theory".

53. Defendant's agent/supervisor, Francine Dreyfus, LIS, has deliberately lied to SCI when she informed the SCI investigator that the mother of the two children had called her to complain about plaintiff not serving her children, when in fact, the mother testified under oath that she did not call Francine Dreyfus to complain about plaintiff serving her children.

54. The mother who testified under oath during plaintiff's disciplinary hearing lied when she stated that plaintiff told her that he was not serving her children.

55. The mother testified under oath that not one staff member at 811K@286K told her that plaintiff was not serving her children, yet the defendant proceeded with a complaint and disciplinary proceedings against plaintiff based on the encouraged lies of the mother of the two students.

56. The fact that plaintiff has been put through this abusive and hostile experience has made plaintiff life completely miserable.

57. Defendant's agent/supervisor, Francine Dreyfus, LIS, lied under oath when she testified

29

that the mother of the two children called her to complain about plaintiff not servicing her children.

58. Defendant's supervisors threaten to inflict tangible employment/job injury on plaintiff, i.e., quid pro quo harassment/hostile work environment.

59. Defendant's agent/supervisor, Francine Dreyfus, LIS, filed a complaint with the Office of the Special Commissioner of Investigation, SCI, that was loaded with lies, fabrications and misrepresentations.

60. Defendant's agent/supervisor, Francine Dreyfus, LIS, fabricated a connection with the parent of the two students mentioned in the SCI's report in order to harass plaintiff and to set plaintiff up so that the defendant could bring plaintiff up on disciplinary charges, reassigned plaintiff and suspend plaintiff.

61. Defendant's agent/supervisor, Francine Dreyfus, LIS, did not give plaintiff due process on all issues mentioned in the SCI's report.

62. Defendant's agents/supervisors conspired with the Office of Special School Investigation for New York City School District to ensure that plaintiff would be reassigned, suspended and brought up on ficticious/frivolous disciplinary charges.

63. Defendant's agents/supervisors, Susan Erber, Bonnie Brown, and Francine Dreyfus, etc., conspired to harass plaintiff by reassigning plaintiff, suspending plaintiff and devising false reasons to bring plaintiff up on disciplinary charges.

64. Defendant's agents/supervisors, Susan Erber, Bonnie Brown, Francine Dreyfus, etc., conspired to harass plaintiff with the New York City Department of Education's Medical Bureau to deny plaintiff a decision as to whether to grant plaintiff a continuation of line of duty status in order to bring plaintiff up on charges for unauthorized absence.

30

65. Defendant's Medical Bureau conspired to harass plaintiff by issuing medical decisions before reviewing medical documents, MRI reports, or X-Rays.

66. Defendant's agent, Yvonne Joseph, Medical Bureau Administrative Director, testified during plaintiff's hearing on issues related to plaintiff's injuries in the line of duty in February of 1999. In essence, the defendant has open the door to that period of time.

67. Defendant reassigned plaintiff from the district office and the regional operation center as a form of harassment.

68. Defendant reassigned plaintiff to 25 Chapel Street, Brooklyn, New York as a form of harassment.

### (E)

### Title 42 U.S.C. section 1981

1. Complainant/plaintiff is a member of a protected class, that is, plaintiff is an African American.

2. The defendant intentionally discriminated against plaintiff because of his race by conspiring to create disciplinary charges in order to harass and terminate plaintiff's employment rights.

3. The discrimination concerns the following activities that are enumerated in section 1981:

a. breach of the terms an conditions of the contract, such as,

1. assigning duties outside of contract
   (a) cafeteria duties
   (b) transitional coordinator
   (c) functional behavior analyze
   (d) busing, etc,

2. conspiring to bring plaintiff up on disciplinary charges with the intent to terminate plaintiff's employment contract;

3. violating the clause in plaintiff's contract that

31

prohibits discrimination of employees by intentionally discriminating against plaintiff because of his race,

4. conspiring to deprive plaintiff of all the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship by concocting/creating reasons to bring plaintiff up on disciplinary charges with the sole intent to terminated plaintiff,

5. to take plaintiff's property, that is, defendant has conspired to take plaintiff's tenured rights of employment by creating actions to bring plaintiff up on disciplinary charges with the intent to terminate plaintiff;

6. defendant has deliberately single plaintiff out for disciplinary actions and charges with the intent to terminate plaintiff,

7. defendant knew other related service providers were not performing their duties because defendant had instructed them not to do their duties in violation of federal and states laws and the Jose P. Stipulation,

8. defendant agents/supervisors have lied and committed perjury under oath in their attempt to terminate plaintiff;

9. defendant legal department has threaten witnesses with termination if they did not testify against plaintiff,

10. defendant's agent/supervisor, Francine Dreyfus, LIS, has written letters to witnesses threatening them with disciplinary action if they did not testify against plaintiff. One of the witnesses has testified that she felt threaten by the conversation she had with the DOE's Legal department and the letter she received from Francine Dreyfus threatening her with disciplinary action,

4. Defendant has deprived or attempted to deprive plaintiff of equal benefits of New York State

Education Law section section 3020(a) by:

32

                          a. bringing false disciplinary charges against
                             plaintiff,

b. deliberately planning to bring plaintiff up on
   disciplinary charges,

c. supporting perjured testimony during proceedings
   against plaintiff;

d. coercing or forcing witnesses to testify against
   plaintiff,

e. the right that no deliberate false disciplinary
   charges or actions be brought against plaintiff;

f. allowing an uncertified and unlicensed person
   to claim to supervise and write negative evaluation
   reports about plaintiff,

g. allowing an uncertified and unlicensed person,
   Margo Levy, to testify in a disciplinary hearing as if
   she was plaintiff's supervisor, with the attempt to
   deprive plaintiff of plaintiff's tenured rights to
   employment

h.

5. Defendant has deprived or attempted to deprive plaintiff of equal benefits of New York State

Education Law section 2569(a) by:

                          a. by allowing an uncertified person to claim
                           to supervise plaintiff without the proper
                           New York State Department of Education
                           certification,

b. by allowing uncertified person(s) to write
   negative evaluations of plaintiff threatening
   plaintiff with disciplinary action and to used
   the written negative evaluation by the uncertified
   person in a disciplinary preceeding,

c. by allowing uncertified person testify in a
   disciplinary preceeding  against plaintiff
   as plaintiff's supervisor without proper
   state certification;

d. by allowing uncertified person(s) attend meetings
   as plaintiff's supervisor(s),

e. by allowing Margo Levy and Roslyn Hoff claim
   to supervise plaintiff without proper state

certification.

6. Defendant has deprived or attempted to deprive plaintiff of equal benefits of New York State

Education Law section 2573 by:

> a. by allowing Margo Levy to work in the school
> district of New York City without the appropriate
> New York State Education Department's
> certification as a Supervisor of Guidance
> Counselors,
>
> b. by allowing Roslyn Hoff to work in the school
> district of New York City without the appropriate
> New York State Education Department's
> certification as a Supervisor of Guidance
> Counselors;
>
> c. by allowing Margo Levy and Roslyn Hoff
> to supervise and write a negative evaluation
> report against plaintiff without the appropriate
> New York State Education Department's
> certification for Supervisor of Guidance
> or School Counselors.

7. Defendant has deprived or attempted to deprive plaintiff equal benefits of New York City

Department of Education Chancellor's Regulation C-230 by:

> a. by allowing Margo Levy and Roslyn Hoff
> to supervise plaintiff without the appropriate
> New York City Department of Education
> license to supervise guidance counselors.
>
> b. by allowing Margo Levy to testify at plaintiff
> disciplinary hearing as plaintiff's supervisor
> of guidance counselors when in fact she does
> not have a license in guidance counseling.

34

(F)

Title 42 U.S.C. section 1983

1. Defendant has discriminated against plaintiff because of his race in violation of plaintiff's equal protection rights.

2. Defendant acted under the color of New York State Education Law section 3020(a) to bring false disciplinary charges against plaintiff for the sole purpose of terminating plaintiff from plaintiff's tenured rights to employment

2(a). Defendant acted under the color of New York State Education Laws sections 2569 and in violation 2573 of New York State Education Law in allowing uncertified persons, Margo Levy and Roslyn Hoff, to supervise plaintiff without appropriate New York State Education Department's certification for supervisor of guidance counselors and allowing these two individuals to work in the New York City School District without the appropriate state certification for supervising guidance counselors..

2(b) Defendant acted under an official policy, custom, regulation ; practice or law when its allowed Margo Levy and Roslyn Hoff to supervise guidance counselors without the appropriate New York City License in guidance counseling in violation of New York City Department of Education Chancellors' Regulation C-230. Regulation C-230 states that all supervisors in schools should have license or certification in the area in which they will supervise staff. Margo Levy is a certified social worker and Roslyn Hoff is a school psychologist.

3. Defendant has treated similar situated individuals different than plaintiff.

4. Defendant has an official policy, custom or practice of filing false charges against employees.

5. Defendant has an official policy, custom, regulations and  practice of violating its own policies and regulations.

35

6. Defendant has an official policy, custom, regulation and practice of deliberately violating the provisions of the guidance counselors' contract by assigning plaintiff duties in violation of plaintiff's guidance counselors' contract.

7. Defendant has an official policy, custom and practice of singling plaintiff out for disciplinary action and punishing plaintiff for not performing duties outside of his contract that were in violation of federal, state and municipal laws.

8. Defendant has an official policy, custom and practice of violating federal and state medicaid laws by condoning the falsification of attendance documents for students by related service providers for related service not perform according to students Individual Education Plan (IEP).

9. Defendant has an official policy, custom and practice of receiving medicaid reimbursement for services not provided to students according to their IEP.

10. Defendant has an official policy, custom and practice of deliberately coercing related service providers, i.e., speech providers, etc., to falsify attendance documents for services not provided to students according to their Individual Education Plans (IEP).

11. Defendant, according to former Assistant Principal of 811K@286K, Rosina DeMarco, testimony under oath during plaintiff's disciplinary hearing, has/had instructed other related service providers to provide service to students in their class because there was not enough space to provide services in violation of each student's IEP.

12. Defendant has an official policy, custom and practice of not bringing other related service providers up on disciplinary charges for not performing their duties and falsification of attendance documents for which the New York City Department of Education has received millions of dollars and perhaps billions of dollars in medicaid reimbursement from the federal and state government.

13. Defendant has/had an official policy, custom and policy of strictly monitoring plaintiff

36

performing his duties by checking plaintiff's students' attendance books, counseling logs, classroom sign-in/sign-out sheets and to ensure that plaintiff was taking students out of their classes for related services.

14. Defendant has an official policy, custom and practice of selectively investigating staff by the Office of Special Investigation of the New York City Department of Education.

15. Defendant(s) has/have an official policy, custom and practice of not investigating complaints filed against certain employees of the New York City Department of Education. Plaintiff and others have filed numerous complaint with the New York City Department of Investigation. the Office of the Commissioner of Special Investigation for the New York City School District and the Office of Special Investigation of the New York City Department of Education against certain employees of the New York City Department of Education for abuse of powers and violating New York City Department of Education regulations, New York City Mayoral Executive Order Number 11, New York State laws and regulations and federal laws and regulations.

16. Defendant(s) has/have not provided plaintiff with equal protection of the laws under the fourteenth amendment of the Constitution of the United States and under the color of New York State Laws by not investigating plaintiff's complaints to the Chancellor of the New York City Department of Education, to the Office of the Special Commissioner of Investigation for the New York City School District and to New York City Department of Investigation against certain employees, Susan Erber, former Superintendent of District 75, Bonnie Brown, current Superintendent of District 75, Francine Dreyfus, Local Instructional Superintendent of District 75, Rosina DeMarco, former Assistant Principal of 811K, Steve Lent, Guidance Counselor at 811K and the whole Speech Department of District 75, etc., in violation of the New York City

37

Charter and Mayoral Executive Order Number 11.

17. Defendant and defendant's agents/supervisors, etc., conspired to deprive plaintiff of equal protection of the laws by discriminating against plaintiff because of his race and retaliating against plaintiff for filing complaints with Office of Equal Opportunity of the New York City Department of Education, the New York State Division of Human Rights and the Equal Employment Opportunity Commission (EEOC) in violation of New York State Human Rights Law, New York State Executive Law section 296 by filing and bringing false disciplinary charges against plaintiff.

18. Defendant has deliberately deprive plaintiff under the color of law of the right to work in an environment free from harassment and fear of losing his job.

19. Defendant has deprived plaintiff of equal treatment under the color of state law or official capacity.

20. Defendant acting under the color of state laws has abused its powers against plaintiff by the powers granted to it by state laws.

21. All allegations alleged in this complaint are included in this part of plaintiff's complaint.

22. Defendant has an official policy , custom, practice, etc. of violating New York State Education Laws sections 2569(a), 2573 and 3020.

23. Defendant has an official policy of violating the New York City Department Chancellors' Regulations: Regulation C-230, etc.

24. Defendants, New York City Department of Education, New York City Department of Investigation, and Special Commissioner of Investigation for New York City School District have an official policy, custom and practice, etc., of violating the New York City Charter section and the New York City Mayoral Executive Order number 11.

25. Defendant, New York City Department of Education, failed to provide plaintiff equal

38

protection of New York State Education Laws sections 2569(a) and 2573 by permitting

uncertified persons, Margo Levy and Roslyn Hoff, to supervise complainant without

proper or appropriate New York State Education Department certification as Supervisor of

Guidance/School Counselors.

25. Defendant, New York City Department of Education, failed to provide plaintiff of equal

protection or equal treatment of Chancellors' regulation C-230, etc., when defendant allowed

unlicensed persons to supervise plaintiff, participate in meetings, testify in disciplinary hearing,

and write negative evaluation report without the proper or appropriate New York City

Department of Education license as Supervisor of Guidance Counselors.

26. Defendant, New York City Department of Education has/had an official discriminatory

policy, custom and practice, etc., of checking plaintiff performance of his duties while not

checking other related service providers performance of their duties.

27. All other parts of this complaint is included in this part of the complaint.

### (G)

### Title 42 of the U.S.C. section 1985

1. The defendant's agents/supervisors, etc., i.e., all agents and supervisors mentioned in this

complaint and the legal department of the defendant in a concerted effort and a meeting of the

minds or an agreement conspired as a group to single plaintiff out for disciplinary action, to deny

plaintiff of due process, to reassigned plaintiff, to demote and harass because of his race.

2. Defendant and defendant's agents/supervisors have deliberately taken unfair actions such as

creating reasons to scrutinized and check the performance of plaintiff's duties, as mentioned

above in this complaint, while similar situated employees performance of their duties were not

scrutinized or checked at all.

3. Defendant allowed unlicensed and uncertified individuals to supervise, write a negative evaluation report, participated in meeting and testify in a disciplinary hearing as a supervisor of plaintiff.

4. Defendant conspired to allowed witnesses to give false testimony against plaintiff.

5. Defendant knowingly conspired to allowed false witnesses to testify against plaintiff.

6. Defendant knowingly conspired to tampered with evidence.

7. Defendant conspired to investigate plaintiff.

8. Defendant conspired with other employees to bring plaintiff up on false disciplinary charges.

9. Defendant conspired with the Special Commissioner of Investigation for the New York City School District to bring plaintiff up on disciplinary charges.

10. Defendant's agents/supervisors have conspired to deny plaintiff medical leave of absence.

11. Defendant's agents/supervisors have conspired to suppress or destroy documents that would exonerate plaintiff during disciplinary hearing.

12. Defendant's agents/supervisors have conspired to fabricate and/or lie in order to deprive plaintiff of his tenured rights of employment with defendant.

13. Defendant actions deprive plaintiff of his employment rights, terms and conditions of employment and equal privileges and immunities of employment.

14. Defendant has deprived plaintiff of equal protection under the New York State Education Laws sections 3020(a), 2569(a) and 2573 by:

        a. Bringing false disciplinary charges under section 3020(a)

        b.Allowing uncertified persons to claim to be plaintiff's supervisor and write negative evaluation report in violation N.Y.S. Ed. law section 2569(a)

        c. Allowing uncertified persons to work in the New York City School District

          d. Allowing unlicensed person to work as plaintiff's supervisor and
             write negative evaluation report in violation of New York City
             Department of Education Chancellor's regulation C-230.

15. In furtherance of the conspiracy against plaintiff, defendant has:

        a. single plaintiff out for disciplinary actions,

        b. brought plaintiff up on disciplinary charges with the
           intent to terminate plaintiff,

        c. abused its powers by intentionally violating state laws;

        d. provided false witnesses to give false testimony against
           plaintiff,

        e. tampered with evidence

        f. threaten witnesses to testify against plaintiff

16. Defendant has caused injury to plaintiff by agreeing to singling plaintiff out for disparate

treatment while knowing other similar situated employees were not performing their duties.

17 Defendant has cause plaintiff injury by depriving plaintiff equal protection of New York

States Education Laws, sections 3020(a), 2569(a) and 2973, etc.

18. Defendant has caused plaintiff injury by depriving plaintiff equal protection of the New

York City Department of Education Chancellor's regulation C-230.

(H)

Title 42 of the U.S.C. section 1986

Plaintiff is alleging that a group of individuals conspired to violate plaintiff's civil rights as

alleged in this complaint.

(I)

## New York State Executive Law Section 296

Plaintiff is hereby alleging that all facts relevant to New York State Human Rights Laws,

New York State Executive Laws, section 296, alleged in this complaint are complained of as

if alleged under New York State Human Rights Laws, New York Executive Laws, section 296.

(J)

## Request for an Injunction

Plaintiff is also petitioning the Court for an injunction from this Court for an order for the

defendant to cease and desist from harassing plaintiff in any manner.

(K)

## Demand for Jury Trial

Plaintiff hereby gives the Court plaintiff's notice for a Jury Trial.

(L)

Plaintiff is alleging that each sections of this complaint is alleged as if alleged in each separate

section of this complaint.

(M)

Wherefore plaintiff demands judgment against the defendant(s) (1) in the sum of $10 million

dollars for disparately treating plaintiff and retaliating against plaintiff for filing complaints for

racial discrimination, retaliation, harassment, creating an abusive hostile work environment, and

previously filing a complaint against defendant in this Court that ended in March of 2004 in

violation of Title VII of the Civil Rights Act of 1964 as amended, Title VII, section 2000 of the

U.S.C. , (2) in the sum of $10 million dollars for creating a retaliatory hostile work environment

and an hostile work environment in violation of Title VII of the Civil Rights Acts of 1964 as

amended, etc.; (3) in the sum of $25 million dollars for violating Title 42 section 1981 of the United States Codes, (4) in the sum of $25 million dollars for violating Title 42 section 1983 of the United States Codes, and (5) in the sum of $10 million dollars for discriminating and disparately treating plaintiff because of his race, and retaliating against plaintiff for previously filing complaints against defendant, defendant's agents/supervisors or other employees of defendant in violation of New York State Human Rights Law, New York State Executive Laws section 296, etc.; (6) in the sum of $200, 000 for conspiring to violate plaintiff's civil rights in violation of Title 42 sections 1985 and 1986, and (7) in the sum of $25 million dollars for deliberately conspiring to caused plaintiff mental pain, mental anguish, emotional pain, emotional stress, psychological stress and loss of sleep, loss of reputation, interfering with family relationship by causing plaintiff to spend huge amounts of his time thinking and preparing to defend the frivolous and false charges leveled against plaintiff, and for cost and other relief as may be lawful and proper.

Date: July 27, 2006
Brooklyn, New York

Respectfully submitted,

Ernest Jeter
Ernest Jeter
Plaintiff Pro Se
124-21 Flatlands Avenue/1J
Brooklyn, New York  11208
(H) 718-498-6437
(C) 347-596-7357

EEOC Form 161 (3/98)

### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Ernest Jeter<br>124-21 Flatlands Avenue Apt. 1J<br>Brooklyn, NY 11208 | From: | New York District Office - 520<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2005-04643 | Holly M. Woodyard,<br>Investigator | (212) 336-3643 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

MAY 6 2005

Enclosure(s)

Spencer H. Lewis, Jr.,
Director

(Date Mailed)

cc: **NEW YORK CITY DEPARTMENT OF EDUCATION**
52 Chambers Street, Room 308
New York, NY 10007
Attn: Human Resources Director

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

New York District Office
33 Whitehall Street, 5th Fl
New York, N.Y. 10004

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

UNITED STATES POSTAGE

$ 00.39⁰

02 1A
0004601382       MAY 04 2006
MAILED FROM ZIP CODE 10004

11204‡5ö22-38   C014