UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ERNEST JETER,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK, *et al.,*

Defendants.

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT AND AFFIDAVIT IN SUPPORT

ERNEST JETER
Plaintiff, *Pro Se*
124-21 Flatlands Avenue, 1-J
Brooklyn, New York 11208
(718)498-6437 (H)
(347)596-7357 (Cell)

## TABLE OF CONTENT

TABLE OF CONTENT................................................................................................ 2-3

PRELIMINARY STATEMENT....................................................................................4

STATEMENT OF FACTS............................................................................................6

ARGUMENT:

POINT I-

PLAINTIFF'S COMPLAINT IS NOT BARRED BY THE
DOCTRINE OF RES JUDICATA.................................................9

A.  Plaintiff Claims of False Disciplinary Charges
    could not have been asserted in *Jeter I*...................................10

B.  Plaintiff's Hostile Work Environment
    Claim is not barred by Res Judicata.......................................18

C.  Plaintiff's sections 1981 and 1983 Claims
    are not barred by Res Judicata...............................................21

POINT II-

THIS COURT HAVE SUBJECT MATTER
JURISDICTION OVER PLAINTIFF'S TITLE VII
AND NYSDHR CLAIMS...............................................................21

A. Plaintiff's Title VII Claim is not barred because
   plaintiff filed a Timely Suit.........................................................21

B. Plaintiff's NYSDHR Claim is not barred by the
   Election of Remedies Doctrine because Defendant
   DOE obtained favorable decision by fraud and
   misrepresentation to NYSDHR....................................................24

C. Defendant did not raise the issue that the Retaliation
   Claim was not timely filed...........................................................26

POINT III-

PLAINTIFF'S SECTIONS 1981, CLAIMS ARE NOT
BARRED BY PRIOR ADMINISTRATIVE HEARING

A. Plaintiff's NYSDHR proceeding does not
   bar his sections 1981 and 1983 claims............................................27

B. This action should not be stayed......................................................31

POINT IV-

PLAINTIFF'S SECTIONS 1985, 1986 CLAIMS
ARE NOT BARRED BY THE INTRA-CORPORATE
IMMUNITY DOCTRINE ......................33

POINT V-

PLAINTIFF REMAINING SECTION 1983
CLAIMS SHOULD NOT BE DISMISSED.........................................35

CONCLUSION.....................................................................................................36

## PRELIMINARY STATEMENT

The defendants have moved this Court to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds of: (i) res judicata, (ii) lack of subject matter jurisdiction, and (iii) the intra-corporate immunity doctrine. The defendants claim that *Jeter II* should be dismissed on res judicata grounds because the core of Plaintiff's complaint in *Jeter II* is that the DOE harassed, investigated, threatened Plaintiff with disciplinary charges, and, ultimately filed disciplinary charges in an effort to terminate Plaintiff's employment. In furtherance of the defendants claim, the defendants alleged that this claim, i.e., *Jeter II*, and its supporting evidence could have been raised by plaintiff in *Jeter I*, and because Plaintiff could have raised these claims in the previous action, Plaintiff is now precluded from asserting these claims in *Jeter II*. Plaintiff is asserting that these assertions on the part of the defendants are inaccurate.

The defendants have also moved this Court to dismiss Plaintiff's Title VII and NYSDHR claims on the assertion that Plaintiff failed to file suit within 90 days of receiving the right-to-sue letter and the election of remedies doctrine. Plaintiff is alleging the the Title VII is not barred because Plaintiff did filed a claim with this Court within 90 days of receiving the right-to-sue letter. In addition, Plaintiff NYSDHR claim is not barred by the election of remedies doctrine because the defendants procured the "No Probable Cause" findings that were based on fraudulent information that was provided to the NYSDHR.

Plus, the defendants claimed that Plaintiff's sections 1981 and 1983 claims should be dismissed because of a prior state administrative proceedings, namely, the NYSDHR proceeding and the 3020-a Education Law Proceeding. Plaintiff further alleges that his sections 1981 and 1983

4

should not be dismissed for the following reasons: (i) if there is an adverse decision against plaintiff in the 3020-a proceeding, Plaintiff is alleging that this possible decision was procured by fraud and deliberate misrepresentation, (ii) all the parties in plaintiff's *Jeter II* complaint to this Court were not parties in the NYSDHR claim and the 3020-a proceedings.

Defendants also alleged that Plaintiff's 42 U.S.C. sections 1985 and 1986 claims are barred by the intra-corporate immunity doctrine. Plaintiff is asserting that 42 U.S.C. sections 1985 and 1986 are not barred by the intra-corporate immunity doctrine for the simple fact that the evidence will demonstrate that the mother who claimed that she filed a complaint with DOE that Plaintiff was not providing her children with mandated counseling is not an employee of the City of New York, and she played a central role in the conspiracy to cause harm to Plaintiff. Plaintiff is alleging that if this Court requires that Plaintiff add this party as one of the defendants, then Plaintiff is taking this opportunity to request that he be allowed to amend the complaint to include this defendant.

The defendants have also, in the alternative, sought a stay due to plaintiff section 3020-a Education Law Proceeding in that the stay may resolve the primary issue in this action, i. e., whether the disciplinary charges commenced against were proper or had a discriminatory motive. As Plaintiff stated above, if a decision in the 3020-a preceeding adversely harm Plaintiff, Plaintiff is alleging that the decision is/was procured by fraud and misrepresentation.

Plaintiff is a tenured guidance counselor with DOE. *See*, Declaration of Daniel Chiu, dated

January 26, 2007 ("Chiu Dec."), Exhibit A paragraph(hereafter "para. or paras.") 4D. Plaintiff has

been employed by the DOE since 1994. *See*, Chiu Dec., (hereafter Chiu Dec.) Ex. A, para. 4D.

Defendants in their "Statement of Facts" in their move to dismiss Plaintiff's complaint alleged the

following: (i) Plaintiff filed an Amended Complaint on May 6, 1999 against DOE pursuant to 42

U.S.C. section 2000e et seq. ('Title VII") and 42 U.S.C. section 12111 et seq. ("ADA")., (ii)

Plaintiff alleged that he was subjected to harassment and discrimination because of his race and

his purported disability and that he was denied reasonable accommodation for an injury to his left

leg., (iii) *Jeter I* alleged discrimination and harassment by DOE's medical bureau, and others who

are empowered to grant line of duty injuries., (iv) Plaintiff also alleged that the "whole campaign

of discrimination and harassment was due to an attempt by the Board of Education to fire

plaintiff or make him quit.", (v) The decision in *Jeter I* held that Plaintiff's claims under Title VII

and the ADA for events that occurred prior to April 26, 1997 were time barred and that Plaintiff

sections 1981 or 1983 claim was barred for acts occurring prior to May 4, 1996. *See Defendants'*

*Memorandum of Law in Support of Motion to Dismiss*, dated January 26, 2007, p. 4 (hereinafter

Defends. Memo. of Law); Chiu Dec. Ex. B.

The defendants continued by stating that: (i) With respect to the merits of Plaintiff's claims, the

Court held that the "excessing" or transfer of Plaintiff between various schools was not an

adverse employment action and the claim was therefore dismissed., (ii) Plaintiff's remaining

claims that was considered by the Court: (i) the denial to extend his 1999 injury in the line of

duty status; (ii) Plaintiff's ADA claim that he was unable to walk and climb stairs; (iii) violation

6

of his civil rights pursuant 42 U.S.C. sections 1981 and 1983; (iv) retaliation for filing a Notice of Claim; and (v) request for additional discovery, were all denied by the Court. *See* Chiu Dec. Ex. B.

In furtherance of the defendants' claim, the defendants alleged: (i) Plaintiff filed two discrimination complaints with the New York State Division of human Rights ("NYSDHR"). *See* Chiu Dec., Exs. F and I., (ii) Each discrimination complaint was dismissed by the NYSDHR with a "No Probable Cause " finding. *See*, Chiu Dec., Exs. G and J., (iii) The U.S. Equal Employment Opportunity Commission ("EEOC") adopted the findings of the NYSDHR and issued two right-to-sue letters. *See* Chiu Dec., Exs. H and K., (iv) On July 27, 2006, over 180 days after the first right-to-sue letter was issued, Plaintiff filed the instant suit with the *pro se* office. *See* Chiu Dec., Ex. C.

Plaintiff is alleging that the right-to-sue letter issued on May 4, 2006 is the proper dated to determine if plaintiff filed the complaint with this Court on July 27, 2006 within the time to file a suit in this Court. *See* Chiu Dec., Ex. K. If the Court will examine the complaints in Chiu Dec., Exs. H and K, the Court will see that the two complaints are completely different in all aspects. Each of the two complaints deals with different individuals and allegations. *See*, Chiu Dec., Exs. A and C.

The defendants also alleges that: (i) Similar to *Jeter I*, Plaintiff alleges in *Jeter II* discrimination on the basis of race and retaliation., (ii) Plaintiff also alleges, like *Jeter I*, that the campaign to discriminate and harass Plaintiff was done "with the sole intent to create charges with the intent to terminate plaintiff"., (iii) It is alleged by Plaintiff that the discrimination and harassment began "all while proceeding were continuing or almost immediately after a judgment was entered in this

7

Court before or in March of 2004., (iv) It is further alleged by Plaintiff that "Defendant's actions are continuing violations and plaintiff is raising the continuing violation theory because defendant's actions against plaintiff have occurred over an extended period of time since plaintiff began working for the defendant. *See* Defends. Memo of Law, p. 5.

Defendants also alleged that: (1) In *Jeter II*, Plaintiff bases his claim on five different theories., and (2) plaintiff claims in *Jeter II* that the investigation into Plaintiff, the threat to commence disciplinary charges and the ultimate filing of disciplinary charges, which were done in an attempt to terminate his employment, are violations of: (i) Title VII and NYSDHR; (ii) retaliation pursuant to Title VII; (iii) a hostile work environment; (iv) violation of 42 U.S.C. sections 181, 1983; and (v) a violation of sections 1985, 1986. *See* Defends. Memo. of Law, p. 5.

At this point, Plaintiff is disputing any attempt the defendants alleged that the claims in *Jeter II* are similar to the claims raised in *Jeter I. See* Chiu Dec. Exs. A and C.The allegations complained of in *Jeter II* are completely different from allegations complained of in *Jeter I.* Id. It is also clear that allegations in *Jeter I* and *Jeter II* have arisen from different transactions. *See* Chiu Dec. Exs. A and C. A comparison of the two complaints, *Jeter I* and *Jeter II*, will demonstrate on the face of the two complaints that there are substantial differences, and all the allegations alleged in *Jeter II* occurred either during or after *Jeter I* was filed on May 4, 1999. *Id.* In addition, the gap in time between as to when *Jeter I* and *Jeter II* was filed in this Court makes it clear that plaintiff could not have raised allegations in *Jeter I* that was raised in *Jeter II* because those incidents occurred after the complaint was filed on May 4, 1999 and they cannot be joined as a continuing violation. *See Annis*, 136 F.2d at 246 (discrimination allegedly suffered before and after a six-year gap "cannot be joined as a continuing violation") "*Selan v. Kiley* F.2d

560, 565-67 (7th Cir. 1992) ( two-year gap between discriminatory events "negates the contention that the acts were continuous or connected"); *Blesedell v. Mobil Oil Co.,* 708 F. Supp. 1408, 1417-18 (S.D.N.Y. 1989) ( no continuing violation in light of four-year interval between discriminatory incidents), and Plaintiff was not obligated to file supplemental complaints.

## ARGUMENT

### POINT I

### PLAINTIFF'S COMPLAINT IS NOT BARRED BY THE DOCTRINE OF RES JUDICATA.

The defendants have moved the Court to dismiss Plaintiff's complaint pursuant to the doctrine of res judicata. The defendants states that res judicata applies to bar a second suit between the same parties or their privies on the same cause of action or claim when a judgment is rendered on the merits. In addition, defendants claims that the doctrine also "prevents litigation of a matter that could have been raised and decided in a previous suit, whether or not it was raised." *see Faconti v. Henderson*, 2006 U.S. Dist. Lexis 61238 *13-4 (E.D.N.Y. Aug. 29, 2006) (Irizarry, J) ("purpose of *res judicata* is to preserve the integrity of the judicial system by discouraging frivolous claims and preventing a party from taking factually inconsistent positions in subsequent litigation").

The defendant continued on page 6 of their moving paper to state that " The relevant factors in determining whether res judicata applies are whether "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those privity with them; [and] (3) the claim asserted in the subsequent action were, or could have been, raised in the

9

prior action." In *Jeter I*, the previous action does not involve the same parties as in *Jeter II. See* Chiu Dec., Exs. A and C. It is also clear that the subsequent actions are not, or could not, have been raised in the prior action. Id.

## A. Plaintiff's Claims of False Disciplinary Charges Could not have been Asserted in *Jeter I*

The defendants alleged on page 7 of their moving papers that "In determining whether a second suit is barred by this doctrine, the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive." *Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 97 (2d. Cir. 1997) The defendants continued on the same page by stating that " Rather, the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit." Id.

The defendants cited several issues pertaining to the amended complaint in *Jeter I. (see* Chiu Dec., Ex. A.) Defendants cited the fact that Plaintiff commenced suit against DOE alleging:

1. Plaintiff was "harassed and discriminated against by the defendant because of his race: African-American/black." *see* Chiu Dec., Ex. A, paragraph 4A)

2. Plaintiff alleged that "at each school that plaintiff worked at some one would make a wrongful accusation. Accusing plaintiff of any thing from wrongful insubordination to some form of abuse. The whole campaign of discrimination and harassment was due to an attempt by the Board of Education representative to fire plaintiff or make plaintiff quit." *see*, Chiu Dec., Ex. A, paragraph 4O).

10

3. Plaintiff also alleged that DOE discriminated against him because a disability and he suffered retaliatory animus because he filed a Notice of Claim in 1995. (*see*, Chiu Dec., Ex. A, paragraph 4R).

4. Although Plaintiff raised these allegations, he presented no evidence to substantiate his claim and this Court dismissed *Jeter I* in its entirety in a Memorandum and Order, dated March 25, 2004, following DOE's motion for summary judgment (*see* Chiu Dec., Ex. B).

The defendants in their attempt to seek a dismissal of Plaintiff's complaint are stating that the "*core*" of *Jeter II* can be described as the allegation that the DOE is attempting to unlawfully terminate Plaintiff's employment by threatening him with and actually subjecting him to disciplinary charges. The defendants continued on page 8 of their moving papers by stating that "Consequently, if Plaintiff could have raised in *Jeter I* the transactions or series of transactions that underlies the threat of and actual filing of disciplinary charges, *Jeter II* will be barred on *res judicata* grounds".

The defendants continued on page 9 by stating that in *Jeter II* it is alleged by Plaintiff that:

1. "Defendant has deliberately by its concerted actions to cause plaintiff's work environment to be hostile and abusive by taking actions to ensure that plaintiff will be brought up on false disciplinary charges." (*see*, Chiu Dec. Ex. C, sec. D, paragraph 2).

2. Plaintiff then alleged in the next paragraph that "Defendant's action are continuing violations and plaintiff is raising the continuing violation theory because defendant's actions against plaintiff have occurred over an extended period of time since plaintiff began working for the defendant." (*see*, Chiu Dec., Ex. C. sec. D, paragraph 3).

3. The defendants continued by stating that ' More specific allegations are that Plaintiff was subjected to an adverse employment action because of an "email dated April 1, 2003 that they wanted to bring plaintiff up on disciplinary charges." (*see*, Plaintiff (hereafter, Pl.) Ex. A and Chiu Dec. Ex. C, sec. C, paragraph 22(c)).

4. "Defendant threaten [sic]to bring plaintiff/complainant up on disciplinary charges on disciplinary charges on May 9, 2003.

5. "Defendant deliberately sent Francine Dreyfus, LIS, in October 2003 to begin to set up charges so that disciplinary action could be taken against plaintiff". (*see*, Chiu Dec., Ex. C, sec. D, paragraph 35(a)).

The defendants claim that each of the alleged acts of discrimination occurred prior or while *Jeter I* was pending. The defendants further argued that "The investigation into plaintiff's absences, threatening to bring him up on disciplinary charges and the arrival of Francine Dreyfus "to begin to set up charges so that disciplinary action could be taken that all underlie the actual filing of the disciplinary charges in June 2005. Furthermore, the defendants claim that "As such, they are all part of the same transaction alleged in *Jeter I* that "[t]he whole campaign of discrimination and harassment was due to an attempt by the Board of Education representative to fire or make plaintiff quit."

When the Court read Plaintiff's amended complaint filed on, March 6, 1999 and based on an EEOC charge filed in 1997, the Court will see that there are no transactional connections between *Jeter I* and *Jeter II*. (*see*, Chiu Dec., Exs. A. and C.). It is clear that in *Jeter I*, the cause of actions alleged occurred prior to the date Plaintiff filed the complaint in this Court on March 6, 1999. (*see*, Chiu Dec. Ex. A.). From 1999 to 2003, there are a total 3 or 4 year between time period when *Jeter I* was filed. *Jeter II* was filed in this Court on July 27, 2005 and based on

discriminatory acts that occurred long after *Jeter I*, i.e., a period of approximately 6 years. (*see*, Chiu Dec. Ex. A. and C.). Eight years if the original EEOC charges were filed in 1998.

The acts that the defendants are stating that Plaintiff raised in *Jeter I* are not related to disciplinary charges defendant, DOE, filed against Plaintiff on June 6, 2005 (Chiu Dec., Ex. D. in Ex. N.). It is clear that the defendant, DOE, did not file or attempt to file disciplinary charges and there were no evidence produced during the litigation of *Jeter I* that supports the claim that issues raised in *Jeter II* could have been raised *Jeter I*. (*see*, Chiu Dec.Exs. A, B and C.). The defendants are claiming that Plaintiff should have raised the false disciplinary and the actual disciplinary charges when in fact the acts had not occurred even during the time when *Jeter I* was still pending. *Id.* The defendants have not demonstrated how the acts alleged in *Jeter II* whereby the same evidence is needed to support both claims, and where the facts essential to the second were presented in the first. (*see*, Interoceanica Corp., 107 F.3d at 91 (quoting SEC v. First Jersey Sec., 101 F.3d 1450, 1463-64 (2d Cir. 1996). Therefore, "Likewise, res judicata does not bar subsequent litigation when the court in the prior action could not have awarded the relief requested in the new action". *See, e.g., Leather v. Eyck*, 180 F.3d 420, 425 (2d Cir. 1999); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1984). In addition, this Court has "To determine whether two actions arise from the same transaction or claim, " *See Pike, 266 F.3d at 91* and, also, the court stated in that "we look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties expectations............ *Ibid.*

In addition, in *S.E.C. v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1463 (2d Cir. 1996), the Court stated that "In determining whether a second suit is barred by this doctrine [res judicata], the fact

that the first and second suits involved the same parties, similar legal issues, similar facts or essentially the same type of wrongful conduct is not dispositive." The Court continued by stating that "Rather, the first judgment will preclude a second suit only when it involves the same "transaction" or connected series of transactions as the earlier suit; that is to say, the second cause of action requires the same evidence to support it and is based on facts that were also presented in the first. Id at 1464."; see also *Nevada v. United States*, 463 U.S. 110, 129-30 (1983) (requiring courts to first decide whether the same cause of action is being sued upon). It is clear that the same evidence provided in support of *Jeter I* is not required to support *Jeter II*. Plus, *Jeter II* is not based on the facts that appear in *Jeter I*. *See*, Chui Dec. Exs. A and C.

In addition, it is clear that this Court could not have granted relief for acts in the prior action, *Jeter I*, for the relief requested in the new action, *Jeter II. See,* e.g., *Leather v. Eyck,* 180 F.3d 420, 425 (2d Cir. 1999); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994; *Davidson v. Capuano*, 792 F.2d 275, 278, (2d Cir. 1986); *See*, Chiu Dec., Ex. B.

The defendants also claimed that Plaintiff could have raised claims that occurred while *Jeter I* was pending. Claims, such as the email when Bonnie Brown, working under the title of operation manager, wrote an email to Rachel Henderson on April 1, 2003 stating that they wanted to charge Plaintiff. Pl. Ex. A. and Chiu Dec. Ex. N, Sub Ex. K.. It is clear that Plaintiff could not have raised this issue for: 1) this email was not addressed to Plaintiff and 2) the defendants did not produce any evidence as to the fact when Plaintiff gained actually knowledge of this particular email. Plus, the defendant is also claiming for the May 9, 2003 letter and that Francine Dreyfus was sent October 2003 to set up disciplinary charges against Plaintiff without explaining or given actual fact or evidence that Plaintiff knew that this LIS was actually setting

14

up charges. (Pl. Ex. B); *See Weeks v. New York State (division of parole)* Docket No. 00-0211 (2d Cir. 2001 (2000?)). The defendants are alleging that plaintiff was required to raised issues when the defendants engaged in actionable conduct that occurred while the *Jeter I* was still pending. ( " Thus, as a matter of logic, when the second action concerns a transaction occurring after the commencement of the prior litigation, claim preclusion generally does not come into play. (*First Jersey*, 101 F.3d at 1464.)

Therefore, Plaintiff was not required to filed supplemental pleading setting forth defendants subsequent conduct. Id. "Plaintiff's failure to supplement the pleading of his already commenced lawsuit will not result in a res judicata bar when he alleges defendant's later conduct as a cause of action in a second suit". *First Jersey*, 101 F.3d 1464. "New York Law is the same. *See Cohen v. Board of Educ. of East Ramapo Cent. School Dist.* 84 AD2d 536, 537 (2d Dep't 1981) (res judicata will not bar a lawsuit 'based upon events which occurred subsequent to the commencement of the prior proceeding").

The defendants also misrepresented the facts that "Plaintiff did not argue that the DOE's threat of disciplinary charges for his excessive absences was based on racial discriminatory animus. Rather, he alleged that DOE discriminated against him because of an alleged disability." (Chiu Dec. Ex. B, p. 10 and 22). That is to say, the "actual threat of disciplinary charges for excessive absences" was never an issue in *Jeter I* and the operative word in this Court's "Memorandum and Order" *in re Jeter I* is that "Dr. Susan Erber,................, met with Jeter on February 24, 2003 *to discuss* (emphasis added) his attendance record and *possible disciplinary action* ( emphasis added) against him. The Court continued by stating that "Jeter continues to be an appointed secondary guidance counselor at 811K". (Chiu Dec. Ex. B. p. 10).

In addition, this Court in its Memorandum and Order dated March 25, 2004 did not entertain Plaintiff's claim for being denied reasonable accommodation when Plaintiff was not allowed to schedule his physical therapy on Tuesdays and Thursdays in 2003. *See*, Chui Dec., Ex. B, p. 22. This Court decline to consider this issue because it was not properly before the Court as it was raised for the first time in Plaintiff's Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment. ( *see*, Chiu Dec., Ex. B. p. 22); (also, *see, Beckman v. United Postal Serv.*, 79 F. Supp. 2d 394, 407-08 (S.D.N.Y. 2000) ( Plaintiff cannot raise a new cause of action for the first time in a motion for summary judgment or motion in opposition to an opponent's summary judgment motion). Therefore it is clear that this Court considered the request for reasonable accommodation to attend physical therapy on Tuesdays and Thursdays as a new cause of action. *Id.* This also demonstrate that Plaintiff has not fully litigated this matter and received a final judgment. In fact this Court has not issued a final judgment, and subsequently res judicata and collateral estoppel are inapplicable pertaining to this complaint/cause of action. *First Jersey*, 101 F.3d at 1464. ( *SEC v. First Jersey Sec., Inc.,* 101 F. 3d. 1450, 1463 (2d. Cir. 1996); *see also*, Chiu Dec. Ex. B. p. 27.

In fact, the Court has never entertained a hostile work environment claim because it was not raised in *Jeter I*. Even though this Court stated that Plaintiff did not raised the continuing violation doctrine or raised the hostile work environment claim, the acts that could have supported a hostile work environment claim are not supported by the continuing violation doctrine because of the time period in between the two hostile work environment claims in *Jeter I* and *Jeter II. See*, *Annis*, 136 F.2d at 246 ( discrimination allegedly suffered before and after a six-year gap "cannot be joined as a continuing violation"); *Selan v. Kiley*, 969, F.2d 560, 565-67 (7th Cir.1992) ( two-year gap between discriminatory events " negates the contention that the

16

acts were continuous or connected"); *Blesedell v. Mobile Oil Co.*, 708 F. Supp. 1408, 1471-18 (S. D.N.Y. 1989) ( no continuing violation in light of four-year interval between discriminatory incidents), and Plaintiff was not obligated to file supplemental complaints. *See*, *First Jersey* complete citation below. All alleged acts that support a claim that plaintiff could have raised to support a hostile work environment claim in *Jeter I* occurred between 1995 and 1997, i.e., the excessing or transfers from from difference schools in violation of the seniority policy. *See*, Chiu Dec. Ex. B. p. 14, footnote #5. These excessing acts did not occur through the same cause actions against the defendants as alleged in *Jeter II. See*, Chiu Dec., Exs. A, B and C. The current hostile work environment claim is based on an accumulation of new events that occurred after *Jeter I* was commenced . *See* Chiu Dec. Ex. N: sub Exs.D, H, K, P, Q, R, U, V; X, Y, Z; AA, DD, EE, and GG. *Cf. Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir. 1998)* (indicating that the res judicata effects of a prior suit for race and sex discrimination did not preclude a court from entertaining a subsequent hostile work environment claim to the extent that the latter claim was based upon events occurring after the initial suit). The Court will also see in Chiu's Dec., Ex. N, sub Ex. D that the defendant, DOE, has filed disciplinary charges that cover a period of three school years: 1) school year 2002-2003, 2) school year 2003-2004, and 3) school year 2004-2005. There are 15 specifications and 25 sub-specifications, plus one additional charge. *Id*; *See also,* Pl. Ex. N.

Therefore, *Jeter II* is not barred by res judicata because all the acts alleged in *Jeter II* occurred after the complaint for *Jeter I* was filed on March 6, 1999. (*See* Chiu Dec., Exs. A and C. ). The Court in *Brenda Curtis and Alvin Williamson v. Citibank, N.A., Citicorp North America, Inc.*, Docket No. 99-7957 (2d Cir. 2000) stated that "While claim preclusion bars litigation of events underlying a previous judgment, it does not preclude litigation of events arising after the filing of

17

the complaint that form the basis of the first lawsuit." *See SEC v. First Jersey Secs.*, 101 F.3d 1450, 1464 (2d Cir. 1996). " The crucial date is the date the complaint was filed. The plaintiff has no continuing obligation to file amendment to the complaint to stay abreast of subsequent events; plaintiff may simply bring a later suit on those later arising claims." *Id.* In addition, In *Jeter II*, there are three defendants while in *Jeter 1*, there was one defendant. Therefore and also in this case, plaintiff have separate rights to bring claims against the DOI and SCI because they were not defendants in *Jeter I*.

B.        Plaintiff's Hostile Work Environment Claim is not barred by Res Judicata

The defendants claim that Plaintiff's hostile work environment claim is also barred because acts plaintiff complains of were clearly present prior to and during *Jeter I*, and that, Plaintiff failed to allege a hostile work environment in *Jeter II*. Defendants alleged that in *Jeter II* that Plaintiff alleges that he was subjected to a hostile work environment due to defendants' investigation into Plaintiff, threats of disciplinary charges, as well as harassment by Susan Erber, Bonnie Brown, Francine Dreyfus, DOE's Medical Bureau, and other abuse by Steve Lent.The defendants states that all the above acts occurred prior to or during *Jeter I* and are therefore barred. Plaintiff dispute/disagree with the above assertions.

The defendants have not cited any specific acts that support their claim that plaintiff has claimed the discriminatory acts have occurred since plaintiff began working for the defendant, DOE. The continuing violation theory will not support that assertion from either the defendants' or the plaintiff's perspectives.. Defendants have not presented any specific fact that the defendants have a discriminatory policies that have continued since plaintiff began to work for DOE. That is, there is not a connecting discriminatory policy between *Jeter I* and *Jeter II*. The defendants are

18

only relying on the allegation stated in plaintiff's complaint. (Chiu Dec. Ex. C, sec. D, paragraph 3). If the Court gives the assertion some merit toward dismissing Plaintiff's complaint, Plaintiff would like to request an opportunity to amend his complaint to delete this assertion that "The discriminatory acts "occurred over an extended period of time since plaintiff began working for the defendant."

The complaint in *Jeter II* will and should demonstrate that Susan Eerber's actions could only be determined when she filed the disciplinary charges because she did not threaten Plaintiff with disciplinary charges in neither of the two letters she wrote to Plaintiff: 1) February 11, 2003 and 2) February 24, 2003. (*See* Chiu Dec., Ex. B, p. 10). The significants of Francine Dreyfus, LIS, appearance at 811K is not in itself a hostile work environment, and the letter written by Bonnie Brown in and of itself is not a hostile work environment claim because the actual threat to file disciplinary charges for excessive absences was not carried out until June 6, 2005, i.e., *quid pro quo*. Pl. Ex. B and Chiu Dec., Ex. N: sub ex. K; *Also see Weeks v. New York State (division of parole)* Docket No. 00-0211 (2d. Cir. 2001)

The DOE's Medical Bureau hostile and abusive actions was not discovered until during Plaintiff's disciplinary hearing when Yvonne Joseph, Medical Administrator for DOE's Medical, testified at Plaintiff's 3020-a hearing. Plaintiff discovered Ms. Joseph was allowed to write the final report for an investigation of a written complaint to Mayor Bloomberg for harassment and abuse by Susan Erber and Bonnie Brown even though writing such a report is out of the responsibilities her job title. *See* Chiu Dec., Ex. D, p. 6, also Pl. Ex. C. The complaint filed by Plaintiff was not completed until January 3, 2005, even though it was filed in June 2003. *See*, Pl Ex. D. Plus the

medical bureau has not issued a final decision in re plaintiff request to continue his treatment. *See* Pl. Ex. J. i.e., Joseph testimony

The cases cited above in section (A) in this response to the defendants motion will also support the fact that the hostile work environment claim is not barred by res judicata for the fact that the continuing violation theory is inapplicable when applied to *Jeter I* and *Jeter II*. As stated above, all the alleged acts that form the basis of *Jeter I* occurred prior to the commencement of this cause of action on March 6, 1999. *See*, Chiu Dec., Ex. A. Acts that form the basis of *Jeter II* hostile work environment cause of action began to occur in 2003 and are continuing to the present. ( See Chiu Dec. Ex. C). The gap in time between the commencement of *Jeter I* and the first acts that support a cause of action for hostile work environment claim for *Jeter II* is a period of approximately four (4) years. In addition, the gap as to when the disciplinary charges were filed in June 2005 from the actual commencement of *Jeter I* is time period of approximately six (6) years. *See Quinn* 159 F.3d at 769 (external quotation marks and emphasis omitted), *Annis*, 136, F.2d at 246, ( discrimination allegedly suffered before and after six-year gap "cannot be joined as a continuing violation"), *Selan v. Kiley*, 969 F2d 560, 565-67 (7th Cir. 1992) ( two-year gap between discriminatory events "negates the contention that the acts were continuous or connected"), and *Blesedell v. Mobil Oil Co.,* 708 F. Supp. 1408, 1417-18 (S.D.N.Y. 1989) (no continuing violation in light of four-year interval between discriminatory incidents), and Plaintiff was not obligated to file supplemental complaints. *See S.E.C v. First Jersey above*.

C.      Plaintiff sections 1981, 1983 Claims are not Barred by Res Judicata

Plaintiff's sections 1981 and 1983 claims are not barred by res judicata because these claims are not connected to the same transactions as alleged in *Jeter I*. These claims occurred after *Jeter I* was filed in March 6, 1999; therefore they could not have been raised during this prior action. *See* Chui Dec., Exs. A, B and C. Plus. these claims do not involve the same parties, similar legal issues, similar facts; the same type of wrongful conduct, nor requires the same evidence to support them, nor are they based on the same facts that were presented in *Jeter I. See S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996).

## POINT II

### THIS COURT HAVE SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S TITLE VII AND NYSDHR CLAIMS

A.      Plaintiff's Title VII Claim is Not Barred and is Timely Filed

The defendants alleged that Plaintiff's Title VII claims are timed barred because Plaintiff did not timely file the Title VII claims. The defendants base these assertions on the fact that Plaintiff received two right-to-sue letters. *See* Chiu Dec., Exs. H and K. That is, Plaintiff received a right-to-sue letter based on Plaintiff's charges filed on July 6, 2004, and a right-to-sue letter for charges filed on August 11, 2005. *See* Chiu Dec., Exs. F, H, I and C. The NYSDHR issued a finding of "No Probable Cause" for both claims. *See* Chiu Dec., Exs. G and J.

The defendants also stated that in *NYSDHR II* Plaintiff did not "claim unlawful discrimination based on race or sex. Plaintiff did allege claim for unlawful discrimination based on race. *See*, Pl. Ex. E. Plaintiff filed *Jeter II* on July 27, 2006. *See*, Chui Dec., Ex. C.

21

The defendants stated that Plaintiff must commence suit within 90 days of receiving the right-to-sue letter, and "in instances where multiple right-to-sue letters are received, a plaintiff's time to file a suit begins to run "from the receipt of the first right-to-sue letter, not the second"." The defendants would be correct if the two right-to-sue letters were based on the same issues and facts. *Lo v. Pan American*, 787 F.2d 827, 828 (2nd Cir. 1986). In *Lo v. Pan American*, the Plaintiff's second Notice is concededly based upon the charges involving exactly the same facts as in the first Notice". *Id.* As the Court review the charges, the Court will see that right-to-sue Notices are not based on on the same issues and facts. *See* Pl. Exs. E, F, G and M.; *Dahbany-Miraglia v. Queensboro Community College*, 03 Civ. 8052 (SAS)(Southern Dist. of New York) 2004 U.S. Dist. LEXIS 9709. (Hereafter, *Dahbany v. Queensboro*).

In *Dahbany v. Queensboro*, the Court stated "Thus, the expiration of the 90 day period triggered by the employee's receipt of her first right-to-sue letter did not preclude the suit to the extent that the employee's complaint was based on allegations in the 2003 charge which did not appear in the 2001 charge". In the charges Plaintiff filed on July 6, 2004 and August 11, 2005, it is clear that the two charges are different, and the allegations raised in the two charges are distinctly different. *Id.* The first charge deals with "increasing Plaintiff's caseload", and the *NYSDHR I* issued a "No Probable Cause" finding on October 6, 2005, while the second charge filed on August 11, 2005 was still pending and it deals with allegations that were not raised in the NYSDHR I because those allegations arose after the first complaint was filed July 6, 2004 an are completely different. (Pl. Exs. E, F. and M. ); *Cf. Narvarte v. Chase Manhattan Bank, N.A., 969 F. Supp. 10, 12, (S.D.N.Y. 1997)* [HN 13] ("When a complaint alleges discrimination on a basis different from that contained in the EEOC Charge, the allegations in the subsequent [*20]

complaint cannot be considered reasonably related to the EECO Charge.") (citing *Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 502 (7th Cir. 1994).*

In addition, the Court in *Dahbany v. Queensboro* stated that "Therefore, the expiration of the ninety-day period triggered plaintiff's receipt of her first right-to-sue letter will not preclude the instant suit to the extent that plaintiff's Complaint is based on allegations in the second charge which did not appear in the first Charge. *See Salerno v. City Univ. of N.Y., 2002 U.S. Dist. LEXIS 24454, No. 99 Civ. 11151, 2002 WL 31856953, at *4(S.D.N.Y. Dec. 19, 2002)* ("if defendants' argument were accepted [that plaintiff's Title VII claims should be dismissed in their entirety for her failure to file suit within ninety days of receipt of a right-to-sue letter in March 1991], the failure of an employee to file suit after filing an administrative charge of hostile work environment or retaliation would essentially give an employer carte blanche to mistreat an employee thereafter.").

The charges are also different in another area, i.e., the second charge named different individuals that were not named in the first charge, e.g., Susan Erber and Francine Dreyfus was not mentioned in the first complaint. *See*, Pl. Exs. E and F.

The act of actually filing disciplinary charges is a discrete act of discrimination, and Plaintiff was required to file a separate discrimination charge/complaint 300 days from the alleged actions. *Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974); Evan Washington, Howard Pierson, IV and Secunda Crump v. County of Rockland, James F. Kralik, in his individual capacity, et al*. Docket No. 02-7929 (2d Cir 2004); *Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004).

The retaliation act(s) of filing the disciplinary charges for the June 6, 2005 disciplinary charges also required Plaintiff to file a charge/complaint within 300 days of the discrete discriminatory act(s). *See, National Railroad Passenger Corporation v. Morgan*, 455 U.S. 385 102 S.Ct. (Hereinafter, *Amtrak v. Morgan*). The acts of retaliatory discrimination did not occur until June 6, 2005 when the defendant, DOE, filed disciplinary charges against Plaintiff. This act occurred almost one (1) year, to be exact, 333 days, after Plaintiff filed the first complaint with NYSDHR on July 6, 2004. *See* Chiu Dec., Exs. F, G; I and J. In addition, the Supreme stated in *Amtrak v. Morgan*, that "A party must file a charge within either 180 or 300 days of the date that the discrete retaliatory or discrete act "occurred" or lose the ability to recover", and in addition, "Each discrete discriminatory act starts a new clock for filing charges alleging that act". Therefore, based on the above assertions, Plaintiff's Title VII claims are not barred, and this Court have subject matter jurisdiction.

B. Plaintiff's NYSDHR Claim is Not Barred by the Election of Remedies Doctrine

Plaintiff's NYSDHR claim is not barred by the election of remedies doctrine because as Plaintiff has elaborated through this response, the defendant, DOE, has achieved a "No Probable Cause" decision from the NYSDHR by fraud and misrepresentation. The DOE in its response to complaint to the NYSDHR has stated that: 1) an assistant principal reviewed other related service providers paper work when in fact the assistant principal has stated that she was only instructed to review plaintiff's paper work, *see* Pl. Ex. J and M; 2) the defendant, DOE, i.e., Susan Erber, instructed 811K's payroll secretary, Mary Flynn, to take positive days out of Plaintiff's cumulative absence reserve (CAR) thereby creating negative days in Plaintiff's CAR for which the DOE brought Plaintiff up on disciplinary charges for unauthorized absence, *see* Pl.

24

Ex. K and Chiu Dec., Ex. N, sub. Ex. D, specifications 1 and 2; 3) SCI investigator deliberately misrepresented the fact that the mother of the two students in which DOE is falsely accusing Plaintiff of not providing counseling services too when he claimed the the mother of the two students stated that her two children told her that Plaintiff did not see them for counseling, i.e., one of the children is mildly retarded and the other is autistic and mildly retarded, when in fact the mother stated that she did not make that statement to the SCI investigator,*see* Pl. Ex. O and Chiu Dec., Ex. N, sub. Ex. H.; 4) SCI investigator said that one of the teachers told him that Plaintiff did not provide counseling service to one of the above mentioned students when the teacher stated that Plaintiff did see the student, *see* Pl. Exs. M and P and Chiu Dec., Ex. N, sub. Ex H (*see* footnote number 2); 5) The defendant, DOE, committed extrinsic fraud and misrepresented the facts to the NYSDHR that plaintiff did not perform his duties, *See* Chiu Dec., Exs. L, M and N, sub. Exs. H and Z and *see* entire transcript of University of the State of New York State Education Department School District Employer-Employee Relations: *In the Matter of the Disciplinary proceeding Between Department of Education of the City of New York v. Ernest Jeter, Pursuant to Education Law section 3020-a*, SED File No. 5285: 6012.

Subsequently and based on the above provided information, Plaintiff's claims that Plaintiff's claims pursuant to *New York State Executive Law sections 290 and 296, et seq.,* are not barred by the election of remedies doctrine because Plaintiff has not had a full and fair opportunity to litigate these cause of actions because the defendants have deprived Plaintiff of this opportunity by committing acts of extrinsic fraud and misrepresentation. This or these contention(s) can be applied to all of the defendants claims that Plaintiff complaint is barred by res judicata and collateral estoppel simply because plaintiff has not had the full and fair opportunity to litigate these matters fairly, and Plaintiff does not see why the defendants gain from their misconduct.

25

C.    Defendants did not argue or produce any evidence that Plaintiff's Retaliation
      Claim(s) is Barred and is not Timely Filed

The defendants in their moving papers did not raise any arguments or objections opposing

Plaintiff's retaliation claim(s) for the simple reason in that it or they is/are not barred by res

judicata and is/are timely filed. In other words, the omission is a concession that Plaintiff's

retaliation claim(s) was/were timely filed. *See*, Pl. Exs. E and F.; also *see Local Civil Rule 56.*

*1(a); Amtrack v. Morton.*

The claims for retaliation are based on the following: 1)OEO complaint for employee to

employee harassment, *see*, Chiu Dec. Ex. N, Sub. Exs. F and G.; 2) the complaint to Mayor

Bloomberg, *see*, Pl. Ex. H; 3) the complaint to the Special Commission of Investigation for New

York City Schools that was completed on January 3, 2005, *see*, Pl. Ex. I; 4) the NYSDHR

complaint dated July 6, 2004, *see*, Pl. Ex. F.; 5) the complaint to OEO against B. Brown and F.

Dreyfus, *see*, Pl. Ex. L, and 6?) filing of the disciplinary charges, *see*, Chiu Dec., Ex. N, Sub. Ex.

E. The above cited employee harassment, the complaint to the Mayor Bloomberg, complaint to

SCI, the NYSDHR are retaliation claims that are directly connected to the disciplinary charges

filed on June 6, 2005. *See* Chiu Dec., Ex. N, sub. ex. D.

Steve Lent supposedly complaints against Plaintiff are listed as specification 8 and 9 of the

disciplinary charges even though Plaintiff filed an OEO complaint against him in March of 2004.

*Id.* The complaint to Mayor Bloomberg that was eventually referred to SCI is directly because the

complaint was pending for approximately one year and a half (1 1/2) before a decision was

issued on January 3, 2005. *See* Pl. Ex. H.

## PLAINTIFF'S SECTIONS 1981, 1983 CLAIMS ARE NOT
## BARRED BY PRIOR ADMINISTRATIVE HEARING

A.      <u>Plaintiff's NYSDHR Proceeding does not bar his sections 1981 and 1983 Claims</u>

The proceeding before the *NYSDHR* does not bar plaintiff's sections 1981 and 1983 claims

because the decision of "No Probable Cause" in the *NYSDHR I and II* was procured by "extrinsic

fraud", and therefore Plaintiff did not received a full and fair opportunity to litigate before

*NYSDHR*. (*See* Chiu Dec., Exs. L and M.). Fraud NYSDHR I: Pl. did not turn in schedule Ex. N,

G, failed to provide medical documentations and failed to comply with medical bureau request

for documentation so that they could review his claim, Plaintiff was not assigned to

superintendent office when charges was filed. He told Margo Levy he was going for medical

therapy on Tuesdays and Thursdays when in fact when the charge was filed Pl. was not taking

days off, and it was not and issue in Pl. charge, and the issue of the assignment to the

superintendent office was not the charge related to 811K. Plaintiff did not receive a U rating for

his attendance, and Plaintiff was not given an opportunity to respond to the accusation in re

attendance and the schedules for NYSDHR I, Defendant committed fraud by stating that plaintiff

attendance was unsatisfactory (Rating sheet for 2003-2004 school year) Defendant. took days out

of plaintiff CAR without authorization (employee printout) Susan Erber told payroll secretary

Mary Flynn to take days out of plaintiff's CAR/sick days Ex. N: sub ex. B. Mary Flynn is made

her statement under oath, and  Susan Erber, under oath, stated that she did not have the authority

to instruct Mary Flynn to take sick days out of Plaintiff's sick bank. See Chiu Dec. Exs N, Sub.

Ex. Pl. Exs. This is a clear example of the fact that Plaintiff did not have, as stated above, a "full

and fair opportunity" to b

In addition, the doctrine of "collateral estoppel, or issue preclusion, bars the relitigation of issues actually litigated and decided in the prior proceeding, as long as that determination was essential to that judgment." *See Beck v. Levering*, 947 F.2d 639, 642 (2d Cir. !991) (per curiam), cert. denied, 112 S.Ct. 1937 (1992). There are also four elements that must be met before collateral estoppel applies, and they are: 1) the issues of both proceedings must be identical, 2) the relevant issues were actually litigated and decided in the prior proceeding, 3) there must have been "full and fair opportunity" for the litigation of the issues in the prior proceeding, and 4) the issues were necessary to support a valid and final judgment on the merits. *See Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986) (setting forth four-part test, cert. denied, (1987). Therefore, this Court must remember that it was the DOE that initiated disciplinary actions against plaintiff, and also two of the defendants ( DOI and SCI)were not parties to the litigational action and they were not privy to the disciplinary actions because they were not employers of plaintiff.  See Chiu Dec., Ex. N, Sub. Ex. D. The DOI and the SCI

In essence the DOE procured a "No Probable Cause" decision from the NYSDHR by "extrinsic fraud" when the defendant, DOE produced information that Plaintiff's attendance was "unsatisfactory" when in fact Mary Flynn was instructed to take days out of Plaintiff's sick bank by Susan Erber, former Superintendent of District 75. Pl. Exs. and See Chiu Dec. Ex. L. Plus defendant, DOE, also committed extrinsic fraud when they stated that plaintiff did not turn in monthly counseling schedule and he had not requested accommodations( See Chiu De., Ex. G, Plaintiff's monthly counseling schedules) , and that plaintiff did not furnish the proper medical documentation which would have assisted the staff of the medical bureau to evaluate plaintiff's conditions. See Chiu Dec. Exs. L and N, Sub. Ex. B . This previous contention is refuted by the fact Yvonne Joseph stated in her letter to Thomas Hyland, Deputy Director of DOE Office of

Special Investigation dated December 28, 2004 that Plaintiff medical information was received on May 12, 2004 even though this date of May 12, 2004 (Pl. Ex. Q) is a misrepresentation because the date should read as May 12, 2003  See Chiu Dec. Ex. D. page 5 and 7.

As for the NYSDHR second "No Probable Cause" findings dated March 13, 2006, the NYSDHR based on the followings: 1) the respondent states that the OSI investigation and the substantiated finding was based on a parent's complaint that her children who attended 811K were not seen for counseling by the complainant during the 2003-4 school year, 2) the assistant principal reviewed the other related service givers' (provider) sign-in/sign-out sheets and attendance cards, 3) the investigation revealed that in four instances, the complainant claimed to have counseling secession with students who were absent from or a session session on Sunday; 4)The Department's office of Investigation became involved and the ensuring investigation revealed that some of the complainant's records were fraudulent, and 5) the NYSDHR states that " A request for additional information from the respondent indicates that the complainant is the only guidance assigned to the Regional office. In the absent of comparators, the complainant cannot allege that he is being treated disparately. In addition, as stated in the respondent's position statement, all related service staff in the school where the complainant was employed have their records checked, 6) Copies of complainant's attendance records provided by the Department of Education indicate that the complainant's has not been falsely accused of excessive absenteeism". See Chiu Dec., Ex. M. The NYSDHR made it's decision to find a "No Probable Cause" decision based on the previous information, and Plaintiff is alleging that this decision was based on "extrinsic fraud" because there was testimony under oath in the 3020-a proceeding against plaintiff that totally dispute the finding of "No Probable Cause" by NYSDHR, and these testimonies will demonstrate that plaintiff did not have a "full and fair opportunity" to litigate the

29

issues in the NYSDHR prior proceedings because of the defendants extrinsic fraudulent actions to deprive Plaintiff of a "full and fair opportunity to litigate these issues fairly.

For instances, the NYSDHR and the DOE stated that the OSI investigation was based on a parent's complaint that her two children were not seen for counseling. This contention can be disputed by two points: 1) there are no record or final report that can be produce that will demonstrate that OSI, i.e., Department of Education Office of Investigation ("OSI") performed an investigation of Plaintiff. See Pl. Ex. C.and Chiu Dec., Ex, H., 2) The assistant principal who the NYSDHR and the DOE said reviewed the other related service providers sign-in/sign-out sheets and attendance cards has testified under oath in the DOE's 3020-a proceeding against Plaintiff that she did not review the other related services providers sign-in/sign-out sheets or attendance cards, 3) it was revealed during the 3020-a proceedings that since unauthorized personnel handle the attendance cards and they, i.e., Rosina DeMarco, former Assistant Principal of 811K and Francine Dreyfus, former Local Instructional Superintendent (LIS) of District 75, have demonstrated some personal bias against Plaintiff, they could have tampered with the attendance cards. This previous statement is supported by the deliberate misrepresentation the DOE provided to the NYSDHR stating that an assistant reviewed the other related providers paper work. See Pl. Exs. C and De Marco transcript., 4) Once again, the Department's Office of Investigation have not performed an investigation of plaintiff, and since there was no investigation by OSI, NYSDHR did not have sufficient evidence to support that the "ensuring investigation revealed that some of complainant's records were fraudulent"., and 5) as to the respondent response that Plaintiff was the only guidance counselor assigned to the Regional Office, and in the absent of comparators, the complainant cannot allege that he is being treated

disparately, this is a faulty conclusion that is based on fraudulent information. It is fraudulent because the defendant, DOE, knew at the time that they submitted this fraudulent information to the NYSDHR, Plaintiff was reassigned pending 3020-a disciplinary proceedings.See Chiu Dec., Ex. N, Sub. Ex. H H, para. F. and Ex. N, Sub. Ex. AA, and Ex. N, Sub. Ex. DD. Plus, it is clear that all the issues in the complaint to the NYSDHR occurred at 811K, and it is clear that the fraudulent information produced by the DOE and relied upon by the NYSDHR deprived Plaintiff of a "full and fair opportunity" to litigate this matter fairly, and there claim preclusion and issue preclusion does not apply in this instance to plaintiff cause of action. It is also clear that the actual relevant issues was not litigated, and the issued raised above were necessary to support a valid and final judgment on the merits. See *Gelb v. Royal Globe Ins. Co.,* 798 F. 2d 38, 44 (2d. Cir. 1986); *Fauntleroy v. Lum,* 210 U.S. 230, 28 S.Ct. 641, 52 L.Ed. 1039 (1908); 28 U.S.C.A. 1738 ( Full faith and credit statue).   Therefore, based on the information provided above, defendants motion to dismiss Plaintiff complaint should be denied.


B.      This Action should not be Stayed Due to the Pending section 3020-a Proceeding

This action should not be stayed due to the pending 3020-s proceeding simply because the Hearing Officer did not have jurisdiction over all the defendants during the 3020-a proceeding. *See* Chiu Dec., Ex. N, sub. ex. D; *New York State Education; Section 3020-a.* This action of staying the current action would be prejudicial to plaintiff rights to proceed in an expeditious manner to preserve any and all relevant evidence that may or could be discovered during discovery. In addition, the actions taken by the others defendants were taken with the intent to harm plaintiff rights as a tenured employee of the DOE and to deny plaintiff equal protection under the law. *See New York City Mayor's Executive Order No. 11 and New York City Charter,*

*section.* In other words, plaintiff did not have a full and fair opportunity to litigate these claims against the New York City Department of Investigation and the Special Commissioner of Investigation for the New York City School District, simply, as stated above, the Hearing Officer is granted powers to adjudicate any matter pertaining Plaintiff and the previous mentioned defendants.

Likewise, Plaintiffs is also claiming that the defendants in this complaint, *Jeter II*, have committed acts of extrinsic fraud in their attempt to harm Plaintiff. *See* Chui Dec., Ex. N; Ex.N, sub. exs. H, N. These acts of fraud serves only one purpose, and that is to deny plaintiff his constitutional rights to his one day in court to have a full and fair opportunity litigate his complaints. *See Beck v. Levering*, 947 F.2d 639, 642 (2d Cir. 1991). In addition, the defendants have not provided this Court with any evidence that this Court can actually compare with the allegations alleged in plaintiffs current complaint in order for the Court to make a fair determination as to what issues occurred in the proceedings.

In furtherance of this argument, the DOI and SCI are not privities to the actions in the 3020-a proceedings. i.e., "Privity traditionally denoted a "successive relationship to the same rights of property". *Bailey*, 49 F. at 585. Plus, Plaintiff have the right to bring claims against the other defendants who harmed Plaintiff who in that Plaintiff has not had the opportunity to pursue a claim against them because Plaintiff was the respondent in the 3020-a proceedings. *See Restatement (Second) of Judgments Sections 49 mt. a* (1982) (For preclusion purposes, "the claim against others who are liable for the same harm is regarded as separate."); 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal practice and Procedure* section 4407, at 52-53 ("A single plaintiff has as many causes of actions as there are defendants to pursue."), *See also Central Hudson Gas & Electric Corporation v. Empresa Naviera Santa S.A.*, No. 15 August

Term, 1994. (Argued December 16, 1994, Decided May 17, 1995, Docket No. 94-7477 (2d Cir. 1995). These previous citations apply to all defendants arguments that attempt to use res judicata as a defense with respects to dismissing Plaintiff's complaint.

## POINT IV

### PLAINTIFF'S SECTIONS 1985, 1985 CLAIMS ARE NOT BARRED BY THE INTRA-CORPORATE IMMUNITY DOCTRINE

Defendant motion to dismiss Plaintiff's sections 1985 and 1986 claims based on the intra-corporate immunity doctrine should be denied. Defendants motion should be denied for the following reasons:

1) The defendants have exhibited person bias against Plaintiff;

2) All individuals who participated in the conspiracy to cause harm to Plaintiff are not employed by the City of New; *see* Pl. Exs. D and O.

3) All individuals who caused harm to Plaintiff were not operating in the scope of their employment; *see* Pl. Exs. A, B, C, D; H, I, J; S, R; S and T.

4) All the individuals who participated in the conspiracy to bring disciplinary charges and ultimately Plaintiff's termination were not functioning in a supervising or management. *Id.*

The defendants have exhibited personal bias against Plaintiff in the following manners:

1) The acts of deliberately taking time out Plaintiff's sick bank when Plaintiff had 37 reserved sick days in order to charge Plaintiff with excessive absenteeism, See Pl. Ex. K and Chiu Dec., Ex. N, Sub. Ex. B.;

33

2) The mother, of the two children that was mentioned in the SCI report and in the position paper the DOE submitted to the NYSDHR, who participated in this plot to harm Plaintiff when she claimed to claim that Plaintiff did not provide mandated counseling to her children when in fact she testified during Plaintiff's 3020-a hearing that during school year 2004-2004 not one staff member at 811K informed her that Plaintiff was not seeing her children for counseling, and she is not an employee of the City of New York. Yet, the SCI and the DOE took her complaint as if it was true, and commenced an investigation that ultimately ended up with the DOE proceeding with disciplinary charges against Plaintiff, *see* Pl. Ex. O,

3) Plus, the personal bias extends further with the fact that SCI and Francine Dreyfus in their reports claimed that this mother told them that her two autistic and mildly mentally retarded children told her that Plaintiff was not servicing her children. This mother is under oath testifying during the 3020-a proceeding that she did not make the statement to either the SCI investigator or Francine Dreyfus that her children told her that Plaintiff was not taking them out of class for counselor. The actions of the investigator and Dreyfus are clear indications of personal bias against plaintiff. *See* Pl. Exs. O and R. The personal bias is taken even a step further and based on the actions of the SCI investigator, Francine Dreyfus, and the mother when there was actually no basis for an investigation or a complaint from Francine Dreyfus, or any foundation for the mother to make a complaint against Plaintiff. This point also demonstrates that these individuals, SCI investigator and Francine Dreyfus, were functioning well outside the scope of there employee. *Fabbricante v. City of New York*, 2002 U.S. Dist. Lexis 27815 *24 (E.D.N.Y. Nov. 18, 2002) (Sifton, J) *quoting Travis v. Gary Community Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990). See also, *In the Matter of The New York City Department of Education, District 75 v. Ernest Jeter*, Section 3020-a Education Law Proceeding (File #5,285) (2005)

This mother, Sylvia Sera, is a part of the conspiracy therefore Plaintiff is requesting to amend the complaint to include her as one of the defendants. The mother made a false claims that plaintiff did not see her children did not received counseling. 4) Steve Lent is not a supervisor.

POINT V

PLAINTIFF'S REMAINING SECTION 1983
CLAIMS SHOULD NOT BE DISMISSED

Plaintiff's remaining section 1983 claims should not be dismissed because all Plaintiff had to do in order to defeat a 12(b)(6) motion to dismiss Plaintiff's section 1983 claims was just to alleged that the defendants have a customs, practices and policies. *See Monel v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). The defendants alleged that Plaintiff "Each allegation is stated in a conclusive fashion without any supporting facts or even a substantive constitutional violation, i.e., with the exception of plaintiff's continued employment as a tenured guidance counselor at DOE, which defendants concede is a protected property interest. The evidence Plaintiff provided in his Affidavits of Support of Plaintiff's Memorandum of Law that this Court should deny defendants motion to dismiss Plaintiff's complaint supplies supporting facts to support the other 1983 claims. In addition, in Chui Dec., Ex. C, sec. F paras. 2(b), 4-10, 12-15 and 22-24, the Court should look at Chui Dec., Ex. N, and all subsequent sub exhibits in this exhibit, Plaintiff's exhibits, and the 3020-a transcripts of Rosina DeMarco, Steve Lent, Margo Levy,, Marsiste Aldolphe, and Ernest Jeter. Then this Court will be able to determine that that there are substantive constitutional violation. For one plaintiff was not provided equal protection under the color of the law when Plaintiff filed complaint with the defendant as opposed to other

individuals. Plaintiff has filed numerous complaint that the defendants have failed to investigate as required by the Mayor of the City of New York Executive Order #11.

The defendants have also attempted to harm Plaintiff because of protected speech, .i.e., First Amendment rights under the Constitution of the United States when the defendants brought Plaintiff up on disciplinary charges for reporting possible medical fraud when Plaintiff brought to defendants attention that an 881K school staff member was falsifying documents for which the defendant, DOE, receives medicaid reimbursement, *see* Chiu Dec., Ex. N, sub. ex. U, and the fact that the defendants have not investigated the defendant, DOE, based on Plaintiff's complaint that the defendant, DOE, is deliberately committed medicaid fraud by forcing speech provider to falsify attendance documents. *See 3020-a Transcripts In the Matter of NYC Dept of Ed. v. Ernest Jeter* (File #5,285) of Penny Leblang, Rosina DeMarco, Steve Lent; Marsiste Aldolphe and Ernest Jeter.

## CONCLUSION

For all the above reasons Plaintiff respectfully request that this Court denies defendants motion to dismiss Plaintiff's complaint, and grant other and further relief as this Court deems appropriate, just and proper. Plus, at this time, Plaintiff would like to inform the Court that Plaintiff included exhibits in his affidavit that are not available to Plaintiff for exhibits P and T. For those two exhibits, Plaintiff is referring to the transcripts of those two individuals, Ayanna McHugh and Susan Erber, in the 3020-a hearing.

Dated: Brooklyn, New York
March 3, 2007

36

Ernest Jeter

Ernest Jeter
Plaintiff *Pro Se*
124-21 Flatlands Avenue/1J
Brooklyn, New York 11208
347-596-7357 (Cell)
718-498-6437 (Home)

C: Michael A. Cardozo
   Corporation counsel of the City of new York
   Attorney for defendants
   100 Church Street, Room 2-170
   New York, New York 10007

   Diana Goell Voigt
   Daniel Chiu,
            Of Counsel