UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X

ERNEST JETER

        Plaintiff,                  <u>MEMORANDUM AND ORDER</u>

  -against-                  Civil Action No.
                                          CV-06-3687(DGT)

NEW YORK CITY DEPARTMENT OF
EDUCATION, et al.,

        Defendant.

--------------------------------X

Trager, J:

      Plaintiff, Ernest Jeter,[1] has worked for the New York City Department of Education ("DOE") as a guidance counselor since 1994. On July 27, 2006, Jeter brought this complaint alleging that defendants – the DOE, the New York City Department of Investigation, and the Special Commissioner of Investigation for the New York City School District – have discriminated against him because he is black and retaliated against him for engaging in protected activity. Jeter claims he is entitled to relief under: (1) the Fourteenth Amendment to the United States Constitution, (2) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., (3) the civil rights provisions of 42

---

[1] Jeter, who is not an attorney, is representing himself <u>pro se</u>. "It is well established that the submissions of a <u>pro se</u> litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006) (collecting authority).

U.S.C. §§ 1981, 1983, 1985, and 1986, (4) and New York Human Rights Law, Executive Law § 296.

This action is only the most recent of several judicial and administrative actions Jeter has brought against his employer for discrimination. In 1999, Jeter sued the DOE in this court alleging employment discrimination, and the DOE prevailed on summary judgment. In 2004, and again in 2005, Jeter filed complaints with the New York State Division of Human Rights ("DHR") and the United States Equal Employment Opportunity Commission ("EEOC"). Each court and agency that has considered Jeter's complaints has found the DOE not liable for discrimination.

Defendants have moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Jeter's current complaint, arguing that his claims are either untimely, barred by res judicata, or otherwise meritless as a matter of law. For the reasons stated below, defendants' motion to dismiss is granted in part and denied in part.


**Background**

**(1)**

**Jeter's First Action in this Court**

Jeter filed his first complaint with this court on March 6, 1999. In it, he alleged that the DOE discriminated against him

because of his race and disability, and in retaliation for grievances.  Summary judgment was granted in favor of defendant because certain of Jeter's claims were time-barred, and Jeter could not establish a prima facie case for those claims that were timely.  <u>Jeter v. New York City Dep't of Education</u>, No. 99 Civ. 2537 (E.D.N.Y. Mar. 30, 2004).  Jeter did not appeal.

**(2)**

**Jeter's Claims with the DHR and the EEOC**

In 2004 and 2005, Jeter filed two complaints with the DHR against the DOE alleging employment discrimination ("DHR I" and "DHR II").

Jeter filed DHR I on July 6, 2004, alleging that the DOE treated him differently from his white colleagues because he is black and had previously complained of discrimination at the DOE. Specifically, Jeter's DHR I complaint alleged the following:

1.  I am a Black male who filed a previous complaint with EEOC in or about 1998.

2.  In 1994, I was hired by [the DOE] as a Guidance Counselor.  My time, attendance and work performance have been satisfactory during my employment.

3.  For the past five years, I have been a counselor at P.S. 811K at 286K, located in Brooklyn, NY.  My immediate supervisor during this time has been Rachel Henderson, female, who is Black.  There is only one other counselor, Steve Lent, who is a White male.

4.  In October 2003, my caseload was increased from 30

students to 82 students by Rachel Henderson. On information and belief, I was the only one who had an increase in my caseload.

5.  In March 2004, my caseload was increased again. I was informed by Margo Levy, female, White, who is the Supervisor of Social Workers that the increase was mandated by the Superintendent.

6.  In May of 2004, I was written up for insubordination. I was accused of not performing the duties of my job. I contacted the union and the matter is still pending. On June 30, 2004, I received my evaluation which rated me satisfactory, but rated my attendance unsatisfactory.

7.  I believe I am being treated differently because I am a Black male who previously filed a complaint with the EEOC. Other non-Black counselors are not treated in this manner.

Defs.' Decl. Supp. Mot. Dismiss at Ex. F ("Jeter's DHR I complaint").

Jeter filed DHR II on August 11, 2005, alleging that the DOE had retaliated against him for his DHR I complaint. Specifically, Jeter's DHR II complaint alleged the following:

1.  I filed prior complaint with the New York State Division of Human Rights. Because of this, I have been subject to unlawful discriminatory actions.

2.  Since April, 2005, I have been assigned to the District Office at 400 First Avenue, New York, NY 10010.

3.  In September, 2004, I have been treated disparately from other related service providers. Every Monday during the 2004-5 school year, my records have been checked and I receive warning letters and counselings in regard to the records by Francine Dryfus, Local Instructional Superintendent, whereas no other related service provider undergoes such scrutiny. To my

knowledge, no formal complaint has ever been made
to the local Instructional Supervisor by my
Principal Rachel Henderson.

4.    I have been falsely accused of excessive
absenteeism by Francine Dryfus and Susan Erber,
Superintendent of District 75 and brought up on
unwarranted disciplinary charges.

Id. at Ex. I ("Jeter's DHR II complaint").

On October 6, 2005, and March 16, 2006, respectively, the
DHR resolved each of Jeter's actions in favor of the DOE, finding
that neither complaint was supported by probable cause.  In each
case, the DHR found that the DOE advanced a non-discriminatory,
business-related, and non-pretextual reason for treating Jeter as
it did.

After denying each claim, the DHR advised Jeter of his right
to appeal its decision to the New York State Supreme Court and to
file his Title VII claims with the EEOC.  Jeter did not appeal
either decision within the state court system but did pursue his
Title VII claims with the EEOC.  On January 11, 2006, and May 4,
2006, respectively, the EEOC adopted the findings of each DHR
decision without independent review ("EEOC I" and "EEOC II"), and
issued him right-to-sue letters, informing him that he could
pursue his claims in federal court within ninety days.

## Jeter's Current Action

Jeter brought his current action in this court on July 27, 2006, more than ninety days after EEOC I, but within ninety days of EEOC II. His complaint ("Jeter II") alleges that the DOE has waged a continuous campaign of discrimination and retaliation against him starting in April 2003.[2] In particular, Jeter accuses the DOE of the following unlawful employment practices that were either motivated by racial animus or in retaliation for Jeter's prior protected activity: (1) the DOE transferred and reassigned Jeter several times; (2) the DOE assigned certain job responsibilities to Jeter that were below his level of competence and experience, purportedly in order to coerce Jeter into quitting, or to prevent him from adequately completing his assigned tasks, hence giving the DOE grounds to discipline him; (3) Jeter was verbally abused and threatened; (4) Jeter was given negative evaluations and threatened with disciplinary actions; (5) the DOE brought disciplinary charges against Jeter several times; (6) the DOE closely scrutinized Jeter's performance, and his attendance record in particular, in order to bring spurious disciplinary charges against Jeter; and (7) the DOE either

---

[2] As explained below, the statute of limitations for Sections 1981 and 1983 bars any claims arising prior to July 27, 2003, and Title VII's statute of limitations bars any claims arising prior to October 15, 2004.

committed or suborned perjury in the course of Jeter's various
disciplinary proceedings.

## Discussion

### (1)

### The Standard Governing Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a
complaint that "fails to state a claim upon which relief can be
granted" should be dismissed. Fed. R. Civ. P. 12(b)(6). To
resolve a 12(b)(6) motion, all factual allegations set forth in
the complaint must be accepted as true and all reasonable
inferences must be drawn in favor of the plaintiff. See Kassner
v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).
"The need to draw all inferences in the plaintiff's favor has
heightened application when the plaintiff is proceeding pro se,"
as Jeter is in this case. McInerney v. Rensselaer Polytechnic
Inst., 505 F.3d 135, 138 (2d Cir. 2007). Moreover, "[a] court
may take judicial notice of the records of state administrative
procedures, as these are public records, without converting a
motion to dismiss to one for summary judgment." Evans v. New
York Botanical Garden, No. 02 Civ. 3591, 2002 U.S. Dist. LEXIS
16434, *11-12 (S.D.N.Y. Sept. 9, 2002).

In its motion to dismiss, the DOE argues that: (1) the
election of remedies doctrine bars Jeter's New York Human Rights

Law claims because Jeter previously brought them before the DHR, (2) Jeter's Sections 1985 and 1986 claims fail as a matter of law because of intracorporate immunity, (3) res judicata bars Jeter's current claims because he previously litigated them all before either this court or the DHR, (4) Jeter's Title VII claims are untimely, and (5) Jeter fails to make out a prima facie case in support of his Section 1983 claims.

## (2)

### Jeter's Claims Under New York Human Rights Law

The election of remedies doctrine precludes any claims under the New York Human Rights law that Jeter has previously brought in either of his two DHR actions.  New York's Executive Law provides that,

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person had filed a complaint hereunder or with any local commission on human rights . . . provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

N.Y. Exec. Law § 297(9).  "Thus, absent application of one of the three exceptions, the statute divests courts of jurisdiction over human rights claims which have been presented to the DHR."

<u>Hamilton v. Niagara Frontier Transp. Auth.</u>, No. 00 Civ. 300,

2007 U.S. Dist. LEXIS 55522, *28-29 (W.D.N.Y. July 31, 2007)

(citing <u>York v. Association of the Bar of the City of N.Y.</u>, 286

F.3d 122, 127 (2d Cir. 2002); <u>Moodie v. Federal Reserve Bank of</u>

<u>N.Y.</u>, 58 F.3d 879, 882 (2d Cir. 1995) ("[A] state law depriving

its courts of jurisdiction over a state law claim also operates

to divest a federal court of jurisdiction to decide the

claim.")).  Accordingly, to the extent that Jeter's New York

Human Rights Law claims in his complaint make the same

allegations he made in his DHR proceedings, they are dismissed.


**(3)**

**Jeter's Claims Under Sections 1985 and 1986**

In addition to alleging general employment discrimination

and retaliation, which are dealt with below, Jeter also alleges

that the defendants <u>conspired</u> to discriminate and retaliate

against him, in violation of Sections 1985 and 1986.  Section

1985 makes it illegal to <u>conspire</u> to violate somebody's civil

rights, and its third subsection provides,

> [I]f two or more persons in any State or Territory
> conspire, or go in disguise on the highway or on the
> premises of another, for the purpose of depriving,
> either directly or indirectly, any person or class of
> persons of the equal protection of the laws, or of
> equal privileges and immunities under the laws, or for
> the purpose of preventing or hindering the constituted
> authorities of any State or Territory from giving or
> securing to all persons within such State or Territory

9

> the equal protection of the laws . . . the party so
> injured or deprived may have an action for the recovery
> of damages, occasioned by such injury or deprivation,
> against any one or more of the conspirators.

42 U.S.C. § 1985(3).  In addition, Section 1986 imposes liability

on persons for failing to prevent the kinds of conspiracies

contemplated by Section 1985.  42 U.S.C. § 1986.

Defendants argue that the intracorporate immunity doctrine

bars the application of Sections 1985 and 1986 in this case.

Generally, the intracorporate immunity doctrine has been held to

preclude liability when the alleged conspirators work for the

same organization, Fabbricante v. City of New York, No. 01 Civ.

5575, 2002 U.S. Dist. LEXIS 27815, *24-25 (E.D.N.Y. Nov. 12,

2002) (quoting Travis v. Gary Community Mental Health Ctr., Inc.,

921 F.2d 108, 110 (7th Cir. 1990)), and "has been extended to

apply to individual members of a single governmental entity," id.

(citing Yeadon v. New York City Transit Auth., 719 F. Supp. 204,

207, 212 (S.D.N.Y. 1989)).  There is an exception, however, to

the intracorporate immunity doctrine that allows a Section 1985

action to proceed against members of the same organization if the

conspirators were "'motivated by an independant personal stake in

achieving the corporation's objective.'" Id. at *25 (quoting

Girard v. 94th St. and Fifth Ave. Corp., 530 F.2d 66, 72 (2d Cir.

1976)).  But "[t]he personal stake must . . . be separate and

apart from the bias itself, or else the exception would swallow

the rule." Id. at *25-26.  Jeter has not alleged that any of the

10

alleged conspirators were motivated by anything other than the same bias and desire to retaliate that permeate his complaint.

Thus, because each entity alleged to have violated Jeter's civil rights is employed by or a part of the City of New York, and because Jeter has not alleged any additional motivation unrelated to his general allegations, the intracorporate immunity doctrine bars Jeter's Section 1985 claims, and they are dismissed.  See, id. at *25-26 (applying the intracorporate immunity doctrine to bar a Section 1985 action against the City of New York, New York City Fire Department employees, and various other employees of different city agencies).  Moreover, since Jeter's Section 1986 claims depend entirely on the viability of his Section 1985 claims, his Section 1986 claims are also dismissed.  See, e.g., id. at *27 ("Having failed to state a claim under Section 1985, plaintiff also fails to state a Section 1986 claim.").


## (4)

### Jeter's Claims Under Sections 1981 and 1983

**a.  The Preclusive Effect of Jeter's Prior Judicial and Administrative Actions**

The DOE has argued that Jeter's complaint should be dismissed because each of his claims is precluded by prior judicial or administrative decisions on similar issues.

> Under the doctrine of res judicata, or claim
> preclusion, [a] final judgment on the merits of an
> action precludes the parties or their privies from
> relitigating issues that were or could have been raised
> in that action.  Thus, the doctrine bars later
> litigation if [an] earlier decision was (1) a final
> judgment on the merits, (2) by a court of competent
> jurisdiction, (3) in a case involving the same parties
> or their privies, and (4) involving the same cause of
> action.

EDP Med. Computer Sys. v. United States, 480 F.3d 621, 624 (2d

Cir. 2007) (internal citations and quotations ommitted).  The

relevant prior dispositions are Jeter's first action in this

court, commenced in 1999 and decided by summary judgment in 2004,

and his two actions before the DHR, commenced and decided in 2004

through 2006.  The extent to which these prior proceedings

preclude his current claims depends on the nature of the claims,

the similarity of the issues, and Jeter's prior opportunity to

litigate his claims.

### i.   Jeter's Prior Federal Court Action

Jeter filed his first complaint, Jeter I, against the DOE in

1999.  And in March 2004, summary judgment was granted in favor

of the DOE.  The DOE argues that because many of the events

giving rise to Jeter's current complaint occurred while Jeter I

was pending, Jeter should have brought all of his current

allegations in Jeter I.  According to the DOE, the March 2004

grant of summary judgment decided that nothing the DOE did prior

to March 2004 constituted unlawful discrimination.  Jeter,

however, correctly points out that when a plaintiff has filed

multiple, similar actions, "[r]es judicata does not apply to new rights acquired during the action, which might have been, but which were not, litigated." Humbles v. Reuters America, Inc., No. 05 Civ. 4895, 2006 U.S. Dist. LEXIS 65753, *27-28 (E.D.N.Y. Aug. 31, 2006) (citing SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1464 (2d Cir. 1996); Prime Mgmt. Co., Inc. v. Steinegger, 904 F.2d 811, 816 (2d Cir. 1990)). Accordingly, while Jeter may not relitigate issues that were decided by this court's March 2004 grant of summary judgment, Jeter is not foreclosed from bringing timely claims arising from events which occurred after he filed Jeter I, and which the 2004 summary judgment order did not consider.

### ii. Jeter's Prior DHR Actions

Jeter did not seek review of either DHR decision in state court, thus, those administrative decisions cannot preclude Jeter's Title VII claims. See Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 728 (2d Cir. 2001) (citing University of Tennessee v. Elliott, 478 U.S. 788, 795-99 (1986)). With regard to his remaining claims under Sections 1981 and 1983, however, unreviewed dispositions of the DHR are "entitled to same issue and claim preclusive effect in federal court that [they] would receive in [New York state] courts." Id.

Therefore, New York law controls whether Jeter's prior DHR proceedings preclude his non-Title VII claims. Id. at 730 n.7.

Under New York law, a prior claim will preclude a subsequent claim when the issues are the same and the party to be estopped had a "full and fair opportunity to contest the decision now said to be controlling." Id. at 730 (citing Schwartz v. Public Adm'r, 24 N.Y.2d 65, 71, 246 N.E.2d 725, 728-29, 298 N.Y.S.2d 955, 960 (1969)). "The burden of proving identity of the issue rests on the proponent of collateral estoppel, while the opponent bears the burden of proving that he . . . did not have a full and fair opportunity to litigate the issue." Id. (citing Schwartz, 298 N.Y.S.2d at 962). Even assuming that the DOE has met its burden of establishing the requisite similarity of the issues – a point which Jeter contests – because the prior DHR proceedings did not afford Jeter a full and fair opportunity to litigate his claims, res judicata does not preclude him from bringing them again in this court. When evaluating whether an unreviewed DHR proceeding afforded a plaintiff a full and fair opportunity to litigate his claims a court should consider, "'the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromised verdict, differences in the applicable law and forseeability of future litigation.'" Id.

In Kosakow v. New Rochelle Radiology Associates, 274 F.3d 706 (2d Cir. 2001), applying these factors to analogous facts,

the Second Circuit found that a DHR proceeding did not present a
full and fair opportunity to litigate, and therefore, could not
preclude a subsequent federal court action advancing the same
claims.  Id. at 734-36 (reversing a district court's application
of collateral estoppel).  Like the plaintiff in Kosakow, Jeter
was able to submit a short complaint with documentation
supporting his claims, which the DHR then investigated. But as in
Kosakow,

> [t]here is no record of any discovery being conducted,
> nor is there any record of any interviews of witnesses.
> Moreover, there is no record of any type of hearing or
> conference being held between the parties.  It appears
> that the no-probable-cause determination was based
> primarily, if not exclusively, upon a review of the
> papers submitted.

Id. at 734.  Moreover, Kosakow relied heavily on the fact that
the plaintiff represented herself before the DHR.  Id. at 736
("Kosakow was acting pro se.  For this reason, she could not have
been expected or able to frame her evidence within the context of
the specific legal issues.  Nor would she necessarily have known
what facts were most relevant or persuasive in proving her
case."); see also id. at 736 n.12.  Following Kosakow, district
courts have concluded that DHR actions precluded plaintiffs from
subsequently bringing the same claims in federal court only when
the plaintiff was represented by counsel during the DHR
proceedings.  See, e.g., Janneh v. Regal Entertainment Group, No.
07 Civ. 79, 2007 U.S. Dist. LEXIS 57297, *9-12 (N.D.N.Y. Aug. 4,

15

2007) (distinguishing <u>Kosakow</u> and noting, "[t]he courts have held that a full and fair opportunity to litigate issues in a DHR proceeding exists, even without a hearing, <u>provided the claimant was represented by counsel</u> in the administrative proceeding" (emphasis added)).  Therefore, because Jeter is <u>pro se</u>, and because his opportunity to litigate before the DHR lacked discovery, witness interviews, and a hearing, Jeter's DHR proceedings do not preclude his current action.[3]

**b.  The Sufficiency of Jeter's Claims Under § 1983**

The DOE also argues that Jeter's complaint fails to establish a prima facie case for his Section 1983 claims. Section 1983 provides,

---

[3] Defendant has failed to cite <u>Kosakow</u>, instead choosing to rely on <u>DeCinto v. Westchester County Med. Ctr.</u>, 821 F.2d 111 (2d Cir. 1987), and <u>Kirkland v. City of Peekskill</u>, 828 F.2d 104, 107-09 (2d Cir. 1987).  <u>DeCinto</u> and <u>Kirkland</u> predate <u>Kosakow</u> by more than ten years, and <u>Kosakow</u> clearly distinguished both.  <u>Kosakow</u>, 274 F.3d at 730.  In <u>DeCinto</u>, the plaintiff was given a full administrative hearing prior to his challenged discharge, and he conceded that he had "fleshed out" the relevant issues in the DHR proceeding.  <u>Id.</u>  In <u>Kirkland</u>, the plaintiff had sought review of the DHR decision in New York state court.  <u>Id.</u>  Thus, <u>Kosakow</u> answered the question left unanswered by <u>DeCintio</u> and <u>Kirkland</u> – a question highly relevant to Jeter's case – i.e., "whether a determination of no probable cause by the DHR, absent a formal hearing and absent any subsequent review in state court, serves to preclude subsequent federal court litigation of an issue already decided by the DHR."  <u>Id.</u>  Moreover, <u>Kosakow</u> reasoned that whether a plaintiff is represented by counsel before the DHR bears heavily on whether that plaintiff was afforded a full and fair opportunity to litigate her claims.  Kosakow was <u>pro se</u>, as is Jeter.  Thus, <u>Kosakow</u> is much more relevant to Jeter's case than are <u>DeCintio</u> or <u>Kirkland</u>, yet defendant relies solely on <u>DeCintio</u> and <u>Kirkland</u> without mentioning or attempting to distinguish <u>Kosakow</u>.

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law[.]

42 U.S.C. § 1983.  To establish a prima facie case of

discrimination under Section 1983, a plaintiff must allege that:

"(1) he is a member of a protected class, (2) he was performing

satisfactorily, (3) he was subjected to an adverse employment

action, and (4) the adverse employment action occurred under

circumstances giving rise to an inference of discrimination."

McCray v. New York City Police Dep't., No. 99 Civ. 7035, 2008

U.S. Dist. LEXIS 5368, *7-9 (E.D.N.Y. Jan. 24, 2008) (internal

citations and quotations omitted) (noting that when a plaintiff's

Section 1983 claim is based on his equal protection rights,

courts use the same analytical framework as for Title VII

claims).  A plaintiff must also "allege the violation of a right

secured by the Constitution and laws of the United States, and

must show that the alleged deprivation was committed by a person

acting under color of state law."  Id.  Moreover, to establish a

prima facie case for actionable retaliation, a plaintiff must

allege that he suffered an adverse employment action because he

engaged in protected activity.  See McAllan v. Von Essen, 571 F.

Supp. 2d 672, 679-80 (S.D.N.Y. 2007).

Accepting all of Jeter's factual allegations as true, and,

17

because he is <u>pro se</u>, construing his complaint liberally to raise the strongest arguments it suggests, Jeter's complaint establishes a prima facie case for employment discrimination and retaliation. It is undisputed that Jeter belongs to a protected class. And in his complaint Jeter alleges, <u>inter alia</u>, that the DOE (1) treated him disparately by assigning him responsibilities, such as taking the garbage out, that were below his level of competence and experience, and (2) threatened to and did charge him with disciplinary violations. According to Jeter, the DOE was motivated by racial animus and a desire to retaliate against him for previous complaints he had filed, and these events occurred within the limitations period. If proven true, these acts by the DOE may constitute adverse employment actions. <u>See</u>, <u>e.g.</u>, <u>Washington v. County of Rockland</u>, 373 F.3d 310, 320 (2d Cir. 2004) (holding that a district court erred by concluding that the maintenance of disciplinary charges against plaintiff did not constitute an adverse employment action as a matter of law); <u>Zelnik v. Fashion Inst. of Tech.</u>, 464 F.3d 217, 226 (2d Cir. 2006) (noting that the following acts might constitute adverse employment actions: "negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation period, . . . transfer from library to classroom teaching as an alleged demotion, and assignment to classroom on fifth floor which aggravated teacher's physical

disabilities.") Therefore, it cannot be said that Jeter's allegations fail to establish a prima facie case for employment discrimination and retaliation.

## c.    The Statute of Limitations

Based upon New York law, actions under Sections 1981 and 1983 carry a three-year statute of limitations. Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997).  Thus, since Jeter filed his current complaint on July 27, 2006, he may only allege 1981 and 1983 violations based on events that occurred on or after July 27, 2003.


## (5)

## The Timeliness and Justiciability of Jeter's Title VII Claims

A plaintiff must bring a Title VII law suit within ninety days of receiving a right-to-sue letter from the EEOC.  42 U.S.C § 2000e-5(f)(1); see also Espinosa v. Delgado Travel Agency, Inc., No. 05 Civ. 6917, 2006 U.S. Dist. LEXIS 71085, *15-16 (S.D.N.Y. Sept. 27, 2006) (dismissing Title VII complaint because it was not filed within ninety days of the right-to-sue letter). Because Jeter filed two charges with the EEOC, he received two right-to-sue letters.  His complaint in this court was untimely as to the first right-to-sue letter, and timely as to the second.

The DOE argues that all of Jeter's Title VII claims should be dismissed because when the EEOC issues multiple right-to-sue

letters, the ninety day period begins to run from the first.  The
cases the DOE cites in support of this proposition, however, deal
exclusively with situations where each right-to-sue letter
concerned identical allegations.  <u>See</u>, <u>e.g.</u>, <u>Lo v. Pan American</u>,
787 F.2d 827, 828 (2d Cir. 1986) ("The second Notice is
concededly based upon a charge involving exactly the same facts
as the first Notice.").

In contrast, each right-to-sue letter Jeter received
addressed different allegations.  Although each of Jeter's
charges with the EEOC alleged a similar brand of discrimination,
the underlying discriminatory and retaliatory acts were
different.  Specifically, Jeter's first charge alleged that the
DOE increased his workload, wrote him up for insubordination, and
rated his attendance "unsatisfactory"; and his second alleged
that the DOE had retaliated against him for his first DHR
complaint.  Where the EEOC has issued two right-to-sue letters
addressing distinct allegations, each letter imposes its own
ninety day time limit.  Otherwise, in these situations, employers
could discriminate with impunity following the expiration of the
first ninety day limitations period.  <u>See</u>, <u>e.g.</u>, <u>Salerno v. City
Univ. of N.Y.</u>, No. 99 Civ. 11151, 2002 U.S. Dist. LEXIS 24454,
*14-15 (S.D.N.Y. Dec. 18, 2002) ("If defendants' argument [that
the ninety day period should begin to run from the first right-
to-sue letter] were accepted, the failure of an employee to file

suit after filing an administrative charge of hostile work
environment or retaliation would essentially give an employer
carte blanche to mistreat an employee thereafter.").

The EEOC issued its first right-to-sue letter, which
addressed the charges Jeter brought in DHR I, on January 11,
2006.  The EEOC issued its second right-to-sue letter, which
addressed the charges Jeter brought in DHR II, on May 4, 2006.
Jeter filed his current complaint on July 27, 2006, more than
ninety days from EEOC I but less than ninety days from EEOC II.
Thus, Jeter's Title VII claims which mirror his DHR I claims are
untimely and dismissed.  Jeter's Title VII claims that were
included or are "reasonably related to" the allegations from DHR
II, are timely and are not dismissed.  See Humbles v. Reuters
Am., Inc., No. 05 Civ. 4895, 2006 U.S. Dist. LEXIS 65753
(E.D.N.Y. Aug. 31, 2006) (citing Holtz v. Rockefeller & Co.,
Inc., 258 F.3d 62, 83 (2d Cir. 2001).

In addition, the statute of limitations for filing a Title
VII charge with the EEOC is 300 days.  42 U.S.C. § 2000e-5(e)(1)
(noting the 300 day limitations period when the plaintiff has
originally brought his claims to a state administrative agency);
see also Mudholkar v. Univ. of Rochester, 2008 U.S. App. LEXIS
1405, *5-7 (2d Cir. 2008).  Thus, since Jeter filed his second
complaint with the DHR and EEOC on August 11, 2005, he may only
allege Title VII violations based on events that occurred on or

after October 15, 2004.

**(6)**

**Conclusion**

The DOE's motion to dismiss is granted in part and denied in part.  Jeter's claims under the New York Human Rights Law that he previously brought before the DHR are barred by the election of remedies doctrine and dismissed.  Jeter's claims under Sections 1985 and 1986 are barred by intracorporate immunity and dismissed.  Jeter's claims under Sections 1981 and 1983 are not barred by res judicata, and since Jeter has established a prima facie case, they are not dismissed.  Jeter's claims under Title VII which were addressed by the EEOC's first right-to-sue letter are untimely and are dismissed, but his Title VII claims addressed by the EEOC's second right-to-sue letter are timely and are not dismissed.

In sum, Jeter's claims under Sections 1981 and 1983 that arose on or after July 27, 2003, remain viable.  As do his Title VII claims that he originally brought in his DHR II complaint, provided they arose on or after October 15, 2004.  The remainder of Jeter's claims are dismissed.


Dated:  Brooklyn, New York
        March 4, 2008


                    SO ORDERED:


                    _____/s/_____
                    David G. Trager
                    United States District Judge

23