UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ERNEST JETER,                        *      Case No. 06-CV-3687 (DGT)
                                     *
            Plaintiff,               *      Brooklyn, New York
                                     *      November 13, 2009
      v.                             *
                                     *
NEW YORK CITY DEPARTMENT OF          *
EDUCATION OF THE CITY OF             *
NEW YORK, et al.,                    *
                                     *
            Defendants.              *
                                     *
* * * * * * * * * * * * * * * *

          TRANSCRIPT OF CIVIL CAUSE FOR DISCOVERY CONFERENCE
               BEFORE THE HONORABLE LOIS BLOOM
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:              BRYAN D. GLASS, ESQ.
                                Glass Krakower LLP
                                20 Broadway, Suite 1
                                Valhalla, New York  10595


For the Defendant              DANIEL CHIU, ESQ.
New York City Department        Corporation Counsel of the
of Education of the               City of New York
City of New York:              100 Church Street, Room 2-170
                                New York, NY  10007






Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**67Elaine Drive**
**Shelton, Connecticut 06484 (203)929-9992**

1     (Proceedings commenced at 12:05 p.m.)

2          THE CLERK:  Civil cause for discovery conference,

3     docket number 06-CV-3687, Jeter against NYC Department of

4     Education, et al.

5           Will the parties please state your names for the

6     record?  For plaintiff?

7          MR. GLASS:  Bryan Glass, Glass Krakower LLP, for

8     Ernest Jeter.

9          THE CLERK:  For defendants?

10         MR. CHIU:  Daniel Chiu with the New York City Law

11    Department for defendants.

12         THE CLERK:  Honorable Lois Bloom presiding.

13         THE COURT:  Good morning, Mr. Glass and Mr. Chiu.

14    I guess it's almost afternoon.

15         This conference was called to address a discovery

16    dispute raised in plaintiff's counsel's November 10th letter.

17         I have reviewed that letter, Mr. Glass, and I've

18    also reviewed Mr. Chiu's response dated November 12th.  These

19    are documents 41 and 42 on the docket sheet.

20          Has there been a conversation before you got on-

21    line with me today to try to resolve any of these things,

22    gentlemen?

23         MR. GLASS:  No, there hasn't because I think we

24    kind of need to lock down the dates and I think I've

25    exhausted where it could go.

1          THE COURT:  Well again, Mr. Glass, I would agree

2    with that except that going through both of your letters,

3    there's some disputes going both ways and it is the parties'

4    obligation to try to resolve things before putting them on my

5    plate.

6          I did call today's conference because I want to

7    help you get past this, but I don't want this to be your

8    ticket to how the future is going to be any time there's

9    something that comes up.

10          Now if you're at a deposition and there's a dispute

11   and you can't resolve it, I've told you you should call here,

12   but as far as dates and who and all of that, so let's go down

13   the list.

14          One thing, Mr. Chiu, that I wasn't exactly sure of,

15   you're saying that instead of Condon, they get Bisogna --

16   Bisogna?  Why is it that we can't just schedule Condon and be

17   done with it?  They didn't ask for Bisogna.  Condon was a

18   dispute.

19          I understand you said that the only record of

20   Condon's involvement is plaintiff's e-mail to Condon.

21   Nothing from Condon to plaintiff or regarding plaintiff.  But

22   again, I don't see why we're broadening the scope here.  What

23   is Investigator Bisogna supposed to know about this?

24          MR. CHIU:  Your Honor, actually the plaintiff did

25   request and what I offered to Mr. Glass was -- because

1       actually --

2               THE COURT:  Mr. Chiu, please do your best to speak

3       into the phone line because you're really very low.  I'm not

4       able to hear you very well.

5               MR. CHIU:  Yes.  Plaintiff had requested Michael

6       Bisogna and what I had proposed to Mr. Glass was rather than

7       the defendant objecting to the production of Mr. Bisogna and

8       Richard Condon, what we had offered was to produce Michael

9       Bisogna because he was the SCI Investigator who conducted the

10      investigation which Mr. Jeter claims was discriminatory.

11               And my position was why don't you depose Michael

12      Bisogna because we were planning to make a protective order

13      for Richard Condon, see if Michael Bisogna gives you the

14      information that you would like to get from Richard Condon.

15               If he does not give you that information, then we

16      can have a discussion as to Richard Condon and if there's

17      merits in their position as to why they need Richard Condon,

18      we'll consider it.  If not, then we'll just make a protective

19      order.

20               What I was hoping was to try to avoid making a

21      motion for a protective order because if we're required to

22      produce Richard Condon immediately, then we will immediately

23      have to move for a protective order.

24               THE COURT:  Mr. Glass?

25               MR. GLASS:  Yes.  Mr. Chiu did tell me that, but I

1    just had a discussion with Mr. Jeter and he pointed out to me

2    that Mr. Condon played a much different role than Mr. Bisogna

3    here and what we're exploring as part of this case is why Mr.

4    -- you know, when Mr. Jeter tried to contact Mr. Condon on

5    several occasions, why his complaints were ignored or not

6    addressed and that he believes precipitated the 3020(a)

7    charges against him.

8         So Bisogna is not going to have that information

9    and there are several e-mails that Mr. Jeter has provided to

10   me that show they were sent directly to Mr. Condon and --

11             THE COURT:  Except that --

12             MR. GLASS:  -- it's a different role but --

13             THE COURT:  -- I understand, Mr. Glass.  But if

14   what you're saying is that Mr. Jeter kept writing to the

15   Commissioner saying "Why is this happening," or "Why won't

16   you take my call?" if that's the extent of what you think Mr.

17   Condon's involvement is --

18             MR. GLASS:  No.  But he did respond on two

19   occasions and we have one with handwriting which we provided

20   to Mr. Chiu as you directed us to do last time in Court and

21   then Mr. Jeter is sure that Mr. Condon e-mailed him back on

22   one occasion which he doesn't have but we've contacted AOL to

23   get that e-mail.  And --

24             THE COURT:  And as far as the handwritten return,

25   Mr. Chiu, that they provided to you in Court?

1          MR. CHIU:  But that e-mail was an e-mail that was

2     sent about almost a month after Mr. Jeter filed his

3     complaint.  So that e-mail -- there's nothing in that e-mail

4     or any handwriting on that e-mail that could possibly form a

5     basis for the complaint.

6          THE COURT:  Mr. --

7          MR. GLASS:  That's not true.  That's not --

8          MR. CHIU:  But since it's -- it was sent after Mr.

9     Jeter filed his complaint.

10          MR. GLASS:  Because the e-mail was -- he wrote on

11     it afterwards, but he was contacting Mr. Condon before then

12     and we'd like to explore the knowledge that Mr. Condon had --

13     that e-mail was like Mr. Condon eventually saying, "I approve

14     of what my investigators do -- did" but this was going on

15     well before his complaint was filed and it's right around the

16     time of the complaint, so --

17          THE COURT:  Let's get to -- let's get to the other

18     matters first before we get to the Condon, Bisogna.  You

19     still want to depose Bisogna whether or not you get Condon?

20          MR. GLASS:  He's not as important.  I mean, what we

21     really were trying to accomplish and what -- Mr. Jeter has

22     limited resources -- what we were really wanted were the

23     people who decided to bring him up on charges and we believe

24     that's Bonnie Brown, Susan Urber and Richard Condon.

25          We think those were the people that were involved

1    in the decision to bring him up on 3020(a) charges.  That's

2    really the heart of the case.

3            THE CLERK:  Now we have Urber set for 11-19?

4            MR. GLASS:  We do.

5            THE CLERK:  Is that correct?  So there's no dispute

6    as to her?

7            MR. GLASS:  That's the only one we have set.

8            THE COURT:  That's correct, Mr. Chiu?

9            MR. CHIU:  That's correct.

10            THE COURT:  And as Bonnie Brown, there was supposed

11    to be a deposition either on --

12            MR. GLASS:  Yes.

13            THE COURT:  -- the 2nd or the 3rd.  What will be

14    the date for that deposition, Mr. Chiu?

15            MR. CHIU:  Actually, I got just before the phone

16    for this conference, I received a message from Ms. Brown's

17    secretary so hopefully I can reach her and I've been

18    communicating with Ms. Brown's secretary and hopefully I can

19    pin that down hopefully by the end of today, if not certainly

20    Monday or Tuesday of next week.

21            MR. GLASS:  May I say I'd prefer December 2nd if

22    possible because I have a brief conflict at 10:30 on the 3rd.

23    It wouldn't be all day.  It would only be about 20 minutes,

24    but my preference would be December 2nd.

25            THE COURT:  Mr. Chiu, will you please relate that

1    and try to get the deposition scheduled on the 2nd?

2            MR. CHIU:  I will do my best, Your Honor.

3            THE COURT:  Okay.  And so you're saying if you got

4    Urber, Brown and Condon, you'd be done?  How about all  the

5    rest of these people you --

6            MR. GLASS:  Well, no.  I mean I think Dreyfus is

7    important.  I mean, she was appearing at his 3020(a) so we

8    have some of her testimony.  But we will accept December 14th

9    if it's okay with the Court.

10           It's after the schedule that we had six days but

11   I'll accept December 14th if that's okay with the Court.

12           THE COURT:  Can you confirm that, Mr. Chiu?

13           MR. CHIU:  That is confirmed, actually.

14           THE COURT:  Very good.

15           MR. CHIU:  We spoke to Ms. Dreyfus.

16           THE COURT:  And what about the Henderson

17   deposition?

18           MR. GLASS:  Yes.  Let me just comment on Henderson

19   and Serra.  Mr. Chiu just provided me with the last known

20   address of Henderson, but Mr. Jeter's aware that she moved

21   from that address about four years ago and that Ms. Brown we

22   understand is in contact with Ms. Henderson.

23            So I mean, I'm not sure what -- you know, we think

24   Ms. Brown had been in contact -- current contact information

25   for Ms. Henderson and we think she can in fact contact her

1    about this, so --

2          THE COURT:  Well, she's not under a duty to contact

3    Henderson if Henderson is no longer employed.

4          But they are under a duty to give the address that

5    they know of if there's a different address so when you speak

6    to Superintendent  Brown to confirm hopefully the December

7    2nd deposition, I'd like you to ask her whether she has

8    another address other than what you've provided to plaintiff

9    which they believe is no longer valid.  Mr. Chiu?

10          MR. CHIU:  I will do that, Your Honor.

11          THE COURT:  Okay.  So if they get another address,

12    that will be provided to you.

13          MR. GLASS:  And given the time frames we're talking

14    about, assuming they give me a good address, I can schedule

15    that any time in December to try to get this done?

16          THE COURT:  Well again, the letter from Mr. Chiu

17    has asked that the depositions -- the discovery schedule be

18    extended in light of the trouble that you've had back and

19    forth getting this off the ground.  He's asking for the time

20    to be extended until December 14th.

21          I would give you until the end of December to

22    finish everything in this case in light of this back and

23    forth of trying to jockey these deposition dates.

24          I will not give you past that time and that's why

25    I'm not, Mr. Chiu, so in favor of you doing this Bisogna

1    first and Condon next.  I'm more in favor of you giving him

2    access.

3          Do you believe it would be a seven-hour deposition

4    with Condon?  Doesn't sound like to me, Mr. Glass.

5          MR. GLASS:  No.  No, I don't believe so.  I don't

6    think more than three hours, max.

7          MR. CHIU:  Well, if I may?  If the plaintiff is

8    simply looking to determine whether or not Richard Condon had

9    anything to do with them filing charges against Mr. Jeter and

10   that's the reason he wants to explore, now if I can check

11   with Mr. Condon and suppose I had an affidavit from him

12   saying that he had nothing to do with the filing, because I

13   can't imagine he would since he's with SCI which is a wholly

14   separate agency from DOE.  Typically, there's no involvement

15   in the filing of the charge.  SCI does not make that

16   determination.  It's the DOE that makes that determination.

17         So if I have an affidavit from Mr. Condon stating

18   that he had nothing to do with the filing of the charges, I

19   mean, would that satisfy the plaintiff?

20         MR. GLASS:  Well, no.  Because that's not true.

21   The SCI -- I mean, I've done thousands of 3020(a)'s and the

22   SCI and DOE have very close contact in deciding who to charge

23   and you know I think it's a little bit beyond that.

24         I think we should be able to explore and if he says

25   he doesn't have knowledge, he could say he doesn't have

1    knowledge.  It's not going to be an all-day deposition.

2         I think -- you know, and he -- certainly his name

3    has been invoked several times and we'd like to understand

4    how these -- you know, when Mr. Jeter makes a complaint in a

5    special commissioner investigation, how is that handled?  You

6    know, how do they react to that?  Does it get reported?  You

7    know, and that seems to be the basis of why he was brought up

8    on charges to a large extent, so --

9         THE COURT:  I'm sorry, Mr. Glass.  I didn't follow

10   that.  You think he was brought up on charges because he made

11   a complaint to the Commissioner of SCI?

12        MR. GLASS:  I think part of the reason -- you know,

13   part of the reason he was brought up on charges, why they

14   targeted him as a subject of charges is because of the

15   complaint to SCI and we know that his friend Mr. Adolphe was

16   actually recently charged with making a false complaint to

17   SCI that got him fired, so --

18        THE COURT:  But -- wait.  Wait, wait.  Let's take a

19   step back for a moment.  This is an employment discrimination

20   and retaliation case, so your claims against defendants is

21   that they're retaliating for filing employment discrimination

22   complaints.

23        How does that fit into your theory here that filing

24   any complaints regarding the handling of the 3020

25   investigation is leading to somebody being fired or brought

1    up on charges?

2          MR. GLASS:  No.  The 3020(a) arose out of him

3    raising employment disputes with SCI and with supervisors and

4    our theory is that essentially he was brought up or targeted

5    for termination under 3020(a) because of the complaints he

6    was raising to avoid Mr. Condon's --

7          THE COURT:  But again, the complaints have to be

8    related to discrimination.  They can't just be complaints

9    about how DOE goes about its business.

10         MR. GLASS:  Well, no.  It's retaliation.

11   Retaliation for raising complaints of discrimination to high-

12   level people and how they addressed it was that they

13   retaliated against him by moving to move to get him out of

14   the system or to terminate his employment or --

15         THE COURT:  But again, if it's a First Amendment

16   retaliation-type of claim, why wouldn't <u>Garcetti</u> protect the

17   defendants?

18         MR. GLASS:  Well, it's beyond First Amendment.  I

19   believe there are employment -- you know, he raised some of

20   the employment issues as well and some discrimination issues

21   as to why he was selectively, you know, being targeted when

22   others were not.  You know --

23         THE COURT:  But again, Mr. --

24         MR. GLASS:  -- (inaudible) --

25         THE COURT:  -- Mr. --

1          MR. GLASS:  -- (inaudible)--

2          THE COURT:  -- Mr. --

3          MR. GLASS:  -- equal protection in 1983 claim here

4     as well --

5          THE COURT:  I understand that, Mr. Glass.  He has a

6     1981 claim and these are race claims, so what I'm asking you

7     is if he's complaining just generically about job

8     discrimination, not about race discrimination, then if SCI is

9     investigating matters for DOE, I don't know if under <u>Garcetti</u>

10    he would have any 1983 retaliation claim.

11         MR. GLASS:  I believe part of his claim is that he

12    was raising these complaints and he was selectively targeted

13    because of his race and not others who were similarly -- you

14    know, he would raise something and --

15         THE COURT:  But again, give me the specifics of

16    what Richard Condon would be called upon to testify to if you

17    were deposing Mr. Condon?

18         MR. GLASS:  Specifically, you know, what he knew

19    about Mr. Jeter's complaints, how they were handled.  You

20    know, how he assigned them.

21          What communications did he have with people within

22    District 75 like Bonnie Brown and Susan Urber regarding Mr.

23    Jeter's complaints.

24          We'd like to explore, you know, what was said there

25    and we know that SCI was involved in the charges because they

1  actually recommended -- they wrote a letter, you know,

2  recommending that they bring charges against Mr. Jeter.

3         So I think there's a lot of interaction between SCI

4  and the Department of Education.  And they were repudiated in

5  the 3020(a) matter because they make a recommendation what

6  the Board should do with the case.  You know?

7         So he was brought up -- you know, they reported --

8  District 75 reported this to SCI, SCI did an investigation,

9  they made a recommendation back what they should do with Mr.

10  Jeter and we'd like to know, you know, what the conversations

11  that occurred regarding that.

12         THE COURT:  Did you get documents regarding this?

13         MR. GLASS:  I'm sorry?

14         THE COURT:  Do you have documents regarding what

15  they reported back?

16         MR. GLASS:  Well, there are some documents from the

17  3020(a) itself, yes.  There's like a letter from SCI which

18  explains the recommendation that SCI made to the Board about

19  -- to charge him.  We do have a document like that.

20         THE COURT:  But that's not Condon on that document?

21         MR. GLASS:  That's his deputy.

22         THE COURT:  That's Bisogna?

23         MR. GLASS:  No.  No.  It's his deputy.  It's number

24  2 in the agency.  Her name is Regina Lauerman.

25         THE COURT:  And why are you not asking for her if

1    her name is on the document?

2         MR. GLASS:  We think it's beyond that.  I mean

3    she's the person who writes his reports, but we -- the final

4    determination comes from the head of the agency, Mr. Condon.

5    You know, and --

6         THE COURT:  But I guess what I'm saying is this is

7    a -- this is a complaint saying that Jeter who worked for New

8    York City Department of Education as a guidance counselor was

9    brought up on these charges and he's charging that they've

10   discriminated against him because he's Black and they

11   retaliated against him for engaging in protective activity.

12   But he has named only the New York City Department of

13   Education.  Has he named any of these individuals that you're

14   trying to --

15        MR. GLASS:  I believe that he named -- did he name

16   SCI on the complaint?  I thought --

17        THE COURT:  Yes.  But how can -- SCI's not a person

18   within the meaning of 1983.

19        MR. GLASS:  No.  It's almost a separate agency.

20        THE COURT:  But you can't get an agency as a

21   person.  I mean, you can get the City if they have a custom,

22   policy or practice, but you can't get -- under 1983 you need

23   a person in order to hold them liable.

24        MR. GLASS:  Well --

25        THE COURT:  You can't name an agency.

1      MR. GLASS:  Mr. Jeter told me he would like to, you

2  know, he explained that the reason he wants Mr. Condon is

3  because he's a high-level person who can establish a custom,

4  policy or practice, and I know that there are -- you know,

5  I've had other clients like this, you know, who have been

6  treated similarly and I think we can explore a little bit as

7  to whether this is a custom, you know --

8      THE COURT:  I'm not really interested in anybody

9  else's claim, quite frankly, Mr. Glass.

10     MR. GLASS:  I understand.  But I --

11     THE COURT:  That's not -- that's not the purpose of

12 allowing a deposition in this case.

13     MR. GLASS:  I mean, this is a policymaker.  Mr.

14 Bisogna is not a policymaker and I think he should be

15 entitled to explore on a limited basis.  And we're not going

16 -- I don't think this is an all-day deposition.  I agree with

17 you.  If he says he doesn't have knowledge, we'll move on.

18 You know?  But it's an important person.  It's a person who

19 was repeatedly contacted by Mr. Jeter, you know, and this is

20 not a typical 3020(a).

21     This is a -- they have involved high-level people

22 in this.  They involved the Superintendent which is very

23 unusual in a 3020(a) matter to testify and a former

24 Superintendent.  I've never seen that.

25     So you know, this got -- among the highest levels,

1    people were involved, you know, and if Mr. Condon was

2    involved to some extent that's what we feel confident about

3    that and I think we should be able to explore that.  That's

4    not, you know --

5              THE COURT:  Mr. Chiu?

6              MR. CHIU:  Well, so far, I mean, I really -- I have

7    not heard any evidence other than speculation.

8              THE COURT:  You don't need evidence in order to do

9    discovery, Mr. Chiu.

10             MR. CHIU:  Well, but to bring in Richard Condon --

11   Richard Condon is the Commissioner of SCI.  He's a high-level

12   official and certainly -- I mean, I just can't agree to

13   produce Mr. Condon.  If --

14             THE COURT:  If the Court ordered you to produce

15   him, you wouldn't have to agree.

16             I mean, part of what I'm trying to ferret out here

17   is whether or not one, plaintiff is asking for Condon because

18   he has personal knowledge and involvement which I think Mr.

19   Glass is saying they don't know.  They believe that he would

20   because the high level of participation that a superintendent

21   was called during the 3020 proceeding, etcetera.

22             The second part of what he's saying is that they

23   believe that Condon is a policymaker within the meaning of

24   Monell.

25             And that as a policymaker, he would be the one that

1  they would have to get to establish that there was a custom,

2  policy or practice.

3          MR. CHIU:  Yes.  Well, I guess I would want to know

4  what custom, policy or practice they're claiming --

5          THE COURT:  Well, it's in Judge Trager's order.  If

6  you look at page 6 of document 17 which was the motion -- the

7  memo and order on the motion originally made -- Jeter accuses

8  DOE of the following unlawful employment practices that were

9  either motivated by racial animus or in retaliation for

10 Jeter's prior protected activity.

11         One, that the DOE transferred and reassigned Jeter

12 several times.

13         Two, that the DOE assigned certain job

14 responsibilities to Jeter that were below his level of

15 competence and experience.

16         Three, Jeter was verbally abused, threatened or

17 Jeter was given negative evaluations.

18         Five, the DOE brought disciplinary charges against

19 Jeter several times.

20         Six, the DOE closely scrutinized Jeter's

21 performance and his attendance in order to bring spurious

22 charges against him and that the DOE either committed or

23 supported perjury in the course of Jeter's various

24 disciplinary proceedings.

25         Those are what the practices that Mr. Jeter has

1    alleged in his complaint.

2         And to the extent that there are custom, policy or

3    practice claims, he would have to have somebody who was in a

4    position to make policy to officially adopt a custom, policy

5    or practice.

6         And he is basically saying that I imagine that

7    Condon is the one and even though Judge Trager was clear that

8    Jeter may not re-litigate the issues that were decided in the

9    earlier summary judgment, that he is not foreclosed from

10   raising events which occurred after that decision which the

11   2004 summary judgment order didn't consider.

12        So I would like to cut through here, Mr. Chiu.  I

13   don't need motion for a protective order.  I understand that

14   the guy's a busy guy, that he's a Commissioner.

15        You're saying that his claim -- Jeter's claim --

16   could not have arisen before he filed the complaint, but I'm

17   not sure that if the one e-mail found is after the date he

18   filed the complaint, that that is the extent of what Condon

19   knew or did in the case.

20        MR. CHIU:  No.  No, Your Honor.  What I am saying

21   is first of all, all of those customs, policies and practices

22   that were just identified, those sound like things that

23   relate to DOE.

24        THE COURT:  They do.

25        MR. CHIU:  So there's nothing there that relates to

1    Commissioner Condon.  Well, now with respect to the e-mail

2    that I'm talking about, there's an e-mail that's dated, I

3    believe it's August 15th or 16th of 2006.  Mr. Jeter filed

4    his complaint in July of 2006.

5            The plaintiff is alleging -- this is an e-mail sent

6    by plaintiff to Commissioner Condon -- and at the top of the

7    e-mail, there's some handwriting.  It says, "Tom, please let

8    me see the file."  Plaintiff's contending that that

9    handwriting is Commissioner Condon's.

10            Now even if it is Commissioner Condon's handwriting

11    on it, that e-mail was sent after the complaint was filed, so

12    that is not evidence that Commissioner Condon had some

13    personal involvement.

14            Because as I recall from the case law, in order to

15    depose a high-level official, the plaintiff must demonstrate

16    that that high-level official had some personal knowledge in

17    order to justify that deposition.

18            MR. GLASS:  That e-mail right here from Mr. Jeter

19    dated May 19th, 2006 to Richard Condon saying, you know, "Mr.

20    Frenell's not responding to me.  I'd like the courtesy of a

21    response from you."

22            So I mean this probably precipitated him to file

23    that complaint in the first place because he ran out of

24    patience with Mr. Condon not responding to him.  So to say

25    that this was after -- you know, Mr. Condon decided to

1    respond right after he filed his complaint seems to be, you

2    know --

3                THE COURT:  But wait a second.  Wait a second.

4                MR. GLASS:  -- because he knew -- he clearly

5    knew --

6                THE COURT:  Wait --

7                MR. GLASS:  -- as early as May that can show him an

8    e-mail that was directed to Mr. Condon that he received

9    and --

10               MR. CHIU:  I don't have these documents.

11               MR. GLASS:  You have these documents in discovery

12   if you look at them.  And I can --

13               THE COURT:  Mr. Glass --

14               MR. GLASS:  -- I'd be happy to forward them to you

15   again.

16               THE COURT:  Mr. Glass, even if Mr. Jeter wrote to

17   Mr. Condon before he filed the complaint that I haven't been

18   getting a response and he wrote to the Commissioner -- the

19   Special Commissioner of the investigation, that doesn't

20   necessarily mean that Mr. Condon's going to have any personal

21   involvement in any of the actions that you're reporting.

22               MR. GLASS:  I understand that, but what is the harm

23   in us asking him these questions and if he wants to deny that

24   he had no knowledge, I think that's fair game for a

25   deposition.  I mean, I know he's a high-level person.  He's a

1    busy guy, but he shouldn't be immune just because, you know,

2    Mr. Jeter is not in a high-level position.  I mean --

3           THE COURT:  I'm not saying that he's immune.  I

4    never used the word immune.  I'm trying to figure out why

5    you're trying to get this guy deposed and again, I don't want

6    there to be another motion on this.

7           And if what you're saying is you don't really need

8    Bisogna to then find out about Condon, you want Condon, I

9    don't see why you'd want both of them.  Or do you?

10          MR. GLASS:  Bisogna serves a different purpose.  I

11   mean, Bisogna  was present at a 3020(a) hearing and would

12   have knowledge about some of the specifics that he was

13   charged with regarding him not seeing students.

14          It's a completely different issue and it has

15   nothing to do with policymaking.  It has to do with why they

16   decided to target him for the specifics of one of the key

17   allegations of the 3020(a).

18          THE COURT:  Well, why don't you tell me what the

19   specifics of the policymaking argument regarding Condon are,

20   because I do agree that this is sort of -- that any of the

21   practices as alleged in Mr. Jeter's complaint really go to

22   DOE but not to the investigation.

23          MR. GLASS:  Our theory is that they are in

24   conjunction with each other.  There's correspondence back and

25   forth between SCI and DOE about what to do with Mr. Jeter.

1      You know, and --

2              THE COURT:  But SCI not being Richard Condon.  SCI

3      being --

4              MR. GLASS:  SCI being his deputy.  You know --

5              THE COURT:  But you're not asking to depose that

6      deputy.

7              MR. GLASS:  Not at the moment because I think it

8      went higher than that.  I think all she did was the rubber

9      stamp for him to -- she just happens to be the designee for

10     him to write these reports which are done routinely.  So we

11     believe Condon has knowledge and there is an e-mail, there is

12     stuff with his handwriting on it.  There are e-mails directly

13     to him and you know, I think Bisogna's a different issue.

14     Whether I need Bisogna  or not, you know, it would probably

15     be nice, but you know, I think it's a different issue and it

16     has to do with the specifics of the specific charges they

17     brought against him and what knowledge he was told by someone

18     who worked in the DOE about what Mr. Jeter was doing and

19     whether that was false or the scope of his investigation but

20     --

21             THE COURT:  So again, tell me specifically why you

22     think it's necessary for you to depose Mr. Condon?

23             MR. GLASS:  We'd like to know the scope of his

24     knowledge, the relationship he had in bringing these charges

25     against Mr. Jeter about -- you know --

1          THE COURT:  But it wasn't Jeter --

2          MR. GLASS:  -- the contact he had with Bonnie

3    Brown.  The contacts he had with --

4          THE COURT:  -- but it wasn't him bringing the

5    charges?  Is that correct?  It was --

6          MR. GLASS:  He doesn't -- look.  He doesn't

7    technically prefer the charges, no.  Someone makes the

8    decision.  I don't know if it's him or whether it's the

9    Superintendent or they do it together.  SCI makes a

10   recommendation to bring charges.

11       His agency makes a recommendation to bring charges

12   against Mr. Jeter and we know that they made a recommendation

13   to bring charges against Mr. Jeter and to seek to terminate

14   his employment.  There's a letter, it's part of -- it was

15   produced at the 3020(a) proceeding that says that.  It was

16   written by this woman Regina Lauren who always was the person

17   on there but all we know of her is as a deputy.

18       I've never met and never seen her and I believe it's Mr.

19   Condon who makes the final call on these recommendations.

20   And we believe he had some role in making that recommendation

21   to recommend to the Board to bring charges.  And the Board

22   listens to SCI and that's why SCI is there.  They're an

23   investigative agency to determine whether to bring charges

24   against someone.

25            And again, technically they're separate from the

1   Board, but they're not.  They're the Board's independent

2   investigator that makes determinations whether to bring

3   charges and they're tied together.

4           THE COURT:  Mr. Chiu?

5           MR. CHIU:  Well, again, a recommendation is

6   different from a decision to bring the charges.  I mean, I've

7   seen cases where the recommendations are not followed --

8           THE COURT:  Mr. Chiu, I'm going to give Mr. Jeter's

9   attorney a three-hour deposition with Mr. Condon.  I want you

10  to set that up before the end of December.  That'll be part

11  of today's order.  Three hours, Mr. Glass.

12          MR. GLASS:  Okay.

13          THE COURT:  Is there anything else that we haven't

14  covered today?  Yes.  We have the Serra matter.

15          MR. GLASS:  Yes.  But here's the issue with Serra .

16  Ms. Serra was a parent who testified at the 3020(a) trial.

17  She was produced by the Board at that trial.  She has two

18  kids in the system.  I really don't want to know her address.

19  I really don't care about her address and I really don't

20  understand what the FERPA objection is.  I mean, I think you

21  know particularly what the FERPA objection is.

22          All I'm asking is if someone contacted her and say,

23  look, she's wanted for a deposition.  Would she voluntarily

24  come in?  We'd like to ask her a few questions.

25          THE COURT:  Why did they have --

1          MR. GLASS:  We'd probably independently find her

2    and scare her and send her a subpoena but all we really want

3    to do is we have a few questions for her role in this thing

4    and --

5          THE COURT:  Why would they agree to do that?

6          MR. GLASS:  They produced her voluntarily during

7    the 3020(a) trial --

8          THE COURT:  Well, but she thought that this guy was

9    doing harm to her kids in the system.  Why would she want to

10   be involved in his lawsuit?

11         MR. GLASS:  Well, we want to question her because

12   we think there was some kind of incentive given to her to

13   testify against him.  That's the purpose of why we want her

14   deposed.

15         THE COURT:  But why would the defendants agree?  I

16   understand what your point is -- that if you have to, you'll

17   find her and serve a subpoena.  That's what you have to do,

18   Mr. Glass, if that's somebody that you want.

19         MR. GLASS:  But I would liked --

20         THE COURT:  And as far as --

21         MR. GLASS:  -- I mean, I don't --

22         THE COURT:  -- as far as finding out where she is,

23   there are probably directories in each of these schools where

24   if her kids are still in attendance and your client is still

25   employed, he could probably find her last known address

1    within that school directory and then Mr. Chiu isn't put into

2    any sort of position here.

3         MR. GLASS:  Well, I'm afraid that if starts probing

4    around for her last address he's going to be accused of

5    misconduct by the Board, so I'd rather --

6         THE COURT:  I'm not asking for him to probe around.

7    I'm saying that there are generally in schools directories

8    that have addresses of students.  And that if there are

9    students still in the school, why doesn't he just get the

10   address to you?  Not try to make any contact on his own and

11   you serve your subpoena if you want to depose this person.

12   Why should --

13        MR. GLASS:  Because those kids are not in his

14   school anymore.  He's been reassigned to a different school

15   and if he's going to go around looking through phone books

16   for this person's address, I'm afraid the DOE is going to

17   start raising questions about his involvement.

18        THE COURT:  I'm not asking for --

19        MR. GLASS:  All I'm asking Mr. Chiu is to provide

20   me the address and I'll do it.  He doesn't have to have any

21   further involvement.  All he has to do is contact the school

22   where the kids are at, give us the last known address and

23   then we'll find it.  I don't really want his involvement any

24   further than that.

25             If he doesn't want to produce her, that's fine.

1    But I don't want Mr. Jeter being accused of doing all this --

2    I've seen it.

3         He's going to go look around, start fishing around

4    for her address and then be accused by the Board of doing

5    things that -- if you want to authorize and they want a

6    protective order that there's no discipline --

7         THE COURT:  Mr. Glass?  Mr. Glass, please.  You're

8    like hyperventilating here.  I didn't say that Mr. Jeter

9    should do any of this.  He's got an attorney.  You could

10   clearly find this person.

11        Mr. Glass, you've made the request to Mr. Chiu.

12   Mr. Chiu, you've said that the DOE cannot because of the

13   FERPA regs.  I've pulled the FERPA regs.  There is a portion

14   of the FERPA regs -- it's sub -- what is it?  It's section

15   1232(g), subsection small (b)(2).

16        It says no fund shall be made available under any

17   applicable program to any educational agency or institution

18   which has the policy or practice of releasing or providing

19   access to any personally identifiable information in

20   education records other than directory information and then

21   further down in that same section under large (B), it says

22   unless except as provided such information is furnished in

23   compliance with judicial order or pursuant to any other

24   lawfully issued subpoena upon condition that parents and the

25   students are notified of all such orders or subpoenas in

1   advance of the compliance therewith by the educational

2   institution or agency.

3          So it seems to provide that there is a way to

4   accommodate Mr. Glass's request without there being any

5   violation of the statute, Mr. Chiu.

6          MR. CHIU:  Right.  As long as DOE is in compliance

7   with FERPA, I mean, that's the major concern.

8          THE COURT:  Well, again, it says here that you

9   could give directory information which I assume is an address

10  but that you're supposed to, if you're complying with a

11  judicial order, you're supposed to inform the parents that

12  that information was provided.  That's what it seems to say.

13         MR. CHIU:  I mean, I don't dispute that.

14         THE COURT:  So why don't we get that done?  Okay?

15  So you're going to give Ms. Serra the information that in

16  this case that Mr. Jeter has brought against New York City

17  Department of Education the attorney has requested the

18  directory information and that pursuant to this Court's

19  order, you're providing just the address as listed in the

20  directory.

21          And then it'll be incumbent upon Mr. Glass to make

22  the contact or subpoena Ms. Serra.

23         MR. CHIU:  Your Honor, as I recall from some case

24  law, though, I do believe there -- the parent does need to

25  consent to the release of this information.

1          THE COURT:  That's not what it says here.

2          MR. CHIU:  I know.  But Im talking about case law.

3     I will have to research the issue, but this is what I

4     remember from looking at it before.

5          THE COURT:  It says except as provided in

6     paragraph 1, such information is furnished in compliance with

7     judicial order or pursuant to any lawfully issued subpoena,

8     so it doesn't even need to be by order because it's or upon

9     condition that parents and the students are notified of all

10    such orders or subpoenas in advance of compliance therewith

11    by the educational institution.  We're having this conference

12    today, Mr. Chiu.

13         Unless you're providing me with this information by the

14    close of business today that says that there's case law on

15    point that says that I can't direct you to contact the parent

16    and then to provide the information to Mr. Glass, that's the

17    order that I'm entering today.

18         MR. CHIU:  No, no.  That's not what I'm saying,

19    Your Honor.  What I'm saying is that I believe when I send

20    the notification to the parent, I believe the parent has the

21    opportunity -- there's a certain time period for the parent

22    to object to the disclosure of that information.

23         THE COURT:  Again, Mr. Chiu, if you want to provide

24    me case law that says any of this, that's fine.  But we had

25    this conference scheduled today to get through all these

1    issues.

2              I'm going to order that they give the last known

3    address as provided in the directory as stated in FERPA.  I

4    can do that.  There's nothing here that says that I have to

5    delay.  It says that you have to give advance notice.  You'll

6    give the advance notice.  If there's anything else that you

7    need to tell me, you'll tell me in a written submission by

8    ECF today.  Okay?

9              MR. CHIU:  That's fine.

10             THE COURT:  Okay.  So let's recap where we are.

11   You've gotten three hours with Condon.  You're going to get a

12   confirmation regarding the superintendent Bonnie Brown.

13   Urber's confirmed.  We also have Dreyfus on for 12-14.  Is

14   there anything else that we need to discuss here?

15             Serra you're going to get an address of and you're

16   going to try to schedule her deposition if that's what you

17   feel you  need to do, Mr. Glass.

18             MR. GLASS:  Do I just get to pick a date or do I

19   need to make sure if Mr. Chiu's available?  Because I know

20   he's got a pretty busy schedule.  Can I just pick a date and

21   have her come in?

22             THE COURT:  Well, again, I believe that you have to

23   give notice and as a courtesy, I would think that you would

24   try to pick a date that he could be available.  I am telling

25   you to get everything done by the end of December.  That's

1    the extension that I'm giving everybody here.  It's giving

2    you a little bit more breathing room to go through the end of

3    December.

4           But I don't want any further extension requests to

5    be made.  I'm doing this because these issues should have

6    been worked out between the two of you.  Because they

7    weren't, you have until December 31st.

8           MR. GLASS:  Okay.  And --

9           THE COURT:  And as far as getting the information

10   regarding Serra, I'll give you until next week to do that,

11   Mr. Chiu so again, my order to you will specify we are

12   currently at the 13th and I'll give you until the 18th to

13   provide the Serra address and you can give notice however you

14   have to give notice to Serra that you're doing that.  And

15   I'll cite to the provision in FERPA.  Three hours with

16   Condon, you both worked that out.

17          What else do we need to go over here?

18          MR. GLASS:  I will accept the Bisogna  offer that

19   he made.  As for a different issue not independent of Condon,

20   but we would like to depose Bisogna to some at-limited --

21          THE COURT:  Well, they've offered 11-30 as the

22   date.

23          MR. GLASS:  Okay.  Well, I'll --

24          THE COURT:  Is that confirmed?

25          MR. GLASS:  No.  I think he had the short day that

1    day, so it won't be all day.  It will be in the morning and

2    we'll finish by the time Mr. Chiu needs to leave.

3             THE COURT:  Mr. Chiu?

4             MR. CHIU:  That's fine.  November 30th is fine.

5             THE COURT:  Okay.  So you'll figure out when Condon

6    is going to go.  Serra I am telling you to notify, Mr. Chiu,

7    and to try to work out a date that would be agreeable before

8    you send the subpoena out.  Henderson?  What's going on with

9    Henderson?

10            MR. GLASS:  I think you said we should just try to

11   verify with Ms. Brown if there's a more current address on

12   file and we'll --

13            THE COURT:  And that's as far as he has to go.

14            MR. GLASS:  Okay.

15            THE COURT:  So again, try to verify that when you

16   speak to Brown to confirm the 12-2 date.  Urber, the

17   deposition's been stated.  There's been no mention about

18   Adolphe by either side, so that's not something that's in

19   dispute, I take it.

20            Is there anything else that needs to be addressed

21   today?

22            MR. GLASS:  I --

23            MR. CHIU:  Just one last thing, Your Honor, if I

24   may?

25            If I can request additional time in order to obtain

1    last known address of Sylvia Serra because I don't think two

2    business days -- I need to request this from DOE and I don't

3    know how long DOE --

4            THE COURT:  I can't imagine that there is not a

5    parent directory for every parent who has a child in the

6    school system.  Why is everything so complicated here?

7            MR. CHIU:  Well, unfortunately, I'm dealing with a

8    bureaucracy.

9            THE COURT:  I understand, Mr. Chiu, but it seems

10   like the more time I give, the more that this case just goes

11   out of hand.  I'll give you until the 20th.  That's it.

12   Okay?  So until the 20th.  That's the end of next week.  You

13   have a week to do it.

14           There's no reason why DOE shouldn't be able to

15   punch the name into a computer, give you the address, let you

16   send out a notice saying we're providing this to the

17   plaintiff's counsel as directed by the Court and that should

18   be the end of it.

19           Let's not make every dispute here into a major

20   argument.  As far as the three hours with Condon, agree to

21   dates.

22           I understand that getting Condon's schedule is

23   important, but get back to Mr. Glass.  Don't make this be

24   another back-and-forth of letters.  Let's get a three-hours

25   carved out of both of your schedule and get Condon plugged

1    in.  Anything further today, Mr. Glass?

2            MR. GLASS:  No, Your Honor.

3            THE COURT:  Anything further today, Mr. Chiu?  Mr.

4    Chiu?

5            MR. CHIU:  No.

6            THE COURT:  If you haven't noticed gentlemen, I do

7    think that you have not made the diligent effort that you

8    could have made to get these things resolved.  I understand

9    that you weren't going to agree about Condon and that was

10   eventually going to be on my plate to resolve.  I have now

11   resolved that.

12           As far as the FERPA, again Mr. Chiu, if you're

13   making an argument that the Court can't release information,

14   you should be providing more than you did to the Court in

15   your letter.  Okay?  Because when I'm looking into the

16   statute, the statute does seem to provide a way to get this

17   accomplished.

18           As to whether or not Mr. Condon was involved, just

19   so you can relay it to your client, I believe that they're

20   entitled to a deposition.  I'm limiting the amount of the

21   time of the deposition in light of his position.  So that's

22   the Court's discretion and that's my ruling.  Anything else I

23   hope that you will be able to resolve yourselves.  I will

24   reduce this to an ECF order that will be put online today and

25   with that we are adjourned.  Thank you.

1      MR. GLASS:  Thank you.

2      MR. CHIU:  Thank you.

3   (Proceedings concluded at 12:47 p.m.)

4      I, CHRISTINE FIORE, Certified Electronic Court

5   Reporter and Transcriber and court-approved transcriber,

6   certify that the foregoing is a correct transcript from the

7   official electronic sound recording of the proceedings in the

8   above-entitled matter.

9

10  *Christine Fiore*

11  _____          November 17, 2009

12      Christine Fiore

13

14

15

16

17

18

19

20

21

22

23

24

25