THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**MICHAEL A. CARDOZO**
*Corporation Counsel*

**DANIEL CHIU**
*Assistant Corporation Counsel*
Phone: 212-788-1158
Fax: 212-788-0940
E-mail: dchiu@law.nyc.gov

December 16, 2009

**By Electronic Case Filing**

Honorable Lois Bloom
United States Magistrate Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Jeter v. New York City Department of Education, et al.,
06 Civ. 3687 (DGT)(LB)
Our No. 2006-007825

Dear Magistrate Judge Bloom:

I am an Assistant Corporation Counsel in the office of Michael A. Cardozo, Corporation Counsel of the City of New York, attorney for defendants in the above-referenced action. This letter is submitted in brief response to plaintiff's December 15, 2009, letter seeking to compel Special Commissioner Richard Condon to appear for his deposition on December 23, 2009 or on Christmas Eve, December 24, 2009, and various other discovery related relief.[1]

First, we respectfully decline to respond at this time to the *ad hominem* attacks in plaintiff's letter to avoid embroiling the Court in resolving such unnecessary disputes among counsel. Should the Court wish a point by point response defendants will provide such a response including copies of e-mails between counsel to refute plaintiff's accusations of any improper behavior by defendants' counsel.

Second, defendants continue to oppose the deposition of Commissioner Condon. There is nothing new that has been added since the Court's December 4, 2009, order which directed that Commissioner Condon's deposition would be taken "only if necessary, after all

[1] Defendants' counsel is unavailable on either December 23, or December 24, 2009, due to holiday travel plans. Commissioner Condon will be traveling for the holidays as well.

other depositions have been completed." Plaintiff has not cited any new evidence or information demonstrating that Commissioner Condon's deposition is necessary. In particular, the e-mail cited by plaintiff was previously cited by the Court in its December 3, 2009 order. The e-mail is dated August 24, 2006, and sent nearly one month after plaintiff filed the instant suit. The e-mail was in response to plaintiff's August 15, 2009, e-mail which was also sent after plaintiff filed suit, but before defendants received notice of the lawsuit on October 3, 2006.

We further note that there is nothing in that e-mail which demonstrates personal knowledge of facts relevant to the instant complaint, much less unique and relevant knowledge of Commissioner Condon's. Rather, the e-mail indicates that the Commissioner reviewed "your email" and not the earlier investigation. Indeed, the Commissioner stated that he was not going to reopen a prior investigation, which ended February 18, 2005, 1½ years prior to the e-mail, despite plaintiff's August 15th e-mail complaining about the prior investigation. A copy of the SCI final report, dated February 18, 2005, is enclosed and has been provided in discovery.

The e-mail also discusses matters that are not even at issue in this litigation. Plaintiff had complained that SCI did not substantiate a June 2005 complaint plaintiff filed with SCI. The e-mail responds by stating, "As Chief Investigator Tom Fennell previously advised you, the investigation of your June 2005 complaint to this office did not result in substantiated findings." Plaintiff has not deposed, nor does he seek the deposition of Mr. Fennell. Thus, there has been no change and no additional information since the Court issued its order less than two weeks ago.

The investigation into plaintiff, which plaintiff claims was discriminatory, was conducted by SCI Investigator Michael Bisogna and the final report was signed by First Deputy Commissioner Regina A. Loughran. Plaintiff does not seek either Mr. Bisogna nor Ms. Loughran's deposition. Indeed, plaintiff asserts in his December 15th letter that because Mr. Bisogna allegedly testified "about his lack of knowledge" during plaintiff's prior § 3020-a administrative hearing, plaintiff does not need Mr. Bisogna's deposition. Defendants note that because Commissioner Condon did not personally conduct the investigation into plaintiff, he would have even less knowledge than Mr. Bisogna.

Further, under plaintiff's theory, any litigant could obtain an e-mail response evincing a lack of knowledge of plaintiff's case and thereby obtain a deposition of a high level official. This would eviscerate the protections afforded high level officials and would consume all of the official's time in depositions where, as here, the official has no direct knowledge of plaintiff's case.

Again, the lack of any evidentiary support for the notion that the Commissioner has unique and relevant information leads to the conclusion that this request is made not for the purpose of obtaining relevant information, but to harass a high level government official. Jones v. Hirschfeld, 219 F.R.D. 71, 78 (S.D.N.Y. 2003) (subpoena quashed where it appeared party

sought deposition of former President Bill Clinton for purpose of deposing President Clinton rather than obtaining relevant information as party did not seek deposition of individuals with more direct and relevant information but only sought deposition of President Clinton).

On December 14, 2009, counsel for plaintiff and defendants discussed the deposition of Commissioner Condon. Defendants cited the December 4th order and asked whether plaintiff had new evidence. Plaintiff's counsel stated that he had such new evidence but would not share that evidence with defendants' counsel. This can hardly fulfill the requirement of good faith consultations mandated by Local Rule 37.3(a).

With respect to plaintiff's motion to compel defendants to produce all of the complaints Mariste Adolphoe filed with SCI, it is improper for plaintiff to raise this issue anew as it was resolved during a July 8, 2009, discovery conference. Plaintiff's time to seek reconsideration or object to the Court's July 8, 2009 rulings has long since passed. In any event, plaintiff does not present any new information that would make this discovery request less objectionable.

Plaintiff's request for the "letter of reprimand" to Susan Erber, who has already been deposed, is also improper. The "letter of reprimand," to the extent it exists, does not even concern plaintiff. Plaintiff's only basis for believing the letter exists is because the New York Post reported that Ms. Erber purportedly received a letter to her file. Moreover, plaintiff first requested the letter from defendants in an e-mail, which is not proper service under Rule 5(b)(2)(E), on Sunday, November 29, 2009. Needless to say, defendants' time to respond in accordance with Rule 34 has not yet expired.

With respect to the transcript of plaintiff's deposition, plaintiff was informed that, in the interests of saving costs for all parties, defendants were amenable to providing plaintiff his transcript without cost if plaintiff was willing to do the same for the individuals plaintiff deposed. Plaintiff, however, has not agreed to this proposal. In the event defendants are ordered to provide plaintiff his deposition transcript, it is respectfully requested that plaintiff also be ordered to provide defendants with the deposition transcripts of the individuals plaintiff deposed.

For the foregoing reasons, it is respectfully requested that plaintiff's motion to compel be denied in its entirety.

Thank you for your consideration of this request.

Respectfully submitted,

Daniel Chiu
Assistant Corporation Counsel

Enclosure

cc: Bryan Glass
(By ECF)

CITY OF NEW YORK
THE SPECIAL COMMISSIONER OF INVESTIGATION
FOR THE NEW YORK CITY SCHOOL DISTRICT
80 MAIDEN LANE, 20TH FLOOR
NEW YORK, NEW YORK 10038

RICHARD J. CONDON
SPECIAL COMMISSIONER

TELEPHONE: (212) 510-1400
FAX: (212) 510-1550
WWW.NYCSCI.ORG

February 18, 2005

Hon. Joel I. Klein
Chancellor
New York City Public Schools
Department of Education
52 Chambers Street, Room 314
New York, NY 10007

Re: Ernest Jeter
SCI Case #2004-2263

Dear Chancellor Klein:

An investigation conducted by this office has substantiated that Ernest Jeter, a guidance counselor at P 811 in Brooklyn, claimed to provide counseling for students on dates they were absent or the school was closed. He did so by falsifying his paperwork and documenting that he saw students on days they were not in school. Additionally, students were denied the therapy they needed and were entitled to.[1]

This investigation began in October 2004, after the mother of two boys who were supposed to be counseled by Jeter complained to Citywide Programs Local Instructional Superintendent Fran Dreyfus that one of her sons ("Student A") was not being taken out of class for his mandated counseling sessions.[2] Dreyfus then compared Student A's Related Service Attendance Form to his Individual Attendance Form and to Jeter's Related Service Provider Schedule and discovered that there were four dates that Jeter claimed to provide services for Student A when Student A was marked absent. Additionally, Jeter claimed to provide service for Student A on a fifth day that was a Sunday. Dreyfus then notified this office.

[1] Jeter was not reassigned as a result of this investigation.
[2] Student A's mother told investigators that she complained that neither of her children was being counseled by Jeter after both children told her they had not received counseling.

DOE02081



Principal Rachel Henderson told investigators about prior complaints she received regarding Jeter's failure to counsel students as required. According to Henderson, Jeter is responsible for seeing students who are mandated to receive a certain amount of counseling throughout the school year. Jeter is supposed to remove each student from class when scheduled and take them to his office for one to one sessions. Henderson stated that in March 2004, Teacher Ayaenna McHugh complained that Jeter was not counseling one of her students ("Student B").[3] Soon after, Teacher Neal Laskowitz complained that Jeter was not counseling Student A. When Henderson confronted Jeter, he claimed that the room he used for counseling does not afford him privacy with the students because the walls are only three-quarters high and do not reach the ceiling. He added that his conversations with students are heard by people in the adjacent room. Henderson reported Jeter's concerns to Superintendent Margo Levy. As a result, Levy visited Jeter's office and determined that the space was appropriate to see students in confidential counseling sessions, and ordered Jeter to conduct his sessions in his office.[4]

McHugh confirmed for investigators that Jeter did not see Student B on a regular basis. According to the teacher, Jeter saw Student B only when there was a crisis and either she or another teacher would call Jeter to come in for an emergency. McHugh reviewed Jeter's Related Service Attendance Report for Student B, and asserted that it was not possible that Student B was counseled on as many dates as was reflected in the Report.[5]

Laskowitz also told investigators that Jeter did not see the students as he was supposed to. According to Laskowitz, at the beginning of the 2003-2004 school year, Student A and Student B were both in his class.[6] Early in the year, Jeter asked for the opportunity to come to the classroom and observe the students he was assigned to counsel. Laskowitz stated he gave Jeter permission and Jeter came about five times to observe the students. After the five visits, Jeter never returned to the class to visit the students or to remove them for their counseling sessions.[7]

A review of the attendance records of Student A and Student B as well as eleven other students that Jeter was assigned to counsel revealed that there were many occasions where Jeter claimed to see a student when the child was absent or school was not in session. A comparison of the students' Related Service Attendance Forms to their Individual Attendance Forms revealed that on nineteen occasions, Jeter indicated that he saw students when they were absent and/or the school was closed.

---

[3] Student B is Student A's twin brother.

[4] Jeter told Levy he had been seeing his students for counseling while walking the hallways and stairwells.

[5] Student B's Related Service Attendance Report indicated that Jeter saw Student B sixty-two times during the 2003-2004 school year.

[6] Student B was only in Laskowitz's class for a brief time.

[7] Jeter claimed in Student A's Related Service Attendance Report that he saw Student A fifty-eight times during the 2003-2004 school year.

Ernest Jeter not only submitted falsified time records but he deprived students of the counseling they needed and were entitled to. Based on this it is the recommendation of this office that Jeter's employment with the DOE be terminated and this matter be considered should he ever apply for a position in the future.

We are forwarding a copy of this letter and our report concerning this investigation to the Office of Legal Services. We are also forwarding our findings to the State Education Department and the Kings County District Attorney's Office for whatever action they deem appropriate. Should you require a copy of our report, or have any inquiries regarding the above, please contact Vicki Multer Diamond, the attorney assigned to the case. She can be reached at (212) 510-1454. Please notify Ms. Multer Diamond within thirty days of receipt of this letter of what, if any action has been taken or is contemplated against Ernest Jeter. Thank you for your attention to this matter.

Sincerely,

RICHARD J. CONDON
Special Commissioner
of Investigation for the
New York City School District

By: Regina A. Loughran
Regina A. Loughran
First Deputy Commissioner

RJC:RAL:VMD:gm
c: Michael Best, Esq.
Theresa Europe, Esq.