UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

ERNEST JETER,

                                        Plaintiff,

                - against -

NEW YORK CITY DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF INVESTIGATION OF THE CITY
OF NEW YORK, and THE OFFICE OF SPECIAL
COMMISSIONER OF INVESTIGATION FOR NEW
YORK CITY SCHOOL DISTRICT OF THE CITY OF
NEW YORK,

                                        Defendants.

------------------------------------------------------------------------x

**DEFENDANTS' RULE 56.1
STATEMENT**

Docket No. 06 CV 3687
(NGG)(LB)

          Pursuant to Rule 56.1 of the Local Rules of the United States District Courts for

the Southern and Eastern Districts of New York and this Court's motion rules, defendants, by

their attorney, Michael A. Cardozo, Corporation Counsel of the City of New York, submit this

statement of material facts upon which there are no issues to be tried.

### BACKGROUND

          1.        Plaintiff Ernest Jeter is employed as a guidance counselor for the New

York City Department of Education ("DOE").  See Deposition of Ernest Jeter, October 26, 2009

("Jeter Dep."), at 34:7-13, Exhibit C.[1]  Plaintiff commenced this action alleging that defendants

violated the Equal Protection Clause of the 14th Amendment to the United States Constitution,

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. §§

1981, 1983, 1985, and 1986, and the New York State Executive Law §§ 290 *et seq.* by

---

[1] Unless otherwise indicated, all exhibits cited to herein refer to the exhibits annexed to the
Declaration of Daniel Chiu, dated November 18, 2011, submitted herewith.

discriminating against him because of his race (African-American). <u>See</u> Complaint, ¶ 3, Exhibit A.

      2.      Plaintiff's claims pursuant to the New York State Executive Law and 42 U.S.C. §§ 1985 and 1986 were dismissed in a Memorandum and Order, dated March 4, 2008. <u>See</u> <u>Jeter v. New York City Dep't of Educ., *et al.*</u>, 549 F.Supp.2d 295 (E.D.N.Y. 2008).

      3.      Plaintiff became a full-time employee of DOE in September 1994 and completed his probationary period on October 17, 1998. <u>See</u> <u>Jeter v. Bd. of Educ. of the City of New York</u>, 99 CV 2537 (DGT), Memorandum and Order, dated March 25, 2004 ("*Jeter I* Order"), at 2, Exhibit B; and Deposition of Ernest Jeter, October 26, 2009, ("Jeter Dep."), at 27:22-28:4, Exhibit C.

      4.      As a guidance counselor, plaintiff was required to provide mandated counseling services to special education students.  In accordance with the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* (the "IDEA"), DOE was required to provide mandated counseling to special education students and it was a violation of the IDEA if the students did not receive the mandated counseling. <u>See</u> Jeter Dep. at 33:3-34:13, Exhibit C.

      5.      Throughout plaintiff's employment, he took various leaves of absences from work until October 26, 1999, when he returned from leave without pay, motivated by financial difficulties and fear of being evicted. <u>See</u> *Jeter I* Order at 2-9, Exhibit B.  Plaintiff thus reported to work at P.S. 811K in Brooklyn, New York, where he was assigned to work on October 25, 1999. <u>See</u> Jeter Dep. at 29:10-12, Exhibit C.

      6.      In 2002 and 2003, plaintiff attended physical therapy sessions at the Brooklyn VA Hospital every Tuesday and Thursday, and only worked three days per week, but was paid for working five days per week. <u>See</u> *Jeter I* Order at 10, Exhibit B; and Deposition of Bonnie Brown, December 2, 2009 ("Brown Dep."), at 39:9-40:6 and 189:9-14, Exhibit D.

7.      On May 9, 2003, plaintiff was issued a letter from the District 75 Superintendent's office that he exhibited a pattern of excessive absences, being absent on 21 days from February 25, 2003 to May 6, 2003, with 17 absences on Tuesdays and Thursdays. The Superintendent specifically had directed plaintiff to report to 811K on Tuesdays and Thursdays to perform his duties, which included providing mandated counseling services to students in accordance with the IDEA.  See Jeter Dep. at 33:3-34:13, Exhibit C; and Letter to Ernest Jeter from Bonnie Brown, dated May 9, 2003, Exhibit V.

8.      After DOE issued the May 9 letter to plaintiff, he wrote a letter to Mayor Michael Bloomberg on May 11, 2003 to complain that he was being unfairly treated by DOE. See Letter from Ernest Jeter to Mayor Bloomberg, dated May 11, 2003, Exhibit BB.

9.      On February 13, and March 1, 2004, plaintiff's co-worker, Steve Lent filed a police report complaining that he felt threatened by plaintiff.  See New York City Police Department Complaint, dated February 13, 2004, Exhibit R.  Plaintiff made sexually explicit remarks to Mr. Lent about his wife and daughter.  See Jeter Dep. at 180-13-183:10, Exhibit C; and Letter from Steve Lent to Rachel Henderson, dated March 1, 2004, Exhibit S.  Penny LeBlang also submitted a statement on March 1, 2004 confirming that she heard plaintiff make remarks to Mr. Lent that were of a sexual nature.  See LeBlang Statement, dated March 1, 2004, Exhibit T.

10.      After Mr. Lent submitted his complaint, plaintiff filed an EEO complaint against Mr. Lent on March 8, 2004 for purported harassment.  See Jeter Dep. at 132:11-134:8, Exhibit C; and Jeter EEO Complaint, dated March 8, 2004, Exhibit CC.

11.      To resolve the complaints Messrs. Lent and Jeter filed against each other, Mr. Lent was transferred to eliminate any contact between the two.  See Henderson e-mail, dated March 8, 2004, Exhibit DD.

12.     On June 4, 2004, plaintiff was issued another letter from the District 75 Superintendent's Office informing him that he had been remiss in not keeping up-to-date attendance cards, maintaining "Progress Notes" on his students on his Related Service Attendance Cards, or keeping a daily log of his activities. See Letter to Ernest Jeter from Margo Levy, dated June 4, 2004, Exhibit W.

13.     After plaintiff was issued the June 4 letter, plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") on July 6, 2004, alleging that he was discriminated against because of his race. See NYSDHR Complaint, sworn to July 6, 2004, Exhibit EE.

14.     The NYSDHR dismissed plaintiff's complaint in a Determination and Order, dated October 6, 2005. See NYSDHR Determination and Order, dated October 6, 2005, Exhibit FF.

15.     On September 23, 2004, a parent complained to Local Instructional Superintendent ("LIS") Fran Dreyfus that plaintiff had not given her sons their mandated counseling services for the previous school year and that when she spoke to plaintiff about her sons, plaintiff did not know who she or her sons were. See Deposition of Sylvia Serra, December 16, 2009 ("Serra Dep."), at 30:18-32:11, and 34:8-14, Exhibit G; and SCI Intake Complaint Form, dated October 8, 2004, Exhibit J. Plaintiff was also rude and hostile to the parent, Ms. Serra. See Serra Dep. at 34:15-35:11, and 43:20-45:10, Exhibit G.

16.     Upon receiving the complaint, LIS Dreyfus directed Assistant Principal Rosie DeMarco to review plaintiff's Related Service Attendance cards and sign-in and sign-out sheets. See Deposition of Fran Dreyfus, December 14, 2009 ("Dreyfus Dep."), at 58:6-59:8, Exhibit E.

17.     LIS Dreyfus' subordinates reported that they could find no evidence that plaintiff provided any mandated counseling services for the previous year. See Dreyfus Dep. at 64:3-65:10, 119:19-22, Exhibit E.

18.     LIS Dreyfus found discrepancies in plaintiff's Related Service Attendance cards. See Dreyfus Dep. at 181:17-182:8, Exhibit E.  Plaintiff indicated on his Related Service Attendance cards that he counseled students on days the school was closed, such as a snow day or on a Sunday, and on days the students were absent. See SCI Memorandum, dated December 16, 2004, and Related Service Attendance Cards, Exhibit I.

19.     LIS Dreyfus then reported the parent's complaints about plaintiff to the Special Commissioner of Investigation for the New York City School District ("SCI") on October 8, 2004. See SCI Intake Complaint Form, dated October 8, 2004, Exhibit J.

20.     DOE issued two additional letters to plaintiff's file, dated October 18 and November 30, 2004, documenting his failure to properly document that he was providing mandated counseling services to special education students. See Letters to Ernest Jeter, dated October 18 and November 30, 2004, Exhibits X and Y.  He received the October 18 letter on October 20 and the November 30 letter on December 2. Id.

21.     Plaintiff then filed a complaint with DOE's Office of Equal Opportunity on January 17, 2005, alleging, among other things, that the October 18 and November 30, 2004 letters were discriminatory. See Jeter EEO Complaint, dated January 17, 2005, Exhibit GG.

22.     SCI conducted an investigation into the allegations against plaintiff and interviewed the Principal, several 811K teachers and the parent who complained that her sons were not being seen by plaintiff.  SCI also reviewed plaintiff's Related Service Attendance Cards and student attendance sheets. See  SCI Interview Notes and Investigator's Final Report, Exhibit K.

23.    Based on SCI's investigation, the allegation that plaintiff submitted falsified time records and deprived students of mandated counseling services was substantiated. SCI recommended that plaintiff's employment with DOE be terminated.  See SCI Letter from Regina Loughran to Joel Klein, dated February 18, 2005, Exhibit L.

24.    Plaintiff then filed another complaint with DOE's Office of Equal Opportunity to complain that he was again being discriminated against because of his race.  See Jeter EEO Complaint, dated April 4, 2005, Exhibit HH.

25.    Plaintiff received a letter to his file for falsely reporting that he provided mandated counseling services to students when he had not and disciplinary charges were preferred against plaintiff for his misconduct.  See Letter to Ernest Jeter, dated April 7, 2005, and Charges and Specifications, dated June 6, 2005, Exhibits Z and M, respectively.

26.    After plaintiff received the April 7 letter, he sent an email to Mayor Michael Bloomberg on April 18, 2005 complaining that he was being discriminated against because of his race.  See Jeter e-mail to Mayor Michael Bloomberg, dated April 18, 2005, Exhibit II.  Plaintiff also filed another complaint with DOE's Office of Equal Opportunity on June 1, 2005, to allege additional incidents of discrimination.  See Jeter EEO Complaint, dated June 1, 2005, Exhibit JJ.

27.    As a result of plaintiff's misconduct that was substantiated by SCI, DOE suspended plaintiff from his duties as a guidance counselor, effective July 1, 2005, and reassigned him to 400 First Avenue.  See Letter to Ernest Jeter from Judy Nathan, dated June 23, 2005, Exhibit AA.  While plaintiff was suspended from his duties and instructed to report to 400 First Avenue, plaintiff continued to receive his full salary.  See Jeter Dep. at 31:4-32:9, Exhibit C; and Letter to Ernest Jeter from Judy Nathan, dated June 23, 2005, Exhibit AA.

28.    After plaintiff was suspended from his duties, he filed another discrimination complaint with the NYSDHR. <u>See</u> NYSDHR Verified Complaint, sworn to August 11, 2005, Exhibit KK. The NYSDHR dismissed plaintiff's complaint in a Determination and Order, dated March 16, 2006, Exhibit LL.

29.    While plaintiff was reassigned to 400 First Avenue, he called Superintendents Susan Erber and Bonnie Brown motherfuckers. <u>See</u> Brown Dep. at 62:23-64:10, Exhibit D. An additional specification was then preferred against plaintiff for calling Superintendents Erber and Brown motherfuckers. <u>See</u> Specification, dated June 29, 2006, Exhibit N.

30.    Less than a month after the June 29th specification was preferred against plaintiff, he filed the instant complaint on July 27, 2006. <u>See</u> Complaint, Exhibit A.

31.    Plaintiff admitted during the hearing for the disciplinary charges that he incorrectly marked his Related Service Attendance cards to indicate that he saw students on a snow day or weekend. <u>See</u> Transcript from 3020-a Disciplinary Hearing ("3020-a Tr."), at 3442:21-3444:16, 3457:20-3460:24, and 4219:16-4221:2, Exhibit O.

32.    Despite plaintiff's admission that his Related Service Attendance cards were inaccurate, the 3020-a Hearing Officer, Calvin William Sharpe, dismissed all of the charges against plaintiff relating to his failure to provide mandated counseling services to special education students. Hearing Officer Sharpe determined that on 24 occasions, plaintiff incorrectly recorded that students received counseling when the students were either absent or the school was closed. Nonetheless, Hearing Officer Sharpe determined that 24 errors was insufficient to support a finding that plaintiff's Related Service Attendance cards were inaccurate. <u>See</u> 3020-a Decision at 35-6, Exhibit P.

33.     Hearing Officer Sharpe then ordered that plaintiff be returned to his duties as a guidance counselor at 811K.  See 3020-a Decision at 100, Exhibit P.

34.     Plaintiff was reassigned to 53K in Brooklyn because, at the time, the administration at 811K was unstable and returning plaintiff to 811K would be disruptive to the running of the school.  See Brown Dep. at 42:17-43:3 and 44:16-24, Exhibit D.

35.     Plaintiff grieved his assignment to 53K and the hearing officer, Conrad Reitz, denied plaintiff's grievance and found that Hearing Officer Sharpe exceeded his authority in directing the assignment of plaintiff to 811K.  See Step 2 Grievance Decision, dated October 19, 2007, Exhibit Q.

36.     Plaintiff remains employed by DOE.  See Jeter Dep. at 34:8-13, Exhibit C.

## PLAINTIFF'S DISCRIMINATION CLAIMS

37.     Plaintiff claims that Susan Erber, Bonnie Brown, Rosina DeMarco, Steve Lent, Penny LeBlang, Michael Bisogna, Thomas Fennell, Richard Condon, Rachel Henderson, Doris CoPenny, Joel Klein, and another individual, whose full name is unknown to plaintiff, discriminated against him because he is African-American.  See Jeter Dep. at 43:3-44:6, Exhibit C.  Ms. Henderson and Ms. CoPenny are African-American.  See Jeter Dep. at 125:4-23, Exhibit C.

38.     Plaintiff claims that Superintendents Erber, Brown, LIS Dreyfus, Assistant Principal ("AP") DeMarco, and Ms. CoPenny discriminated against him because they caused disciplinary charges to be preferred against him.  See Jeter Dep. at 53:3-21, and 125:7-18, Exhibit C.

39.     Plaintiff claims that AP DeMarco discriminated against him by collecting his timesheets, testifying at plaintiff's 3020-a disciplinary hearing, and submitted evidence that he referred to her as a Nazi.  See Jeter Dep. at 56:8-59:21, and 60:22-62:9, Exhibit C.  LIS

Dreyfus had instructed AP DeMarco to collect his timecards and plaintiff told AP DeMarco that it was immoral for her to collect the timecards and that the Nazis were only following orders at Nuremberg too. See Jeter Dep. at 56:8-58:16, Exhibit C.

      40.    Plaintiff claims that Steven Lent discriminated against him by testifying at his 3020-a disciplinary hearing, smiled and grimaced at plaintiff, asked plaintiff to attend a Parent-Teacher Association meeting, once stated that plaintiff knew how to read the union contract, and filed a police complaint against plaintiff. See Jeter Dep. at 62:15-64:11, 68:4-73:1, 80:25-88:19, Exhibit C. Plaintiff never saw the police report but believed it was discriminatory. See Jeter Dep. at 63:12-19, Exhibit C; and New York City Police Department Complaint, dated February 13, 2004, Exhibit R. In a letter dated March 1, 2004, Mr. Lent informed Principal Henderson that he felt threatened by plaintiff's actions. See Letter from Steve Lent to Rachel Henderson, dated March 1, 2004, Exhibit S.

      41.    Plaintiff believed that Mr. Lent was attempting to provoke plaintiff into attacking him and stated to a co-worker that "This white man is trying to provoke me to attack him." See Jeter Dep. at 81:7-84:6, and 162:19-163:12, Exhibit C.

      42.    Plaintiff claims that Penny LeBlang discriminated against him because she confirmed during plaintiff's 3020-a disciplinary hearing that plaintiff made harassing statements to Mr. Lent. See Jeter Dep. at 88:20-90:23, Exhibit C. Ms. LeBlang heard plaintiff make several sexually lewd comments to Mr. Lent about him and his wife. See LeBlang Statement, dated March 1, 2004, Exhibit T. Mr. Lent also claimed that plaintiff made comments of a sexual nature about his daughter. See Jeter Dep. at 63:20-64:11, Exhibit C.

      43.    Plaintiff claims that SCI Investigator Michael Bisognia discriminated against him because he testified at plaintiff's 3020-a disciplinary hearing, forwarded SCI's final report on plaintiff to the Brooklyn District Attorney's office, and substantiated the complaints

against plaintiff, but did not substantiate any of the complaints plaintiff made to Mayor Michael Bloomberg. See Jeter Dep. at 90:24-99:9, Exhibit C; and Letter from Ernest Jeter to Mayor Bloomberg, dated May 11, 2003, Exhibit BB.

44.     Plaintiff claims that SCI Investigator Thomas Fennell discriminated against him because he did not substantiate any of the complaints plaintiff filed with SCI and interviewed individuals plaintiff told SCI Investigators not to interview. See Jeter Dep. at 99:10-110:6, and 114:10-115:8, Exhibit C.

45.     Plaintiff claims that Special Commissioner Richard Condon and former Chancellor Joel Klein discriminated against plaintiff because they did not substantiate any of the complaints plaintiff filed. See Jeter Dep. at 115:9-117:20, and 125:24-129:7, Exhibit C.

46.     Plaintiff claims that Principal Henderson discriminated against him because she preferred charges against plaintiff but did not prefer any charges against Mr. Lent. See Jeter Dep. at 124:15-125:3, Exhibit C.

47.     Plaintiff claims that an SCI Investigator, whose first name is unknown to plaintiff and identified as Delgado, discriminated against him by not substantiating any of the complaints plaintiff filed against Mr. Lent and made another SCI Investigator, Larry Kendricks retire. See Jeter Dep. at 117:21-118:16, and 120:1-122:19, Exhibit C; and Deposition of Thomas Fennell, April 15, 2010 ("Fennell Dep."), nos. 4 and 5, Exhibit H. SCI Investigator Kendricks is African-American and plaintiff believed that he would have substantiated plaintiff's complaints against Mr. Lent and unsubstantiated the complaints against plaintiff had he not retired. See Jeter Dep. at 120:1-122:3, Exhibit C.

48.     SCI conducted an investigation of plaintiff's complaints against Mr. Lent and was unable to substantiate any of them. See SCI Investigative Report, dated June 9, 2005, Exhibit U.

49.     Plaintiff never heard anyone make a derogatory statement about African-Americans. <u>See</u> Jeter Dep. at 118:17-119:25, Exhibit C.

50.     Plaintiff is not aware of any other guidance counselors who were discriminated against because they are African-American. <u>See</u> Jeter Dep. at 129:10-13, Exhibit C.

**<u>PLAINTIFF'S RETALIATION CLAIMS</u>**

51.     Plaintiff claims that Susan Erber, Bonnie Brown, Francine Dreyfus, Roselyn Hoff, Rosina DeMarco, Doris CoPenny, Margo Levy, Rachel Henderson, Conrad Reitz, Michael Bisognia, Steve Lent, Penny LeBlang, Michael Best, Richard Condon, and Joel Klein retaliated against him. <u>See</u> Jeter Dep. at 129:14-130:25, Exhibit C.

52.     Plaintiff claims that Superintendent Erber and Brown, LIS Dreyfus, Principal Henderson, AP CoPenny and Ms. Hoff retaliated against him by causing disciplinary charges to be preferred against him. <u>See</u> Jeter Dep. at 125:7-18, 131:1-14, 157:23-158:8, 162:6-18, 167:14-168:12, and 210:22-211:15, Exhibit C.

53.     Plaintiff also claims that Superintendent Brown retaliated against him by writing a letter to his file for having excessive absences, reassigning him to 400 First Avenue, and assigning him to P53K instead of 811K after the 3020-a hearing officer's decision. <u>See</u> Jeter Dep. at 131:11-133:7, 138:1-140:9, 144:20-146:7, and 148:22-24, Exhibit C; and Letter to Ernest Jeter from Bonnie Brown, dated May 9, 2003, Exhibit V.

54.     Plaintiff claims that LIS Dreyfus retaliated against him by instructing AP DeMarco to check his time records, writing letters to plaintiff's file, and instructing plaintiff that his son could not be present at a parent-teacher conference. <u>See</u> Jeter Dep. at 148:25-151:12, 159:12-160:21, 162:3-5, and 170:18-172:12, Exhibit C; Letters from Fran Dreyfus to Ernest

11

Jeter, dated April 7, 2005, November 30, 2004, and October 18, 2004, Exhibits Z, Y, and X, respectively.

55.    Plaintiff claims AP DeMarco retaliated against him by collecting his timesheets, testifying at plaintiff's 3020-a disciplinary hearing, and submitting evidence at the 3020-a hearing that he referred to her as a Nazi. See Jeter Dep. at 56:8-59:21, 60:22-62:9, and 210:10-21, Exhibit C.

56.    Plaintiff claims that Roslyn Hoff, supervisor of Psychologists, retaliated against him by instructing Mr. Lent to file a police complaint against plaintiff. See Jeter Dep. at 162:6-18, Exhibit C.  Plaintiff believes Ms. Hoff instructed Mr. Lent to file a police report because plaintiff stated to Ms. Hoff that "This white man is trying to provoke me to attack him." See Jeter Dep. at 82:18-24, and 162:19-163:12, Exhibit C.

57.    Plaintiff does not possess any evidence that Ms. Hoff instructed Mr. Lent to file a police complaint against plaintiff. See Jeter Dep. at 163:13-164:9, Exhibit C.

58.    Plaintiff claims that Margo Levy retaliated against him because she testified at plaintiff's 3020-a disciplinary hearing and wrote a letter to plaintiff's file. See Jeter Dep. at 165:19-167:13, Exhibit C; and Letter to Ernest Jeter from Margo Levy, dated June 4, 2004, Exhibit W.

59.    Plaintiff claims that Mr. Lent retaliated against him by grimacing at him and testifying at plaintiff's 3020-a hearing that plaintiff made sexually explicit remarks about Mr. Lent's wife and daughter to him. See Jeter Dep. at 175:3-19, Exhibit C.

60.    Plaintiff claims that Penny LeBlang retaliated against him because she testified during plaintiff's 3020-a disciplinary hearing and wrote a statement that confirmed that plaintiff made sexually explicit remarks about Mr. Lent's wife and daughter to Mr. Lent. See Jeter Dep. at 180:13-183:10, Exhibit C; and LeBlang Statement, dated March 1, 2004, Exhibit T.

61.     Plaintiff claims that Hearing Officer Conrad Reitz retaliated against him because of his Step 2 grievance decision and he provided plaintiff's attendance records to SCI. See Jeter Dep. at 187:8-16, and 190:3-21, Exhibit C; and Step 2 Grievance Decision, dated October 15, 2007, Exhibit Q.

62.     Plaintiff claims that SCI Investigator Bisognia retaliated against him because he testified at plaintiff's 3020-a disciplinary hearing, forwarded SCI's final report on plaintiff to the Brooklyn District Attorney's office, and substantiated the complaints against plaintiff, but did not substantiate any of the complaints plaintiff made about Steve Lent to Mayor Michael Bloomberg. See Jeter Dep. at 90:24-99:9, and 191:11-20, Exhibit C; and Letter from Ernest Jeter to Mayor Bloomberg, dated May 11, 2003, Exhibit BB.

63.     Plaintiff claims that Michael Best, DOE's General Counsel, retaliated against plaintiff because he allowed plaintiff to be discriminated against. See Jeter Dep. 206:22-210:9, Exhibit C.

64.     Plaintiff claims that Commissioner Condon retaliated against plaintiff by not properly supervising his staff. See Jeter Dep. at 191:21-192:7, Exhibit C.  Plaintiff believes that Commissioner Condon would have substantiated all of the complaints plaintiff filed and unsubstantiated the complaints against plaintiff had he properly supervised his staff. See Jeter Dep. at 192:8-14, Exhibit C.

65.     Plaintiff claims that former Commissioner Joel Klein retaliated against him by permitting 3020-a disciplinary charges to be preferred against him. See Jeter Dep. at 205:11-206:21, Exhibit C.

13

Dated: New York, New York
       November 18, 2011

                                    MICHAEL A. CARDOZO
                                    Corporation Counsel of the City of New York
                                    Attorney for Defendants
                                    100 Church Street, Room 2-115
                                    New York, New York 10007
                                    212-788-1158

                                    By: _____

                                      Daniel Chiu
                                    Assistant Corporation Counsel

To:     GLASS KRAKOWER LLP
         Attorneys for Plaintiff
         11 Penn Plaza, 5th Floor
         New York, New York 10001
         212-537-6859

## CERTIFICATION OF SERVICE

I, Daniel Chiu, hereby certify that:

On November 18, 2011, I served the annexed Defendants' Rule 56.1 Statement by depositing a true and correct copy, into the custody of United States Postal Service, in an enclosed envelope with sufficient postage for first-class mail addressed to:

Glass Krakower LLP
Attorneys for Plaintiff
11 Penn Plaza, 5th Floor
New York, New York 10001

I certify under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       November 18, 2007

_____
Daniel Chiu