UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ERNEST JETER,

**DECLARATION IN SUPPORT OF PLAINTIFF'S CROSS - MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR <u>SUMMARY JUDGMENT</u>**

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF INVESTIGATION OF THE CITY OF NEW YORK, and THE OFFICE OF SPECIAL COMMISSIONER OF INVESTIGATION FOR NEW YORK CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, *et al.*,

06-CV-3687
(NGG)(LB)

Defendants.
------------------------------------------------------------x

BRYAN D. GLASS, Esq., hereby declares pursuant to 28 U.S.C. Section 1746 and under penalty of perjury as follows:

1.      I am a member of Glass Krakower LLP and attorney for Plaintiff Ernest Jeter in the above-captioned action.  I am familiar with the matters set forth below based on my representation of Mr. Jeter in this case and during his Section 3020-a trial, in addition to the review of the case file in this matter.

2.      This declaration is submitted in support of Plaintiff's cross-motion for summary judgment for a finding of liability in this action, and in opposition to Defendants' motion for summary judgment seeking to dismiss the Complaint.

3.      Annexed hereto as Exhibit 1 is a true copy of Judge Trager's Decision on Defendants' Motion to Dismiss, dated March 4, 2008.

4.      Annexed hereto as Exhibit 2 is a true copy of correspondence from the Mayor's Office, SCI, OSI, and the Medical Bureau between June 2003 and December 2004.

5.      Annexed hereto as Exhibit 3 is a true copy of excerpts of Section 3020-a trial testimony, dated March 31, 2006, of 811k guidance counselor Steven Lent.

6.      Annexed hereto as Exhibit 4 is a true copy of a 3/10/04 counseling memorandum from Principal Rachael Henderson to Ernest Jeter and other correspondence from OEO investigators resolving the 2/13/04 incident as matter of workplace disharmony.

7.      Annexed hereto as Exhibit 5 is a true copy of a 5/19/04 email from Ernest Jeter to Principal Rachael Henderson.

8.      Annexed hereto as Exhibit 6 is a true copy of a 9/23/04 letter from Assistant Principal Rosina DeMarco to Ernest Jeter.

9.      Annexed hereto as Exhibit 7 is a true copy of excerpts of deposition testimony of parent Sylvia Serra.

10.     Annexed hereto as Exhibit 8 is a true copy of an OEO closing memorandum of Plaintiff's complaint against Francine Dreyfus dated 4/21/05 and other related correspondence regarding the "investigation" against Francine Dreyfus.

11.     Annexed hereto as Exhibit 9 is a true copy of excerpts of Section 3020-a trial testimony of Assistant Principal Rosina Demarco.

12.     Annexed hereto as Exhibit 10 is a true copy of an email from Francine Dreyfus to Rachel Henderson, dated 2/18/05, documenting Dreyfus's orchestration of scrutiny of Plaintiff's work through Rosina DeMarco.

2

13.     Annexed hereto as Exhibit 11 is a true copy of an SCI report unsubstantiated against Assistant Principal Rosina DeMarco dated December 5, 2005.

14.     Annexed hereto as Exhibit 12 is a true copy of emails from Ernest Jeter to SCI investigators dated April and May 2006.

15.     Annexed hereto as Exhibit 13 is a true copy of an email from Ernest Jeter to payroll secretary Mary Flynn, dated 8/11/06, complaining about the unilateral deduction from his salary.

16.     Annexed hereto as Exhibit 14 is a true copy of Plaintiff's complaint to the NYC Department of Investigation's Rose Hearn, dated 8/15/06.

17.     Annexed hereto as Exhibit 15 is a true copy of an Education Law 3020-a packet of rules received by Ernest Jeter after service of disciplinary charges as well as the UFT-DOE collective bargaining agreement, Article 21, reflecting contractual amendments to the 3020-a process.

18.     Annexed hereto as Exhibit 16 is a true copy of a letter from DOE HR Director Andrew Gordon to Ernest Jeter, dated 7/30/07.

19.     Annexed hereto as Exhibit 17 is a true copy of the applicable provision of the UFT-DOE guidance counselor contract regarding the Chapter 683 program.

20.     Annexed hereto as Exhibit 18 is a true copy of a letter from District 75 Superintendent Bonnie Brown to Ernest Jeter, dated June 8, 2007.

21.     Annexed hereto as Exhibit 19 is a true copy of a letter from UFT representative Alphonse Mancuso to Ernest Jeter, dated July 2, 2007.

22.     Annexed hereto as Exhibit 20 is a true copy of a Chapter 683 Summer Vacancy Circular No. 11, 2007-08 document.

23.     Annexed hereto as Exhibit 21 is a true copy of an email from Ernest Jeter to Chancellor Joel Klein, dated 8/11/06.

24.     Annexed hereto as Exhibit 22 is a true copy of Conrad Reitz's Step 2 grievance decision dated 10/19/07 signed off on by Bonnie Brown on 10/25/07.

25.     Annexed hereto as Exhibit 23 is a true copy of Ernest Jeter's N and then converted Unsatisfactory APPR annual rating for the 2004-05 school year.

26.     Annexed hereto as Exhibit 24 is a true copy of Progress Notes re Ernest Jeter's visits to Veterans Hospital due to workplace stress caused by DOE administrators dated 2/27/03 and 3/11/03.

27.     Annexed hereto as Exhibit 25 are various newspaper articles regarding the circumstances surrounding District 75 Superintendent Susan Erber's resignation from the NYCDOE in January 2006, as well as an article describing past Medicaid fraud in City special education programs dated July 22, 2009.


Dated: New York, New York
        November 30, 2011

                                GLASS KRAKOWER LLP

                    By:         _____
                                Bryan Glass, Esq.
                                11 Penn Plaza, 5th Floor
                                New York, NY 10001
                                (212) 537-6859

To: Michael A. Cardozo
    Corporation Counsel of the City of New York
    Attorney for Defendants
    100 Church Street, Room 2-115
    New York, New York   10007
    212-788-1158

Attn: Daniel Chiu
    Assistant Corporation Counsel

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X

ERNEST JETER

       Plaintiff,                        MEMORANDUM AND ORDER

    -against-                             Civil Action No.
                                   CV-06-3687(DGT)

NEW YORK CITY DEPARTMENT OF
EDUCATION, et al.,

       Defendant.

--------------------------------X

Trager, J:

    Plaintiff, Ernest Jeter,[1] has worked for the New York City
Department of Education ("DOE") as a guidance counselor since
1994.  On July 27, 2006, Jeter brought this complaint alleging
that defendants – the DOE, the New York City Department of
Investigation, and the Special Commissioner of Investigation for
the New York City School District – have discriminated against
him because he is black and retaliated against him for engaging
in protected activity.  Jeter claims he is entitled to relief
under: (1) the Fourteenth Amendment to the United States
Constitution, (2) Title VII of the Civil Rights Act of 1964, 42
U.S.C. § 2000e, et seq., (3) the civil rights provisions of 42

---

    [1] Jeter, who is not an attorney, is representing himself pro
se.  "It is well established that the submissions of a pro se
litigant must be construed liberally and interpreted 'to raise
the strongest arguments that they suggest.'"  Triestman v. Fed.
Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (collecting
authority).

U.S.C. §§ 1981, 1983, 1985, and 1986, (4) and New York Human Rights Law, Executive Law § 296.

This action is only the most recent of several judicial and administrative actions Jeter has brought against his employer for discrimination.  In 1999, Jeter sued the DOE in this court alleging employment discrimination, and the DOE prevailed on summary judgment.  In 2004, and again in 2005, Jeter filed complaints with the New York State Division of Human Rights ("DHR") and the United States Equal Employment Opportunity Commission ("EEOC").  Each court and agency that has considered Jeter's complaints has found the DOE not liable for discrimination.

Defendants have moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Jeter's current complaint, arguing that his claims are either untimely, barred by res judicata, or otherwise meritless as a matter of law.  For the reasons stated below, defendants' motion to dismiss is granted in part and denied in part.

### Background

### (1)

### Jeter's First Action in this Court

Jeter filed his first complaint with this court on March 6, 1999.  In it, he alleged that the DOE discriminated against him

because of his race and disability, and in retaliation for grievances.  Summary judgment was granted in favor of defendant because certain of Jeter's claims were time-barred, and Jeter could not establish a prima facie case for those claims that were timely.  <u>Jeter v. New York City Dep't of Education</u>, No. 99 Civ. 2537 (E.D.N.Y. Mar. 30, 2004).  Jeter did not appeal.

**(2)**

**Jeter's Claims with the DHR and the EEOC**

In 2004 and 2005, Jeter filed two complaints with the DHR against the DOE alleging employment discrimination ("DHR I" and "DHR II").

Jeter filed DHR I on July 6, 2004, alleging that the DOE treated him differently from his white colleagues because he is black and had previously complained of discrimination at the DOE. Specifically, Jeter's DHR I complaint alleged the following:

1. I am a Black male who filed a previous complaint with EEOC in or about 1998.

2. In 1994, I was hired by [the DOE] as a Guidance Counselor.  My time, attendance and work performance have been satisfactory during my employment.

3. For the past five years, I have been a counselor at P.S. 811K at 286K, located in Brooklyn, NY.  My immediate supervisor during this time has been Rachel Henderson, female, who is Black.  There is only one other counselor, Steve Lent, who is a White male.

4. In October 2003, my caseload was increased from 30

3

       students to 82 students by Rachel Henderson.  On
information and belief, I was the only one who had
an increase in my caseload.

  5.    In March 2004, my caseload was increased again.  I
was informed by Margo Levy, female, White, who is
the Supervisor of Social Workers that the increase
was mandated by the Superintendent.

  6.    In May of 2004, I was written up for
insubordination.  I was accused of not performing
the duties of my job.  I contacted the union and
the matter is still pending.  On June 30, 2004, I
received my evaluation which rated me
satisfactory, but rated my attendance
unsatisfactory.

  7.    I believe I am being treated differently because I
am a Black male who previously filed a complaint
with the EEOC.  Other non-Black counselors are not
treated in this manner.

Defs.' Decl. Supp. Mot. Dismiss at Ex. F ("Jeter's DHR I

complaint").

     Jeter filed DHR II on August 11, 2005, alleging that the DOE

had retaliated against him for his DHR I complaint.

Specifically, Jeter's DHR II complaint alleged the following:

  1.    I filed prior complaint with the New York State
Division of Human Rights.  Because of this, I have
been subject to unlawful discriminatory actions.

  2.    Since April, 2005, I have been assigned to the
District Office at 400 First Avenue, New York, NY
10010.

  3.    In September, 2004, I have been treated
disparately from other related service providers.
Every Monday during the 2004-5 school year, my
records have been checked and I receive warning
letters and counselings in regard to the records
by Francine Dryfus, Local Instructional
Superintendent, whereas no other related service
provider undergoes such scrutiny.  To my

Case 1:06-cv-03687-NGG-LB Document 93 Filed 12/07/11 Page 10 of 89 PageID #: 1914

> knowledge, no formal complaint has ever been made
> to the local Instructional Supervisor by my
> Principal Rachel Henderson.
>
> 4.   I have been falsely accused of excessive
>      absenteeism by Francine Dryfus and Susan Erber,
>      Superintendent of District 75 and brought up on
>      unwarranted disciplinary charges.

Id. at Ex. I ("Jeter's DHR II complaint").

On October 6, 2005, and March 16, 2006, respectively, the
DHR resolved each of Jeter's actions in favor of the DOE, finding
that neither complaint was supported by probable cause. In each
case, the DHR found that the DOE advanced a non-discriminatory,
business-related, and non-pretextual reason for treating Jeter as
it did.

After denying each claim, the DHR advised Jeter of his right
to appeal its decision to the New York State Supreme Court and to
file his Title VII claims with the EEOC. Jeter did not appeal
either decision within the state court system but did pursue his
Title VII claims with the EEOC. On January 11, 2006, and May 4,
2006, respectively, the EEOC adopted the findings of each DHR
decision without independent review ("EEOC I" and "EEOC II"), and
issued him right-to-sue letters, informing him that he could
pursue his claims in federal court within ninety days.

(3)

**Jeter's Current Action**

Jeter brought his current action in this court on July 27, 2006, more than ninety days after EEOC I, but within ninety days of EEOC II.  His complaint ("Jeter II") alleges that the DOE has waged a continuous campaign of discrimination and retaliation against him starting in April 2003.[2]  In particular, Jeter accuses the DOE of the following unlawful employment practices that were either motivated by racial animus or in retaliation for Jeter's prior protected activity: (1) the DOE transferred and reassigned Jeter several times; (2) the DOE assigned certain job responsibilities to Jeter that were below his level of competence and experience, purportedly in order to coerce Jeter into quitting, or to prevent him from adequately completing his assigned tasks, hence giving the DOE grounds to discipline him; (3) Jeter was verbally abused and threatened; (4) Jeter was given negative evaluations and threatened with disciplinary actions; (5) the DOE brought disciplinary charges against Jeter several times; (6) the DOE closely scrutinized Jeter's performance, and his attendance record in particular, in order to bring spurious disciplinary charges against Jeter; and (7) the DOE either

---

[2] As explained below, the statute of limitations for Sections 1981 and 1983 bars any claims arising prior to July 27, 2003, and Title VII's statute of limitations bars any claims arising prior to October 15, 2004.

committed or suborned perjury in the course of Jeter's various
disciplinary proceedings.

## Discussion

### (1)

### The Standard Governing Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a
complaint that "fails to state a claim upon which relief can be
granted" should be dismissed.  Fed. R. Civ. P. 12(b)(6).  To
resolve a 12(b)(6) motion, all factual allegations set forth in
the complaint must be accepted as true and all reasonable
inferences must be drawn in favor of the plaintiff.  See Kassner
v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).
"The need to draw all inferences in the plaintiff's favor has
heightened application when the plaintiff is proceeding pro se,"
as Jeter is in this case.  McInerney v. Rensselaer Polytechnic
Inst., 505 F.3d 135, 138 (2d Cir. 2007).  Moreover, "[a] court
may take judicial notice of the records of state administrative
procedures, as these are public records, without converting a
motion to dismiss to one for summary judgment."  Evans v. New
York Botanical Garden, No. 02 Civ. 3591, 2002 U.S. Dist. LEXIS
16434, *11-12 (S.D.N.Y. Sept. 9, 2002).

In its motion to dismiss, the DOE argues that: (1) the
election of remedies doctrine bars Jeter's New York Human Rights

Law claims because Jeter previously brought them before the DHR, (2) Jeter's Sections 1985 and 1986 claims fail as a matter of law because of intracorporate immunity, (3) res judicata bars Jeter's current claims because he previously litigated them all before either this court or the DHR, (4) Jeter's Title VII claims are untimely, and (5) Jeter fails to make out a prima facie case in support of his Section 1983 claims.

<div align="center">

**(2)**

**Jeter's Claims Under New York Human Rights Law**

</div>

The election of remedies doctrine precludes any claims under the New York Human Rights law that Jeter has previously brought in either of his two DHR actions. New York's Executive Law provides that,

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person had filed a complaint hereunder or with any local commission on human rights . . . provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

N.Y. Exec. Law § 297(9). "Thus, absent application of one of the three exceptions, the statute divests courts of jurisdiction over human rights claims which have been presented to the DHR."

<u>Hamilton v. Niagara Frontier Transp. Auth.</u>, No. 00 Civ. 300, 2007 U.S. Dist. LEXIS 55522, *28-29 (W.D.N.Y. July 31, 2007) (citing <u>York v. Association of the Bar of the City of N.Y.</u>, 286 F.3d 122, 127 (2d Cir. 2002); <u>Moodie v. Federal Reserve Bank of N.Y.</u>, 58 F.3d 879, 882 (2d Cir. 1995) ("[A] state law depriving its courts of jurisdiction over a state law claim also operates to divest a federal court of jurisdiction to decide the claim.")). Accordingly, to the extent that Jeter's New York Human Rights Law claims in his complaint make the same allegations he made in his DHR proceedings, they are dismissed.

**(3)**

**Jeter's Claims Under Sections 1985 and 1986**

In addition to alleging general employment discrimination and retaliation, which are dealt with below, Jeter also alleges that the defendants <u>conspired</u> to discriminate and retaliate against him, in violation of Sections 1985 and 1986. Section 1985 makes it illegal to <u>conspire</u> to violate somebody's civil rights, and its third subsection provides,

> [I]f two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory

9

> the equal protection of the laws . . . the party so
> injured or deprived may have an action for the recovery
> of damages, occasioned by such injury or deprivation,
> against any one or more of the conspirators.

42 U.S.C. § 1985(3).  In addition, Section 1986 imposes liability

on persons for failing to prevent the kinds of conspiracies

contemplated by Section 1985.  42 U.S.C. § 1986.

Defendants argue that the intracorporate immunity doctrine

bars the application of Sections 1985 and 1986 in this case.

Generally, the intracorporate immunity doctrine has been held to

preclude liability when the alleged conspirators work for the

same organization, Fabbricante v. City of New York, No. 01 Civ.

5575, 2002 U.S. Dist. LEXIS 27815, *24-25 (E.D.N.Y. Nov. 12,

2002) (quoting Travis v. Gary Community Mental Health Ctr., Inc.,

921 F.2d 108, 110 (7th Cir. 1990)), and "has been extended to

apply to individual members of a single governmental entity," id.

(citing Yeadon v. New York City Transit Auth., 719 F. Supp. 204,

207, 212 (S.D.N.Y. 1989)).  There is an exception, however, to

the intracorporate immunity doctrine that allows a Section 1985

action to proceed against members of the same organization if the

conspirators were "'motivated by an independant personal stake in

achieving the corporation's objective.'" Id. at *25 (quoting

Girard v. 94th St. and Fifth Ave. Corp., 530 F.2d 66, 72 (2d Cir.

1976)).  But "[t]he personal stake must . . . be separate and

apart from the bias itself, or else the exception would swallow

the rule." Id. at *25-26.  Jeter has not alleged that any of the

10

alleged conspirators were motivated by anything other than the same bias and desire to retaliate that permeate his complaint.

Thus, because each entity alleged to have violated Jeter's civil rights is employed by or a part of the City of New York, and because Jeter has not alleged any additional motivation unrelated to his general allegations, the intracorporate immunity doctrine bars Jeter's Section 1985 claims, and they are dismissed.  See, id. at *25-26 (applying the intracorporate immunity doctrine to bar a Section 1985 action against the City of New York, New York City Fire Department employees, and various other employees of different city agencies).  Moreover, since Jeter's Section 1986 claims depend entirely on the viability of his Section 1985 claims, his Section 1986 claims are also dismissed.  See, e.g., id. at *27 ("Having failed to state a claim under Section 1985, plaintiff also fails to state a Section 1986 claim.").

**(4)**

**Jeter's Claims Under Sections 1981 and 1983**

a.  **The Preclusive Effect of Jeter's Prior Judicial and Administrative Actions**

The DOE has argued that Jeter's complaint should be dismissed because each of his claims is precluded by prior judicial or administrative decisions on similar issues.

11

> Under the doctrine of res judicata, or claim
> preclusion, [a] final judgment on the merits of an
> action precludes the parties or their privies from
> relitigating issues that were or could have been raised
> in that action.  Thus, the doctrine bars later
> litigation if [an] earlier decision was (1) a final
> judgment on the merits, (2) by a court of competent
> jurisdiction, (3) in a case involving the same parties
> or their privies, and (4) involving the same cause of
> action.

EDP Med. Computer Sys. v. United States, 480 F.3d 621, 624 (2d

Cir. 2007) (internal citations and quotations ommitted).  The

relevant prior dispositions are Jeter's first action in this

court, commenced in 1999 and decided by summary judgment in 2004,

and his two actions before the DHR, commenced and decided in 2004

through 2006.  The extent to which these prior proceedings

preclude his current claims depends on the nature of the claims,

the similarity of the issues, and Jeter's prior opportunity to

litigate his claims.

###    i.    Jeter's Prior Federal Court Action

Jeter filed his first complaint, Jeter I, against the DOE in

1999.  And in March 2004, summary judgment was granted in favor

of the DOE.  The DOE argues that because many of the events

giving rise to Jeter's current complaint occurred while Jeter I

was pending, Jeter should have brought all of his current

allegations in Jeter I.  According to the DOE, the March 2004

grant of summary judgment decided that nothing the DOE did prior

to March 2004 constituted unlawful discrimination.  Jeter,

however, correctly points out that when a plaintiff has filed

multiple, similar actions, "[r]es judicata does not apply to new rights acquired during the action, which might have been, but which were not, litigated." Humbles v. Reuters America, Inc., No. 05 Civ. 4895, 2006 U.S. Dist. LEXIS 65753, *27-28 (E.D.N.Y. Aug. 31, 2006) (citing SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1464 (2d Cir. 1996); Prime Mgmt. Co., Inc. v. Steinegger, 904 F.2d 811, 816 (2d Cir. 1990)). Accordingly, while Jeter may not relitigate issues that were decided by this court's March 2004 grant of summary judgment, Jeter is not foreclosed from bringing timely claims arising from events which occurred after he filed Jeter I, and which the 2004 summary judgment order did not consider.

**ii. Jeter's Prior DHR Actions**

Jeter did not seek review of either DHR decision in state court, thus, those administrative decisions cannot preclude Jeter's Title VII claims. See Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 728 (2d Cir. 2001) (citing University of Tennessee v. Elliott, 478 U.S. 788, 795-99 (1986)). With regard to his remaining claims under Sections 1981 and 1983, however, unreviewed dispositions of the DHR are "entitled to same issue and claim preclusive effect in federal court that [they] would receive in [New York state] courts." Id.

Therefore, New York law controls whether Jeter's prior DHR proceedings preclude his non-Title VII claims. Id. at 730 n.7.

Under New York law, a prior claim will preclude a subsequent claim when the issues are the same and the party to be estopped had a "full and fair opportunity to contest the decision now said to be controlling." Id. at 730 (citing Schwartz v. Public Adm'r, 24 N.Y.2d 65, 71, 246 N.E.2d 725, 728-29, 298 N.Y.S.2d 955, 960 (1969)). "The burden of proving identity of the issue rests on the proponent of collateral estoppel, while the opponent bears the burden of proving that he . . . did not have a full and fair opportunity to litigate the issue." Id. (citing Schwartz, 298 N.Y.S.2d at 962). Even assuming that the DOE has met its burden of establishing the requisite similarity of the issues – a point which Jeter contests – because the prior DHR proceedings did not afford Jeter a full and fair opportunity to litigate his claims, res judicata does not preclude him from bringing them again in this court. When evaluating whether an unreviewed DHR proceeding afforded a plaintiff a full and fair opportunity to litigate his claims a court should consider, "'the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromised verdict, differences in the applicable law and forseeability of future litigation.'" Id.

In Kosakow v. New Rochelle Radiology Associates, 274 F.3d 706 (2d Cir. 2001), applying these factors to analogous facts,

14

the Second Circuit found that a DHR proceeding did not present a full and fair opportunity to litigate, and therefore, could not preclude a subsequent federal court action advancing the same claims.  Id. at 734-36 (reversing a district court's application of collateral estoppel).  Like the plaintiff in Kosakow, Jeter was able to submit a short complaint with documentation supporting his claims, which the DHR then investigated. But as in Kosakow,

> [t]here is no record of any discovery being conducted,
> nor is there any record of any interviews of witnesses.
> Moreover, there is no record of any type of hearing or
> conference being held between the parties.  It appears
> that the no-probable-cause determination was based
> primarily, if not exclusively, upon a review of the
> papers submitted.

Id. at 734.  Moreover, Kosakow relied heavily on the fact that the plaintiff represented herself before the DHR.  Id. at 736 ("Kosakow was acting pro se.  For this reason, she could not have been expected or able to frame her evidence within the context of the specific legal issues.  Nor would she necessarily have known what facts were most relevant or persuasive in proving her case."); see also id. at 736 n.12.  Following Kosakow, district courts have concluded that DHR actions precluded plaintiffs from subsequently bringing the same claims in federal court only when the plaintiff was represented by counsel during the DHR proceedings.  See, e.g., Janneh v. Regal Entertainment Group, No. 07 Civ. 79, 2007 U.S. Dist. LEXIS 57297, *9-12 (N.D.N.Y. Aug. 4,

2007) (distinguishing Kosakow and noting, "[t]he courts have held
that a full and fair opportunity to litigate issues in a DHR
proceeding exists, even without a hearing, provided the claimant
was represented by counsel in the administrative proceeding"
(emphasis added)).  Therefore, because Jeter is pro se, and
because his opportunity to litigate before the DHR lacked
discovery, witness interviews, and a hearing, Jeter's DHR
proceedings do not preclude his current action.[3]

**b.   The Sufficiency of Jeter's Claims Under § 1983**

The DOE also argues that Jeter's complaint fails to
establish a prima facie case for his Section 1983 claims.
Section 1983 provides,

---

[3] Defendant has failed to cite Kosakow, instead choosing to
rely on DeCinto v. Westchester County Med. Ctr., 821 F.2d 111 (2d
Cir. 1987), and Kirkland v. City of Peekskill, 828 F.2d 104, 107-
09 (2d Cir. 1987).  DeCinto and Kirkland predate Kosakow by more
than ten years, and Kosakow clearly distinguished both.  Kosakow,
274 F.3d at 730.  In DeCinto, the plaintiff was given a full
administrative hearing prior to his challenged discharge, and he
conceded that he had "fleshed out" the relevant issues in the DHR
proceeding.  Id.  In Kirkland, the plaintiff had sought review of
the DHR decision in New York state court.  Id.  Thus, Kosakow
answered the question left unanswered by DeCintio and Kirkland –
a question highly relevant to Jeter's case – i.e., "whether a
determination of no probable cause by the DHR, absent a formal
hearing and absent any subsequent review in state court, serves
to preclude subsequent federal court litigation of an issue
already decided by the DHR."  Id.  Moreover, Kosakow reasoned
that whether a plaintiff is represented by counsel before the DHR
bears heavily on whether that plaintiff was afforded a full and
fair opportunity to litigate her claims.  Kosakow was pro se, as
is Jeter.  Thus, Kosakow is much more relevant to Jeter's case
than are DeCintio or Kirkland, yet defendant relies solely on
DeCintio and Kirkland without mentioning or attempting to
distinguish Kosakow.

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law[.]

42 U.S.C. § 1983.  To establish a prima facie case of

discrimination under Section 1983, a plaintiff must allege that:

"(1) he is a member of a protected class, (2) he was performing

satisfactorily, (3) he was subjected to an adverse employment

action, and (4) the adverse employment action occurred under

circumstances giving rise to an inference of discrimination."

McCray v. New York City Police Dep't., No. 99 Civ. 7035, 2008

U.S. Dist. LEXIS 5368, *7-9 (E.D.N.Y. Jan. 24, 2008) (internal

citations and quotations omitted) (noting that when a plaintiff's

Section 1983 claim is based on his equal protection rights,

courts use the same analytical framework as for Title VII

claims).  A plaintiff must also "allege the violation of a right

secured by the Constitution and laws of the United States, and

must show that the alleged deprivation was committed by a person

acting under color of state law."  Id.  Moreover, to establish a

prima facie case for actionable retaliation, a plaintiff must

allege that he suffered an adverse employment action because he

engaged in protected activity.  See McAllan v. Von Essen, 571 F.

Supp. 2d 672, 679-80 (S.D.N.Y. 2007).

Accepting all of Jeter's factual allegations as true, and,

17

because he is <u>pro se</u>, construing his complaint liberally to raise the strongest arguments it suggests, Jeter's complaint establishes a prima facie case for employment discrimination and retaliation. It is undisputed that Jeter belongs to a protected class. And in his complaint Jeter alleges, <u>inter alia</u>, that the DOE (1) treated him disparately by assigning him responsibilities, such as taking the garbage out, that were below his level of competence and experience, and (2) threatened to and did charge him with disciplinary violations. According to Jeter, the DOE was motivated by racial animus and a desire to retaliate against him for previous complaints he had filed, and these events occurred within the limitations period. If proven true, these acts by the DOE may constitute adverse employment actions. <u>See</u>, <u>e.g.</u>, <u>Washington v. County of Rockland</u>, 373 F.3d 310, 320 (2d Cir. 2004) (holding that a district court erred by concluding that the maintenance of disciplinary charges against plaintiff did not constitute an adverse employment action as a matter of law); <u>Zelnik v. Fashion Inst. of Tech.</u>, 464 F.3d 217, 226 (2d Cir. 2006) (noting that the following acts might constitute adverse employment actions: "negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation period, . . . transfer from library to classroom teaching as an alleged demotion, and assignment to classroom on fifth floor which aggravated teacher's physical

18

disabilities.") Therefore, it cannot be said that Jeter's allegations fail to establish a prima facie case for employment discrimination and retaliation.

**c.   The Statute of Limitations**

Based upon New York law, actions under Sections 1981 and 1983 carry a three-year statute of limitations. <u>Ormiston v. Nelson</u>, 117 F.3d 69, 71 (2d Cir. 1997).  Thus, since Jeter filed his current complaint on July 27, 2006, he may only allege 1981 and 1983 violations based on events that occurred on or after July 27, 2003.

**(5)**

**The Timeliness and Justiciability of Jeter's Title VII Claims**

A plaintiff must bring a Title VII law suit within ninety days of receiving a right-to-sue letter from the EEOC.  42 U.S.C § 2000e-5(f)(1); <u>see also</u> <u>Espinosa v. Delgado Travel Agency, Inc.</u>, No. 05 Civ. 6917, 2006 U.S. Dist. LEXIS 71085, *15-16 (S.D.N.Y. Sept. 27, 2006) (dismissing Title VII complaint because it was not filed within ninety days of the right-to-sue letter). Because Jeter filed two charges with the EEOC, he received two right-to-sue letters.  His complaint in this court was untimely as to the first right-to-sue letter, and timely as to the second.

The DOE argues that all of Jeter's Title VII claims should be dismissed because when the EEOC issues multiple right-to-sue

suit after filing an administrative charge of hostile work environment or retaliation would essentially give an employer carte blanche to mistreat an employee thereafter.").

The EEOC issued its first right-to-sue letter, which addressed the charges Jeter brought in DHR I, on January 11, 2006.  The EEOC issued its second right-to-sue letter, which addressed the charges Jeter brought in DHR II, on May 4, 2006. Jeter filed his current complaint on July 27, 2006, more than ninety days from EEOC I but less than ninety days from EEOC II. Thus, Jeter's Title VII claims which mirror his DHR I claims are untimely and dismissed.  Jeter's Title VII claims that were included or are "reasonably related to" the allegations from DHR II, are timely and are not dismissed.  See Humbles v. Reuters Am., Inc., No. 05 Civ. 4895, 2006 U.S. Dist. LEXIS 65753 (E.D.N.Y. Aug. 31, 2006) (citing Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 83 (2d Cir. 2001).

In addition, the statute of limitations for filing a Title VII charge with the EEOC is 300 days.  42 U.S.C. § 2000e-5(e)(1) (noting the 300 day limitations period when the plaintiff has originally brought his claims to a state administrative agency); see also Mudholkar v. Univ. of Rochester, 2008 U.S. App. LEXIS 1405, *5-7 (2d Cir. 2008).  Thus, since Jeter filed his second complaint with the DHR and EEOC on August 11, 2005, he may only allege Title VII violations based on events that occurred on or

after October 15, 2004.

## (6)

## Conclusion

The DOE's motion to dismiss is granted in part and denied in part. Jeter's claims under the New York Human Rights Law that he previously brought before the DHR are barred by the election of remedies doctrine and dismissed. Jeter's claims under Sections 1985 and 1986 are barred by intracorporate immunity and dismissed. Jeter's claims under Sections 1981 and 1983 are not barred by res judicata, and since Jeter has established a prima facie case, they are not dismissed. Jeter's claims under Title VII which were addressed by the EEOC's first right-to-sue letter are untimely and are dismissed, but his Title VII claims addressed by the EEOC's second right-to-sue letter are timely and are not dismissed.

In sum, Jeter's claims under Sections 1981 and 1983 that arose on or after July 27, 2003, remain viable.  As do his Title VII claims that he originally brought in his DHR II complaint, provided they arose on or after October 15, 2004.  The remainder of Jeter's claims are dismissed.


Dated: Brooklyn, New York
       March 4, 2008


                         SO ORDERED:


                         _____/s/_____
                         David G. Trager
                         United States District Judge

**EXHIBIT 2**



**REFERRAL TO:**                                       June 2, 2003

Mr. Richard J. Condon
Special Commissioner of Investigation
For the New York City School District
20th Floor
80 Maiden Lane
New York, New York 10038

**ACTION REQUESTED:**

The attached correspondence is being forwarded to your agency for response. The only information the Office of the Mayor has about this constituent is included in the attached letter. Respond directly to the constituent under the appropriate signature within your agency. Please call Stacy Lewis with questions at (212) 788-2771.

**DUE DATE: within 10 working days of receipt**

**CONSTITUENT:**
Casework#: 217212
Mr. Ernest Jeter
Apartment 1-J
12-421 Flatlands Avenue
Brooklyn, NY 11208

**ACTION TAKEN:**

Please check action taken and provide a detailed explanation (please write any other pertinent information on the back of this sheet).

_____ Constituent received a written response (attach copy)
_____ Constituent was responded to via phone. Phone number: _____ Spoke to: _____
_____ The matter is outside of our jurisdiction. I suggest referral to: _____

Return this form to:
Lyn Hnwell
Mayor's Office of Correspondence
23rd Floor South
One Centre Street
New York, NY 10007
(212) 788-2474

# The Special Commissioner of Investigation

**For the New York City School District**

## COMPLAINT FORM

| | | |
|---|---|---|
| 6/6/03 | 17 | 20031602 |
| | School | 811K |
| | District | 75 |
| | Division | DSE |

*Complainant wishes to remain confidential?*     (Y/N) **N**

*If yes, does complainant agree to the release of complaint data to the appropriate office if complaint is referred? (Y/N)* **Y**

### Allegation:

Carbon copied correspondence addressed to Mayor Bloomberg from Ernest Jeter, Guidance Counselor assigned to P811K, relates that he is being unfairly harassed about his time by Dr. Susan Erber, Citywide Programs Superintendent and Ms. Bonnie Brown, Director of Operations for CSD # 75 (see attached). Mr. Jeter claims that said parties are well aware of his medical condition, via medical documentation which he has provided, which necessitates medical treatment at the Veteran's Hospital on Tuesdays and Thursdays (due to two line of duty injuries which he sustained at the hands of students). Mr. Jeter writes that although he is absent on these two days, his workload has never suffered as a result.

**CASE TRACKING**    Positive, see case #'s 02-3065R (OSI), 01-0516R (OSI), 99-2449R (OSI), 96-1843R (OSI) and 92-1409R (OSI) under Brown; see case #'s 03-1543R (OSI), 03-03-0660R (OSI) and numerous others under Erber.

### List of Subject Names

| | | |
|---|---|---|
| LAST NAME | BROWN | SSN |
| FIRST NAME | BONNIE | PROFILE |
| SCHOOL | | TITLE: AD |
| DISTRICT | 75 | POSITION: DIRECTOR OF OPERATIO |
| DIVISION | DSE | |
| ADDRESS | | |
| TELEPHONE | | |

Flomberg OT Education                    1 212 374 1220        T-672   P.005/013   F-799

LAST NAME ERBER                          SSN

FIRST NAME SUSAN                         BORO

SCHOOL                                   TITLE SU

DISTRICT 75                              POSITION SUPERINTENDENT

DIVISION DSE

ADDRESS

PHONE

## List of Complainants:

LAST NAME JETER                          SSN

FIRST NAME ERNEST                        FILE 709726

SCHOOL 811K                              TITLE GO

DISTRICT 75                              POSITION GUIDANCE COUNSELO

DIVISION DSE

ADDRESS 124-21 FLATLANDS AVENUE, # 1J, B'KLYN, 11208

PHONE

## List of Victims:

## List of Witnesses:

## List of Others:

# THE SPECIAL COMMISSIONER OF INVESTIGATION
## FOR THE NEW YORK CITY SCHOOL DISTRICT

80 Maiden Lane, 20th floor, New York, New York 10038
Telephone (212) 510-1400
Fax (212) 510-1550

Richard J. Condon
Special Commissioner

June 9, 2003

Ms. Theresa Europe
Director
Office Of Special Investigations
65 Court Street, Room 922
Brooklyn, New York 11201

<div align="center">

RE:    Intake # 20031602
BROWN, BONNIE
ERBER, SUSAN

</div>

Dear Ms. Europe:

Attached please find information received by this office in reference to the above. We are forwarding this matter to you for your review and appropriate action.

Sincerely,

*Thomas Fennell*

THOMAS FENNELL
Chief Investigator



# THE NEW YORK CITY DEPARTMENT OF EDUCATION

JOEL I. KLEIN, *Chancellor*

OFFICE OF THE CHANCELLOR
52 Chambers Street – New York, NY 10007
ROOM 201

THERESA EUROPE
DIRECTOR

THOMAS W. HYLAND
DEPUTY DIRECTOR

## MEMORANDUM

**DATE:** June 16, 2003

**TO:** Ms. Yvonne Joseph, Administrator
Medical Bureau

**FROM:** Mr. Thomas W. Hyland
Deputy Director

**SUBJECT:** Ms. Bonnie Brown, Director of Operations for
Community School District 75
Ms. Susan Erber, Superintendent
Community School District 75
OSI# 03-4805

The Office of Special Investigations (OSI) is in receipt of the attached referral from the Special Commissioner of Investigation.

This is being referred to you for review/investigation or any action you deem appropriate. Please submit documentation to this office of any action taken by you within thirty (30) days of the receipt of this memorandum.

TWH:dm

Attachment

DEC-15-2004 WED 05:42 PM SPECIAL COMM OF INVEST    FAX NO. 212 510 1480    P. 02

CITY OF NEW YORK
THE SPECIAL COMMISSIONER OF INVESTIGATION
FOR THE NEW YORK CITY SCHOOL DISTRICT
80 Maiden Lane, 20th floor, New York, New York 10038
Telephone: (212) 510-1400
Fax: (212) 510-1550

Richard J. Condon
Special Commissioner

December 15, 2004

Mr. Thomas Hyland
Deputy Director
Office of Special Investigations
49 Chambers Street, 6th Floor
New York, New York 10007

Dear Mr. Hyland:

Please provide this office with copies of any investigative reports or information detailing whatever actions may have been taken by your office regarding the following, which was referred to your office on 06/09/03.

| SCI INTAKE NO. | SUBJECT |
|---|---|
| 2003-1602 | BROWN, BONNIE |
| | ERBER, SUSAN |

Please send this material to the attention of Investigator Michael Bisogna (212) 510-1411. Thank You.

Sincerely,

Thomas Kennell
Chief Investigator

A 2

## BISOGNA, MICHAEL

**From:** CIORCIARI, DAVID
**Sent:** Wednesday, December 15, 2004 6:03 PM
**To:** BISOGNA, MICHAEL
**Cc:** CONTINANZI, ANTHONY
**Subject:** Request for OSI Case Info

Please be advised that a request for OSI case information has been sent to OSI re SCI Case #20042263 (Inv. Bisogna).

SCI INTAKE No.:

2003-1602 (Bonnie Brown & Susan Erber)

1

12/16/2004

Case 1:06-cv-03687-NGG-LB   Document 95   Filed 12/07/11   Page 36 of 89 PageID #: 1940



# THE NEW YORK CITY DEPARTMENT OF EDUCATION

JOEL I. KLEIN, *Chancellor*

**DIVISION OF HUMAN RESOURCES**
MEDICAL, LEAVES & BENEFITS OFFICE
65 Court Street – Brooklyn, NY 11201

TO:        Thomas Hyland
           Deputy Director

FROM:      Yvonne M. Joseph
           Administrator

SUBJECT:   ERNEST JETER – OSI # 03-4805

DATE:      December 28, 2004

---

Ernest Jeter was granted line of duty status by the Medical Bureau from 2/9/99 – 3/18/99. His case was later brought to an independent medical arbitrator and the arbitrator extended his line of duty to 6/30/99. The arbitrator deemed that any absence after 6/30/99 would be considered as personal illness. These findings are equally binding on Mr. Jeter and the Department of Education.

On 2/27/03, the Medical Bureau received a request to examine Mr. Jeter pursuant to the NYS Education Law for Section 2568 due to Mr. Jeter being absent from work every Tuesday and Thursday since Jan 2002, stating that he was attending medical sessions due to his line of duty claim. He was examined at the Medical Bureau on 3/27/03. Prior to the examination he was notified that he could bring a person of his choice to this appointment. He was also advised to contact his union.

Mr. Jeter arrived unaccompanied and signed a statement agreeing to waive his right to representation. As a result of his examination he was found fit to work. Medical documentation, including detailed reports and copies of office records for the time period in question, was requested from three different sources. Mr. Jeter did bring some documentation to the examination but it was not the aforementioned requested records. As the requested information was not received by 4/22/03, Mr. Jeter was sent a second request. The requested medical documentation was received on 5/12/04.

1 2

C

Review of the submitted documentation regarding his claim of attending medical sessions every Tuesday and Thursday from January 2002 onward, revealed that he attended sessions from 1/22/02 to 2/2/02. He did not return for medical sessions until 4/9/02, and then only attended until 4/30/02. He was next seen 4 months later on 8/29/02, and again from 9/10/02 to 9/26/02. This pattern of medical sessions followed by a hiatus of 2 - 4 months was repeated until 3/20/03. The records do not substantiate Ernest Jeter's claim that he attended medical sessions every Tuesday and Thursday from January 2002 until March 20, 2003.

I have tried to address all issues that involve the Medical Bureau. If you have any further questions, please feel free to contact me at 718 935-4004.

Thank you.

2

**EXHIBIT 3**

1

2                    THE STATE EDUCATION DEPARTMENT
             THE UNIVERSITY OF THE STATE OF NEW YORK

3

4        _____

5                          In the Matter of
         NEW YORK CITY DEPARTMENT OF EDUCATION - DISTRICT 75
                                  v
6                            ERNEST JETER

7        Section 3020-a Education Law Proceeding (File 5,285)

8

         DATE:             March 31, 2006
9
         TIME:             10:28 a.m. to 1:00 p.m.
10                         1:54 p.m. to 2:55 p.m.

11       LOCATION:         New York City Department of Education
                           Office of Legal Services
12                         49-51 Chambers Street, 6th Floor
                           New York, New York
13
         BEFORE:           CALVIN SHARPE, ESQ.
14                         Hearing Officer
                           27 Undercliff Road
15                         Montclair, New Jersey 07042

16

17

18

19       ■

20

21

22

23                                                          

24

Page 98

Lent - Voir Dire - Glass

1  be off the record about ten minutes.
2          (Off the record)
3          MS. RODRIGUEZ-BETANCES:
4  Should I recall the witness, Mr. Sharpe?
5          THE HEARING OFFICER:  Yes,
6  thank you.  I was about to ask Mr. Glass to
7  start his cross.  I guess we need a witness.
8          Mr. Lent, I'll remind you
9  that you're still under oath.  Mr. Glass is
10  going to do a cross-examination of you.
11          CROSS EXAMINATION
12  BY MR. GLASS:
13      Q.  Good morning.
14      A.  Good morning.
15      Q.  You said that you didn't want
16  to file this report, right?
17      A.  No, I did not.  Between Mr.
18  Jeter and myself, he can be a wonderful
19  guidance counselor.  He did wonderful things
20  for certain students in the school.  There was
21  no reason for me to even go in that direction.
22  I never even thought of it on my own.
23      Q.  So was Rachel Henderson, the

Page 99

Lent - Cross - Glass

1  principal, encouraging you?
2      A.  Yes.  I don't know of such
3  things.  She asked me to do so and I followed
4  her directions.
5      Q.  Did you --?
6      A.  It was reluctantly, but I did
7  it.
8      Q.  Did you ask her why she was
9  asking you to file this?
10      A.  Yes.  She said this is the
11  procedure that you should follow.
12      Q.  Did you -- did she say that
13  she was pressured by higher-ups to file this
14  police report.
15      A.  No, the word pressure was not
16  involved -- wasn't mentioned at all.  She just
17  told me that it was appropriate protocol to do
18  so.  Not being familiar with these types of
19  procedures, I would never, on my own, went in
20  this direction.
21      Q.  Did she say Roslyn Hoff
22  wanted you to file a police report?
23          MS. RODRIGUEZ-BETANCES:

Page 100

Lent - Cross - Glass

1  Objection.
2          THE HEARING OFFICER:  Basis?
3          MS. RODRIGUEZ-BETANCES:  I
4  believe the witness has already answered the
5  question.
6          THE HEARING OFFICER:  Well,
7  he's entitled to explore the completion of the
8  answer with cross, so I'm gong to overrule
9  that.
10  BY MR. GLASS:  (Cont'g.)
11      Q.  Would you say that Roslyn
12  Hoff was encouraging --?
13      A.  There wasn't a name
14  mentioned.
15      Q.  Did you have any
16  conversations with Roslyn Hoff before you filed
17  this police report, directly?
18      A.  Yes, she came to do an
19  investigation.
20      Q.  This is before you filed a
21  police report.
22      A.  Absolutely.  Like I said,
23  these are building blocks.  A police report is

Page 101

Lent - Cross - Glass

1  the last thing I would have ever considered
2  doing.  There was no reason to do something
3  like this without someone initiating --.
4      Q.  So Roslyn Hoff came to speak
5  to you before you --?
6      A.  Yes.
7      Q.  What did she ask you?
8      A.  What transpired between Mr.
9  Jeter and myself.
10      Q.  Did she tell you that she had
11  spoken to Mr. Jeter before she came to you?
12      A.  I don't remember the sequence
13  of events.  She said she would speak to Mr.
14  Jeter, also.  And I don't know if she spoke to
15  Mr. Jeter first or myself.
16      Q.  Did you file the police
17  report after you wrote this letter on March
18  1st, 2004?
19      A.  Yes, after the fact.
20      Q.  So it was at least three
21  weeks after the incident that you filed the
22  police report?
23      A.  It was after the fact.  I

10 (Pages 98 to 101)

Page 102

**Lent - Cross - Glass**

1
2  can't give you the exact timeframe.  You know,
3  I don't remember, but I wrote the letter first
4  after what transpired between Mr. Jeter and
5  myself.  What happened then was between two
6  men.  An argument pursued.  I didn't think
7  anything more of it, but I felt, because
8  certain statements were made and I felt
9  threatened, that I should put something in
10  writing.  But as far as going any further,
11  there was no reason to.  People have arguments
12  every single day.  There was no reason to
13  pursue it any further.
14           Q.  Well my question was the
15  incident happened -- it was in the letter -- it
16  says February 13th, 2004.  Is that correct?
17           A.  I don't remember the
18  sequence -- whatever is dated on here.
19           Q.  All right.  So the police
20  report was filed after your --
21           A.  After -- yeah, after.
22           Q.  Okay.  So it's a period of
23  several weeks.
24           THE REPORTER:  Okay.  Please

Page 103

**Lent - Cross - Glass**

1
2  be careful of -- while you're flipping through
3  the papers, I'm having a little difficulty.
4           THE HEARING OFFICER:  Okay.
5  We will.
6           THE REPORTER:  Thank you.
7           A.  Again, on my own, the
8  intention that of doing a police report never
9  occurred to me.  There was no reason to put a
10  police report in about an occurrence that we
11  had words.  No more than that.
12  BY MR. GLASS:  (Cont'g.)
13           Q.  Do you recall the date that
14  you actually filed the police report?
15           A.  No.
16           Q.  But, you know it was in
17  March?
18           A.  I don't remember the date.
19  I'm sorry.  I have all the documentation --
20  this report to me was insignificant because it
21  had no bearing on anything.
22           Q.  That's not my question.  I'm
23  just asking when you --.
24           A.  As I said before, I don't

Page 104

**Lent - Cross - Glass**

1
2  remember.
3           Q.  But it was definitely after
4  this letter that you wrote.
5           A.  As far as I -- yes,
6  definitely after.  I can swear that -- yes,
7  definitely after the letter.
8           Q.  Who is Roslyn Hoff?
9           A.  At that point, she was
10  Supervisor of Guidance of Citywide Programs.
11           Q.  Did she tell you that she
12  spoke to Jeter -- Mr. Jeter confidentially
13  before she came to you?
14           A.  Again, I don't remember the
15  sequence of events -- if she spoke to me first
16  or she spoke to Mr. Jeter first.  I really
17  don't remember, you know, what transpired
18  first.
19           Q.  Before you filed the police
20  report, did Ms. Hoff tell you that Mr. Jeter
21  had told her confidentially that he was
22  complaining that you were trying to provoke him
23  into a physical altercation?
24           A.  What?  God knows, why would

Page 105

**Lent - Cross - Glass**

1
2  I --?
3           THE HEARING OFFICER:  Mr. --
4  Mr.
5           THE WITNESS:  I'm sorry.  I'm
6  sorry.
7           THE HEARING OFFICER:  Just
8  answer the question.
9           A.  (Cont'g.)  Absolutely not.
10  BY MR. GLASS:  (Cont'g.)
11           Q.  Do you recall what Ms. Hoff
12  told you at all about --?
13           A.  Jeter's name was never
14  mentioned, other than what's in the occurrence.
15           Q.  What did her
16  investigation --?
17           A.  I --.
18           Q.  What did her investigation --
19  what did she do as part of her investigation,
20  as far as you know.
21           A.  I told her what transpired
22  between Mr. Jeter and myself, those things he
23  said to me and how emotionally threatened I
24  felt by him -- the way his demeanor -- the way

11 (Pages 102 to 105)

Lent - Cross - Glass

2  he was acting. I think you're going to open a
3  tangent now.
4        THE HEARING OFFICER:  Mr.
5  Lent.
6        THE WITNESS:  I'm sorry.
7        THE HEARING OFFICER:  Mr.
8  Lent, let me worry about that.  Okay?
9        THE WITNESS:  Okay.
10        THE HEARING OFFICER:  Don't
11  worry about anything except answering his
12  questions.
13        THE WITNESS:  I am worried
14  about it, to be honest with you.
15        THE HEARING OFFICER:  Don't
16  because it just crowds up the proceeding.
17        THE WITNESS:  I'm sorry.
18        THE HEARING OFFICER:  It
19  makes it more difficult.  It makes it more
20  difficult --
21        THE WITNESS:  I'm sorry.
22        THE HEARING OFFICER:  -- to
23  present the case.  Okay?  So just focus on the
24  question and answer the question.

Lent - Cross - Glass

2  BY MR. GLASS:  (Cont'g.)
3        Q.  When you filed the police
4  report, did you put anything in writing?  Did
5  you -- did you write out the statement?
6        A.  No.  No, the police officer
7  came to 286.  He wrote everything down.
8  Basically what I told him is what's in this
9  letter.  I didn't put pen to pen -- pen to
10  paper at all.
11        Q.  Did you give the police
12  officer this letter, D Two?
13        A.  I might have; I don't
14  remember exactly --
15        Q.  Do you recall what he asked
16  you?
17        A.  Basically what happened --
18  what happened that day and what Mr. Jeter --
19  what transpired with Mr. Jeter and myself.  And
20  that was basically it.
21        Q.  Do you know the name of the
22  police officer?
23        A.  I don't remember.  To me, it
24  was insignificant.

Lent - Cross - Glass

2        Q.  Was it someone from the
3  Sixty-first (sic) precinct, do you remember?
4        A.  Yes, I know it was from the
5  Fifty-first precinct.
6        Q.  Was there more than one
7  police officer there?
8        A.  One came to the office of
9  286, sat down, cordially spoke together.  He
10  took down information.  And I said can I have a
11  copy.  He said it's not necessary; it's only
12  done as an occurrence; it's nothing more than
13  an occurrence; nothing transpired between you
14  and Mr. Jeter.  That's basically it.
15        Q.  And at the conclusion of the
16  conversation, what did the police officer say?
17  What happened?
18        A.  Have a good day.
19        Q.  And you said you didn't want
20  to pursue it.
21        A.  Absolutely.  There's no
22  reason to pursue it.  The person in the union
23  came to me, said there's grounds I can pursue
24  it.  I said for what reason, in thirty-three

Lent - Cross - Glass

2  years plus, I never went to the union.  Two
3  people can talk -- two people can negotiate --
4  two people can mediate.
5        Q.  When you spoke to the police
6  officer, was the principal present -- Principal
7  Henderson?
8        A.  Just myself.
9        Q.  No other administrator was
10  present?
11        A.  Just myself.
12        Q.  One on one?
13        A.  One on one.
14        Q.  Okay.  Do you know if they --
15  the police officer spoke to any other
16  witnesses?
17        A.  I have no idea.
18        Q.  Okay.  Following -- and as
19  far as you know, the police report has never
20  gone anywhere.  Mr. Jeter's never been
21  criminally charged?
22        A.  I said that before.
23        Q.  Okay.  Following that, you're
24  aware that Mr. Jeter filed a complaint against

12 (Pages 106 to 109)

Associated Reporters Int'l., Inc.      800.523.7887

**EXHIBIT 4**

**THE NEW YORK CITY DEPARTMENT OF EDUCATION**
JOEL I. KLEIN, *Chancellor*

**BROOKLYN CENTER FOR STUDENTS WITH MULTIPLE DISABILITIES, 811K**
P286 (Main Building) 2525 Haring Street – Brooklyn, NY 11235 – Tel: (718) 769-6984 – Fax: (718) 648-7816

Assistant Principals:
*Doris CaPenny*
*Rosina DeMarco*
*Ross Lien*

**Rachel Henderson**
**Principal**

COUNSELING MEMO

March 10, 2004

Ernest Jeter
Guidance Counselor
811K @ P. 286

Dear Mr. Jeter,

On Friday, March 5, 2004, Ms. Roslyn Huff from the Office of Positive Behavior Supports met with you and Mr. Lent, in an effort to mediate and seek a resolution to the dispute that occurred on February 13, 2004. On March 8, 2004, I met with you to remind you that it is the expectation of District 75 that you interact with colleagues in a courteous and professional manner.

At the meeting, we discussed the incident that occurred between you and Mr. Lent, in which both of you engaged in a verbal confrontation. This incident was overheard by other colleagues and disrupted the work environment. At the meeting, I discussed that effective immediately, you will be assigned to P. 286 every day.

I wish to remind you that you are to cease all interaction with Mr. Lent as we discussed at our meeting.

A COUNSELING MEMO IS NOT DISCIPLINARY IN ANY MANNER AND CANNOT BE USED IN ANY ACTION AGAINST AN EMPLOYEE EXCEPT TO PROVE NOTICE IN THE EMPLOYEE DENIES NOTICE.

Sincerely,

Rachel Henderson
Principal

I have read and received a copy of this letter. I understand that a copy will be placed in my file.

_____          _____
Signature                                          Date

**DOE01759**

District 75 School Based Services Coordinator
Phone(917) 256-4272
Fax (917) 256-4281

-----Original Message-----
From: Erber Susan (75K000)
Sent: Monday, March 08, 2004 12:21 PM
To: Dreyfus Francine (750000); Levy Margo (75M000)
Subject: Fw: ernest jeter v. steve lent - race harassment/workplace
disharmony allegation

---------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

-----Original Message-----
From: Valente Michael <MValent@nycboe.net>
To: Henderson Rachel (75K811) <RHender@nycboe.net>
CC: Erber Susan (75K000) <SErber@nycboe.net>; Rosenbaum Lydia (75M000)
<LRosenb@nycboe.net>; Mitchell Stephen A <SMitche@nycboe.net>
Sent: Mon Mar 08 11:35:16 2004
Subject: ernest jeter v. steve lent - race harassment/workplace
disharmony allegation

Confidential
Dear Rachel,
OEO received a phone call today from Mr. Jeter in which he is claiming
racial harassment by Mr. Lent. Apparently, there may have been a police
complaint filed against Jeter by Lent recently. It is my understanding
that you, over the years, have tried to intervene, in good faith, to
resolve the workplace disharmony between the parties. When you get a
chance, I would like to discuss this further with you. What is the story
here? Also, it is my understanding that the Superintendent's Office
sought to intervene here too, is that correct? I await further contact
from you. Take care,

Michael J. Valente, Esq.
OEO Complaint Officer
NYC Department of Education
65 Court Street, Room 923
Brooklyn, New York 11201
(tel) 718-935-2135
(fax) 718-935-2531

DOE01894

Confidential / Privileged

## CASE ACTIVITY SHEET

COMPLAINANT: _Peter_ VS. _Lent_

DO CASE #: _____

| DATE | ACTIVITY |
|------|----------|
| 3/8/04 (NN) | From _Dreyfus_ 212-802-1520 ———————→ Conference Call |

Conrad _Reite_, Dist 75 _legal Advisor_ →
apparently advised Bonnie Brown Dept Supt to
investigate as conduct unbecoming → perhaps disciplinary action
regarly Feb 13 incident

NN → What is sought after result? DOE wants disharmony
to cease → how that done is up to administrators →
"cease + desist" or, if shown that Peter
made lewd sexual comment to Lent, take
appropriate action

DOE01888

**Valente Michael**

| | |
|---|---|
| **From:** | Erber Susan (75K000) |
| **Sent:** | Monday, March 08, 2004 5:05 PM |
| **To:** | Valente Michael |
| **Subject:** | Fw: |

---------------------------

Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

-----Original Message-----
From: Henderson Rachel (75K811) <RHender@nycboe.net>
To: Erber Susan (75K000) <SErber@nycboe.net>
CC: Dreyfus Francine (750000) <FDreyfu@nycboe.net>
Sent: Mon Mar 08 15:00:36 2004
Subject:

After meeting with Mr. Jeter and Mr. Lent we have discussed the issues and reached the following resolutions.

New schedules will eliminate any contact between Mr. Jeter nad Mr. Lent. Mr. Lent
will be housed at SHBHS and cover the Inclusion sites for counseling and articulation. Mr. Jeter will be responsible for the Main building 286 effective 3/9. FYI this behavior is the reult of several changes that have occurred in the organization, which have placed the two counselors in the same location, giving Mr. Jeter all of Mr. Lent"s assignments. However, tihe behavior between the two counselors is not new and
Ms. Margo Joseph is aware of the constant mediation that has been occurred for the last five years.

Both have agreed to cease all conversation.

/

1

DOE01886

bc SAM

**Valente Michael**

| | |
|---|---|
| **From:** | Valente Michael |
| **Sent:** | Monday, March 08, 2004 12:51 PM |
| **To:** | Dreyfus Francine (750000); Erber Susan (75K000) |
| **Cc:** | Henderson Rachel (75K811) |
| **Subject:** | RE: ernest jeter v. steve lent - race harassment/workplace disharmony allegation |

Confidential
what was the nature of the criminal complaint by Lent? can you fax me
that report? if party(s) are failing to abide by the Principal's and
District's directive to cease and desist disruptive behavior, the
relevant party(s) should be disciplined. also, can they be separated so
as to minimize contact?

Michael J. Valente, Esq.
OEO Complaint Officer
NYC Department of Education
65 Court Street, Room 923
Brooklyn, New York 11201
(tel) 718-935-2135
(fax) 718-935-2531

-----Original Message-----
From: Dreyfus Francine (750000)
Sent: Monday, March 08, 2004 12:43 PM
To: Erber Susan (75K000); Valente Michael
Subject: RE: ernest jeter v. steve lent - race harassment/workplace
disharmony allegation

Occurrence report filed on Friday #75K811-021304-0112...OSCI called and
principal was directed to have Steve Lent or principal call police. I
just spoke to Rachel Henderson, Principal. Steve Lent called the police
(61st Precinct) and a formal complaint was filed.

Fran Dreyfus

-----Original Message-----
From: Erber Susan (75K000)
Sent: Monday, March 08, 2004 12:21 PM
To: Dreyfus Francine (750000); Levy Margo (75M000)
Subject: Fw: ernest jeter v. steve lent - race harassment/workplace
disharmony allegation

--------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

-----Original Message-----



EXHIBIT
Erber 19
CL 11/17/09

**DOE01891**

 **New York City Department of Education**

**OCCURRENCE REPORT**

| | | DOE CONTROL NO | NYPD CONTROL NO |
|---|---|---|---|
| | | 75M000-100804-0001 | none supplied |

| ATS CODE | SCHOOL AND/OR PROGRAM NAME-NUMBER | | INCIDENT DATE & TIME | DURING SCHOOL HOURS? |
|---|---|---|---|---|
| **75M000** | **75M000 - District Office** | | **10/8/2004 12:15 PM** | **Yes** |
| | 811K Main Site | | | |

| REPORT | BOROUGH | SUPERINTENDENCY | GEOGRAPHICAL DISTRICT | IS THIS REPORT FOR INFORMATION |
|---|---|---|---|---|
| Original | | 75 | 75 | |

Occurrence Reported by:        Fran Dreyfus, LIS D75 (Phone: 212-802-1520)

Occurrence Data Entered at:    10/8/2004 at 12:26 PM
Location of the Occurrence:    Office - Floor 2
Category:                       N99
Contacts:                       NYPD was not contacted.
                                Superintendent was contacted at 12:15 PM on 10/8/2004

**Description of the occurrence**

On Thursday, 9/23/04, ay approx. 3 PM, Sylvia Serra, parent of Giovanni and Matthew Estrada, students at P811K, called LIS FRan Dreyfus to complain that neither child had received their IEP mandated related service of Counselling for 2003-04 school year. The assigned Counselor for both boys was Ernest Jeter, Guidance Counselor. Upon comparing Mr. Jeter's Related Service Attendance Card for Giovanni with the ATS record of Giovanni's attendance, it appears that Mr. Jeter has claimed that he provided service to the student on4 days (1/30/04, 3/4/04, 5/20/04, 5/21/04) when the stduent was absent, and on 1 day (2/22/04) which was a Sunday. Dr. Dreyfus reported information to OSCI (log # 04-2263) on 10/8/04

**Persons Involved**
   **Suspects**
      Jeter, Ernest
   **Victims**
      ESTRADA, GIOVANNI
         Address: 108 MESEROLE STREET 7, BROOKLYN, NY 11206 Phone: 718-302-4869
         Parents have not been notified.



**DOE01867**

**From:** Valente Michael
**Sent:** Monday, March 08, 2004 1:51 PM
**To:** Dreyfus Francine (750000)
**Cc:** Erber Susan (75K000); Levy Margo (75M000); Henderson Rachel (75K811); Mitchell Stephen A; Hoff Roslyn E (75M000)
**Subject:** RE: ernest jeter v. steve lent - race harassment/workplace disharmony allegation

Confidential
i just spoke with rachel and advised her to address the workplace
disharmony between the parties --OEO wants the conduct to cease and
desist immediately before there is an escalation of the conflict i.e.,
lent has filed police complaint regarding alleged threatening behavior;
jeter is claiming racial harassment. also, the parties are to be
instructed to avoid each other unless business necessity absolutely
compels further contact. rachel will send me documentation/email that
she read the "riot act" to the parties. also, please send me the two
witness statements for our records. thank you all for your prompt and
professional assistance.

Michael J. Valente, Esq.
OEO Complaint Officer
NYC Department of Education
65 Court Street, Room 923
Brooklyn, New York 11201
(tel) 718-935-2135
(fax) 718-935-2531


-----Original Message-----
From: Dreyfus Francine (750000)
Sent: Monday, March 08, 2004 1:36 PM
To: Valente Michael
Subject: RE: ernest jeter v. steve lent - race harassment/workplace
disharmony allegation


Michael, I asked Rachel to FAX Steve Lent's letter and TWO witnesses'
statements....she has all necessary documents...if you need anything
else...just let me know
Fran

-----Original Message-----
From: Valente Michael
Sent: Monday, March 08, 2004 12:51 PM
To: Dreyfus Francine (750000); Erber Susan (75K000)
Cc: Henderson Rachel (75K811)
Subject: RE: ernest jeter v. steve lent - race harassment/workplace
disharmony allegation

Confidential

1

DOE01890

 

**Valente Michael**

| | |
|---|---|
| **From:** | Valente Michael |
| **Sent:** | Tuesday, March 23, 2004 12:56 PM |
| **To:** | Dreyfus Francine (750000) |
| **Subject:** | RE: OEO letter to Ernest Jeter |

Confidential
Fran, it is in accordance with our policy of responding to persons who filed A-830 complaints of discrimination with our office. We give them notification of whether we take jurisdiction over the case or not, and if we take the case, we advise complainants of the outcome/resolution. Here, my investigation showed, based on information provided by the principal and others, that there was proper resolution of the workplace disharmony between the parties (principal separated the parties). Hence, we closed this discrimination complaint file.

Ok, have a good day!

*Michael J. Valente, Esq.*
*OEO Complaint Officer*
*NYC Department of Education*
*65 Court Street, Room 923*
*Brooklyn, New York 11201*
*(tel) 718-935-2135*
*(fax) 718-935-2531*

-----Original Message-----
**From:** Dreyfus Francine (750000)
**Sent:** Tuesday, March 23, 2004 12:24 PM
**To:** Valente Michael
**Subject:** RE: OEO letter to Ernest Jeter

Thank you....I guess I would like to know what prompted the letter?
Fran

-----Original Message-----
**From:** Valente Michael
**Sent:** Tuesday, March 23, 2004 9:48 AM
**To:** Henderson Rachel (75K811)
**Cc:** Erber Susan (75K000); Dreyfus Francine (750000); Reitz Conrad
**Subject:** OEO letter to Ernest Jeter

for your records. have a good day.

<< File: Jeter, Ernst Resolved ltr.doc >>

*Michael J. Valente, Esq.*

1

DOE01883





**THE NEW YORK CITY DEPARTMENT OF EDUCATION**
JOEL I. KLEIN, *Chancellor*

Office of Equal Opportunity
Stephen A. Mitchell, *Director*

March 19, 2004

Mr. Ernest Jeter
124-21 Flatland Ave.
Brooklyn, NY 11208

OEO №03-04-03-09-02clr,eth,r,otd

Dear Mr. Jeter:

The Office of Equal Opportunity (OEO) has been informed that Principal Henderson, pursuant to advice from OEO, made good faith efforts to address your complaint by facilitating prompt and proper resolution of the workplace disharmony between the parties. Specifically, OEO is informed that the Principal instructed the parties to act professionally and she has sought to minimize future contact between the parties by changing work schedules. Based on the foregoing, OEO considers this matter resolved and has closed your case file.

If you have any questions, you may contact Michael J. Valente, Esq., OEO Complaint Officer, at (718) 935-3319.

Sincerely,

*Stephen A. Mitchell*

Stephen A. Mitchell
Director

SAM:mjv

c: Rachel Henderson, Principal

65 Court Street • Suite 923 • Brooklyn, New York 11201 • Tel. (718) 935-3320 • Fax (718) 935-3775

**DOE01884**

**EXHIBIT 5**

To: Rachael Henderson, Principal
    811k @ 286K

From: Ernest Jeter
      Related Service Provider
      811K @ 286K

Date: May 19, 2004

Re: The current space provided for counseling is unsuitable for the protection of the
    confidentiality of the subject matter discussed by each student-

The current space provided for counseling is totally unsuitable for counseling. The space
is not secured enough to protect each student from others over hearing what each student
is saying because the cubicle assigned to me is open from the ceiling, and the space is
shared by an attendance teacher. Also, when the speech teachers over hear what the
students are discussing, they make comments either during the sessions or after the
sessions are over. In other words, this make me feel very uncomfortable knowing that
these students are being subjected to their confidential sessions being violated.

In order to compensate for this breach of confidentiality, I have had to conduct sessions
in the hallways while walking with the students, in the stair wells, in the gym or in the
cafeteria.

As you are aware, counseling deals with very sensitive subject matter that the common
lay person would not understand. On some occasions, common lay person will discussed
and misinterpret the purpose of allowing a client to discuss certain information during
counseling.

I have tried to handle this handicap as best as I can, but this is totally unfair to the
students who are mandated for counseling and it is totally unfair to me because it is
interfering with me performing my duties to the best of my abilities.

As you are also aware, you are required to provide appropriate space so that I can
perform my duties and to protect the confidentiality of each student who is mandated for
counseling.

**DOE01854**

At this time, I am demanding that you provided adequate space so that I can perform my duties in the appropriate setting and to protect the confidential nature of the subject matter that each student discusses with me.

Ernest Jeter
Related Service Provider
811K @ 286K

C: Fred Fields
    UFT Chapter Leader

DOE01855

**EXHIBIT 6**

THE NEW YORK CITY DEPARTMENT OF EDUCATION
JOEL I. KLEIN, *Chancellor*

**BROOKLYN CENTER FOR STUDENTS WITH MULTIPLE DISABILITIES, 811K**
P286 (Main Building) 2525 Haring Street – Brooklyn, NY 11235 – Tel: (718) 769-6984 – Fax: (718) 648-7816

Assistant Principals:
*Doris CaPenny*
*Rosina DeMarco*
*Rosa Lien*

Rachel Henderson
Principal

September 23, 2004

Dear Mr. Jeter,

As per Dr. Fran Dreyfus, Local Instructional Superintendent and Dr. Margo Levy,
Supervisor of Counseling, please follow the guidelines listed below:
1. Follow the assigned schedule.
2. Keep attendance of students/ counseling sessions provided using the
appropriate related service scan sheet (see attached)
3. Sign students out/in from classroom locations (see attached)

A copy of the memo regarding sign out/ sign in is attached as well as instructions for
completing related service attendance.

Thank you,

Rosina DeMarco
Assistant Principal. 811K

Cc:   Rachel Henderson, Principal P.811K
Dr. Francine Dreyfus, LIS
Dr. Margo Levy, Supervisor of Counseling

DOE01871

**EXHIBIT 7**

ORIGINAL

2    CIVIL COURT OF THE STATE OF NEW YORK

3    EASTERN DISTRICT OF NEW YORK

4    ------------------------------------------------ x

5    JETER,

6                       Plaintiff,    Index No.

                                  1:06-CV-03687

7                                  DGT-LB

8        -against-

9    NEW YORK CITY DEPARTMENT OF EDUCATION

    OF THE CITY OF NEW YORK,

10

                        Defendant.

11

    ------------------------------------------------ x

12

13        EXAMINATION BEFORE TRIAL of SYLVIA SERRA, a

14    Nonparty Witness, taken by the Plaintiff, pursuant

15    to Order, held at the offices of Michael A. Cardozo,

16    Esq., Corporation Counsel, 100 Church Street, New

17    York, New York, on December 16, 2009, at 11:20 a.m.,

18    before a Notary Public of the State of New York.

19

20

21

22    ***********************************************

23        BARRISTER REPORTING SERVICE, INC.

                120 Broadway

24            New York, N.Y. 10271

                212-732-8066

25

1                     Sylvia Serra

2     A        Correct.

3     Q        The second conversation, did he know

4     who your sons were?

5     A        Like I said, again, I don't recall. I

6     might have had a second conversation with

7     him, I might have not had the second

8     conversation -- I just don't recall if I did

9     or I didn't.

10    Q        Do you remember having a conversation

11    with him about having Matthew walk around

12    because he was very disruptive in class?

13    A        No.

14    Q        You don't recall any conversations

15    about that?

16    A        No, that's what he told me he was

17    going to do.

18    Q        He did tell you he was going to

19    provide services for your child?

20    A        He said that he wanted to take my sons

21    -- walk them around the school, but that's

22    not how you provide services for my son.

23    That's not part of your job. You're supposed

24    to take my son out the classroom, take him to

25    a room, work with him with his issues --

Sylvia Serra

1
2      that's why you a counselor.  Unless you're
3      not a licensed counselor.  Then --
4      Q       Do you know if he did that?
5      A       That's what I was trying to get from
6      him, but he was very rude to him.
7      Q       I know, but do you know on your own
8      whether he did that.  Did you ask Lisette
9      that?
10     A       I tried to ask Lisette that.  She said
11     that she didn't want to get involved because
12     she wasn't going to lose her job.
13     Q       Did you ask Ms. DeMarco that?
14     A       I don't know if I asked her. I might
15     have, I might have not.  I don't remember.
16     Q       Did you ask Steven Lent that?
17     A       Like I said, I don't recall his name.
18     Q       You were at the school one time that
19     entire year; right?  I think you said you
20     were there once or twice the whole year?
21     A       Right, but I call on the phone and
22     speak to people, and that's why I got a
23     service coordinator that goes to the school
24     and check on my sons for me.
25     Q       Who was the service coordinator at

1                        Sylvia Serra

2      that time?

3      A       I'm not going to give you her name

4      without her permission.

5      Q       Does she know whether Mr. Jeter was

6      providing services?

7      A       I don't even know if she knows Mr.

8      Jeter that well.

9      Q       She didn't tell you that he was or was

10     not providing services?

11     A       He was saying that.

12     Q       Are you aware that he saw your

13     children 60 times that year?

14     A       Excuse me.

15     Q       Were you aware that he saw your

16     children each of your children 60 times that

17     year?

18     A       I don't know nothing about that.

19     Q       Did you bother to ask for the records

20     to determine that?

21     A       What records?

22     Q       The records of his service visits with

23     your children, did the board ever provide you

24     any records showing Mr. Jeter --

25     A       No.

Sylvia Serra

1

2    Q       You were not aware of those records;

3    right?

4    A       I was aware that he was not providing

5    services. Whether he could have been or not,

6    that's not the question. The questions is he

7    could have lied on those records, too.

8    Q       Just to be clear for the record, you

9    are aware he was not providing service

10   because he told you that; is that your

11   testimony?

12   A       Right.

13   Q       Apart from that, is there any other

14   basis of your knowledge that he was not

15   providing services?

16           MR. CHIU:   Other than what she

17           already testified to?

18   A       I don't recall.

19   Q       Other than what Mr. Jeter told you on

20   that one occasion, do you have any basis of

21   first-hand knowledge that Mr. Jeter was not

22   providing services to your children?

23   A       That's what I was trying to get from

24   the principal, and she was not providing me

25   that information.   That's why I requested the

Sylvia Serra

1    hearing, to find out what was going on -- why

2    wasn't he providing services.

3    Q       No one's ever showed you the results

4    of that hearing, did they?  Have you ever

5    seen this -- this is Erber 6. It's a 100-page

6    decision about the hearing.

7    A       What you want me to do about that?

8    Q       Did anyone ever show it to you?

9    A       No.

10   Q       Did you ever ask to see it?

11   A       No.

12   Q       Did anyone from the board ever offer

13   to show it to you?

14   A       No.

15   Q       Did Mr. Chiu ever offer to show it to

16   you?

17   A       No.

18   Q       Did he ever offer to show you your

19   deposition at Mr. Jeter's trial?

20   A       Excuse me. My deposition?

21   Q       You testified under oath; right?

22   A       Right.

23   Q       You testified to the truth then;

24   right?

# EXHIBIT 8

# The Special Commissioner of Investigation

For the New York City School District

## COMPLAINT FORM

| | | | | |
|---|---|---|---|---|
| Date: | 5/9/2005 | Received by: | 17 | |

| | |
|---|---|
| Intake: | 20051247 |
| School: | 811K |
| District: | 75 |
| Division | DSE |
| Region: | 75 |

Response Date to the Complainant:

Referred From:

Number:                332973

Complainant wishes to remain confidential?        (Y/N)  **N**

If yes, does complainant agree to the release of complaint data to the appropriate office if complaint is referred? (Y/N)  **Y**

## Allegation:

In an e-mail addressed to Mayor Bloomberg and forwarded to the SCI by the Mayor's Office, complainant Ernest Jeter, P811K Guidance Counselor, relates allegations of misconduct against Local Instructional Superintendent Fran Dreyfuss (see attached).

Mr. Jeter claims that he is being racially discriminated against by LIS Dreyfuss and that she is deliberately abusing her supervisory powers. Mr. Jeter indicates that since September of 2004, Dreyfuss has been reviewing his counseling records without just cause and that she lodged a complaint against him with the SCI (see SCI case # 04-2263I). As a result, Mr. Jeter alleges that he was unjustly re-assigned to the District Office on April 12, 2005 by Dreyfuss and has not been provided for said re-assignment.

**CASE TRACKING**    Positive, see case # 04-0511 R/ OSI under Dreyfuss and case #'s 04-2263I and 03-1602R/ OSI under complainant.

## List of Subject Names

| | |
|---|---|
| LAST NAME: DREYFUSS | |
| FIRST NAME: FRAN*Cine* | |
| SCHOOL: | |
| DISTRICT: 75 | |
| DIVISION: DSE | |
| ADDRESS: | |
| PHONE1: | |

| | |
|---|---|
| SSN: | |
| BOEFILE: 4710842 | |
| TITLE: SU | |
| POSITION: LOCAL INSTRUCTIONAL S | |

List of Complainants:

DOE01910

| | |
|---|---|
| **LAST NAME:** JETER | **SSN** |
| **FIRST NAME:** ERNEST | **BOEFILE:** 709726 |
| **SCHOOL:** 811K | **TITLE:** GC |
| **DISTRICT:** 75 | **POSITION:** GUIDANCE COUNSELO |
| **DIVISION:** DSE | |
| **ADDRESS:** 12-421 FLATLANDS AVENUE, B'KLYN, 11208 | |
| **PHONE1:** | |

| | |
|---|---|
| **LAST NAME:** BLOOMBERG | **SSN:** |
| **FIRST NAME:** MICHAEL | **BOEFILE:** |
| **SCHOOL:** | **TITLE:** INB |
| **DISTRICT:** | **POSITION:** MAYOR |
| **DIVISION:** | |
| **ADDRESS:** OFFICE OF THE MAYOR | |
| **PHONE1:** | |

<u>List of Victims:</u>

<u>List of Witnesses:</u>

<u>List of Others:</u>

DOE01911

# The Special Commissioner of Investigation

For the New York City School District

## CASE FORM

| Date: | 5/9/2005 | CASETRACK: | DOE | Received by: | 17 | Intake: | 20051247 |

Response Date to the Complainant:

| School: | 811K |
| District: | 75 |

Referred From: MAYOR OFFICE

| Division | DSE |

Number: 332973

| Region: | 75 |

Complainant wishes to remain confidential?          (Y/N) **N**

*If yes, does complainant agree to the release of complainant data to the appropriate office if complaint is referred?* (Y/N)  **Y**

Allegation:

In an e-mail addressed to Mayor Bloomberg and forwarded to the SCI by the Mayor's Office, complainant Ernest Jeter, P811K Guidance Counselor, relates allegations of misconduct against Local Instructional Superintendent Fran Dreyfuss (see attached).

Mr. Jeter claims that he is being racially discriminated against by LIS Dreyfuss and that she is deliberately abusing her supervisory powers. Mr. Jeter indicates that since September of 2004, Dreyfuss has been reviewing his counseling records without just cause and that she lodged a complaint against him with the SCI (see SCI case # 04-2263I). As a result, Mr. Jeter alleges that he was unjustly re-assigned to the District Office on April 12, 2005 by Dreyfuss and has not been provided with a reason for said re-assignment.

**CASE TRACKING**   Positive, see case # 04-0511 R/ OSI under Dreyfuss and case #'s 04-2263I and 03-1602R/ OSI under complainant.

List of Names:

| Last | First | Role | Title | Position | School | Dist | Div |
|------|-------|------|-------|----------|--------|------|-----|
| BLOOMBERG | MICHAEL | RC | NB | MAYOR | | | |
| DREYFUSS | FRAN | SU | SU | LOCAL INSTRUCTIONA | | 75 | DSE |
| JETER | ERNEST | CO | GC | GUIDANCE COUNSELO | 811K | 75 | DSE |

Allegation Information:

| Complainant | Type | Subject |
|-------------|------|---------|
| JETER ERNEST | EMPLOYEE MISCONDUCT | DREYFUSS, FRAN |

DOE 0216



**THE NEW YORK CITY DEPARTMENT OF EDUCATION**
JOEL I. KLEIN, *Chancellor*

OFFICE OF THE CHANCELLOR

## MEMORANDUM

**DATE:**      May 18, 2005

**TO:**        Ms. Christine Kicinski
               Acting Director
               Office of Equal Opportunity

**FROM:**      Mr. Thomas W. Hyland
               Deputy Director

**SUBJECT:**   Ms. Francine Dreyfus
               Public School 811K, Region #75
               OSI#  05-4283

The Office of Special Investigations (OSI) is in receipt of the attached referral from the Special Commissioner of Investigator.

This is being referred to you for review/investigation or any action you deem appropriate. Please submit documentation to this office of any action taken by you within thirty (30) days of the receipt of this memorandum.


TWH:ds

cc:    Ms. Sunilda Nunez
       Coordinator of Reassigned Staff
       Division of Human Resources

Attachment

DOE01908

# THE SPECIAL COMMISSIONER OF INVESTIGATION
# FOR THE NEW YORK CITY SCHOOL DISTRICT

80 Maiden Lane, 20th floor, New York, New York 10038
Telephone (212) 510-1400
Fax (212) 510-1550

**Richard J. Condon**
Special Commissioner

May 11, 2005

Ms. Theresa Europe
Director
Office Of Special Investigations
49 Chambers Street, 6th Floor
New York, New York 10007

RE:   **Intake # 20051247**
      **DREYFUSS, FRAN**cine

Dear Ms. Europe:

   Attached please find information received by this office in reference to the above.  We are forwarding this matter to you for your review and appropriate action.

Sincerely,

Thomas Fennell (C.I.)

**THOMAS FENNELL**
Chief Investigator

DOE01909

E-Mail Viewer       Page 1 of 3

#70   7024459 - Mr. Ernest Jeter, In ID: 2260689, Out ID: 2258079

From: ernestjeter@aol.com                    To:   IQE@cityhall.nyc.gov
Date: 4/18/2005 3:52:05 PM
Subject: City of New York - Correspondence #1-1-164534100 Message to Agency Head, CHALL - CASE

Your Honor:
I am writing this e-mail in order to request your urgent assistance to a
member of the Department of Education of the City of New York
discriminating against me because of race and deliberately abusing her
supervisory powers. The individual in question is Fran Dryfus, Local
Superintendent of Instructions for District 75 Citywide Program at 400 First
Avenue, New York. F. Dryfus has been investigating me and having my
counseling records reviewed on a weekly basis since September of school year
2004/5. She has reviewed my records without cause and without a complaint
being filed with her by either of my immediate supervisors. She has filed a
false report with the Special Commissioner of Investigation for New York
City Schools based on what she claimed are five errors with my attendance
cards on two students even though she has yet to give the students names.
She claims that the two students' mother filed a complaint with her, but she
has not produce a copy of the complaint the!
mother filed with her, nor has she produced the mother's names. The SCI
has produce a report in reference to the complaint filed by F. Dryfus filed
with them. F. Dryfus had meeting on April 1, 2005 with me, and she
concluded, even though she is wrong, that I claimed that I counseled atleast
12 students on days when school was either closed or the students were
absent. Four days in which she claimed school was closed the school was
open, and on the date in question, a RR is placed in the box. R= released.
As of April 12, 2005, she has assigned me to the District office with out
stating a specific reason other than she is doing some kind of
investigation. I have not been told what the investigation is about and this
is a clear violation of my righs to receive proper notice before I am
disciplined. I have also filed two complaints with DOE's Office of Equal
Opportunity, but I have not received any action.

==== Original Formatted Message Starts Here ====

Your City of New York - CRM Correspondence Number is 1-1-164534100
DATE RECEIVED: 04/17/2005 16:19:40
DATE DUE: 04/29/2005
SOURCE: WEB

The e-mail message below was submitted to the City of New York via NYC.gov
or the 311 Call Center. It is forwarded to your agency by the Mayor's
Office of Operations. In accordance with the Citywide Customer Service
standard, your response is due in 10 business days.

***********
If this message is to a Commissioner / Agency Head and needs to be re-routed
to another agency or cc to another agency, forward the email to
outgoingagency@customerservice.nyc.gov. Do not make any changes to the
subject line. Include any comments and it will be processed by The Mayor's
Office of Operations.

All other web forms are to be handled by the receiving agency.

*************

**DOE01912**

. E-Mail Viewer

-----Original Message-----

From: PortalAdmin@doitt.nyc.gov
Sent: 04/17/2005 16:18:40
To: sbladmp@customerservice.nyc.gov
Subject: < No Subject >

From: ernestjeter@aol.com (Ernest Jeter)
Subject: Message to the Mayor

Below is the result of your feedback form. It was submitted by
Ernest Jeter (ernestjeter@aol.com) on Sunday, April 17, 2005 at 16:18:40
---------------------------------------------------------------------------

This form resides at

http://www.nyc.gov/portal/index.jsp?epi_menuItemID=bd08ee7c7c1ffec87c4b36d50
1c789a0&epi_menuID=beb0d8fdaa9e1607a62fa24601c789a0&epi_baseMenuID=27579af73
2d48f86a62fa24601c789a0&doc_name=http%3A%2F%2Fwww.nyc.gov%2Fhtml%2Fmail%2Fht
ml%2Fmayor.html


---------------------------------------------------------------------------

<APP>CUSTOM
<ISSUE>CASE</ISSUE>
<MSG>Your Honor:
I am writing this e-mail in order to request your urgent assistance to a
member of the Department of Education of the City of New York
discriminating against me because of race and deliberately abusing her
supervisory powers. The individual in question is Fran Dryfus, Local
Superintendent of Instructions for District 75 Citywide Program at 400 First
Avenue, New York. F. Dryfus has been investigating me and having my
counseling records reviewed on a weekly basis since September of school year
2004/5. She has reviewed my records without cause and without a complaint
being filed with her by either of my immediate supervisors. She has filed a
false report with the Special Commissioner of Investigation for New York
City Schools based on what she claimed are five errors with my attendance
cards on two students even though she has yet to give the students names.
She claims that the two students' mother filed a complaint with her, but she
has not produce a copy of the complaint the!
mother filed with her, nor has she produced the mother's names. The SCI
has produce a report in reference to the complaint filed by F. Dryfus filed
with them. F. Dryfus had meeting on April 1, 2005 with me, and she
concluded, even though she is wrong, that I claimed that I counseled atleast
12 students on days when school was either closed or the students were
absent. Four days in which she claimed school was closed the school was
open, and on the date in question, a RR is placed in the box. R= released.
As of April 12, 2005, she has assigned me to the District office with out
stating a specific reason other than she is doing some kind of
investigation. I have not been told what the investigation is about and this
is a clear violation of my righs to receive proper notice before I am
disciplined. I have also filed two complaints with DOE's Office of Equal
Opportunity, but I have not received any action.</MSG>
<PREFIX>Mr.</PREFIX>
<FIRST>Ernest</FIRST>
<LAST>Jeter</LAST>

**DOE01913**

```
<ADDR1>124-21 Flatlands Avenue/1J</ADDR1>
<CITY>Brooklyn</CITY>
<STATE>NY</STATE>
<ZIP>11208</ZIP>
<COUNTRY>United States</COUNTRY>
<PHONE_B>347-5967357</PHONE_B>
<EMAIL>ernestjeter@aol.com</EMAIL>
</APP>
```

---------------------------------------------------------------

REMOTE_HOST: 152.163.100.6
HTTP_USER_AGENT: Mozilla/4.0 (compatible; MSIE 6.0; AOL 9.0; Windows NT 5.1;
SV1; Alexa Toolbar)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Confidentiality Notice: This e-mail communication and any attachments may
contain confidential and privileged information for the use of the
designated recipients named above. If you are not the intended recipient,
you are hereby notified that you have received this communication in error
and that any review, disclosure, dissemination, distribution or copying of
it or its contents is prohibited. If you have received this communication
in error, please notify me immediately by replying to this message and
deleting it from your computer. Thank you.

DOE01914

**Valente Michael**

**From:** Valente Michael
**Sent:** Wednesday, May 25, 2005 11:38 AM
**To:** Hyland Thomas
**Cc:** Nunez Sunilda
**Subject:** Ernest Jeter v. Francine Dreyfus, OSI #05-4283

Confidential
OEO already reviewed complainant's concerns. Please see attached letter.
Have a good day!

*Michael J. Valente, Esq.*
*OEO Complaint Officer*
*Office of Equal Opportunity*
*NYC Department of Education*
*65 Court Street, Room 923*
*Brooklyn, NY 11201*
*(tel) 718-935-2135*
*(fax) 718-935-2531*

5/25/2005

DOE01858

**Valente Michael**

| | |
|---|---|
| **From:** | Valente Michael |
| **Sent:** | Thursday, April 28, 2005 11:20 AM |
| **To:** | Dreyfus Francine (750000) |
| **Cc:** | Henderson Rachel (75K811); McKenna Rodriguez Mary; Europe Theresa |
| **Subject:** | OEO's letter to Ernest Jeter |

Confidential
Please see the attached letter. If you have any questions, just contact me.
Thank you.

*Michael J. Valente, Esq.*
*OEO Complaint Officer*
*Office of Equal Opportunity*
*NYC Department of Education*
*65 Court Street, Room 923*
*Brooklyn, NY 11201*
*(tel) 718-935-2135*
*(fax) 718-935-2531*

4/28/2005

DOE01859

*#2005-1247*

*"out file"*

*Returned 5/14/05*
*S.S.*

THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK, N.Y. 10007

April 27, 2005

**REFERRAL TO:**

Mr. Richard J. Condon
Special Commissioner of Investigation
For the New York City School District
20th Floor
80 Maiden Lane
New York, New York  10038

**ACTION REQUESTED:**

The attached correspondence is being forwarded to your agency for response.  The only information the
Office of the Mayor has about this constituent is included in the attached letter.  Respond directly to the
constituent under the appropriate signature within your agency.  Please call Stacy Lewis with questions at
(212) 788-2771.

---

**DUE DATE:  within 10 working days of receipt**

---

**CONSTITUENT:**
Casework#: 332973
Mr. Ernest Jeter
Apartment 1-J
12-421 Flatlands Avenue
Brooklyn, NY  11208

**ACTION TAKEN:**

Please check action taken and provide a detailed explanation (please write any other pertinent information
on the back of this sheet).

_____ Constituent received a written response (attach copy)
_____ Constituent was responded to via phone.  Phone number: _____  Spoke to: _____

✓ The matter is outside of our jurisdiction.  I suggest referral to: *We have referred
the matter to the Chancellor's office of Special Investigations
We have previously referred 2 related Complaints
to OSI on some subject matter. (See attached
SCI Complaint form under Case Tracking.)*

Return this form to:
JoJo LoPresti
Mayor's Office of Correspondence
23rd Floor South
One Centre Street
New York, NY 10007
(212) 788-2468

**DOE 0215**

**JOEL I. KLEIN, Chancellor**

Office of Equal Opportunity

April 21, 2005

Mr. Ernest Jeter
124-21 Flatlands Avenue, Apt. 1-J
Brooklyn, NY 11208

OEO-104-05-04-08-02 jmreko1d

Dear Mr. Jeter:

The Office of Equal Opportunity (OEO) is in receipt of your complaints. Our preliminary investigation, made pursuant to Chancellor's Regulation A-830, indicates that there is **no credible evidence presented** which would support your allegations of discrimination and retaliation. Additionally, you have not presented credible evidence that the actions of school administrators regarding the assessment of your job performance and their involvement in a Special Commissioner of Investigations ("SCI") investigation of you regarding "falsified records and not providing mandated services to students" were pretexts for illegal discrimination. The issues raised in your complaints regarding your job performance and the SCI investigation are best addressed by your union. Based on the foregoing, OEO has declined to assert further jurisdiction over this matter and has closed your case file.

If you have any questions, you may contact Michael J. Valente, Esq., Equal Opportunity Complaint Officer at (718) 935-3319.

Sincerely,

Connie A. Shulman
Acting Director

CAS:mjv

65 Court Street • Suite 923 • Brooklyn, New York 11201 • Tel. (718) 935-3320 • Fax (716) 935-3775

**EXHIBIT 9**

800.523.7887          06/23/2006, NY, NY, In the Matter of NYC Dept. of Ed., v.Ernest Jeter,          Associated Reporters Int'l., Inc.

Page 2616

1  DeMarco - Cross - Glass
2       MS. PEPE-SOUVENIR:  -- as to
3  relevance.
4       THE HEARING OFFICER:  --
5  well, let's -- let -- let's see if she -- if
6  she first can establish that she knows -- that
7  he can establish that he -- that she knows the
8  person --
9       THE WITNESS:  Yes.
10       THE HEARING OFFICER:  --
11  which would be a basis for asking questions,
12  and then we'll get to the relevance of the
13  question.
14       MS. PEPE-SOUVENIR:  Okay.
15  BY MR. GLASS:  (Cont'g.)
16       Q.  Okay.  So, do you -- do you
17  recognize that sheet?
18       A.  Yes.
19       Q.  And does that refresh your
20  recollection of who Santa Antonio is?
21       A.  Yes.
22       Q.  Who -- who is she?
23       A.  She's -- I believe, a speech
24  therapist, and I think her first name is

Page 2617

1  DeMarco - Cross - Glass
2  Melissa.  I'm not -- I'm not entirely sure.
3       Q.  Okay.  Would she have
4  services -- would she have a mandate to service
5  individual students?
6       A.  Yes.
7       Q.  I notice it says on that
8  sheet, class.  Is that an appropriate use of a
9  sign-in sheet?
10       A.  She most likely was push-in.
11  Speech was push-in.  Speech Therapists did not
12  have a private office, only our guidance
13  counselors did.  Speech provider worked in the
14  classroom with the students.
15       Q.  But would she have a mandate
16  to service individual students?
17       A.  Yes.
18       Q.  Did you ever question her as
19  to how she -- why she was filling out "class"
20  on this?
21       MS. PEPE-SOUVENIR:
22  Objection, relevance.
23       THE HEARING OFFICER:  Okay.
24  Mr. Glass?

Page 2618

1  DeMarco - Cross - Glass
2       MR. GLASS:  Well, part of the
3  theory is that he is being scrutinized
4  differently than other people and so this goes
5  to you know -- the question of sign-in sheets,
6  there's been some testimony that she reviewed
7  that, her concerns, and we're trying to show
8  that it wasn't always consistent, whether
9  she --.
10       THE HEARING OFFICER:  I -- I
11  think it's relevant, at least as background
12  evidence.
13       MR. GLASS:  And it -- this
14  document is in evidence.
15       THE HEARING OFFICER:  Okay.
16  BY MR. GLASS:  (Cont'g.)
17       Q.  Okay.  Did you ever question
18  Ms. Santa Antonio about her filling out the
19  sign-in sheets?
20       A.  No.
21       Q.  Do you know if anyone else
22  ever questioned her about that?
23       A.  I wouldn't know.  I was only
24  directed to monitor Mr. Jeter's sheets.

Page 2619

1  DeMarco - Cross - Glass
2       Q.  Do you know someone named
3  Rochelle?
4       A.  Yes.
5       Q.  Okay.  Was she -- was she a
6  mandated one-to-one provider?
7       A.  I don't know what exactly
8  her -- whether she was listed as a
9  one-to-one -- I believe she may have been
10  listed on the organization under that.  She was
11  in the main office.
12       Q.  Who made the decision to
13  assign her to the main office as opposed to as
14  a one-to-one service --?
15       MS. PEPE-SOUVENIR:
16  Objection, relevancy to the charges.
17       MR. GLASS:  Well, it's
18  particularly relevant to Ms. Copenny's charge
19  that was charged in here about Mr. Jeter
20  raising a concern about what Ms. Kirshbalm was
21  doing.
22       MS. PEPE-SOUVENIR:  That was
23  never -- as far as direct.  That was not --
24       THE HEARING OFFICER:  Go

15 (Pages 2616 to 2619)

Associated Reporters Int'l., Inc.          800.523.7887

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

DOE 00704

**EXHIBIT 10**

## lerson Rachel (75K811)

Dreyfus Francine (750000)
Henderson Rachel (75K811)

**Sent:** Fri 2/18/2005 10:54 AM

ct:        Monday 2/28

ments:

der....I will be there on Monday 2/28 AM to review Jeter's logs, attendance, sign in/sign out sheets.
sure that Rosina has put this together for Dec. And January

---------------------------------------------------------

rom NYCDOE Blackberry Device

# EXHIBIT 11

**JOEL I. KLEIN**, *Chancellor*
DISTRICT 75
DR. SUSAN ERBER, *SUPERINTENDENT*

## MEMORANDUM

To:   Dr. Susan Erber, Superintendent

From: Dr. Fran Dreyfus, Local Instructional Superintendent

RE:   OSI Investigation #05-7914-Rosina DeMarco, Assistant Principal, P. 811K

Date: December 5, 2005

---

Ms. Marsiste Adolphe, Teacher filed an allegation of theft of service against Assistant Principal, Rosina DeMarco.  Mr. Adolphe contends that on the following days Ms. DeMarco was late or absent from work and this was not documented or entered as partial absences on payroll.

The dates are as follows: 10/17/05, arrival time of 8:35 AM, 10/18/05, arrival time at 8:50 AM 10/19/05, arrival time 8:10 AM, 10/20/05, arrival time midday, 10/21/05, arrival time 8:15 AM, 10/24/05, arrival time 8:20 AM, 10/25/05, Mr. Adolphe could not substantiate the time, 10/26/05, arrival at 8:13 AM.

On 10/20/05, Ms. DeMarco attended an assistant principals' meeting at P. 53K concerning "best practices" in instruction for students in 12:1:4 classrooms.  I was at P. 811K on 10/20/05 and Ms. DeMarco arrived at school at approximately 1:00 PM following the meeting.

Ms. DeMarco's official work hours are from 8:20 AM-4:10 PM. According to the "Record of Absence" (attached), Ms. DeMarco's time sheets, time cards, and a copy of the EIS payroll (attached) for Ms. DeMarco, she was late on 10/12/05, arrived at 8:36 AM, 16 minutes late, 10/18/05, 8:55 AM, 30 minutes late, 10/25/05, arrived at 8:25 AM, 5 minutes late.  These fractional absences were entered in EIS (see attached).

There is a memo in the packet that was written by Ms. DeMarco, dated October 12, 2005 concerning time and attendance. It must be revised since it is addressed to "all staff" and includes disciplinary action "including suspension and termination." Teachers cannot be suspended or terminated.

Also included in this packet is a letter addressed to Mr. Ernest Jeter, Guidance Counselor dated January 26, 2005.  I question how Mr. Adolphe had access to a confidential letter that was placed in Mr. Jeter's file.  As of April, 2005, Mr. Jeter was removed from his position as a guidance counselor pending the outcome of 3020a charges.  He has been assigned since April 2005 to the District Office.

Mr. Adolphe has underlined Rochelle Kirschbaum's name, a paraprofessional who is not assigned to the classroom.  I have directed Mr. Perez, Head of School, to correct this and list Ms.

DR. FRANCINE DREYFUS-LOCAL INSTRUCTIONAL SUPERINTENDENT
DISTRICT 75 ∙ 400 FIRST AVENUE ∙ NEW YORK ∙ NEW YORK ∙ 10010
212 ∙807 ∙1500 ∙ FAX ∙ ∙ ∙ ∙ ∙ ∙ ∙ ∙ ∙ ∙ ∙ Email: FDREYFUS@NYCBOE.NET



Kirschbaum correctly on the organization sheet. Ms. Kirschbaum has worked in the office for many years. Ms. Kirschbaum will be assigned to a classroom position by February 1, 2006.

Finally, Mr. Adolphe has attached several unclear photos. I am questioning if Mr. Adolphe was taking photos with his cell phone during instructional time or while he was officially (including during a prep period or professional activity period) on duty during school hours.

I have instructed Ms. DeMarco to maintain a time card (as well as sign in) to indicate her arrival and departure on a daily basis.

I have also directed Mr. Perez, Head of School, to instruct Ms. Mary Flynn, **Payroll Secretary,** to enter fractional absences on a monthly basis in EIS for all staff. I will personally follow-up on this issue.

Conclusion:
The allegation is unsubstantiated. Ms. DeMarco did not engage in theft of service.

DR. FRANCINE DREYFUS-LOCAL INSTRUCTIONAL SUPERINTENDENT
DISTRICT 75 ⋆ 400 FIRST AVENUE ⋆ NEW YORK ⋆ NEW YORK ⋆ 10010
212 ⋆802 ⋆1520 ⋆ FAX: 212 ⋆802 ⋆1692 – Email: FDREYFU@NYCBOE.NET

TOTAL f

**EXHIBIT 12**

---

Forwarded Message:

| | |
|---|---|
| Subj: | Fwd: Did your office investigate my complaint? |
| Date: | 5/19/2006 2:14:17 P.M. Eastern Daylight Time |
| From: | Ernestjeter |
| To: | rcondon@nycsci.org |

To: Richard Condon
  Commissioner
  Office of Special commissioner
  Investigation for
  New York City School District

Mr. Condon:

Below you will find two emails that I have sent to Mr. Thomas Fennell, Chief Investigator, in your office. You will notice that I have requested from Mr. Fennell a status report on the various complaint filed with your office. As stated in the emails, I have not received the common courtesy of a response from Mr. Fennell.

I am sending you this email with the idea that you will assist me with the matter in reference to Mr. Fennell not responding to a member of the public, such as myself, who has made a complaint to your office about possible Medicaid fraud and theft of services, etc

At this time I want to thank you for any attention that you may give to my very important public concerns, such as the illegal use of taxpayers funds for not providing mandated related services in which Medicaid has reimbursed the DOE for providing the mandated services.

Ernest Jeter
124-21 Flatlands Avenue 1J
Brooklyn, New York 11208
347-596-7357

---

Forwarded Message:

| | |
|---|---|
| Subj: | Did your office investigate complaint? |
| Date: | 4/14/2006 4:17:36 P.M. Eastern Daylight Time |
| From: | Ernestjeter |
| To: | tfennell@nycsci.org |

To: Mr. Thomas Fennell
  Chief Investigator
  Office of Special Commissioner
  Of Investigation for the
  New York City School District
  80 Maiden Lane, 20th Floor
  New York  10038
  (212) 510-1439

Saturday, March 21, 2009 AOL: Ernestjeter

PI0012

From: Ernest Jeter
Complainant

Re: Did your office investigate the complaint filed by me in or on about June 2005 and in which I was interviewed by Larry D. Kendricks, Assistant Team Leader, also in June 2005 in reference to the complaint-

Mr. Fennell:

When we last spoke pursuant to a telephone call you made to me on my cell phone in perhaps September or October 2005, you stated during that cell phone conversation you had with me that your office is/was investigating the complaint I made to your office, and there was no need for me to go to the mayor's office to make a complaint.

Mr. Fennell, I have waited patiently for a response from your office in reference to the complaint that I filed with your office. I have called your office in December 2005 and left a message on your voice mail and on David Moreno's voice mail for either one of you to contact me in reference to my complaint. As of the date of this email to you, I have not received a response from you or David Moreno.

There seems to be something strange going on in your office in reference to investigations of complaints against the New York City Department of Education's administrators or individuals closely associated with the administrators. But, that is to be discussed at another time.

However, in the mean time, I will appreciate it if you will extend the courtesy an inform me on the progress of your investigation in reference to my complaint filed in your office. In addition, I also will appreciate it if you will provide your response in writing. That is, you can provide your response by a letter through regular mail or just simply email at my email address: ernestjeter@aol.com.

If you have any further questions pertaining to this matter, please do not hesitate to call me at 347-596-7357.

Finally, I want to think you in advance for considering this extremely important matter of preventing theft of services, falsifying documents and committing "Medicaid Fraud" by the DOE employees whom the complaint was made against.

Thank you,

Ernest Jeter

PI0013

Subj.    Fwd: Did your office investigate complaint?
Date:    5/19/2006 1:51:57 P.M. Eastern Daylight Time
From:    Ernestjeter
To:      tfennell@nycsci.org

To: Mr. Thomas Fennell
   Chief Investigator of
   Office Special Investigation
   For New York City School District

Mr. Fennell:

This is my third or fourth attempt to contact you in an attempt to get a status report on the various complaints that I have filed with your office against various New York City Department of Education employees. As of the date of this email, May 19, 2006, I have not received a response from you.

You have not responded to my telephone call nor have you responded to my email.

In closing, thank you for your immediate attention to this very important public matter.

Ernest Jeter
124-21 Flatlands Avenue 1J
Brooklyn, New York 11208
347-596-7357

--------------------
Forwarded Message.
Subj:    Did your office investigate complaint?
Date:    4/14/2006 4:17:36 P.M. Eastern Daylight Time
From:    Ernestjeter
To:      tfennell@nycsci.org

To: Mr. Thomas Fennell
   Chief Investigator
   Office of Special Commissioner
   Of Investigation for the
   New York City School District
   80 Maiden Lane, 20th Floor
   New York 10038
   (212) 510-1439

From: Ernest Jeter
   Complainant

Re: Did your office investigate the complaint filed by me in or on about June 2005 and in which I was interviewed by Larry D. Kendricks, Assistant Team Leader, also in June 2005 in reference to the complaint-

Mr. Fennell:

When we last spoke pursuant to a telephone call you made to me on my cell phone in perhaps September or October 2005, you stated during that cell phone conversation you had with me that your office is/was investigating the complaint I made to your office, and there was no need for me to go to the mayor's office to make a complaint.

Saturday, March 21, 2009 AOL: Ernestjeter

PL0020

37

Mr. Fenneli, I have waited patiently for a response from your office in reference to the complaint that I filed with your office. I have called your office in December 2005 and left a message on your voice mail and on David Moreno's voice mail for either one of you to contact me in reference to my complaint. As of the date of this email to you. I have not received a response from you or David Moreno.

There seems to be something strange going on in your office in reference to investigations of complaints against the New York City Department of Education's administrators or individuals closely associated with the administrators. But, that is to be discussed at another time.

However, in the mean time, I will appreciate it if you will extend the courtesy an inform me on the progress of your investigation in reference to my complaint filed in your office. In addition, I also will appreciate it if you will provide your response in writing. That is, you can provide your response by a letter through regular mail or just simply email at my email address: ernestjeter@aol.com.

If you have any further questions pertaining to this matter, please do not hesitate to call me at 347-xxx-xxxx.

Finally, I want to think you in advance for considering this extremely important matter of preventing theft of services, falsifying documents and committing "Medicaid Fraud" by the DOE employees whom the complaint was made against.

Thank you.

Ernest Jeter

Saturday, March 21, 2009 AOL: Ernestjeter