UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
ERNEST JETER,

|  |  |  |
|---|---|---|
| | Plaintiff, | **MEMORANDUM & ORDER** |
| -against- | | **06-CV-3687 (NGG) (LB)** |

NEW YORK CITY DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF INVESTIGATION OF THE
CITY OF NEW YORK, and THE OFFICE OF SPECIAL
COMMISSIONER OF INVESTIGATION FOR NEW
YORK CITY SCHOOL DISTRICT OF THE CITY OF
NEW YORK,

                         Defendants.
--------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Ernest Jeter brought suit against Defendants alleging violations of Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., ("Title VII"); the Equal

Protection Clause of the Fourteenth Amendment of the United States Constitution; 42 U.S.C. §

1981; 42 U.S.C. § 1983; 42 U.S.C. § 1985; 42 U.S.C. § 1986; and the New York State Human

Rights Law.  Plaintiff alleges that he was discriminated against on the basis of his race and

retaliated against for engaging in protected activities.  Plaintiff's claims under the New York

Human Rights Law and 42 U.S.C. §§ 1985-86 were dismissed before discovery.  (Mar. 8, 2008

Mem. & Order (Docket Entry # 17) at 8-11.)  Following that ruling, the case proceeded to

discovery.  Discovery is now closed and Defendants move for summary judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure on all remaining claims; Plaintiff cross-moves

for summary judgment as to Defendants' liability for Plaintiff's Title VII retaliation claim, and

opposes summary judgment on the remaining claims.  For the reasons discussed below,

Defendants' motion is granted in part and denied in part; Plaintiff's motion is denied.

# I.    THE RECORD

At the outset, the court rules on certain issues relevant to determining the scope of the record it will consider when evaluating the cross-motions for summary judgment.  Federal Rule of Civil Procedure 56(c)(2) permits a party to object to an opposing party's reliance on material that cannot be produced in a form that would be admissible in evidence.  Therefore, the court resolves these objections first, before considering the parties' arguments on the substance of the cross-motions.  Plaintiff objects to Defendants' use of his deposition (Pl. 56.1 Counter-Statement (Docket Entry # 93) ¶ 1 et al.), and Defendants object to Plaintiff's use of several documents that Plaintiff did not produce during discovery (Defs. Opp'n Mem. (Docket Entry # 102-1) at 8-10).

Plaintiff has objected to Defendants' use of Plaintiff's deposition because, Plaintiff contends, Plaintiff was not given the chance to view and correct the deposition after it was completed, pursuant to Federal Rule of Civil Procedure 30(d)(1).  (See Pl. 56.1 Counter-Statement ¶ 1 et al.)  The court previously directed Plaintiff to bring this dispute to the attention of Magistrate Judge Lois Bloom for resolution in the first instance.  (See Dec. 16, 2011 Minute Order.)  This Order was consistent with court rules, which refer non-dispositive pretrial matters in most civil cases to magistrate judges.  See E.D.N.Y. Local Rule 72.2.  There is no evidence that Plaintiff followed the court's Order; instead, he raises this issue before this court in his 56.1 counter-statement in the form of objections to Defendants' use of excerpts of the deposition. This pattern of ignoring the court's instructions, and avoiding the court's referral of discovery management and the resolution of discovery disputes (which are quintessential non-dispositive pretrial matters), is not acceptable.  Consequently, the court rules that Plaintiff has forfeited any right to object to the alleged violation of Rule 30.  See Fed. R. Civ. P. 16(f) ("On motion or on its own, the court may issue any just orders . . . , if a party or its attorney . . . fails to obey a

scheduling or other pretrial order.").  Where Plaintiff's objections to Defendants' Statement of

Undisputed Material Facts are based solely on Plaintiff's forfeited Rule 30 argument, the court

deems those facts unopposed.[1]

As stated above, Defendants also object to some of the evidence Plaintiff offers in

support of his cross-motion for summary judgment; the exhibits to which Defendants object are

documents that Defendants claim Plaintiff did not produce during discovery.  (See Defs. Opp'n

Mem. at 8-9 (objecting to Pl. Exs. 2, 10, 13-14, 16, 18-21, & 24).)  Defendants cite Federal Rule

of Civil Procedure 37(c)(1), which prohibits a party from using information that it should have

but failed to produce during discovery to supply evidence on a motion, unless the error was

either substantially justified or harmless.  Rule 37 is a discretionary remedy.  Design Strategy,

Inc. v. Davis, 469 F.3d 284, 297 (2d Cir. 2006).  The considerations that guide the district court's

exercise of discretion in whether or not to exclude challenged exhibits include "(1) the party's

explanation for the failure to comply with the discovery [rule]; (2) the importance of the

[precluded evidence]; (3) the prejudice suffered by the opposing party as a result of having to

prepare to meet the new [evidence]; and (4) the possibility of a continuance."  Softel, Inc. v.

Dragon Med. and Scientific Commc'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997); accord Patterson

v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006).  The court evaluates those four considerations in

an order different than how they are listed in the quoted language.[2]

---

[1]      The court notes that Plaintiff's argument on the substance of his objection is unpersuasive, at least as
currently briefed.  The admissibility of a party's deposition does not turn on whether the party has reviewed and
signed the deposition after the deposition's completion.  See, e.g., Pacheo v. NY Presbyterian Hosp., 593 F. Supp.
2d 599, 605 n.1 (S.D.N.Y. 2009); Merring v. Town of Tuxedo, No. 07-CV-10381 (CS), 2009 WL 849752 at *1 n.7
(S.D.N.Y. Mar. 31, 2009).  Plaintiff cites no authority for the proposition that a Rule 30 violation is grounds for
exclusion of otherwise admissible deposition testimony.

[2]      Plaintiff argues that discovery disputes are referred to the assigned magistrate judge, and should not be
decided by this court.  (Pl. Reply Mem. at 8.)  Plaintiff's reference to the magistrate judge creates a false parallel
between Defendants' objection and Plaintiff's.  Unlike Plaintiff's objection to the use of his deposition that the court
discusses above, Defendants never attempted to raise an objection to Plaintiff's reliance on these exhibits, and thus

3

The court notes first that the possibility of a continuance has not been raised. It was incumbent on Plaintiff, as the party seeking to rely on the challenged exhibits, to raise the possibility of reopening discovery and establishing a new schedule for summary judgment motions; because Plaintiff has not done so, the court does not consider this factor further. See Patterson, 440 F.3d at 118.

The court next considers Plaintiff's explanation. Plaintiff does not deny that he failed to produce the challenged exhibits. Plaintiff's response to Defendants' objection is that most of the objected-to documents were generated by New York City Department of Education ("DOE") employees and so Defendants had knowledge of the documents and violated their own discovery obligations by not producing them to Plaintiff. Plaintiff's argument, in essence, is that both parties committed discovery violations and consequently he should not be barred from relying on these exhibits. (See Pl. Reply Mem. at 6-7.) The court finds Plaintiff's explanation unpersuasive. The court first notes that it cannot say based on these facts that Defendants have committed an intentional discovery violation because the court is not in a position to assume that Defendants had knowledge of these documents—for example, the documents might not be authored by the DOE employees who Plaintiff claims authored them; DOE employees might have destroyed these documents before litigation; or, Defendants' counsel may have unintentionally overlooked some of these documents among the larger set of documents DOE employees gave them. Second, even if Defendants' conduct did violate the rules of discovery,

---

were never ordered to present that argument to the magistrate judge. Moreover, Plaintiff must have been aware of his claims about the deposition and the documents he says Defendants did not produce, and so could have raised these issues before the magistrate judge at any time before the close of discovery, even before the court ordered him to present the dispute about the deposition to Judge Bloom; on the other hand, there is no reason of which the court is aware to think that Defendants would have known about Plaintiff's intent to rely on these exhibits before Plaintiff filed his summary judgment motion. Finally, while Plaintiff's claim that Defendants withheld their copies of the exhibits to which they now object is a claim of discovery non-compliance, and thus was proper for him to have raised during discovery, Defendants' objection is one of admissibility at summary judgment, and thus is properly raised in its opposition to summary judgment. For the foregoing reasons, the court considers Defendants' objection to the admissibility of the exhibits now rather than referring the issue to Judge Bloom.

the court fails to see how that should affect Plaintiff's own obligation to produce documents. Whatever Defendants' actions, Plaintiff had a clear path to ensure these documents were admissible: produce or disclose them, and submit requests for Defendants to admit the authenticity of the documents.  See Fed. R. Civ. P. 36(a)(1)(B).  More generally, the principles of civil discovery in American litigation call for each party to produce in good faith the documents that qualify for automatic disclosure or that are responsive to the other side's requests; if any party felt entitled to ignore its obligations because of a believed failure on the part of its opponent, the discovery regime might grind to a halt.  In short, the court is not inclined to go against the maxim "two wrongs don't make a right."  Plaintiff's proffered explanation does not provide a justifiable reason to admit the exhibits.

With respect to prejudice, Defendants allege that while some of Plaintiff's exhibits purport to be documents generated by DOE employees, Defendants have not had the opportunity to investigate the authenticity of those documents.  (Defs. Opp'n Mem. at 9.)  Indeed, it is plausible that Defendants might have substantial concerns about the authenticity of emails purportedly sent from one DOE employee to another that are now in the custody of Plaintiff but were not turned over by the DOE in discovery.  (See, e.g., Feb. 18, 2005 Dreyfus Email (Glass Decl. Ex. 10 (Docket Entry # 95)).)  Moreover, Defendants allege they were denied a chance to depose Plaintiff about these documents because of their tardy production.  (Defs. Opp'n Mem. at 9.)  Finally, as Defendants had already filed their motion for summary judgment before seeing these documents, Defendants were denied a chance to fashion their legal arguments to the material facts these documents illustrate (if any).  The court believes that Defendants would likely suffer prejudice in all three ways described above, and so this consideration weighs in favor of excluding the challenged exhibits.

Further, Plaintiff's challenged exhibits, for the most part, are not important; indeed, for the most part they do not provide evidence of any material fact. The exceptions may be Exhibits 13 and 21, which relate to the issue of Defendants' alleged deduction of Plaintiff's leave days, and Exhibits 18, 19, and 20, which relate to Defendants' alleged acts preventing Plaintiff from being hired as a "Chapter 683" counselor. These exhibits may be relevant to Plaintiff's claim of disparate treatment; however, their importance must be discounted due to possible evidentiary objections, on grounds such as authenticity and hearsay, that may exclude them from consideration even absent Rule 37(c)(1). Thus, this factor weighs at most modestly in Plaintiff's favor. However, three of the four relevant considerations weigh against excusing Plaintiff's noncompliance, and therefore the court sustains Defendants' objection and will not consider Plaintiff's exhibits 2, 10, 13, 14, 16, 18, 19, 20, 21, and 24 in deciding the motions before it.

Finally, the court rules on Plaintiff's request to supplement his materials in support of his summary judgment motion. (Pl. Ltr. Mot. (Docket Entry # 113).) On consent of Defendants (Def. Resp. (Docket Entry # 114)), the court grants Plaintiff's motion to supplement his exhibits and will consider the testimony of Bonnie Brown in Plaintiff's administrative hearing (see Brown Hr'g Test. (Glass Decl. Ex. 26 (Docket # 113-1)).

## II.  BACKGROUND

Defendants and Plaintiff made the unusual (and unfortunate) decision to not present the court with a summary of the facts in their memoranda of law. (See Defs. Mem. at 2; Pl. Mem. at 2.) Therefore, the court constructs its account of the factual background of this suit primarily from the 56.1 statements and counter-statements the parties have submitted (Defs. 56.1 Statement (Docket Entry # 90); Pl. 56.1 Statement (Docket Entry # 100)) and, where appropriate, the decision of the Hearing Officer who presided over the DOE's unsuccessful attempt to

terminate Plaintiff's employment (Hr'g Officer Decision (Chiu Decl. Ex. P (Docket Entry # 92-3))).[3]

Plaintiff has been a guidance counselor employed by the DOE since 1994. (Jeter Dep. (Chiu Decl. Ex. C (Docket Entry # 92-1)) at 28:3-28:4.) The undisputed facts suggest an increasingly divisive relationship between Plaintiff and his employer. In a suit antecedent to this one, Plaintiff alleged that the DOE discriminated against him due to his race and medical disabilities through actions that the DOE took in the late 1990s and in the early 2000s, through 2003; United States District Judge David Trager granted summary judgment for the DOE in 2004. Jeter v. Bd. of Educ. of the City of NY, No. 99-cv-2537 (DGT) (CLP) (E.D.N.Y. Mar. 23, 2004). The instant suit, however, deals with events that occurred from 2004 through 2006.[4]

As of the 2003-2004 school year, Plaintiff was a guidance counselor at P.S. 811K in District 75. In February 2004, Plaintiff and fellow school counselor Steven Lent were involved in a confrontation, during which Plaintiff made remarks of a sexual and derogatory nature toward Lent.[5] (Hr'g Officer Decision) at 64.) Plaintiff's remarks were provoked in part by Lent. (Id. at 64-65.) Lent made a complaint about the event to the New York City Police Department, at least in part on the advice of school Principal Rachel Henderson. (Lent Hr'g Test. (Glass Decl. Ex. 3 (Docket Entry # 95)) at 98:18-99:21.) Plaintiff in turn made a complaint to the DOE's Office of

---

[3]     The hearing officer's findings on factual issues that were litigated before him have preclusive effect in this litigation. See Burkybile v. Bd. of Educ. of Hastings-on-Hudson Union Sch. Dist., 411 F.3d 306, 311-312 (2d Cir. 2005).

[4]     In an opinion granting in part Defendants' motion to dismiss, Judge Trager ruled that events that occurred before October 15, 2004, were barred for purposes of Plaintiff's Title VII claims (Mar. 8, 2008 Mem. & Order at 22), and events that occurred before July 27, 2003, were barred for purposes of Plaintiff's Equal Protection and 42 U.S.C. § 1981 claims (id. at 19). Judge Trager also ruled that the allegations contained within first complaint to the New York State Division of Human Rights ("DHR I") were also barred. (Id. at 21.) The court will not refer to events that occurred before the earlier of the two limitation periods unless necessary.

[5]     Plaintiff's remark was "put your hands down your pants and play with yourself to give you something to do." Plaintiff did not make threatening remarks toward Lent's wife and daughter. (See Hr'g Officer Decision at 65 n.21.)

Employment Opportunity ("OEO"), claiming Lent had harassed him.  (Jeter Dep. at 132:11-134:8; Mar. 8, 2004 OEO Compl. (Chiu Decl. Ex. CC (Docket Entry # 92-4)).)  Lent was subsequently transferred to another school (Mar. 8, 2004 Henderson Email (Chiu Decl. Ex. DD (Docket Entry # 92-4))) and administration officials issued a non-disciplinary "counseling memorandum" about the incident (Mar. 10, 2004 Memorandum (Glass Decl. Ex. 4 (Docket Entry # 95))).

In May of 2004, Plaintiff received a letter from the school administration informing him that he was not keeping up with various administrative requirements—attendance cards, "Progress Notes" on his Related Service Attendance Cards, and keeping a daily log of his activities.  (June 4, 2004 Levy Ltr. (Chiu Decl. Ex. W (Docket Entry # 92-4)).)  After that letter, Plaintiff filed DHR I, alleging disparate treatment based on race.  (DHR Compl. (Chiu Decl. Ex. EE (Docket Entry # 92-4)).)

In September 2004, a parent of two special education students who had been assigned to Plaintiff for counseling told Local Instructional Superintendent Fran Dreyfus that she believed Plaintiff was not providing counseling services to her children.  (Serra Dep. (Chiu Decl. Ex. G. (Docket Entry # 2)) at 30:18-32:11, 34:8-14.)  Dreyfus directed Assistant Principal Rossie DeMarco to review some of Plaintiff's records; Dreyfus reviewed some of Plaintiff's records as well.  (Dreyfus Dep. (Chiu Decl. Ex. E (Docket Entry # 92-2)) at 58:6-59:8.)  Dreyfus determined that Plaintiff had indicated he had held counseling sessions with students on dates that could not have been accurate, because the school was closed or the student was absent on those dates.  (Id. at 64:3-65:10, 119:19-22.)

After Dreyfus's investigation, DOE issued two letters to Plaintiff's file about this record-keeping issue, in October and November of 2004.  (Oct. 18, 2004 Dreyfus Ltr. (Chiu Decl. Ex. X

(Docket Entry # 92-4)); Nov. 30, 2004 Dreyfus Ltr. (Chiu Decl. Ex. Y (Docket Entry # 92-4)).)

Dreyfus also reported the parent's complaint to Defendant Office of the Special Commissioner

of Investigation for New York City School District ("SCI") for investigation in October of 2004.

(SCI Intake Form (Chiu Decl. Ex. J (Docket Entry # 92-2)).)

In January of 2005, Plaintiff complained to the DOE's OEO alleging racial

discrimination. (Jan. 17, 2005 OEO Compl. (Chiu Decl. Ex. GG (Docket Entry # 94-4)).) In

February of 2005, SCI "substantiated" the allegation that Plaintiff had failed to provide

counseling and falsified time records; it recommended that the DOE seek Plaintiff's termination.

(Loughran Ltr. (Chiu Decl. Ex. L (Docket Entry # 92-2)).) In April of 2005, Jeter filed a

complaint of racial discrimination with the OEO. (Apr. 4, 2005 OEO Compl. (Chiu Decl. Ex.

HH (Docket Entry # 92-4)).) Also in April of 2005, the DOE issued a letter to Jeter's file stating

that he had falsely reported counseling service times. (Apr. 7, 2005 Dreyfus Ltr. (Chiu Decl. Ex.

Z (Docket Entry # 92-4)).) In response, and in the same month, Plaintiff sent a letter to Mayor

Michael Bloomberg of the City of New York, alleging that he was being discriminated against

based on race. (Apr. 18, 2005 Jeter Email (Chiu Decl. Ex. II (Docket Entry # 92-4)).) Plaintiff

filed another complaint with the OEO in June. (June 1, 2005 OEO Compl. (Chiu Decl. Ex. JJ

(Docket Entry # 92-4)).) The same month, the DOE charged Plaintiff with disciplinary

infractions and sought his dismissal. (June 6, 2005 Charges & Specifications (Chiu Decl. Ex. M

(Docket Entry # 2)).) As of July of 2005, the DOE removed Plaintiff from his counseling

position at PS 811K and reassigned him to the district office, pending the outcome of the

termination proceeding; Plaintiff's base salary was unaffected. (June 23, 2005 Nathan Ltr. (Chiu

Decl. Ex. AA (Docket Entry # 94-4)).) Plaintiff filed his second complaint with the New York

State Division of Human Rights in August of 2005 ("DHR II"), alleging retaliation and disparate treatment. (DHR Compl. (Chiu Decl. Ex. KK (Docket Entry # 94-4)).)

One day in December of 2005, while Plaintiff was assigned to the district office, Plaintiff was stopped from entering the office before 8:00 a.m. by a security guard. In response, Plaintiff said, "I hate you motherfucking people. I hate you, Dr. Erber, and Bonnie Brown." (Hr'g Officer Decision at 93, 97.) (Susan Erber was at one time the District 75 Superintendent and Bonnie Brown was successively the District 75 Deputy Superintendent and Superintendent.) Several months later, a charge about this event was added to the already pending charges. (Charge & Specification (Chiu Decl. Ex. N (Docket Entry # 94-2)).)

The DOE's attempt to terminate Plaintiff's employment triggered a New York Education Law Section 3020-a hearing before a neutral Hearing Officer. The Hearing Officer dismissed three of the original fifteen charges against Plaintiff for lack of evidence. (See Hr'g Officer Ruling on Mot. to Dismiss (Chiu Decl. Ex. MM (Docket Entry # 94-5)).) The Hearing Officer then considered the evidence (testimonial and documentary) on the remaining charges, and the charge added after the "motherfucking people" incident, and issued a written decision. (See Hr'g Officer Decision.) In that opinion, the Hearing Officer found that the DOE had not met its burden as to eleven of the thirteen remaining charges. (Id.) Regarding to the issues the parties have focused on in their briefing on the cross-motions for summary judgment—discrepancies in Plaintiff's counseling dates in his Related Service Attendance Cards, and the complaint from a parent that he had not provided counseling to her two children—the Hearing Officer found that the DOE had not met its burden. The Hearing Officer held that while there were discrepancies in Plaintiff's records, the rate of error was an apparently reasonable one (4.3%), and the DOE had not presented any evidence of the practices of other guidance counselors, or any other form of

evidence, that would suggest that such an error rate indicated culpable negligence or intentional misconduct.  (Id. at 35-36.)  As to the charges relating to one of the two children (whom the Hearing Officer called "M.E."), the Hearing Officer found that the evidence showed that Plaintiff had filled out records indicating he had met with M.E., that Plaintiff had first-hand knowledge of M.E. and his counseling needs which indicated that he had been providing services to M.E., and that a teacher who testified that she did not see Plaintiff with M.E. did not provide support for the DOE's claims for a variety of reasons.  (Id. at 39-42.)  With regard to the charge about the second of the two children (whom the Hearing Officer called "G.E."), the Hearing Officer found that Plaintiff had made errors in some of his Related Service Attendance Cards, but despite those errors, the records indicated that Plaintiff had seen G.E. multiple times throughout the school year; the Hearing Officer also discounted the testimony provided by a teacher for various reasons.  (Id. at 44-45.)  The Hearing Officer noted that there were "unanswered questions" in the DOE's case (id. at 45), and indeed, the DOE did not offer the testimony of the two boys' school aides, nor the testimony of the teacher who had taught G.E. for most of the year (id. at 43-44).

Of the thirteen charges against Plaintiff, the Hearing Officer found the DOE met its burden of persuasion as to two.  The first was the allegation that Plaintiff had made a sexual and derogatory comment to Lent in February of 2004.  (Id. at 64; see also supra, n.3.)  The Hearing Officer also sustained the allegation that Plaintiff had said that he hated "you motherfucking people," referring to the district superintendents.  (Hr'g Officer Decision at 93, 97.)  The Hearing Officer then considered whether Plaintiff should be punished for those two infractions.  He found that in both instances, Plaintiff had been provoked and so no punishment was warranted.  (Id. at 99.)  The Hearing Officer ordered that Plaintiff be restored to P.S. 811K.  (Id. at 100.)

After the Hearing Officer's decision, Plaintiff was not reassigned to P.S. 811K. Instead, he was assigned to a different school by order of Brown. (Brown Dep. at 42:17-43:3, 44:16-24.) Brown claimed that P.S. 811K was experiencing disruption and that Plaintiff's presence would only add to that. (Id.) Plaintiff grieved his reassignment (see Step Two Grievance (Glass Decl. Ex. 22 (Docket Entry 95-1))), but the Grievance Officer ruled that Brown was allowed to assign him to a different school (Grievance Officer Decision (Chiu Decl. Ex. Q (Docket Entry # 94-4))).

## III.    LEGAL STANDARD

A motion for summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the court may not "make credibility determinations or weigh the evidence," but "must draw all reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149, 150 (2000). Further, the burden of showing the absence of any genuine dispute as to a material fact rests on the movant. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

A fact is material if its existence or non-existence "might affect the outcome of the suit under the governing law," and an issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. A grant of summary judgment is proper "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight." Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994).

The party opposing summary judgment is not entitled to rely on unsworn allegations in the pleading, but must instead "show that there is admissible evidence sufficient to support a finding in her favor on the issue that is the basis for the motion." Fitzgerald v. Henderson, 251 F.3d 345, 360-61 (2d Cir. 2001). Even where a statement is sworn, the information therein should not be credited if it constitutes hearsay "that would not be admissible at trial if testified to by the affiant." Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004). "Nor is a genuine issue created merely by the presentation of assertions that are conclusory." Id.

## IV.    DISCUSSION

### A.    Non-DOE Defendants

Defendants assert, and Plaintiff does not dispute, that the Department of Investigation of the City of New York and SCI are mayoral agencies of the City of New York that are not amenable to suit. For support, Defendants cite New York City Charter Chapter 17, Section 396: "all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." Plaintiff's claims against DOI and SCI are accordingly dismissed. See United States v. City of New York, 683 F. Supp. 2d 225, 243 (E.D.N.Y. 2010). Plaintiff did not file suit against the City of New York, and so Plaintiff's case proceeds against Defendant DOE only.

**B.    Plaintiff's Equal Protection and Section 1981 Claims**

Based on the facts described in Section II, supra, Plaintiff alleges that Defendants

violated his rights under the Equal Protection Clause of the Fourteenth Amendment and 42

U.S.C. § 1981.  (Compl. Sections E & F.)  Claims of violations of both provisions are enforced

through 42 U.S.C. § 1983.  Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004).

Where, as here, a plaintiff has brought suit under § 1983 against a municipal entity, the plaintiff

must show that the acts about which he complains were taken as part of a municipal policy or

custom.[6]  Id. at 226; see also Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658 (1978).  This

showing may involve evidence of a practice "so persistent or widespread" as to indicate "a

custom or usage with the force of law," Sorlucco v. N.Y. City Police Dep't, 971 F.2d 864, 870-

71 (2d Cir. 1992) (internal quotation marks omitted), or a practice that was "so manifest as to

imply constructive acquiescence" from higher-ranking officials, id. at 871, or evidence that "the

municipality so failed to train its employees as to display a deliberate indifference to the

constitutional rights" of its residents, Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir. 1996)

(quoting Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996)).

Plaintiff has not directed the court to any evidence that would support a finding that

Plaintiff was a victim of a municipal policy under any of the-above quoted formulations of that

requirement.  Plaintiff's arguments in response are that (1) high-level officials of the DOE

instigated or approved of the charges against him and (2) allegations against him and a friend of

his were treated differently than Plaintiff's allegations against Steven Lent.  (Pl. Mem. at 7-9.)

But disparate treatment in a particular case, without more, does not provide evidence of a policy

---

[6]    After this motion was fully briefed, and almost six years after the suit was filed, Plaintiff sought leave to
amend his Complaint to add several individual defendants.  (Pl. Ltr. (Docket Entry # 104) at 1.)  The court denied
this request on the grounds of prejudice to the putative defendants.  (Mar. 9, 2012 Minute Order.)

or <u>custom</u> on the part of the municipality.[7]  Therefore the court must grant summary judgment to the DOE on this claim.

### C.    Title VII Claims

Plaintiff also brings claims under Title VII.  Title VII prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of," inter alia, "such individual's race."  42 U.S.C. § 2000e-2(a)(1).  Plaintiff's claims under Title VII include claims of racially-motivated disparate treatment and hostile work environment and a claim of retaliation for engaging in protected activities.

#### 1.    Disparate Treatment

In order to survive a motion for summary judgment on a disparate treatment claim—that is, a claim of intentional discrimination—a Title VII plaintiff must satisfy a three-part burden-shifting test.  <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  First, the plaintiff must establish a prima facie case of discrimination.  <u>Holcomb v. Iona Coll.</u>, 521 F.3d 130, 138 (2d Cir. 2008).  In order to make out such a prima facie case, the plaintiff must show (1) that he belonged to a protected class; (2) that he was qualified for the employment position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  <u>Id.</u>  If the plaintiff succeeds in making out a prima facie case, a presumption of discrimination arises and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action.  <u>Id.</u>  If the defendant proffers such a reason, the defendant "will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably

---

[7]        The cases that Plaintiff cites address liability for disparate treatment under <u>Title VII</u>, not § 1983.  <u>See</u> <u>Mandell v. County of Suffolk</u>, 316 F.3d 368, 378-79 (2d Cir. 2003) (discussing disparate treatment as a method of alleging a prima facie case of discrimination under Title VII); <u>Graham v. Long Island R.R</u>, 230 F.3d 34, 40 (2d Cir. 2000) (same).

supports a finding of prohibited discrimination." James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000). At this stage, "the plaintiff may, depending on how strong it is, rely upon the same evidence that comprised her prima facie case, without more." Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 124 (2d Cir. 2004). To defeat summary judgment, "the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." Id. at 123.

Defendants do not contest that Plaintiff has made out the first two elements of a prima facie case of disparate treatment. They do argue, however, that Plaintiff has not met his burden of producing evidence of an adverse employment action or evidence of circumstances that give rise to an inference that Defendants' acts were racially motivated. (Defs. Mem. at 5.) Defendants argue in the alternative that they have produced evidence of a legitimate, nondiscriminatory reason for the actions that they took against Plaintiff. (Id. at 10.)

Plaintiff argues that he did suffer an adverse employment action sufficient to make out a prima facie disparate treatment case. (Pl. Mem. at 6.) Plaintiff's examples of adverse employment actions are primarily the institution of termination proceedings against him (see June 6, 2005 Specifications & Charges at 1); reassignment out of a school and to an administrative office during the pendency of the termination proceeding (June 23, 2005 Nathan Ltr. at 1); and Defendants' refusal to reassign him to the school in which he had been a guidance counselor before the institution of the termination proceedings (see Step Two Grievance at 1).[8]

---

[8]      Plaintiff also appears to claim that he was deprived of several leave days from his cumulative annual leave reserve ("CAR"), and that this constitutes an adverse employment action as well. (Pl. Mem. at 6.) This claim lacks evidentiary support. Plaintiff alleges that the testimony of Bonnie Brown at Plaintiff's administrative hearing supports his assertion (see Pl. 56.1 Statement of Facts (Docket Entry # 100-1) ¶ 23), but nowhere in the supplied portion of testimony does the witness mention deducting days from Plaintiff's CAR (see Brown Hr'g Test.). Plaintiff's other claimed support, an email Plaintiff alleges he sent to a payroll employee (Aug. 11, 2006 Jeter Email (Glass Decl. Ex. 13 (Docket Entry # 95-1))), has been excluded from consideration due to Plaintiff's failure to

Defendants argue that these actions do not qualify as adverse employment actions for the purposes of a Title VII disparate treatment claim. Their primary support for this argument is Joseph v. Leavitt, 465 F.3d 87, 91 (2d Cir. 2006), wherein the Court of Appeals for the Second Circuit held "that administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action." As Plaintiff does not offer evidence that he suffered something more than merely investigation and administrative leave, he has not shown an adverse employment action. Furthermore, the Court of Appeals has also held that a transfer is an adverse employment action only "if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career," i.e., one that "create[s] a material disadvantage" and is not a "purely lateral transfer." Galabaya v. N.Y. City Bd. of Educ., 202 F.3d 636, 641 (2d Cir. 2000) (citations and quotation marks removed). As Plaintiff does not offer any evidence that his assignment to a different school after the termination proceedings was a material change in job responsibilities, that reassignment cannot constitute an adverse employment action for his disparate treatment claim.

Plaintiff attempts to blunt the impact of the above-cited opinions in three ways. First, he cites to Judge Trager's opinion denying Defendants' motion to dismiss, wherein Judge Trager held that Plaintiff had alleged that he had suffered an adverse action for purposes of his 42 U.S.C. § 1981 and § 1983 claims. (Pl. Mem. at 6.) Second, Plaintiff cites to Burlington Northern & Santa Fe Railway Co., v. White, 548 U.S. 53 (2006), for the proposition that reassignment and suspension pending investigation for misconduct could be an adverse

---

provide it to Defendants during discovery. (See Section I, supra.) Without evidentiary support, Plaintiff cannot use this alleged event as an adverse employment action for his prima facie case. However, even if it were considered, the email would only provide evidentiary support for the fact that Defendants required Plaintiff to submit documentation of his medical absences and that Plaintiff believed he had already submitted that documentation once before. (See Aug. 11, 2006 Jeter Email.) Plaintiff cites no authority for the idea that requiring documentation of a medical absence, or even requiring a second copy of that documentation, constitutes an adverse employment action as Title VII uses the term.

employment action.  Id. at 70-71.  (See Pl. Mem. at 6.)  Third, Plaintiff attempts to show that his

suspension during the pendency of the termination proceedings financially injured him and thus

created an adverse employment action.  Specifically, Plaintiff alleges that he lost the opportunity

to perform "pensionable Chapter 683 work."  (Pl. Mem. at 7.)  By "Chapter 683 work," Plaintiff

means certain work performed during a summer session for which the DOE would pay a wage in

addition to Plaintiff's base salary.  (See Jeter Dep. at 34:23-35:9.)  Plaintiff was denied a chance

to do such work during the pendency of the termination proceedings.

     Each of Plaintiff's arguments fail.  Plaintiff's reference to Judge Trager's opinion is

inapposite for several reasons.  First, Judge Trager was adjudicating a motion to dismiss, and so

properly assumed the truth of Plaintiff's factual allegations.  (See Mar. 4, 2008 Mem. & Order at

7.)  Second, at that stage of the proceeding Plaintiff was pro se, and so Judge Trager properly

read his Complaint liberally.  (See id. at n.1.)  Finally, Judge Trager did not rule on the

sufficiency of Plaintiff's allegations with regard to Plaintiff's prima facie case of disparate

treatment; the cited portion of the opinion addresses Plaintiff's claims for discrimination and

retaliation under § 1983, not under Title VII.  (Id. 18-19.)  Thus, there is no inconsistency

between Judge Trager's earlier decision and the court evaluating whether Plaintiff has produced

evidence of an adverse employment action to support a prima facie case of disparate treatment at

the summary judgment stage.

     Plaintiff's citation of Burlington Northern is also unavailing.  In that opinion, the

Supreme Court determined whether a particular action could support a prima facie case of

retaliation, not disparate treatment, and discussed at length the fact that Title VII created

different standards for adverse employment actions for disparate treatment and anti-retaliation

claims.  Burlington Northern, 548 U.S. at 61-64.  Consequently, the fact that actions are adverse

for anti-retaliation claim purposes does not mean that they are so for disparate treatment purposes. See Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010) ("[I]t is now clear that Title VII's anti-discrimination and anti-retaliation provisions are not coterminous; anti-retaliation protection is broader and extends beyond workplace-related or employment-related retaliatory acts and harms." (Internal quotation marks omitted)). Indeed, the Second Circuit decided Joseph v. Leavitt after Burlington Northern. Thus, the court's holding in Joseph was not disturbed by the Supreme Court's decision in Burlington Northern. Plaintiff apparently overlooked the distinction between disparate treatment and anti-retaliation claims.

Plaintiff's final attempt to avoid Joseph is his argument that he suffered financial harm as a result of his suspension. This presumably is an argument that he, unlike the plaintiff in Joseph, has shown something more than simply a suspension with pay pending investigation. Plaintiff's attempt to use the summer school opportunity as the "something more" is analogous to a plaintiff alleging he lost the opportunity to take overtime assignments during the pendency of an investigation; this form of "something more" is foreclosed by Brown v. City of Syracuse, 673 F.3d 141, 151 (2d Cir. 2012), in which the Second Circuit held that an employee's loss of overtime opportunities does not constitute an adverse employment action if it is a direct result of suspension with pay pending investigation. As Plaintiff's attempts to avoid the effect of the relevant Second Circuit cases fail, the court must grant summary judgment for Defendants on Plaintiff's disparate treatment claim.

### 2. Hostile Work Environment

Title VII applies to a plaintiff's claim that he has been forced to work in a "hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). A hostile work environment exists

> [w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. . . . Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.

Id. (internal citation and quotation marks omitted).  Accordingly, to make out a hostile work environment claim, a plaintiff must present evidence (1) that the conduct in question was "objectively severe or pervasive," that is, that it created an "environment that a reasonable person would find hostile or abusive"; (2) that the plaintiff subjectively perceived the environment as hostile or abusive; and (3) that the plaintiff was subject to the hostile work environment "because of" plaintiff's race.  See, e.g., Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001).  Severity and pervasiveness are independent standards, only one of which the plaintiff must meet.  See Pucino v. Verizon Commc'ns, 618 F.3d 112, 119 (2d Cir. 2010).  For conduct to be "pervasive" enough to constitute a hostile environment, "the challenged incidents [must be] more than episodic; they must be sufficiently continuous and concerted."  Hayut v. State Univ. of N.Y., 352 F.3d 733, 745 (2d Cir. 2003) (internal quotation marks omitted).  "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness."  Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2001).  However, even a single act can meet the "severity" standard if, "by itself, it can and does work a transformation of the plaintiff's workplace."  Id.

Defendants claim that summary judgment is appropriate for Plaintiff's hostile work environment claim.  Defendants argue that the only evidence introduced about Plaintiff's work environment—i.e., smiles, grimaces, and sarcastic comments that Lent directed toward Plaintiff—could not permit a rational fact-finder to find that the conditions of Plaintiffs' work environment had been altered.  (Defs. Mem. at 13.)  Plaintiff opposes Defendants' motion for summary judgment on this claim; he argues that there is a question of fact regarding whether

Plaintiff's work environment had been made a racially hostile one by several incidents, including (1) a school official encouraging Lent to report to the police the confrontation between Plaintiff and Lent; (2) differences in how complaints that Plaintiff and a co-worker of his made were treated and complaints against Plaintiff were treated; and (3) the decision of school officials to bring a supplemental charge against Plaintiff over the "motherfucking people" incident, which he claims was an effort to "paint [Plaintiff] as a threatening individual."[9]  (Pl. Mem. at 10.)

The flaw in Plaintiff's claim is that he does not offer any evidence from which a rational fact-finder could conclude that the conduct creating the hostile environment occurred because of Plaintiff's race.  See Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002); Richardson v. N.Y. State Dept. of Corr. Servs., 180 F.3d 426, 440 (2d Cir. 1999), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).[10]  Most of the actions Plaintiff complains of were responses to specific actions that Plaintiff took, and so a fact-finder could hardly infer racial hostility based merely on the fact that these events took place.  In response, Plaintiff appears to argue that because he and Lent were treated dissimilarly, a fact-finder could infer racial hostility.  However, the uncontradicted evidence shows that Plaintiff and Lent were not similarly situated.  See Colquitt v. Xerox Corp., No. 05-CV-6405, 2012 WL 109230, at *3 (W.D.N.Y. May 25, 2012) (plaintiff must be similarly situated to differently treated individual to use disparate treatment as evidence of racial motivation for hostile work environment).  The

---

[9]  Plaintiff also refers to the reassignment of a black investigator initially assigned to investigate Plaintiff's complaint about Lent as another racially motivated incident that contributed to a hostile work environment.  (Pl. Mem. at 10.)  However, Plaintiff cites no evidence at all relating to this reassignment (his memorandum taking the unusual strategy of declining to cite to the record for support for most of his factual assertions), let alone any evidence that would allow a fact-finder to conclude the reassignment was suspicious.  The court's search through the evidence submitted by both parties did not locate any evidentiary support either.

[10]  Plaintiff alleged retaliatory hostile work environment as well racially motivated hostile work environment in his Complaint.  However, he does not present an argument or evidence in support of that claim and so the court deems it abandoned.  See, e.g., Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP, 834 F. Supp. 2d 141, 144 n.3 (E.D.N.Y. 2011).

Hearing Officer found that Plaintiff used sexually explicit language in the confrontation between the two men (Hr'g Officer Decision at 60-66) and that Plaintiff had shouted that school administration officials were "motherfucking people" (id. at 90-97), while there is no evidence that Lent did anything similar. The uncontradicted evidence also shows that Plaintiff's complaint against Lent was investigated, but found to be unsubstantiated and, unlike the complaints against Plaintiff, no parents came forward to complain about Lent. (O'Mahoney Report (Chiu Decl. Ex. U (Docket Entry # 94-4)).)

In sum, there is no evidence of disparate treatment of similarly situated individuals, and so, there is no evidence that the incidents Plaintiff complains of were racially motivated (even if they were severe or pervasive enough to alter his working conditions). As a hostile work environment claim requires a fact-finder to find that a Plaintiff suffered because of being a member in a protected class, see Alfano, 294 F.3d at 374, Plaintiff's failure to offer material evidence on this element is fatal to his claim. The court grants summary judgment to Defendants on this claim.

### 3. Retaliation

Title VII also makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). The McDonnell Douglas burden-shifting framework applies to retaliation claims. Kaytor v. Elec. Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010). In order to make out a prima facie case, the plaintiff must show "(1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." Id.

The burden of production then shifts to the defendant to articulate a "legitimate non-retaliatory reason for the adverse employment action." Id. at 552-53. If the defendant does so, the plaintiff, to avoid summary judgment, must "point to evidence sufficient to permit an inference that the employer's proffered non-retaliatory reason is pretextual and that retaliation was a substantial reason for the adverse employment action." Id. at 553 (internal quotation marks omitted).

Defendants do not contest that Plaintiff has offered evidence of the first two elements of a prima facie case of retaliation. Defendants move for summary judgment on Plaintiff's retaliation claim, on the grounds that Plaintiff has not provided evidence of either (1) an adverse employment action or (2) causation. Plaintiff cross-moves for summary judgment on Defendant's liability for retaliation, arguing that Defendants are collaterally stopped from offering a legitimate, non-discriminatory reason for the actions they took against Plaintiff.

Defendants' argument regarding adverse employment action is essentially that the initiation of a proceeding aimed at terminating a person's employment, and reassignment with pay for the duration of that proceeding, cannot as a matter of law be an adverse employment action for a retaliation claim. (Defs. Mem. at 17.) Defendants' argument relies in part on Joseph's rule that suspension pending disciplinary charges is not an adverse employment action in the disparate treatment context. (Id.) However, in making this argument, Defendants make the same mistake that Plaintiff did in his discussion of disparate treatment: conflation of the standards for adverse employment action for a retaliation claim with those for a disparate treatment claim. The Second Circuit has stated pellucidly that the two are not the same. Hicks v. Baines, 593 F.3d at 165. Hicks noted that the Supreme Court's decision in Burlington Northern broadened what could be considered an adverse employment action for a retaliation claim so that a plaintiff would not be limited to alleging actions that affect the terms and

conditions of the plaintiff's employment.  Id.  Instead, anything that might "dissuade a reasonable worker from making or supporting a charge of discrimination" is a materially adverse employment action.  Id. (quoting Burlington Northern, 548 U.S. at 57).  This is a context-specific analysis.  Burlington Northern, 548 U.S. at 69.

The court notes Defendants' argument that the rule in Joseph applies to retaliation claims because Joseph included a retaliation allegation.  (Defts. Mem. at 17.)  However, the Second Circuit's decision in Joseph considered only adverse employment actions in the context of disparate treatment claims, because the retaliation claim had been dismissed at the district court level and was not appealed.  See 465 F.3d at 89.  The court also notes Defendant's argument that while in Burlington Northern, the Supreme Court ruled that suspension without pay pending disciplinary charges could be an adverse employment action for the purposes of a retaliation claim, in the instant case Plaintiff was suspended with pay.  (Defts. Reply Mem. at 8.) Defendants are correct this is a distinction between the two cases, but the Burlington Court did not state or imply that the without pay aspect of that plaintiff's suspension was necessary to the court's holding that she had suffered a materially adverse employment decision.

The court also notes Defendants' representation that retaliation claims require demonstration of a material change in an employee's pay or responsibilities.  (Defts. Mem. at 16.) The court believes Defendants have not fully comprehended the shift in law that has occurred as a result of Burlington; for example, in Hicks, the Second Circuit held that an employer's actions that created a risk that plaintiffs would be disciplined, and did lead to plaintiff being reprimanded, were sufficient to show an adverse employment action.  See 593 F.3d at 170. Hicks reiterated that context matters and that a variety of actions could be material employment actions for retaliation purposes.  See id.

The court applies the generous <u>Burlington</u> standard to Plaintiff's alleged adverse employment actions. The court concludes the DOE's decision to initiate termination proceedings against Plaintiff, and to transfer him from his normal workplace, away from his normal duties as a counselor, while that process continued are adverse employment actions. A reasonable fact-finder could consider that such actions would dissuade a reasonable person from engaging in protected activity, given that these actions created a substantial risk that Plaintiff's livelihood would be ended. However, even under the <u>Burlington</u> standard, several other allegedly retaliatory acts do not qualify as adverse employment actions: Plaintiff's claim that he was reassigned to a different school after the resolution of his disciplinary proceedings, because he does not offer evidence that assignment to a different school was effectively a diminution in prestige or responsibility, <u>see</u> <u>Kessler v. Westchester County Dept. of Social Services</u>, 461 F.3d 199, 206, 209 (2d Cir. 2006), and Plaintiff's claim that he was investigated, before the DOE decided to bring charges against him, <u>see</u> <u>Tepperwien v. Entergy Nuclear Operations, Inc.</u>, 663 F.3d 556, 569 (2d Cir. 2011), are not adverse actions. As Plaintiff only needs one adverse employment action to satisfy this element of his prima facie case, the initiation and termination proceedings and the reassignment to a non-counseling position are enough for his prima facie case.

Defendants also argue that Plaintiff has not met his de minimis burden of showing a causal connection between Plaintiff's protected activity and the adverse employment actions. Although temporal proximity between protected activities and adverse actions can be sufficient for that showing at summary judgment, <u>see</u> <u>Slattery v. Swiss Reinsurance Am. Corp.</u>, 248 F.3d 87, 95 (2d Cir. 2001), Defendants argue that what Plaintiff alleges are retaliatory actions were part of a pattern of discipline that pre-dated Plaintiff's protected activities, and thus, under,

Slattery, temporal proximity alone does not permit an inference of causation.  (Defs. Mem. at 18.)  The evidence of a pattern of discipline that Defendants cite is an email sent in 2003 from Brown that discussed the possibility of initiating disciplinary charges against Plaintiff.  (Apr. 1, 2003 Brown Email (Chiu Decl. Ex. PP (Docket Entry # 94-5)).)  However, Defendants have read Slattery too broadly.  In Slattery, the Second Circuit concluded that "where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff ever engaged in any protected activity, an inference of retaliation does not arise."  Slattery, 248 F.3d at 95 (emphasis added).  Defendants cite to evidence of intra-management communication that occurred years before the protected activity in question—but intra-management communication is not an "adverse job action."  Thus, the usual rule applies and Plaintiff may survive summary judgment by showing close temporal proximity between the adverse actions and the protected activity.  See id.

Plaintiff has offered evidence of a close temporal proximity between his various protected activities and Defendants' various actions: Plaintiff complained about letters in his file in January 2005 (see Jan. 17, 2005 OEO Compl.), and a month later Defendants recommended that Plaintiff be fired (see Loughran Ltr.); Plaintiff filed an OEO complaint in April 2005 (see Apr. 4, 2005 OEO Compl.), and within two months Defendants charged him (see June 6, 2005 Charges & Specifications); and Plaintiff made an OEO complaint in June 2005 (see June 1, 2005 OEO Compl.), and within a month Defendants had suspended him from his counseling duties and reassigned him to the head office (see June 23, 2005 Nathan Ltr.).  These paired sets of protected activities and adverse employment actions are all close enough in time to allow an inference of causation.  See Cunningham v. Consol. Edison Inc., No. 03-CV-3522 (CPS), 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) (collecting district court cases that accept a

proximity of two months or less as permitting a causal inference); Gorman-Bakos v. Cornell Co-op Ext. of Schenectady County, 252 F.3d 545, 555 (2d Cir. 2001) (concluding that five months was not too long a separation between protected activity and alleged retaliatory act).

Plaintiff having met his burden of evidence of a prima facie case of retaliation, Defendants must now meet their burden of production of evidence of a legitimate, non-retaliatory reason for the adverse employment actions Plaintiff has cited. Defendants argue that they have offered evidence of a non-retaliatory reason for investigating Plaintiff and initiating a termination proceeding against him, namely, that a parent told school administrative officials that Plaintiff was not providing mandated counseling to her children (see Serra Dep.), that an investigator found that some of Plaintiff's Related Service Attendance Cards listed dates of service that could not have been accurate (see Dreyfus Dep.), and that Plaintiff insulted Steven Lent in the confrontation between the two (see Hr'g Officer Decision at 60-66).[11]

Plaintiff has moved to preclude Defendants from relying on these events as non-retaliatory reasons using collateral estoppel. Plaintiff argues that the Hearing Officer's decision that the DOE could not prove misconduct on two of the principal allegations behind the DOE's charges against him—regarding the parent who alleged Plaintiff did not provide counseling services to her sons, and regarding Plaintiff's inaccurate dates on his Related Service Attendance Cards (see Hr'g Officer Decision at 27-45)—prevents Defendants from using those allegations as legitimate, non-retaliatory reasons in this case (Pl. Mem. at 3-5). Although Plaintiff does not present this argument clearly, he presumably also believes that the Hearing Officer's decision that the confrontation between Plaintiff and Lent did not merit punishment also collaterally

---

[11] Defendants also cite Plaintiff's description of school officials as "motherfucking people" as an additional legitimate, non-retaliatory reason for bringing charges against Plaintiff. (Defs. Reply Mem. at 6.) But as mentioned in the court's reconstruction of the background, Plaintiff had already been investigated, charged, and reassigned pending termination before that event occurred. (See Section II, supra.) This incident cannot serve as a legitimate, non-retaliatory reason for events that occurred before it did.

estops Defendants from using that event as a legitimate reason as well. (See Hr'g Officer Decision at 98-99.)

Plaintiff is correct that Section 3020-a proceedings can collaterally estop parties from re-litigating previously decided issues of fact in a federal employment discrimination case, so long as the parties had a full and fair opportunity to litigate the facts in the Section 3020-a proceeding. Burkybile v. Bd. of Educ. of Hastings-on-Hudson Union Sch. Dist., 411 F.3d 306, 311-312 (2d Cir. 2005). Thus, the factual findings in the Hearing Officer's decision in the Section 3020-a hearing are entitled to preclusive effect, if the other elements of collateral estoppel apply. However, Plaintiff's motion ignores several of these elements, namely that "the issues of both proceedings must be identical [and] the relevant issues were actually litigated and decided in the prior proceeding." Central Hudson Gas & Elec. v. Empresa Naviera, 56 F.3d 359, 368 (2d Cir. 1995). The primary issues that were decided at the Section 3020-a hearing—whether Defendants had proven by a preponderance of the evidence that Plaintiff had engaged in any or all of multiple incidents of misconduct and, if so, whether Plaintiff's employment should end—are simply not the same issues as whether Defendants had a legitimate reason for believing that Plaintiff may have engaged in misconduct. Certainly nowhere in the Hearing Officer's decision did the Hearing Officer find that Defendants did not have a legitimate reason for bringing charges against Plaintiff (let alone that they had a retaliatory or otherwise malicious reason). Defendants are thus not precluded from using evidence that a parent complained about Plaintiff and an investigator found discrepancies in Plaintiff's timekeeping, and a rational fact-finder could find that those facts provided a non-retaliatory reason for investigating and ultimately seeking to terminate Plaintiff's employment, even though the claims were ultimately not

proven.[12]  Defendants have therefore met their burden of production, and Plaintiff's motion for

summary judgment as to liability on his retaliation claim is accordingly denied.

The final step in the burden-shifting framework is for the Plaintiff to offer evidence that

would permit a fact-finder to infer that Defendants' reasons are pretextual.  The Section 3020-a

hearing decision's factual findings support Plaintiff at this step.  For example, in considering the

disciplinary charge surrounding Plaintiff's Related Service Attendance Cards, the Hearing

Officer found that the Board of Education's investigators did not compare Plaintiff's error rate in

record-keeping to any other counselor's before labeling Plaintiff's work negligent or malicious.

(Hr'g Officer Decision at 35-36.)  Similarly, with regard to the disciplinary charges of failing to

provide counseling services to the children of the parent who complained, the Hearing Officer

found that the DOE did not question the two children's aides before charging Plaintiff with

failing to provide services (id. at 43-44), that Plaintiff's knowledge of M.E. and his related

service attendance cards suggested that he had counseled M.E. (id. at 39-40), and that Plaintiff's

related service attendance cards for G.E. contained some errors but supported the inference that

Plaintiff had provided services to G.E. (id. at 45).  In sum, a fact-finder could conclude that the

DOE brought charges against Plaintiff without comparing his work to any peers, without

communicating with several sources of useful information, and without consulting

contemporaneous documentary evidence.  The court considers these established facts to be

---

[12]        If the Hearing Officer had found that the Board of Education's charges were frivolous or had no evidentiary support at all, then perhaps a rational fact-finder would not be able to find that Defendants had a legitimate reason to act as they did.  However, the Hearing Officer did not do so.  The two junctures in the proceeding in which Plaintiff called on the Hearing Officer to make such a finding were Plaintiff's motion to dismiss the charges for lack of evidence, and Plaintiff's motion for attorney's fees, a motion which required the Hearing Officer to decided whether the charges were frivolous.  The Hearing Officer dismissed three charges against Plaintiff, but permitted myriad other charges to go forward because the Board of Education had at least some evidence to support them.  (Hr'g Officer Ruling on Mot. to Dismiss.)  The Hearing Officer later rejected Plaintiff's motion for attorney's fees even after finding the Board of Education had not met its burden on all but two charges against Plaintiff, finding that because the Board offered some evidence for "most" of the charges, the Hearing Officer could not say the charges were frivolous.  (Hr'g Office Decision at 100 n.30.)

sufficient to permit a reasonable fact-finder to conclude that Defendants used poorly investigated or minor charges against Plaintiff as punishment, and thus, to conclude that Defendants were retaliating against Plaintiff for making complaints. The court denies summary judgment as to Plaintiff's retaliation claim.

## IV.   CONCLUSION

For the reasons discussed above, Plaintiff's claims against all Defendants except for the Department of Education are DISMISSED. The DOE's motion for summary judgment is GRANTED with respect to Plaintiff's Equal Protection, § 1981, disparate treatment, and hostile work environment claims and DENIED with respect to Plaintiff's retaliation claim. Plaintiff's motion for summary judgment with regard to liability as to his retaliation claim is DENIED. The case shall proceed to trial on Plaintiff's retaliation claim against the Department of Education.

SO ORDERED.

<table>
<tr><td></td><td>/S/ Nicholas G. Garaufis</td></tr>
<tr><td>Dated: Brooklyn, New York</td><td>NICHOLAS G. GARAUFIS</td></tr>
<tr><td>    July 13, 2012</td><td>United States District Judge</td></tr>
</table>